# **Exhibit 1**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FOREVER 21, INC., *et al.*,[1] | ) | Case No. 19-12122 (___) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**DEBTORS' MOTION SEEKING ENTRY OF AN ORDER ESTABLISHING
A RECORD DATE FOR NOTICE AND SELL-DOWN PROCEDURES
FOR TRADING IN CERTAIN CLAIMS AGAINST THE DEBTORS' ESTATES**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2]

respectfully state as follows in support of this motion (this "Motion"):

### Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Record Date Order"):  (a) establishing the date the Court enters the Record Date

Order as the effective date (the "Record Date") for notice and sell-down procedures for trading in

certain claims against the Debtors' estates in order to preserve the Debtors' ability to formulate a

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Forever 21, Inc. (4795); Alameda Holdings, LLC (2379); Forever 21 International Holdings, Inc. (4904); Forever 21 Logistics, LLC (1956); Forever 21 Real Estate Holdings, LLC (4224); Forever 21 Retail, Inc. (7150); Innovative Brand Partners, LLC (7248); and Riley Rose, LLC (6928).  The location of the Debtors' service address is: 3880 N. Mission Road, Los Angeles, California 90031.

[2]   A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Jonathan Goulding, Chief Restructuring Officer of Forever 21, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on September 29, 2019 (the "Petition Date"). Capitalized terms used but not otherwise defined in this Motion shall have the meanings given to them in the First Day Declaration.

plan of reorganization that maximizes the use of their Tax Attributes (as defined below); and (b) granting related relief.[3]

## Jurisdiction and Venue

2.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The bases for the relief requested herein are sections 362 and 541 of title 11 of the Bankruptcy Code.

## Background

5.     The Debtors are a specialty fashion retailer of women's and men's apparel and accessories. As of the Petition Date, the Debtors operate 549 stores across the United States, and 251 stores are operated internationally by non-Debtor affiliates. Of the 251 international

---

[3]    Contemporaneously with this Motion, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Approving Notification and Hearing Procedures for Certain Transfers of and Declarations of Worthlessness with Respect to Common Stock and (II) Granting Related Relief* seeking to establish notification and hearing procedures regarding the transfers of and declarations of worthlessness with respect to the Debtors' equity securities to preserve the use of their Tax Attributes.

stores, 181 are owned and operated exclusively by the non-Debtor affiliates, 54 are franchises, and 16 are operated as joint ventures. The Debtors also maintain a substantial online presence, with their e-commerce platform accounting for approximately 16 percent of all sales. In addition to the 534 stores operated under the Forever 21 brand, the Debtors formed a beauty and wellness brand, Riley Rose, in 2017, which operates 15 stores in the United States.

6.       On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have also filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

## The Tax Attributes

7.       The Debtors have and anticipate that they will continue to incur significant net operating losses ("NOLs") and general business credit carryforwards (the "Business Credits," and together with NOLs and certain other tax attributes, the "Tax Attributes").[4] The Debtors may utilize the Tax Attributes to offset their future taxable income, thereby reducing their future aggregate tax obligations. Vitally, such Tax Attributes may also be utilized by the Debtors to offset any taxable income generated by transactions consummated during these chapter 11 cases. The Debtors' ability to use their Tax Attributes may, however, be lost (or extremely limited) if they experience an "ownership change" for tax purposes and are unable to take advantage of

---

[4]    The Tax Attributes include certain alternative minimum tax loss carryforwards. We do not discuss those carryforwards further herein as a result of the changes to the treatment of such carryforwards in U.S. federal income tax legislation that was enacted in December 2017.

certain favorable rules that apply to ownership changes that occur pursuant to a bankruptcy plan of reorganization (as described more fully below). Thus, in order to protect their ability to utilitze the Tax Attributes (and, specifically, to rely on the favorable rule described below), the Debtors may ultimately need to seek an order (a "Sell-Down Order") requiring any persons or entities that have acquired debt claims against the Debtors during these chapter 11 cases in such an amount that the holders of such claims would be entitled to receive more than 4.5 percent of the equity of the reorganized Debtors (collectively, the "Substantial Claimholders") to sell-down their claims below this threshold amount.

