## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) ) Chapter 11 |
| FOREVER 21, INC., et al.,[1] | ) ) Case No. 19-12122 (KG) |
| Debtors. | ) ) (Jointly Administered) ) |

### DEBTORS' MOTION SEEKING ENTRY OF AN ORDER (I) EXTENDING THE DEADLINE BY WHICH THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (the "Motion"):[2]

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Forever 21, Inc. (4795); Alameda Holdings, LLC (2379); Forever 21 International Holdings, Inc. (4904); Forever 21 Logistics, LLC (1956); Forever 21 Real Estate Holdings, LLC (4224); Forever 21 Retail, Inc. (7150); Innovative Brand Partners, LLC (7248); and Riley Rose, LLC (6928). The location of the Debtors' service address is: 3880 N. Mission Road, Los Angeles, California 90031.

[2] A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Jonathan Goulding, Chief Restructuring Officer of Forever 21, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on September 29, 2019 (the "Petition Date"). Capitalized terms used but not otherwise defined in this Motion shall have the meanings given to them in the First Day Declaration.

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are section 365(d)(4) of the Bankruptcy Code, rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9006-2.

**Relief Requested**

4. The Debtors seek entry of an order (the "Order") substantially in the form attached hereto as **Exhibit A**: (a) extending the time within which the Debtors may assume or reject unexpired leases of nonresidential real property (collectively, the "Unexpired Leases") for an additional 90 days, through and including the earlier of (i) April 26, 2020, and (ii) the date of entry of an order confirming a chapter 11 plan of reorganization (subject to the occurrence of the effective date of such chapter 11 plan of reorganization);[3] and (b) granting related relief. The Debtors further request that the proposed extension be without prejudice to the rights of the Debtors to seek additional extensions of the time to assume or reject the Unexpired Leases as contemplated under section 365(d)(4)(B)(ii) of the Bankruptcy Code.

---

[3] The Debtors note that they have filed this motion prior to the expiration of the current section 365(d)(4) deadline. Pursuant to Local Rule 9006-2, "if a motion to extend the time to take any action is filed before the expiration of the period prescribed by the [Bankruptcy] Code, the [Bankruptcy Rules], these Local Rules or Court order, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order." Accordingly, Local Rule 9006-2 automatically extends the time within which the Debtors may assume or reject the Unexpired Leases pending the Court's hearing to consider the relief requested by this motion.

2

**The Unexpired Leases**

5. As of the Petition Date, the Debtors operated 549 stores across the United States, and 251 stores are operated internationally by non-Debtor affiliates. Of the 251 international stores, 181 are owned and operated exclusively by the non-Debtor affiliates, 54 are franchises, and 16 are operated as joint ventures. Although the Debtors' largest international region is in the Americas (excluding the United States), where they operate 119 stores as of May 31, 2019, Latin America is the Debtors' strongest international region, with approximately 96 percent of stores generating positive cash contribution on a last twelve months basis.

6. The Debtors lease almost all of their stores and offices, including their headquarters in Los Angeles, California. Currently, the Debtors lease approximately 12.2 million total square feet for its retail stores. The Debtors' headquarters is located in Los Angeles, California, consisting of two buildings owned by BRE Fortnight Owner LLC: (a) its corporate headquarters (approximately 263,000 square feet) and (b) a distribution center (approximately 1.3 million square feet). A substantial portion of the Debtors' restructuring focuses on shuttering underperforming stores while keeping the profitable stores operating.

7. In 2016, the Debtors began the process of exiting unprofitable stores and analyzing optimal markets in which to maintain a physical presence on a go-forward basis, including a large scale reduction of their international store footprint. Despite the prepetition footprint reduction and improving comparable store sales trends, the Debtors' international stores contributed approximately $95 million in negative EBITDA over the last twelve months.

8. In parallel with the store closings, the Debtors, with the assistance of their advisors—specifically RCS, Lazard, and A&M—commenced rent concession negotiations with landlords for the remaining stores. The efforts of RCS, Lazard, and A&M remain ongoing. This two-pronged process will reduce the stress on the profitable domestic business and provide the

first foothold for a comprehensive restructuring that maximizes the value of the Debtors' business as a going concern.

