## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FOREVER 21, INC., *et al.*,[1] | ) Case No. 19-12122 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. 81** |

## ORDER (I) AUTHORIZING THE DEBTORS TO ENTER INTO THE CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR STORE CLOSING SALES, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (a) authorizing the Debtors to enter into the Consulting Agreement, attached hereto as **Annex 1**, (b) authorizing and approving the Store Closing Procedures, attached hereto as **Annex 3**, with such sales to be free and clear of all liens, claims and encumbrances, (c) authorizing the Debtors to conduct the Store Closings, and (d) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration and the Store Closing Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter an Order consistent with Article III of the United States Constitution; and this Court

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Forever 21, Inc. (4795); Alameda Holdings, LLC (2379); Forever 21 International Holdings, Inc. (4904); Forever 21 Logistics, LLC (1956); Forever 21 Real Estate Holdings, LLC (4224); Forever 21 Retail, Inc. (7150); Innovative Brand Partners, LLC (7248); and Riley Rose, LLC (6928).  The location of the Debtors' service address is: 3880 N. Mission Road, Los Angeles, California 90031.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided, as set forth herein; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[3]

1.      The Debtors have advanced sound business reasons for seeking to enter into the Consulting Agreement and adopt the Store Closing Procedures as set forth in the Motion and at the Hearing and entering into the Consulting Agreement is a reasonable exercise of the Debtors' business judgment and in the best interests of the Debtors and their estates.

2.      The conduct of the Sales in accordance with the Store Closing Procedures will provide an efficient means for the Debtors to dispose of the Store Closure Assets.

3.      The Consulting Agreement was negotiated, proposed, and entered into by the Consultant and the Debtors without collusion, in good faith, and from arm's-length bargaining positions.

4.      Entry into the Consulting Agreement is a sound exercise of the Debtors' business judgment.

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.  *See* Fed. R. Bankr. P. 7052.

5.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

6.      The Store Closings and Sales are in the best interest of the Debtors' estates.

7.      The Debtors have represented that they are neither selling nor leasing personally identifiable information pursuant to the Motion, although the Consultant will be authorized to distribute emails and promotional materials to the Debtors' customers consistent with the Debtors' existing policies on the use of consumer information.

8.      The Consultant submitted a declaration identifying the Consultant's connections to certain creditors and parties in interest in these cases [Docket Nos. 264, 265].

9.      The entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore IT IS HEREBY ORDERED THAT:

10.     The Motion is granted on a final basis as provided herein.

11.     The Debtors are authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Order.

12.     To the extent of any conflict between this Order, the Store Closing Procedures, and the Consulting Agreement, the terms of this Order shall control over all other documents and the Store Closing Procedures shall control over the Consulting Agreement.

13.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall take effect immediately upon its entry.

**I.      Authority to Enter into the Consulting Agreement.**

14.     Entry into the Consulting Agreement by the Debtors pursuant to section 363(b)(1) of the Bankruptcy Code is approved on a final basis.  The Debtors are authorized to act and perform

in accordance with the terms of the Consulting Agreement, including making payments required by the Consulting Agreement to the Consultant, without the need for any application of the Consultant or a further order of the Court; *provided* that payment of any enhancement to the Base Consulting Fee shall only be made with the consent of the Creditors' Committee and the DIP Agents or further order of this Court. All parties' rights with respect to any motion seeking enhancement of the Base Consulting Fee are reserved.

15.    With respect to reasonable and documented costs and expenses incurred by the Consultant pursuant to the Consulting Agreement and fees due to the Consultant on account of services provided from the Petition Date through the date of entry of this Order, the Consultant shall be entitled to and shall receive reimbursement of such reasonable and documented costs and expenses incurred and fees earned pursuant to the Consulting Agreement without the need for any further application to or approval of the Court and/or compliance with any fee guidelines established by the Office of the United States Trustee. All such payments of fees and reimbursement of expenses shall be free and clear of any and all encumbrances.