8.      At this stage, it is too early to determine whether it is (or will be) necessary for the Debtors to obtain a Sell-Down Order. Accordingly, this Motion does not seek entry of a Sell-Down Order. Instead, this Motion merely seeks to establish the Record Date through entry of the proposed Record Date Order. The Record Date Order will provide notice of the Record Date to persons and entities that trade claims against the Debtors that their claims ultimately may be subject to sell-down. This notice will communicate:  (a) that, subject to further Court order, such creditor's claims may ultimately be subject to sell-down; and (b) the date after which purchased claims could be subject to sell-down (*i.e.*, on or after the Record Date). Thus, the ***only*** purpose of the Record Date Order is to set and provide notice of the Record Date, which will serve as a placeholder should the Debtors later determine that a Sell-Down Order is necessary to preserve or protect the Tax Attributes. And, if the Debtors later determine that a Sell-Down Order is necessary, the Debtors will file a separate motion requesting entry of a Sell-Down Order applicable to all claims traded ***after*** the Record Date.

I.      **The Significance of the Debtors' Valuable Tax Attributes.**

9.      As of the end of the 2018 tax year, the Debtors estimate that they have NOLs in the amount of approximately $567.6 million and Business Credits in the amount of approximately

$13.6 million.[5] The Tax Attributes are potentially of significant value to the Debtors and their estates because the Debtors can carry forward certain Tax Attributes to offset their future taxable income in future years. In addition, such Tax Attributes may be utilized by the Debtors to offset any taxable income generated by transactions consummated during these chapter 11 cases. Failure to preserve such assets could cause the Debtors' estates to suffer a significant tax liability to the detriment of stakeholder interests.

## II.    Limitations on Use of the Tax Attributes.

10.    Sections 382 and 383 of the Internal Revenue Code of 1986, as amended (the "IRC"), limit the amount of taxable income that can be offset by a corporation's tax attributes in taxable years (or portions thereof) following an "ownership change." Generally, an "ownership change" occurs if the percentage (by value) of the stock of a corporation owned by one or more five-percent shareholders has increased by more than 50 percentage points over the lowest percentage of stock owned by such shareholders at any time during the three-year testing period ending on the date of the ownership change. *See* IRC § 382.

11.    Although sections 382 and 383 of the IRC impose annual limitations on a taxpayer's use of its Tax Attributes, a special provision of section 382 also provides significant relief to a debtor if an ownership change occurs in the context of a confirmed chapter 11 plan and certain requirements are satisfied. Under section 382(*l*)(5) of the IRC, a debtor corporation is not subject to the general limitation imposed by sections 382 and 383 of the IRC with respect to an ownership change if, as a result of the transactions contemplated by a bankruptcy plan, historic

---

[5]    As is common for many retailers, the Debtors utilize a non-calendar fiscal year, which ended March 2, 2019. These attribute estimates are based on the Debtors' current "provision" work for the 2018 tax year and will remain subject to change until the tax return for the 2018 tax year is filed. Additionally, the Debtors believe that they have certain disallowed business interest expense under section 163(j) of the IRC.

stockholders and/or the debtor corporation's "qualified creditors" own at least 50 percent of the total value and voting power of the reorganized debtor corporation's stock (the "Section 382(*l*)(5) Exception"). *See* IRC § 382(*l*)(5)(A).[6]

12.     In order to qualify for the Section 382(*l*)(5) Exception, "qualified creditors" (together with historic stockholders) must hold at least 50 percent of their stock immediately after emergence to preserve the majority of the Tax Attributes. A key aspect of the "qualified creditor" analysis is the length of time that creditors have held their claims, together with a favorable presumption regarding that holding period that applies to certain creditors who receive less than 5 percent of the stock of a reorganized company. The Record Date Order is designed to ensure that the Debtors preserve their ability to request Sell-Down Procedures (as defined below) if doing so is necessary and sufficient to satisfy this "qualified creditor" rule to preserve the Tax Attributes.

13.     If an ownership change occurred in the context of a confirmed chapter 11 plan and the Debtors were unable to take advantage of the Section 382(*l*)(5) Exception, sections 382 and 383 of the IRC would potentially significantly limit the amount of taxable income that the Debtors could offset by their "pre-change losses" and "excess credits" in taxable years (or a portion thereof) following an "ownership change." *See* IRC § 382(b). The Debtors' "pre-change losses" and "excess credits" would include the NOLs and the Business Credits.