9. The Debtors' initial 120-day period to assume or reject the Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code will expire on January 27, 2020. The Debtors, with the assistance of their advisors, are in the midst of a detailed review of their real estate portfolio, including their Unexpired Leases. Many of the Unexpired Leases are highly valuable assets of the Debtors' estates and are integral to the continued operation of the Debtors' business.

10. On the Petition Date, the Debtors filed the *Debtors' Motion Seeking Entry of an Order (I) Authorizing and Approving Procedures to Reject or Assume or Assume and Assign Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 21] (the "Procedures Motion") through which they seek to streamline the process for rejecting Unexpired Leases and executory contracts which will enable the Debtors to make decisions on the rejection of Unexpired Leases or executory contracts in a prompt and efficient manner.

11. The Debtors have already identified a number of Unexpired Leases for rejection. On the Petition Date, the Debtors also filed the *Debtors' Omnibus Motion Seeking Entry of an Order (I) Authorizing (A) the Rejection of Certain Unexpired Leases and (B) the Abandonment of Certain Personal Property, Each Effective* Nunc Pro Tunc *to the Petition Date, and (II) Granting Related Relief* [Docket No. 22] (the "Rejection Motion") seeking to reject eleven Unexpired Leases.

12. A hearing on these motions is scheduled for October 28, 2019. Both the Rejection Motion and the Procedures Motion demonstrate that the Debtors are not seeking by this Motion to unduly delay their decisions to reject or assume the Unexpired Leases but rather are asking for a

commonplace extension to allow for the chapter 11 plan process to run its course without requiring the Debtors to make premature assumption and rejection decisions.

13. Pending their decision to assume or reject each Unexpired Lease, the Debtors intend to perform all of their undisputed obligations arising from and after the Petition Date, in a timely fashion, to the extent required by section 365(d)(4) of the Bankruptcy Code, including the payment of postpetition rent obligations. However, in furtherance of their chapter 11 plan, the Debtors continue to negotiate an overall conclusion to these chapter 11 cases and believe it is premature to assume (or reject) the remainder of the Unexpired Leases at this time.

14. More specifically, the Debtors' decision regarding whether to assume or reject any particular Unexpired Lease depends on a number of different factors, including an assessment as to whether the terms of such Unexpired Lease are commensurate with the local market and are consistent with their overall restructuring objectives. The Debtors, in consultation with their advisors, have been working diligently to review and analyze the Unexpired Leases in an effort to determine which leases are burdensome to the Debtors' estates. Due to the size and complexity of the Debtors' business and ongoing negotiations surrounding both an operational restructuring and chapter 11 plan, the Debtors require additional time to determine which Unexpired Leases are critical to operations. To ensure that the Debtors maintain flexibility with respect to the Unexpired Leases as the Debtors' restructuring continues, the Debtors seek a 90-day extension of the January 27, 2020 deadline to assume or reject the Unexpired Leases, through and including the earlier of (i) April 26, 2020, or (ii) the date of entry of an order confirming a chapter 11 plan of reorganization in these chapter 11 cases (subject to the occurrence of the effective date of such chapter 11 plan of reorganization).

### The DIP Milestones

15. The Debtors prepetition restructuring efforts and negotiations with its funded debtholders and other potential sources of financing resulted in the agreement to provide a debtor in possession ABL financing facility (the "DIP ABL Facility") and a debtor in possession term loan facility (the "DIP Term Loan Facility," and, together with the DIP ABL Facility, the "DIP Facilities") to effectuate these chapter 11 cases in a value-maximizing manner. Under the DIP Facilities, the Debtors agreed to certain milestones designed to ensure that the Debtors move expeditiously towards confirmation of a chapter 11 plan of reorganization. Specifically, the milestones required by the DIP ABL Facility (the "DIP ABL Milestones") include, *inter alia*:

   (a) On or before ten (10) business days after the Petition Date, the Debtors shall have filed a motion requesting, and within fifty (50) days after the Petition Date shall have obtained, an order of the Bankruptcy Court extending the lease assumption/rejection period such that the lease assumption/rejection period shall be 210 days;[4]

   (b) On or before 90 days after the Petition Date, the Debtors shall have obtained an order from the Court approving a disclosure statement and chapter 11 plan solicitation process; and

   (c) On or before 145 days after the Petition Date, the Debtors shall have obtained an order from the Court confirming a chapter 11 plan.[5]

16. On October 2, 2019, the Court entered the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting*

---

[4] The milestones required by the DIP Term Loan Facility (the "DIP Term Loan Milestones") include "Within 10 business days following the Petition Date, the Borrowers shall file a motion to extend the time period to assume or reject leases to not less than 210 days from the Petition Date, and within 75 days following Petition Date the Bankruptcy Court shall have entered an order approving the same."