16.    Notwithstanding anything to the contrary in the Consulting Agreement, the Debtors and their estates shall not indemnify the Consultant except as may be provided in the Consulting Agreement.

## II.    Authority to Engage in Sales and Conduct Store Closings.

17.    The Debtors are authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, but not directed, to immediately conduct Sales at the Closing Stores in accordance with this Order, the Store Closing Procedures, and the Consulting Agreement, as may be modified by a Side Letter (as defined below) between the Debtors and/or the Consultant and the landlords at the closing locations.

18.    The Store Closing Procedures are approved in their entirety.

19.     The Debtors are authorized, but not directed, to discontinue operations at the Closing Stores in accordance with this Order and the Store Closing Procedures.

20.     All entities that are presently in possession of some or all of the Merchandise or FF&E (as defined in the Consulting Agreement) in which the Debtors hold an ownership interest that are or may be subject to the Consulting Agreement or this Order hereby are directed to surrender possession of such Merchandise or FF&E to the Debtors or the Consultant.

21.     Neither the Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including, without limitation, any Governmental Unit (as defined in Bankruptcy Code section 101(27)) or landlord, to conduct the Sales and to take the related actions authorized herein.

**III.    Conduct of the Sales.**

22.     All newspapers and other advertising media in which the Sales may be advertised and all landlords are directed to accept this Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Sales and the sale of Merchandise, FF&E, and Additional Consultant Goods pursuant to the Consulting Agreement, including, without limitation, to conduct and advertise the sale of the Merchandise, FF&E, and Additional Consultant Goods in the manner contemplated by and in accordance with this Order, the Store Closing Procedures, the Consulting Agreement, and Side Letters (as defined below).

23.     Subject to the Dispute Resolution Procedures set forth in paragraph 42 below, the Debtors and Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreement and to conduct the Store Closings without necessity of further order of this Court as provided in this Order, the Consulting Agreement, or the Store Closing Procedures, including, but not limited to, advertising the sale as a "store closing sale," "sale on everything," "everything must go," or similar-themed sales through the posting of

signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of signwalkers and street signage; *provided*, however, that only Debtor-approved terminology will be used at each Closing Store in connection with the Sales.

24.       Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Merchandise, FF&E, and Additional Consultant Goods, to the extent that disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, banners or other advertising and the Debtors and the Consultant are unable to resolve the matter consensually, any party may request an immediate telephonic hearing with this Court pursuant to these provisions.  Such hearing will, to the extent practicable, be scheduled initially within two (2) business days of such request.  This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

25.       In accordance with section 8.3 of the Consulting Agreement, and subject to the Debtors' prior consent, the Consultant is authorized to supplement the Merchandise in the Closing Stores (including any Supplemental Closing Store(s)) with Additional Consultant Goods; *provided* that any such Additional Consultant Goods must be of like kind and no lesser quality than the Merchandise in the Sale; *provided*, *further* that the Debtors shall consult with the Creditors' Committee with respect to the inclusion of any Additional Consultant Goods.

26.       All transactions relating to the Additional Consultant Goods are, shall be construed as, and are acknowledged by the Debtors to be a true consignment from Consultant to the Debtors under Article 9 of the Uniform Commercial Code in effect in the State of Delaware (the "UCC"),