### Notice and Summary of Potential Sell-Down Procedures

14.     The Debtors anticipate that they may need to seek entry of a Sell-Down Order that will enable them to (a) determine whether the Debtors will qualify for the Section 382(*l*)(5)

---

[6]    A "qualified creditor" is generally one who (a) has held its claim continuously since at least 18 months prior to the petition date or (b) has, at all times, held a claim incurred in the ordinary course of the debtor's trade or business since the claim was incurred. *See* IRC § 382(*l*)(5)(E); Treas. Reg. § 1.382-9(d). For these purposes Treasury Regulations section 1.382-9(d)(3) permits taxpayers to treat certain claim holders as *always* having held such claim if such claim holder owns less than 5 percent of the corporation's stock immediately following the ownership change.

Exception and, if necessary, (b) require certain Substantial Claimholders to "sell-down" claims to the extent necessary to allow the Debtors to qualify for the Section 382(*l*)(5) Exception (the "Sell-Down Procedures").

15.     Any potential Sell-Down Procedures would require a person or entity holding an amount of claims entitling that holder to receive more than 4.5 percent of the equity of the reorganized Debtors (the "Threshold Amount") to provide the Debtors with limited information such as the size of those holdings and the date those holdings were acquired. The amount of claims held by a claimholder as of the Record Date would constitute the "Protected Amount." Claimholders would never be required to sell down their claims below the Threshold Amount or the Protected Amount, whichever is greater. In other words, the Sell-Down Order (if sought by the Debtors and entered by the Court) would apply only to entities that acquire claims in excess of the Threshold Amount *after* entry of the proposed Record Date Order and with full notice of the possibility that the claims they acquire could be subject to sell-down *if* the Debtors later determine that the Sell-Down Procedures are necessary.

16.     If the Sell-Down Procedures prove to be necessary, the Debtors would seek to require claimholders with claims greater than the Threshold Amount to provide updated holdings information shortly after the date on which the Court approves a disclosure statement for a plan of reorganization that endeavors to utilize the Section 382(*l*)(5) Exception. Based on the updated holdings information, the Debtors would then determine whether it would be necessary to require claimholders holding claims in excess of the Threshold Amount and its Protected Amount to sell down a portion of their holdings to preserve the Tax Attributes. The Debtors would only require a sell-down if it were deemed appropriate for the Debtors to qualify for the Section 382(*l*)(5) Exception, and in no event would the Debtors seek to require a claimholder to sell-down claims

7

below its Protected Amount. In the event that the Debtors seek entry of a Sell-Down Order, the Debtors would seek to provide adequate notice and opportunity for claimholders to sell down their claims without triggering an unreasonable adverse impact on the value of such claims.

17.     The Debtors will provide notice, substantially in the form annexed as <u>Annex 1</u> to **Exhibit A** attached hereto, of the entry of the proposed Record Date Order to each of the Debtors' creditors (the "<u>Record Date Order Notice</u>"), and will supplement such notice if and when new creditors make themselves known to the Debtors by requesting service pursuant to Bankruptcy Rule 2002 or filing a proof of claim. The Record Date Order Notice will be provided within five (5) business days of the Record Date Order. Thus, entry of the proposed Record Date Order at the early stages of these chapter 11 cases will provide all claimants with advance notice prior to any opportunity to trade in claims that any claims against the Debtors purchased after entry of the Record Date Order may ultimately be subject to the Sell-Down Procedures. As a result, if a claimholder were required to sell down its holdings, the claimholder would have adequate notice and opportunity to effectuate the sell-down until shortly before the Debtors consummate a plan of reorganization.

<u>**The Proposed Record Date Order Is Narrowly Tailored**</u>

18.     Approval of the proposed Record Date Order does not constitute approval of any Sell-Down Procedures, or even endorse the notion of Sell-Down Procedures. Moreover, the Record Date Order will not impose a burden on any party since the Record Date Order alone—without a Sell-Down Order—will not affect the rights of any party. As stated above, the Record Date Order merely establishes the Record Date as the effective date for any Sell-Down Procedures established in the future, and provides notice to claimholders and claims traders that if the Debtors eventually request and the Court ultimately approves the Sell-Down Procedures, the

Threshold Amounts will be measured as of the Record Date and the claimholders may be subject to a required sell-down of any claims purchased after the Record Date.