[5] The respective agents under the DIP ABL Facility and DIP Term Loan Facility have agreed to modify the DIP ABL Milestones and the DIP Term Loan Milestones, respectively, to allow the lease assumption/rejection period to extend through and including the earlier of (i) April 26, 2020, or (ii) the date of entry of an order confirming a chapter 11 plan of reorganization in these chapter 11 cases (subject to the occurrence of the effective date of such chapter 11 plan of reorganization).

*Adequate Protection to the Prepetition ABL Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling A Final Hearing, and (VII) Granting Related Relief* [Docket No. 133] (the "Interim DIP Order"). Pursuant to the Interim DIP Order:

> Milestones. As a condition to the DIP ABL Facility and the use of Cash Collateral, the Debtors shall comply with the Required Milestones (as defined on Schedule 5.21 to the DIP ABL Agreement attached as Schedule 2 hereto) (as may be amended from time to time in accordance with the DIP ABL Documents and this Interim Order, the "DIP ABL Case Milestones"). As a condition to the DIP Term Loan Facility, the Debtors shall comply with the Milestones (as defined on Schedule 5.21 to the DIP Term Loan Agreement attached as Schedule 3 hereto) (as may be amended from time to time in accordance with the DIP Term Loan Documents and this Interim Order, the "DIP Term Loan Milestones" and together with the DIP ABL Case Milestones, the "Case Milestones"). For the avoidance of doubt, the failure of the Debtors to comply with any of the Case Milestones shall (a) constitute an Event of Default under the DIP Agreements and this Interim Order; (b) subject to the expiration of the Remedies Notice Period (as defined below), result in the automatic termination of the Debtors' authority to use Cash Collateral under this Interim Order; and (c) permit the DIP Agents, subject to paragraph 33, to exercise the rights and remedies provided for in this Interim Order and the DIP Documents.

Interim DIP Order, ¶ 32. Thus, pursuant to the DIP ABL Milestones and the DIP Term Loan Milestones, the Debtors are obligated to file this Motion on or before October 11, 2019. The Debtors have filed this Motion on the date hereof and are requesting that the Court consider approval of the Motion at the scheduled October 28, 2019, hearing, which satisfies the requisite 14-day notice period under Local Rule 9006-1.

## Basis for Relief

17. Section 365(d)(4) of the Bankruptcy Code provides as follows:

> (A) Subject to subparagraph (B), an unexpired lease of nonresidential property under which the debtor is the lessee shall be deemed rejected and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of–
>
> > (i) the date that is 120 days after the date of the order for relief; or

    (ii) the date of the entry of an order confirming the plan.

 (B) (i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.

   (ii) If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

11 U.S.C. § 365(d)(4).

18. Pursuant to section 365(d)(4), the Debtors have 120 days from the Petition Date to assume or reject the Unexpired Leases, unless this deadline is extended for up to an additional 90 days by order of the Court, or longer by consent of the applicable lessors. The 120-day period established by section 365(d)(4)(A) to assume or reject leases of non-residential real property expires on January 27, 2020, subject to extension by the Court (the "<u>Assumption/Rejection Deadline</u>").

19. Section 365(d)(4) of the Bankruptcy Code authorizes a court to "extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessee *for cause*." 11 U.S.C. § 365(d)(4)(B)(i) (emphasis added).

20. "Cause" as used in section 365(d)(4) is not defined by the Bankruptcy Code. Among other things, courts consider the following non-exclusive factors in evaluating whether "cause" exists for purposes of section 365(d)(4):

(1) whether the cases are complex and involve large numbers of leases;

(2) whether the leases are important assets of the estate such that the decision to assume or reject such leases would be central to the debtors' plan of reorganization;

(3) whether the lessor continues to receive postpetition rental payments; and

(4) whether the debtor's continued occupation . . . could damage the lessor beyond the compensation available to it under the Bankruptcy Code.