and not a consignment for security purposes.  At all times and for all purposes, the Additional Consultant Goods and their proceeds shall be the exclusive property of the Consultant, and no other person or entity (including, without limitation, the Debtors, or any third party claiming a security interest in the Debtors' property, including any of the Debtors' secured lenders) shall have any claim against any of the Additional Consultant Goods or the proceeds thereof, subject to the Consulting Agreement (which, for the avoidance of doubt, provides the Debtors shall receive five (5) percent of the gross proceeds (excluding sales taxes) from the sale of the Additional Consultant Goods).  The Additional Consultant Goods shall at all times remain subject to exclusive control of the Consultant.  The Debtors shall, at Consultant's sole cost and expense, insure Additional Consultant Goods and, if required, promptly file any proofs of loss with regard thereto. Consultant is hereby granted a first priority security interest in (i) the Additional Consultant Goods and (ii) the Additional Consultant Goods proceeds, which security interest shall be deemed perfected on an final basis pursuant to this Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Consultant is hereby authorized to deliver any notices and file any financing statements and amendments thereof under the applicable UCC identifying Consultant's interest in the Additional Consultant Goods (and any proceeds from the sale thereof) as consigned goods thereunder and the Debtors as the consignee therefor, and Consultant's security interest in such Additional Consultant Goods and Additional Consultant Goods proceeds).  As part of each weekly reconciliation, the Debtors shall turnover all proceeds from the sale of Additional Consultant Goods to the Consultant, net of any fee payable to the Debtors pursuant to the Consulting Agreement.

27.    Except as expressly provided in the Consulting Agreement, the sale of the Merchandise, FF&E, and Additional Consultant Goods shall be conducted by the Debtors and the

Consultant notwithstanding any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closings or the Sales (including the sale of the Merchandise, FF&E, and Additional Consultant Goods) and the rejection of leases, abandonment of assets, or "going dark" provisions, and such provisions shall not be enforceable in conjunction with the Sales or the Store Closings.  Breach of any such provisions in these chapter 11 cases in conjunction with the Store Closings or the Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided that* the Store Closings and Sales are conducted in accordance with the terms of this Order and the Store Closing Procedures.  The Consultant and landlords of the Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Store Closing Procedures and, for the avoidance of doubt, the terms of the applicable Sales, without further order of the Court, and such Side Letters shall be binding as among the Consultant and any such landlords; *provided* that nothing in such Side Letters affects the provisions in paragraphs 36 or 42 of this Order.  In the event of any conflict between the Store Closing Procedures, this Order, and any Side Letter, the terms of such Side Letter shall control.

28.     Notwithstanding anything to the contrary in this Order or the Consulting Agreement, the Debtors shall not sell or abandon FF&E that the Debtors know is not owned by the Debtors; *provided* that the Debtors will either (a) provide for the return of such FF&E to the Debtors' headquarters or (b) return such FF&E to the applicable lessor.

29.     Except as expressly provided for herein or in the Store Closing Procedures, and except with respect to any Governmental Unit (as to which paragraphs 42 and 43 shall apply), no person or entity, including, but not limited to, any landlord, licensor, service provider, utility, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder

consummation of the Sales or the sale of Merchandise, FF&E, and Additional Consultant Goods, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such Sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service provider, utility, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Sales and/or the Store Closings, and/or (b) instituting any action or proceeding in any court (other than this Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords at the Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sales or other liquidation sales at the Closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

30.    In accordance with and subject to the terms and conditions of the Consulting Agreement, the Consultant shall have the right to use the Stores and all related Store services, furniture, fixtures, equipment, and other assets of the Debtors for the purpose of conducting the Sales, free of any interference from any entity or person, subject to compliance with the Store Closing Procedures and this Order.

31.    During the Sale Term, the Debtors shall be authorized to accept the Debtors' validly-issued gift certificates and gift cards that were issued by the Debtors prior to the Sale Commencement Date (as defined in the Consulting Agreement), in accordance with the Debtors' gift certificate and gift card policies and procedures as they existed on the Petition Date, and accept returns of Merchandise sold by the Debtors prior to the Sale Commencement Date; *provided* that such return is otherwise in compliance with the Debtors' return policies in effect as of the date

such item was purchased and the customer is not repurchasing the same item so as to take advantage of the sale price being offered by the Debtors in the Sales.