19.     The relief requested herein is similar to relief granted in this and other jurisdictions. *See, e.g.*, *In re Achaogen, Inc.*, No. 19-10844 (BLS) (Bankr. D. Del. May 7, 2019) (establishing a record date for notice and sell-down procedures); *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. Feb. 28, 2019) (same); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. Jun. 16, 2017) (same); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. May 18, 2016) (same); *In re Penn Va. Corp.*, No. 16-32395 (KLP) (Bankr. E.D. Va. May 13, 2016) (same).[7]

20.     For the avoidance of doubt, entry of the Record Date Order would in no way be deemed a determination of any kind that entry of a Sell-Down Order is necessary or warranted in these chapter 11 cases and the Court's review of any request for entry of a Sell-Down Order would stand on its own merits notwithstanding the Court's entry of the Record Date Order as requested herein.

## Basis for Relief

### I.     The Tax Attributes are Property of the Debtors' Estate.

21.     Section 541 of the Bankruptcy Code provides that property of the estate comprises, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. The Tax Attributes are property of the Debtors' estates. *See, e.g.*, *Official Comm. of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines, Inc.)*, 928 F.2d 565, 573 (2d Cir. 1991) ("We hold that the right to a carryforward

---

[7]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

attributable to its . . . NOL was property of [the debtor's] bankruptcy estate."), *cert. denied*, 502

U.S. 821 (1991); *In re Delta Air Lines, Inc.*, No. 05-17923 (PCB) (Bankr. S.D.N.Y. Sept. 16, 2005)

(finding that NOLs are property of the debtors' estates); *In re Forman Enters., Inc.*, 273 B.R. 408,

416 (Bankr. W.D. Pa. 2002) (same); *In re White Metal Rolling & Stamping Corp.*, 222 B.R. 417,

424 (Bankr. S.D.N.Y. 1998) (same).  Section 362(a)(3) of the Bankruptcy Code, moreover, stays

"any act [of an entity] to obtain possession of property of the estate or of property from the estate

or to exercise control over property of the estate."  Because the Tax Attributes are property of the

Debtors' estates, the Debtors have a duty to take steps to preserve them, and this Court has the

authority under section 362 of the Bankruptcy Code to enforce the automatic stay by taking steps

to restrict the transfer of claims that could jeopardize the existence of these valuable assets.

## II.     The Requested Relief Is Necessary to Avoid Immediate and Irreparable Harm to the Debtors.

22.     Entry of the Record Date Order will not affect the rights of any party in interest;

instead, it will set and preserve the Record Date should Sell-Down Procedures eventually become

necessary to avoid the imposition of an irrevocable limitation on the Debtors' utilization of the

Tax Attributes.  Whether or not the Debtors request—and the Court ultimately implements—the

Sell-Down Procedures, entry of the Record Date Order protects the Debtors' option to choose to

preserve the Tax Attributes without prejudicing any party in interest.  To preserve their ability to

request and implement the Sell-Down Procedures, the Debtors seek to notify claims traders

prospectively that claims acquired after the Record Date may be subject to sell-down.  Entry of

the Record Date Order will preserve the Debtors' flexibility to seek to implement the Sell-Down

Procedures if they determine that proposing a plan of reorganization that would take advantage of

the Section 382(*l*)(5) Exception is in the best interest of their estates.  Without the Record Date

Order fixing the Record Date on or about the commencement of these chapter 11 cases, it is

unlikely that the Debtors would ever be able to implement the Sell-Down Procedures and thereby avoid limitations on, and possibly the loss of, the Tax Attributes.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

23.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

24.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Record Date Order is intended or shall be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party in interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's right to subsequently dispute such claim.

## Notice

25.    The Debtors will provide notice of this Motion to: (a) the U.S. Trustee for the District of Delaware; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' prepetition revolving credit facility and the Debtors' proposed debtor in possession ABL financing facility and counsel thereto; (d) the administrative agent under the Debtors' proposed debtor in possession term loan facility and counsel thereto; (e) counsel to certain of the Debtors' landlords; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the state attorneys general for all states in which the Debtors conduct business; (i) counsel to certain majority equity holders for Debtor Forever 21, Inc.; and (j) any party that requests service pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

26.    No prior motion for the relief requested herein has been made to this or any other court.


*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of the Record Date Order,

substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and

(b) granting such other relief as is just and proper.