*In re Wedtech Corp.*, 72 B.R. 464, 471–72 (Bankr. S.D.N.Y. 1987); *see also South St. Seaport L. P. v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 760–61 (2d Cir. 1996) (considering whether the lease was important to the estate, whether the debtor had sufficient time to formulate a plan of reorganization, whether the debtor was paying for the use of the property, whether the debtor's continued occupation could damage the lessor beyond the compensation available under the Bankruptcy Code, the complexity of the case facing the debtor, the number of leases the debtor needed to evaluate, and the need for judicial determination of whether a lease existed); *Channel Home Ctrs., Inc. v. Channel Home Ctrs., Inc. (In re Channel Home Ctrs., Inc.)*, 989 F.2d 682, 689 (3d Cir. 1993), *cert. denied*, 510 U.S. 865 (1993) ("[I]t is permissible for a bankruptcy court to consider a particular debtor's need for more time in order to analyze leases in light of the plan it is formulating.") (*citing Wedtech*, 72 B.R. at 471–72).

21. Courts in this district consistently have recognized the benefits of granting additional time for a debtor to assume or reject leases of nonresidential real property under section 365(d)(4) of the Bankruptcy Code. *See, e.g., Channel Home Ctrs.*, 989 F.2d at 687–88; *In re GST Telecom Inc.*, 2001 WL 686971 (D. Del. June 8, 2001); *In re Rickel Home Centers*, 1997 WL 538785 (D. Del. Aug. 13, 1997). As the Third Circuit Court of Appeals has stated, "nothing prevents a bankruptcy court from granting an extension because a particular debtor needs additional time to determine whether the assumption or rejection of particular leases is called for by the plan of reorganization that it is attempting to develop." *Channel Home Ctrs.*, 989 F.2d at 689; *see also Coleman Oil Co. v. Circle K Corp. (In re Circle K Corp.)*, 127 F.3d 904, 909 n.5 (9th Cir. 1997), *cert. denied*, 118 S. Ct. 1166 (1998) (noting that bankruptcy courts often grant debtors' requests for extensions).

22. Cause exists to extend the time within which the Debtors may assume or reject the Unexpired Leases. A number of factors weigh in favor of granting the requested extension.

23. *First*, pending the Debtors' decision to assume or reject the Unexpired Leases, the Debtors intend to perform all of their undisputed obligations arising from and after the Petition Date in a timely fashion to the extent required by section 365(d)(3) of the Bankruptcy Code. The Debtors currently are paying and will continue to pay in the ordinary course of business the postpetition rent obligations that arise under the Unexpired Leases. As such, the Debtors' requested extension of time to assume or reject the Unexpired Leases will not prejudice or otherwise affect the substantive rights of the lessors under the Unexpired Leases. *See, e.g., In re Am. Healthcare Mgt., Inc.*, 900 F.2d 827, 832 (5th Cir. 1990) ("[A]n order extending the time for a debtor to assume or reject a lease merely preserves the status quo") (quoting *In re Victoria Station Inc.*, 875 F.2d 1380, 1386 (9th Cir. 1989)); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 52 B.R. 850, 854–55 (Bankr. N.D. Ill. 1985) (concluding that a lessor who received continuing monthly rent payments was not prejudiced by an extension of the section 365(d)(4) deadline).

24. *Second*, the Unexpired Leases are an integral part of the Debtors' business and valuable to the estates. The Unexpired Leases are the basis of the Debtors' brick and mortar retail operations and will undoubtedly play a significant role in the Debtors' reorganization. The Unexpired Leases, therefore, currently are some of the most important assets of the Debtors' estates. The requested 90-day extension will enable the Debtors to make a fully informed decision regarding this crucial facet of their business operations.

25. *Third*, the Debtors chapter 11 cases are large and complex. The Unexpired Leases may interrelate with the Debtors' other contractual agreements and legal obligations, and it is

imperative that the Debtors have sufficient time to fully evaluate each of their Unexpired Leases. In the time since the Petition Date, the Debtors have continued to diligently pursue their chapter 11 strategy in an efficient and timely manner. The Debtors are focused on stabilizing the business to maximize the value of the Debtors' estates by obtaining relief that will enable the Debtors to continue operating their business in the ordinary course. The Debtors have continued to work diligently to address market challenges and right-size their operations to help effectuate a value maximizing restructuring. Additional time to analyze and negotiate with counterparties to Unexpired Leases will help facilitate this process,

26. *Fourth*, the Debtors and their advisors continue to work diligently with their stakeholders to progress these chapter 11 cases to a consensual resolution. As the Debtors simultaneously evaluate their leased property portfolio and work toward moving their plan process forward, the Debtors request a 90-day extension of the deadline to assume or reject the Unexpired Leases.