32.     All sales of Store Closure Assets shall be "as is" and final.  Returns related to the purchase of Store Closure Assets shall not be accepted at stores that are not participating in the Sales.  However, as to the Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

33.     The Consultant shall not be liable for sales taxes except as expressly provided in the Consulting Agreement and the payment of any and all sales taxes is the responsibility of the Debtors.  The Debtors are directed to remit all taxes arising from the Sales to the applicable Governmental Units as and when due, *provided* that in the case of a *bona fide* dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  The Consultant shall collect, remit to the Debtors, and account for sales taxes as and to the extent provided in the Consulting Agreement.  This Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

34.     Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell Store Closure Assets free and clear of any and all liens, claims, encumbrances, and other interests as provided for herein because in each case, one or more of the standards set forth in section 363(f)(1)–(5) has been satisfied; *provided*, *however*, that any such

liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Store Closure Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Store Closure Assets, subject to any claims and defenses that the Debtors may possess with respect thereto and the Consultant's fees and expenses (as provided in the Consulting Agreement).

35.     To the extent that the Debtors propose to sell or abandon FF&E or any other property that may contain "personally identifiable information," as that term is defined in section 101(41A) of the Bankruptcy Code, or other personal and/or confidential information about the Debtors' employees and/or customers, or any other individual (the "Confidential Information"), the Debtors shall remove the Confidential Information from such items of FF&E or other property before such sale or abandonment.

36.     The Debtors are authorized and empowered to transfer Merchandise, FF&E, and Additional Consultant Goods among, and into, the Closing Stores.  The Debtors are further authorized to sell the FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreement and this Order, including, but not limited to, Closing Store signage; *provided* that the Debtors are not authorized to abandon, and are directed to remove, any hazardous materials defined under applicable law from any leased premises as and to the extent they are required to do so by applicable law; *provided*, *further* that the Debtors shall not abandon FF&E they know a third party has asserted a lien against without providing notice to such party.

37.     Notwithstanding this or any other provision of this Order, nothing shall prevent or be construed to prevent the Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates from providing additional services to and/or bidding on the Debtors' assets not subject to the Consulting Agreement or otherwise ("Additional Assets").  The Consultant

(individually, as part of a joint venture, or otherwise) or any of its affiliates are hereby authorized to bid on, guarantee, or otherwise acquire such Additional Assets, or offer to provide additional services, notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, *provided* that such services guarantee, transaction, or acquisition is approved by separate order of this Court.

38.     The Debtors are only authorized, in accordance with the terms and conditions of this Order and the Store Closing Procedures, to sell Merchandise and FF&E, through the Sales at their Stores and neither the Debtors nor the Consultant shall be authorized to sell or otherwise dispose of any unsold Merchandise or FF&E remaining at the conclusion of the Sales, and any such sale or other disposition (other than abandonment) shall be subject to consultation with the Creditors' Committee and DIP Agents or further order of this Court.

**IV.     Procedures Relating to Supplemental Closing Stores.**

39.     To the extent that the Debtors seek to conduct the Sales at any Supplemental Closing Store, the Store Closing Procedures and this Order shall apply to the Supplemental Closing Stores, as set forth more fully herein.

40.     At least ten days prior to commencing the Sales at any Supplemental Closing Store, the Debtors will consult with the DIP ABL Agent, the DIP Term Loan Agent, and the Creditors' Committee and file a list of such Supplemental Closing Stores with this Court (each, a "Supplemental Closing Store List") and serve a notice of their intent to conduct, and the estimated date of completion of, the Sales at the Supplemental Closing Stores on the applicable landlords (the "Supplemental Closing Store Landlords") and interested parties, including (a) the U.S. Trustee for the District of Delaware; (b) proposed counsel to the Creditors' Committee; (c) counsel to the DIP ABL Agent and the Prepetition ABL Agent; (d) counsel to the DIP Term Loan Agent; (e) co-counsel to the Consultant; (f) the United States Attorney's Office for the District of

Delaware; (g) the Internal Revenue Service; (h) the state attorneys general for all states in which

the Debtors conduct business; (i) counsel to certain majority equity holders for Debtor Forever 21,

Inc.; (j) the Dispute Notice Parties; and (k) any party that requests service pursuant to Bankruptcy

Rule 2002, by email (to the extent available to the Debtors) or overnight mail.  With respect to

Supplemental Closing Store Landlords, the Debtors will serve such notice by overnight mail to the

notice address set forth in the lease for such Supplemental Closing Store (or, if none, at the last

known address available to the Debtors) and to counsel thereto, if known.