Dated: September 30, 2019          */s/ Laura Davis Jones*
Wilmington, Delaware          Laura Davis Jones (DE Bar No. 2436)
                              James E. O'Neill (DE Bar No. 4042)
                              Timothy P. Cairns (DE Bar No. 4228)
                              **PACHULSKI STANG ZIEHL & JONES LLP**
                              919 North Market Street, 17th Floor
                              P.O. Box 8705
                              Wilmington, Delaware 19899-8705 (Courier 19801)
                              Telephone:    (302) 652-4100
                              Facsimile:    (302) 652-4400
                              Email:        ljones@pszjlaw.com
                                            joneill@pszjlaw.com
                                            tcairns@pszjlaw.com

                              -and-

                              Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
                              Aparna Yenamandra (*pro hac vice* admission pending)
                              **KIRKLAND & ELLIS LLP**
                              **KIRKLAND & ELLIS INTERNATIONAL LLP**
                              601 Lexington Avenue
                              New York, New York 10022
                              Telephone:    (212) 446-4800
                              Facsimile:    (212) 446-4900

                              -and-

                              Anup Sathy, P.C. (*pro hac vice* admission pending)
                              **KIRKLAND & ELLIS LLP**
                              **KIRKLAND & ELLIS INTERNATIONAL LLP**
                              300 North LaSalle Street
                              Chicago, Illinois 60654
                              Telephone:    (312) 862-2000
                              Facsimile:    (312) 862-2200

                              *Proposed Co-Counsel for the Debtors and Debtors in Possession*

**Exhibit A**

**Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FOREVER 21, INC., *et al.*,[1] | ) | Case No. 19-12122 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re: Docket No. _____** |

**ORDER ESTABLISHING A RECORD DATE FOR
NOTICE AND SELL-DOWN PROCEDURES FOR TRADING
IN CERTAIN CLAIMS AGAINST THE DEBTORS' ESTATES**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Record Date Order") (a) establishing an

effective date for notification and sell-down procedures for trading in claims against the Debtors'

estates, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First

Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334; and that this Court may enter a final order consistent with Article III of the United States

Constitution; and this Court having found that venue of this proceeding and the Motion in this

district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the

Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under

the circumstances and no other notice need be provided, as set forth herein; and this Court having

reviewed the Motion and having heard the statements in support of the relief requested therein at

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
      number, include:  Forever 21, Inc. (4795); Alameda Holdings, LLC (2379); Forever 21 International Holdings,
      Inc. (4904); Forever 21 Logistics, LLC (1956); Forever 21 Real Estate Holdings, LLC (4224); Forever 21 Retail,
      Inc. (7150); Innovative Brand Partners, LLC (7248); and Riley Rose, LLC (6928).  The location of the Debtors'
      service address is: 3880 N. Mission Road, Los Angeles, California 90031.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Within five (5) business days after the entry of this Record Date Order, the Debtors shall provide notice, substantially in the form attached hereto as **Annex 1**, to each of the Debtors' known creditors of the terms of this Record Date Order.

3.      The Record Date Order Notice is deemed adequate and sufficient so that, if the Court ultimately approves a Sell-Down Order, claimholders that acquire claims after the Record Date, in an amount that would entitle them to receive more than 4.5 percent of the equity of the reorganized Debtors, may be subject to a required sell-down of any claims purchased after the Record Date to the extent authorized by the Court after appropriate opportunity for notice and a hearing.

4.      Entry of this Record Date Order shall in no way be deemed a determination of any kind that entry of a Sell-Down Order is necessary or warranted in these cases and this Court's review of any request for entry of a Sell-Down Order shall be without regard to entry of this Record Date Order.

5.      The entry of this Record Date Order shall in no way prejudice the rights of any party to oppose the entry of a Sell-Down Order, on any grounds, and all parties' rights are expressly preserved hereby.

6.      The requirements set forth in this Record Date Order are in addition to the requirements of applicable law and do not excuse compliance therewith.

2

7.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

8.      All time periods set forth in this Record Date Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

9.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Record Date Order in accordance with the Motion.

10.     Notwithstanding the applicability of Bankruptcy Rule 6003 and the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Record Date Order.