27. The 90-day extension requested herein is also consistent with the extensions granted by this and other courts in this district under similar circumstances. *See, e.g.*, *In re VER Technologies HoldCo LLC*, No. 18-10843 (KG) (Aug. 14, 2018) (granting the debtors an extension of time to accept or reject unexpired leases of nonresidential real property); *In re GST AutoLeather, Inc.*, No. 17-12100 (LSS) (Bankr. D. Del. Jan. 19, 2018) (same); *In re Charming Charlie Holdings Inc.*, No. 17-12906 (CSS) (Bankr. D. Del. Jan. 10, 2018) (same); *In re Emerald Oil, Inc.*, No. 16-10704 (KG) (Bankr. D. Del. Oct. 18, 2016) (same); *In re Magnum Hunter Resources Corp.*, No.

15-12533 (KG) (Bankr. D. Del. Feb. 26, 2016) (same).[6] The Debtors submit that similar relief is warranted in these chapter 11 cases.

28.     If the Debtors precipitously assume or reject the Unexpired Leases or are deemed to reject the Unexpired Leases by virtue of the operation of section 365(d)(4) of the Bankruptcy Code, they may forego significant value in such Unexpired Leases or incur unnecessary rejection damages or administrative claims, as the case may be. The Debtors want to have the maximum amount of information available when deciding whether to assume or reject the Unexpired Leases and respectfully submit that they be given sufficient time to fully analyze the value of such leases to the Debtors' estates.

29.     Accordingly, the Debtors submit that cause exists for the Court to extend the Assumption/Rejection Deadline an additional 90 days, through and including the earlier of (i) April 26, 2020, or (ii) the date of entry of an order confirming a chapter 11 plan of reorganization in these chapter 11 cases (subject to the occurrence of the effective date of such chapter 11 plan of reorganization).

### Reservation of Rights

30.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as: (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365

---

[6] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' counsel.

of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid and the Debtors expressly reserve their rights to contest the extent, validity, or perfection, or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Notice

31. The Debtors will provide notice of this Motion to: (a) the U.S. Trustee for the District of Delaware; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' prepetition revolving credit facility and the Debtors' debtor in possession ABL financing facility and counsel thereto; (d) the administrative agent under the Debtors' debtor in possession term loan facility and counsel thereto; (e) counsel to certain of the Debtors' landlords; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the state attorneys general for all states in which the Debtors conduct business; (i) counsel to certain majority equity holders for Debtor Forever 21, Inc.; (j) counterparties to the Unexpired Leases; and (k) any party that requests service pursuant to Bankruptcy Rule 2002. A copy of this Motion is also available on the Debtors' case website at http://cases.primeclerk.com/Forever21. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

32. No prior request for the relief sought in this Motion has been made to this or any other court.

13

WHEREFORE, the Debtors respectfully request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein, and (b) granting such other relief as is just and proper.

Dated: October 11, 2019  
Wilmington, Delaware

*/s/ Laura Davis Jones*  
Laura Davis Jones (DE Bar No. 2436)  
James E. O'Neill (DE Bar No. 4042)  
Timothy P. Cairns (DE Bar No. 4228)  
**PACHULSKI STANG ZIEHL & JONES LLP**  
919 North Market Street, 17th Floor  
P.O. Box 8705  
Wilmington, Delaware 19899-8705 (Courier 19801)  
Telephone:   (302) 652-4100  
Facsimile:   (302) 652-4400  
Email:       ljones@pszjlaw.com  
             joneill@pszjlaw.com  
             tcairns@pszjlaw.com

-and-

Joshua A. Sussberg, P.C. (admitted *pro hac vice*)  
Aparna Yenamandra (admitted *pro hac vice*)  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
601 Lexington Avenue  
New York, New York 10022  
Telephone:   (212) 446-4800  
Facsimile:   (212) 446-4900

-and-

Anup Sathy, P.C. (admitted *pro hac vice*)  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
300 North LaSalle Street  
Chicago, Illinois 60654  
Telephone:   (312) 862-2000  
Facsimile:   (312) 862-2200

*Proposed Co-Counsel for the Debtors and Debtors in Possession*