41.    The Supplemental Closing Store Landlords and any interested parties shall have ten

days after service of the applicable Supplemental Closing Store List to object to the application of

this Order.  If no timely objections are filed with respect to the application of this Order to a

Supplemental Closing Store, the Debtors are authorized, pursuant to sections 105(a), and 363(b)

and (f) of the Bankruptcy Code, to proceed with conducting the Sales at the Supplemental Closing

Store in accordance with this Order, the Store Closing Procedures, and the Consulting Agreement.

If any objections are filed with respect to the application of this Order to a Supplemental Closing

Store and such objections are not resolved, the objections and the application of this Order to the

Supplemental Closing Store will be considered by the Court at the next regularly scheduled

omnibus hearing, subject to the rights of any party to seek relief on an emergency basis on

shortened notice, to the extent necessary.

**V.    Dispute Resolution Procedures with Governmental Units.**

42.    Nothing in this Order, the Consulting Agreement, or the Store Closing Procedures,

releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under

environmental laws or regulations (or any associated liabilities for penalties, damages, cost

recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or

operator of the property after the date of entry of this Order.  Nothing contained in this Order, the

13

Consulting Agreement, or the Store Closing Procedures shall in any way (a) diminish the obligation of any entity to comply with environmental laws or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtor in possession under the Bankruptcy Code. The Store Closings and the Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment (including applicable WARN Act obligations), environmental, antitrust, fair competition, traffic, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"). Nothing in this Order, the Consulting Agreement, or the Store Closing Procedures, shall alter or affect obligations to comply with all applicable federal safety laws and regulations. Nothing in this Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws, subject to the Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Order. Notwithstanding any other provision in this Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

43.    To the extent that the sale of Merchandise, FF&E, or Additional Consultant Goods is subject to any Liquidation Sale Laws, including any federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-

walkers solely in connection with the sale and including ordinances establishing license or permit

requirements, waiting periods, time limits, or bulk sale restrictions that would otherwise apply

solely to the sale of the Merchandise, FF&E, or Additional Consultant Goods, the Dispute

Resolution Procedures in this section shall apply:

a. Provided that the Sales are conducted in accordance with the terms of this Order and the Store Closing Procedures, and in light of the provisions in the laws of many Governmental Units (as defined in the Bankruptcy Code) that exempt court-ordered sales from their provisions, the Debtors and the Consultant will be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Sales in accordance with the terms of this Order and the Store Closing Procedures without the necessity of further showing compliance with any such Liquidation Sale Laws.

b. Within three (3) business days after entry of this Order, the Debtors shall have served by email, facsimile, or first-class mail, copies of this Order, the Consulting Agreement, and the Store Closing Procedures on the following: (i) the landlords for the Closing Stores; (ii) the Attorney General's office for each state in which the Sales are being held; (iii) the county consumer protection agency or similar agency for each county in which the Sales are being held; (iv) the division of consumer protection for each state in which the Sales are being held; and (v) the chief legal counsel for each local jurisdiction in which the Closing Stores are located (collectively, the "Dispute Notice Parties").

c. With respect to any Supplemental Stores, within three (3) business days after filing any Supplemental Closing Store List with the Court, the Debtors will serve by email, facsimile, or first-class mail, copies of this Order, the Consulting Agreement, the Store Closing Procedures, and the Supplemental Closing Store List on the Dispute Notice Parties.

d. To the extent that there is a dispute arising from or relating to the Sales, this Order, the Consulting Agreement, or the Store Closing Procedures, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten days following entry or service of any Supplemental Closing Store List, as applicable, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "Dispute Notice") explaining the nature of the dispute to: (i) the Debtors, 3880 N. Mission Road, Los Angeles, California 90031, Attn: Scott Hampton (scott.hampton@Forever21.com); (ii) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. (jsussberg@kirkland.com) and Aparna Yenamandra (aparna.yenamandra@kirkland.com) and Kirkland &

Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Anup Sathy, P.C. (asathy@kirkland.com); (iii) proposed co-counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier 19801), Attn: Laura Davis Jones (ljones@pszjlaw.com), James E. O'Neill (jo'neill@pszjlaw.com), and Timothy P. Cairns (tcairns@pszjlaw.com); (iv) proposed special counsel to the Debtors, Montgomery McCracken Walker & Rhoads, 437 Madison Avenue, New York, NY 10022, Attn: Maura I. Russell; (v) co-counsel to the Consultant, Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, New York 10036, Attn: Steven E. Fox (sfox@riemerlaw.com); (vi) co-counsel to the Consultant, Pepper Hamilton, LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, Delaware 19899-1709, Attn: Douglas Herrmann (herrmand@pepperlaw.com); (vii) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Juliet M. Sarkessian (Juliet.M.Sarkessian@usdoj.gov); (viii) proposed counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 6th Avenue, New York, New York 1036, Attn: Adam C. Rogoff and Nathaniel Allard; (iv) counsel to the administrative agent under the Debtors' prepetition revolving credit facility and the Debtors' proposed debtor in possession ABL financing facility, Morgan, Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts 02110, Attn: Julia Frost-Davies (Julia.frost-davies@morganlewis.com) and Christopher L. Carter (christopher.carter@morganlewis.com) and Richards, Layton & Finger, PA, One Rodney Square, 920 North King St., Wilmington, Delaware 19801, Attn: Mark D. Collins (collins@rlf.com); and (x) counsel to the administrative agent under the Debtors' proposed debtor in possession term loan facility, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Adam C. Harris (adam.harris@srz.com), Frederic L. Ragucci (frederic.ragucci@srz.com), and Marc B. Friess (marc.friess@srz.com).   If the Debtors, the Consultant, and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Court resolve the Reserved Dispute (a "<u>Dispute Resolution Motion</u>").

e.    In the event that a Dispute Resolution Motion is filed, nothing in this Order shall preclude the Debtors, a landlord, or any other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (ii) that neither the terms of this Order nor the conduct of the Debtors pursuant to this Order violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to continue to conduct the Sales pursuant to this Order, absent further order of the Court.  Upon the entry of this Order, the Court grants authority for the Debtors and the

Consultant to conduct the Sales pursuant to the terms of this Order, the Consulting Agreement, and/or the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in this Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

f.    If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraph (d) above by serving a notice to the other party and proceeding thereunder in accordance with that paragraph. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo.*

44.    Subject to paragraphs 42 and 43 above, each and every federal, state, or local agency, departmental unit, or Governmental Unit with regulatory authority over the Sales, and all newspapers and other advertising media in which the Sales are advertised shall consider this Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors or the Consultant be required to post any bond to conduct the Sales. Nothing in this Order is intended to affect any rights of any Applicable Government Unit to enforce any law affecting the Debtors' conduct of any store closing sale that occurred prior to the Petition Date.

## VI.    Other Provisions.

45.    The Consultant shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Consultant, in each case, other than as expressly provided for in the Consulting Agreement.

46.    The Debtors shall not be required to comply with any state or local law requiring that the Debtors pay an employee substantially contemporaneously with his or her termination;

*provided* that the Debtors shall pay any accrued wages to each terminated employee as expeditiously as possible and in no event later than the later of (a) such employee's next regularly scheduled payday or (b) 5 business days following the termination date for such employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

47.     Within thirty (30) days of the conclusion of the Store Closing Sales process, the Debtors shall file a summary report of such process that will include (i) the stores closed, (ii) gross revenue from Store Closure Assets sold, and (iii) gross revenue from FF&E sold.