Dated: _____, 2019                    _____
Wilmington, Delaware                              UNITED STATES BANKRUPTCY JUDGE

**<u>Annex 1</u>**

**Proposed Record Date Order Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FOREVER 21, INC., *et al.*,[1] | ) | Case No. 19-12122 (___) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) | **Re: Docket No.** _____ |

## NOTICE OF ENTRY OF AN ORDER ESTABLISHING A
## RECORD DATE FOR NOTICE AND SELL-DOWN PROCEDURES
## FOR TRADING IN CERTAIN CLAIMS AGAINST THE DEBTORS' ESTATES

**TO:   ALL ENTITIES (AS DEFINED BY SECTION 101(15) OF THE BANKRUPTCY CODE) THAT HOLD CLAIMS AGAINST THE DEBTORS:**

**PLEASE TAKE NOTICE THAT** on September 29, 2019 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a petition with the United States Bankruptcy Court for the District of Delaware (the "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE THAT** on the Petition Date, the Debtors filed the *Debtors' Motion Seeking Entry of an Order Establishing a Record Date for Notice and Sell-Down Procedures for Trading in Certain Claims Against the Debtors' Estates* [Docket No. __] (the "Motion").

**PLEASE TAKE FURTHER NOTICE THAT** on _____, 2019, the Court entered the *Order Establishing a Record Date for Notice and Sell-Down Procedures for Trading in Certain*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Forever 21, Inc. (4795); Alameda Holdings, LLC (2379); Forever 21 International Holdings, Inc. (4904); Forever 21 Logistics, LLC (1956); Forever 21 Real Estate Holdings, LLC (4224); Forever 21 Retail, Inc. (7150); Innovative Brand Partners, LLC (7248); and Riley Rose, LLC (6928).  The location of the Debtors' service address is: 3880 N. Mission Road, Los Angeles, California 90031.

*Claims Against the Debtors' Estates* [Docket No. ___] (the "Record Date Order") establishing an effective date for notice and the Sell-Down Procedures (as defined in the Motion) for trading in claims against the Debtors' estates. The "Record Date" is the date the Record Date Order was entered, namely _____, 2019.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to the Record Date Order, claimholders and potential purchasers of claims against the Debtors are hereby notified that, if the Court ultimately approves a Sell-Down Order, claimholders that acquire claims after the Record Date in an amount that would entitle them to receive more than 4.5 percent of the equity of the reorganized Debtors under the Debtors' plan of reorganization may be subject to a required sell-down of any claims purchased after the Record Date.

**PLEASE TAKE FURTHER NOTICE THAT** all persons or entities that acquired debt claims against the Debtors after the Record Date and currently hold such claims in such an amount that the persons or entities holding such claims would be entitled to receive more than 4.5 percent of the equity of the reorganized Debtors under the Debtors' plan of reorganization may be required to identify themselves to the Debtors after the Court's approval of the disclosure statement which identifies potential recoveries for creditors.

**PLEASE TAKE FURTHER NOTICE THAT** complete copies of the Motion and Record Date Order, with additional information about the Record Date and possible Sell-Down Order, are available via PACER on the Court's website at https://ecf.ded.uscourts.gov for a fee, or free of charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/Forever21.

**PLEASE TAKE FURTHER NOTICE THAT,** the entry of the Record Date Order shall in no way be deemed a determination that entry of a Sell-Down Order is necessary or warranted

2

in these cases, the entry of the Record Date Order shall in no way prejudice the rights of any party to oppose the entry of a Sell-Down Order, on any grounds, and all parties' rights are expressly preserved in the Record Date Order.

**PLEASE TAKE FURTHER NOTICE THAT** the requirements set forth in this notice are in addition to the requirements of applicable law and do not excuse compliance therewith.

*[Remainder of page intentionally left blank]*

3

Dated: _____, 2019
Wilmington, Delaware

*/s/ DRAFT* _____
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Timothy P. Cairns (DE Bar No. 4228)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:     (302) 652-4100
Facsimile:      (302) 652-4400
Email:           ljones@pszjlaw.com
                    joneill@pszjlaw.com
                    tcairns@pszjlaw.com

-and-

Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
Aparna Yenamandra (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

-and-

Anup Sathy, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

*Proposed Co-Counsel for the Debtors and Debtors in
Possession*