48.     On a confidential basis and for professionals' "eyes only" and upon the written (including email) request of the U.S. Trustee, the DIP ABL Agent, the DIP Term Loan Agent, or the Creditors' Committee (the individual members of the Creditors' Committee may also make such requests), the Debtors shall provide such requesting party, if any, with copies of periodic reports and detailed information regarding the calculation of fees paid to the Consultant and expenses reimbursed to the Consultant concerning the Sales that are prepared by the Debtors, their professionals, or the Consultant.

49.     The Debtors are authorized, but not required, to continue selling goods through their website consistent with their ordinary course of business sales prior to the commencement of the Sales; *provided* that neither the Debtors nor the Consultant may conduct any going-out-of-business, liquidation, or similarly-themed sales from the Debtors' or any other website, including, without limitation, selling merchandise at discounted prices consistent with the Sales, and the Consultant shall not be entitled to the proceeds of such Sales absent the consent of the Creditors' Committee and the DIP Agents or further order of this Court.

50.    Notwithstanding anything to the contrary in this Order, to the extent that any computers, servers, laptops, point-of-sale equipment or any other IT related equipment are being abandoned pursuant to this Order, then prior to the abandonment, such equipment will be scrubbed of any software licensed from Oracle America, Inc. ("Oracle") by the Debtors and the Debtors shall provide certification of such scrubbing, if requested by Oracle.

51.    Notwithstanding anything to the contrary in this Order or the Consulting Agreement, (a) Comenity Capital Bank's ("Comenity") rights, claims, remedies, powers, and defenses under the Program Agreement (as defined in Comenity's limited objection to this Order [Docket No. 253], applicable law, and any orders of this Court, including, without limitation, to seek relief from the automatic stay, adequate protection, payment of administrative expense claims, or to compel the Debtors to assume or reject the Program Agreement, are not affected, primed, subordinated, prejudiced or otherwise impaired by this Order and are reserved and preserved; (b) any FF&E sold or abandoned by the Debtors (i) shall not include any FF&E owned by Comenity (*e.g.*, computer tablets/iPads used for credit card applications) and (ii) shall not include information arising under or related to the Program Agreement, and such information shall be removed from any non-Comenity owned FF&E prior to any sale or abandonment; and (c) in the event that the Consultant or any of its agents receives any information arising under or related to the Program Agreement, the Consultant and its agents shall keep the Program Agreement and any related information strictly confidential.

52.    Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any particular claim on any grounds; (c) a promise or requirement

to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party in interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Order are valid and the Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens. Any payment made pursuant to this Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

53.     Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to the orders approving entry into debtor in possession financing and authorizing use of cash collateral; *provided*, *however*, that, without limiting the terms of such debtor in possession financing, use of cash collateral, or related orders, all amounts due to the Consultant under the Consulting Agreement shall not be reduced or capped by the terms or conditions of any pre or postpetition financing facilities, restrictions on the use of cash collateral, or orders related thereto.  Additionally, in furtherance of Section 10.8 of the Consulting Agreement, not later than two (2) business days after entry of this Order the Debtors shall deliver to the Consultant a cash deposit in the amount of $1,200,000 as security for payment of Consultant's fees and expenses earned and incurred hereunder (the "Consultant's Deposit"); *provided* that Consultant shall apply an amount up to $300,000 of Consultant's Deposit to the payment of in-store signage invoices per the Budget (as defined in the Consulting Agreement),

with the remaining balance of Consultant's Deposit being held by Consultant pending completion of a final reconciliation of the Sale result by Debtors and Consultant.

54.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

55.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

56.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

57.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order or the Consulting Agreement, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords and/or the Consultant for protection from interference with the Store Closings or Sales, (c) any other disputes related to the Store Closings or Sales, and (d) protect the Debtors and/or the Consultant against any assertions of any liens, claims, encumbrances, and other interests.  No such parties or person shall take any

action against the Debtors, the Consultant, the landlords, the Store Closings, or the Sales until this

Court has resolved such dispute.  This Court shall hear the request of such parties or persons with

respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

Dated: October 28th, 2019
Wilmington, Delaware

KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE