## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Forever 21, Inc., *et al.,*[1] | ) | Case No. 19-12122 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 24, 133** |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION ABL SECURED PARTIES, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "DIP Motion") of Forever 21, Inc. (the "Company"), Forever 21 Retail, Inc., Forever 21 International Holdings, Inc., Alameda Holdings, LLC, Forever 21 Logistics, LLC, Forever 21 Real Estate Holdings, LLC and Riley Rose, LLC (each, a "Borrower," and collectively, the "Borrowers") and Innovative Brand Partners, LLC (the "Guarantor"), each as a debtor and debtor in possession (collectively, the "Debtors") in the above-captioned Chapter 11 cases (collectively, the "Cases"), seeking entry of an order (this "Final Order") pursuant to sections 105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Forever 21, Inc. (4795); Alameda Holdings, LLC (2379); Forever 21 International Holdings, Inc. (4904); Forever 21 Logistics, LLC (1956); Forever 21 Real Estate Holdings, LLC (4224); Forever 21 Retail, Inc. (7150); Innovative Brand Partners, LLC (7248); and Riley Rose, LLC (6928). The location of the Debtors' service address is: 3880 N. Mission Road, Los Angeles, California 90031.

Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") and unless otherwise ordered by this Court, *inter alia*:

(i)        authorizing the Debtors to obtain senior secured postpetition financing on a superpriority basis consisting of a senior secured superpriority revolving credit facility in the aggregate principal amount of up to $275,000,000, which shall include a $75,000,000 sublimit for the issuance of letters of credit (the "DIP ABL Facility," and all amounts extended under the DIP ABL Facility, the "DIP ABL Loans"), pursuant to the terms and conditions of that certain *Senior Secured, Super-Priority Debtor in Possession Credit Agreement* (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP ABL Agreement"), by and among the Borrowers, the Guarantor, JPMorgan Chase Bank, N.A. ("JPMorgan"), as administrative agent and collateral agent (in such capacity, the "DIP ABL Agent"), for and on behalf of itself and the other lenders party thereto (collectively, including the DIP ABL Agent, and in their capacities as such, the "DIP ABL Lenders"), substantially in the form of **Schedule 2** attached hereto;[2]

(ii)        authorizing the Debtors to execute and deliver the DIP ABL Agreement and any other agreements, instruments, pledge agreements, guarantees, control agreements, and documents related thereto (including any security agreements, intellectual property security agreements, control agreements, or notes) (as amended, restated, supplemented, waived, and/or modified from time to time, and collectively, with the DIP ABL Agreement, the "DIP ABL Documents") and to perform such other acts as may be necessary or desirable in connection with

---

[2]        Upon entry of this Final Order, any outstanding Prepetition ABL Obligations (as defined herein) and all accrued and unpaid interest thereon and fees and expenses shall be fully-rolled into the DIP ABL Facility and shall constitute DIP ABL Obligations (as defined herein) hereunder.

the DIP ABL Documents;

(iii)    granting the DIP ABL Facility and all obligations owing thereunder and under, or secured by, the DIP ABL Documents or otherwise to the DIP ABL Agent and the DIP ABL Lenders (collectively, and including all "Obligations" as described in the DIP ABL Agreement, the "DIP ABL Obligations") allowed superpriority administrative expense claim status in each of the Cases and any Successor Cases (as defined herein);

(iv)    authorizing the Debtors to obtain senior secured postpetition financing on a superpriority basis in the aggregate principal amount of up to $75,000,000 (the "DIP Term Loan Facility," and all amounts extended under the DIP Term Loan Facility, the "DIP Term Loans," and the DIP Term Loan Facility together with the DIP ABL Facility, the "DIP Facilities"), consisting of a new money term loan facility, pursuant to the terms and conditions of that certain *Senior Secured, Super-Priority Term Loan Debtor in Possession Credit Agreement* (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP Term Loan Agreement," and together with the DIP ABL Agreement, the "DIP Agreements"), by and among the Borrowers, the Guarantor, and TC Lending, LLC, as administrative agent and collateral agent (in such capacities, the "DIP Term Agent," and, together with the DIP ABL Agent, the "DIP Agents") for and on behalf of itself and the other lenders party thereto (collectively, including the DIP Term Agent, the "DIP Term Lenders," and, together with the DIP ABL Lenders, the "DIP Lenders"), substantially in the form of **Schedule 3** attached hereto;

(v)    authorizing the Debtors to execute and deliver the DIP Term Loan Agreement and any other agreements, instruments, pledge agreements, guarantees, control agreements, and documents related thereto (including any security agreements, mortgages, intellectual property security agreements, control agreements, or notes) (as amended, restated, supplemented, waived,

and/or modified from time to time, and collectively, with the DIP Term Loan Agreement, the "DIP Term Loan Documents," and together with the DIP ABL Documents and any intercreditor agreement, attached hereto as **Schedule 4** (the "Intercreditor Agreement") by and between the DIP ABL Agent and the DIP Term Agent, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Term Loan Documents;

(vi)    granting the DIP Term Loan Facility and all obligations owing thereunder and under, or secured by, the DIP Term Loan Documents to the DIP Term Agent and the DIP Term Lenders (collectively, and including all "Obligations" as described in the DIP Term Loan Agreement, the "DIP Term Loan Obligations," and together with the DIP ABL Obligations, the "DIP Obligations") allowed superpriority administrative expense claim status in each of the Cases and any Successor Cases;

(vii)    granting to each of (a) the DIP ABL Agent, for the benefit of itself and the DIP ABL Lenders and each other Secured Party (as defined in the DIP ABL Agreement) under the applicable DIP Documents and (b) the DIP Term Agent, for the benefit of itself and the DIP Term Lenders and each other Secured Party (as defined in the DIP Term Loan Agreement) under the applicable DIP Documents, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral" as defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), which liens shall be subject to the priorities set forth herein;

(viii)    authorizing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become earned, due, and payable, including, without limitation, letter of credit fees (including issuance and other related charges), continuing commitment fees, closing fees, audit fees, appraisal fees, valuation fees, liquidator fees,

structuring fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Agents' attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(ix)     authorizing the Debtors to use, on the terms described herein, the Prepetition Collateral (as defined herein), including the Cash Collateral of the Prepetition ABL Secured Parties under the Prepetition ABL Documents;

(x)     providing adequate protection to the Prepetition ABL Secured Parties for any diminution in value of their interests in the Prepetition Collateral, including Cash Collateral, for any reason provided for under the Bankruptcy Code, including the imposition of the automatic stay, the Debtors' use, sale, or lease of the Prepetition Collateral, including Cash Collateral, and the priming of their respective interests in the Prepetition Collateral, including Cash Collateral (including by the Carve Out) ("Diminution in Value"); and

(xi)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Final Order.

The Court having considered the DIP Motion, the exhibits attached thereto, the Declaration of Christian Tempke, Director of Lazard Frères & Co. LLC, in support of the DIP Motion (the "Tempke DIP Declaration"), and the Declaration of Jonathan Goulding, Chief Restructuring Officer, in support of the DIP Motion (the "Goulding DIP Declaration," and, together with the Tempke DIP Declaration, the "DIP Declarations"), and the *Declaration of Jonathan Goulding, Chief Restructuring Officer of Forever 21, Inc., in Support of Chapter 11 Petitions and First Day Motions*, the DIP Documents, and the evidence submitted and argument made by the Debtors at the interim hearing held on October 1, 2019 (the "Interim Hearing") and

the final hearing held on November 5, 2019 (the "Final Hearing"); and the Court having entered the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition ABL Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (the "Interim Order") [Docket. No. 133]; and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), all applicable Local Rules and the Interim Order; and the Final Hearing having been held and concluded; and all objections, if any, to the final relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the relief requested in the DIP Motion on a final basis is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable in the best interests of the Debtors and their estates, and is essential for the continued operation of the Debtors' businesses and the maximization of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Agreements is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM AND FINAL HEARINGS, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A.    **Petition Date**.  On September 29, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").

B.    **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.    **Jurisdiction and Venue**.  This Court has jurisdiction over the Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    **Committee Formation**.  On October 11, 2019, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (the "Committee").

E.    **Notice**.  Notice of the DIP Motion and the Final Hearing have been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Interim Order, and no other or further notice of the DIP Motion with respect to the relief requested at the Final Hearing shall be required.

F.    **Debtors' Stipulations**.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as set forth in paragraph N.42 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(vi) below are referred to herein, collectively, as the "Debtors' Stipulations"):

(i)    *Prepetition ABL Facility*.  Pursuant to that certain Credit

Agreement, dated as of March 7, 2017 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Agreement," and collectively with the Loan Documents (as defined in the Prepetition ABL Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition ABL Documents"), among (a) the Borrowers, (b) the Guarantor, (c) JPMorgan, as administrative agent and letter of credit issuer (in such capacity, the "Prepetition ABL Agent"); and (d) the lenders from time to time party thereto (and including the Prepetition ABL Agent, and in their capacities as such, the "Prepetition ABL Lenders," and collectively with the Prepetition ABL Agent, the "Prepetition ABL Secured Parties"), the Prepetition ABL Lenders provided revolving credit and other financial accommodations to, and issued letters of credit for the account of, the Borrowers pursuant to the Prepetition ABL Documents (the "Prepetition ABL Facility").

(ii)    *Prepetition ABL Obligations.*    The Prepetition ABL Facility provided the Borrowers with, among other things, up to $375,000,000 aggregate principal amount of Commitments (as defined in the Prepetition ABL Agreement), including letters of credit obligations. As of the Petition Date, the aggregate principal amount outstanding under the Prepetition ABL Facility was not less than $194,500,000.00 in loans and not less than $59,000,000 in issued and outstanding letters of credit (collectively, together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances, any reimbursement obligations (contingent or otherwise) in respect of letters of credit and bankers' acceptances, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements)), treasury, cash management, bank product and derivative obligations,

indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Borrowers' or the Guarantor's obligations pursuant to, or secured by, the Prepetition ABL Documents, including all "Secured Obligations" as defined in the Prepetition ABL Agreement, and all interest, fees (including amendment fees), prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition ABL Obligations").

(iii)     *Prepetition ABL Liens and Prepetition Collateral.*  As more fully set forth in the Prepetition ABL Documents and the DIP Motion, prior to the Petition Date, the Borrowers and the Guarantor granted to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Secured Parties, a first priority security interest in and continuing lien on (the "Prepetition ABL Liens") substantially all of their assets and property (except for real property and intellectual property), and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition Collateral"), subject only to the Permitted Prior Liens (as defined herein).

(iv)     *Validity, Perfection, and Priority of Prepetition ABL Liens and Prepetition ABL Obligations.*  The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition ABL Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition ABL Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition ABL Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to liens senior by operation of law (solely to the extent any such liens were valid, properly

perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date or that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or permitted by the Prepetition ABL Documents (the "Permitted Prior Liens"); (c) the Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition ABL Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Obligations exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition ABL Facility; (f) the Debtors waive, discharge, and release any right to challenge any of the Prepetition ABL Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition ABL Obligations; and (g) the aggregate value of the Prepetition Collateral exceeds the amount of the Prepetition ABL Obligations and the claims of the Prepetition ABL Secured Parties arising under, or secured by, the Prepetition ABL Documents constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(v)    *Cash Collateral.*  All of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition ABL Secured Parties.

(vi)    *Default by the Debtors.*  The Debtors acknowledge and stipulate that they are in default of their obligations under the Prepetition ABL Documents, including as a result of the commencement of these Cases, and that an Event of Default has occurred under the Prepetition ABL Documents.

G.    **Permitted Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.    Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Agents, the Prepetition ABL Secured Parties, or the Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests.  The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien, rather, any such alleged claim arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Liens as such claims had with respect to the Prepetition ABL Liens.

H.    **Intercreditor Agreement**.  The Prepetition ABL Agent, the DIP ABL Agent and the DIP Term Agent are parties to the Intercreditor Agreement substantially in the form attached as **Schedule 4** hereto.

I.    **Findings Regarding Corporate Authority.**  Each Debtor has all requisite corporate power and authority to execute and deliver the DIP Documents to which it is a party

and to perform its obligations thereunder.

J.     **Findings Regarding Postpetition Financing**

(i)     *Request for Postpetition Financing.* The Debtors seek authority on a final basis (a) to continue to use Cash Collateral on the terms described herein; and (b) to enter into, and borrow under, the DIP Facilities on the terms described herein and in the DIP Documents, to administer their Cases, and to fund the Debtors' operations.

(ii)     *Priming of the Prepetition ABL Liens.* The priming of the Prepetition ABL Liens on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facilities, as authorized by the Interim Order and this Final Order, and as further described below, will enable the Debtors to continue borrowing under the DIP Facilities and to continue to operate their businesses to the benefit of their estates and creditors. The Prepetition ABL Agent, for the benefit of the Prepetition ABL Secured Parties, is entitled to receive adequate protection as set forth in the Interim Order and this Final Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any Diminution in Value of each of its interests in the Prepetition Collateral (including Cash Collateral).

(iii)     *Need for Postpetition Financing and Use of Cash Collateral.* The Debtors have an immediate and critical need to use Cash Collateral and to continue to obtain credit pursuant to the DIP Facilities in order to, among other things, enable the orderly continuation of their operations and administer and preserve the value of their estates. The ability of the Debtors to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and otherwise finance their operations requires the availability of working capital from the DIP Facilities and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and

parties-in-interest. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facilities and use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms.* The DIP Facilities are the best source of debtor in possession financing available to the Debtors. Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facilities. The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain: (a) unsecured credit solely having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. As described in the DIP Declarations, financing on a postpetition basis is not available without granting the DIP Agents, for the benefit of themselves and the DIP Lenders: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 6 hereof; (2) superpriority claims and liens; and (3) the other protections set forth in the Interim Order and this Final Order.

(v)    *Use of Proceeds of the DIP Facilities.* As a condition to entry into the DIP Agreements, the extension of credit under the DIP Facilities and the authorization to use Cash Collateral, the DIP Agents, the DIP Lenders, and the Prepetition ABL Secured Parties continue to require, and the Debtors have agreed, that Cash Collateral and the proceeds of the

DIP Facilities shall be used, in each case in a manner consistent with the terms and conditions of the Interim Order, this Final Order and the DIP Documents and in accordance with the budget (as the same may be modified from time to time consistent with the terms of the DIP Documents and subject to such variances as permitted in the DIP Agreements, and as set forth in paragraphs 19 and 20 hereof, the "Budget"),[4] solely for: (a) working capital and letters of credit; (b) other general corporate purposes of the Debtors; (c) permitted payment of costs of administration of the Cases; (d) payment of such other prepetition obligations as permitted under the DIP Documents and as consented to by the DIP Agents, each in its sole discretion, and as approved by the Court; (e) payment of interest, fees, expenses and other amounts, including legal and other professionals' fees and expenses of the DIP Agents owed under the DIP Documents; (f) the repayment of the Prepetition ABL Obligations, subject to the rights preserved in paragraph 42 of the Interim Order and paragraph 42 hereof; (g) payment of obligations arising from or related to the Carve Out, and making disbursements therefrom, including by funding the Carve Out Reserves; and (h) such other uses set forth in the Budget, which shall include the payment of unpaid rent due under the Debtors' leases for the period from September 29, 2019 through September 30, 2019 by no later than November 8, 2019.

(vi)    *Application of Proceeds of Collateral.* As a condition to entry into the DIP Agreements, the extension of credit under the DIP Facilities and authorization to use Cash Collateral, the Debtors, the DIP Agents, the DIP Lenders, and the Prepetition ABL Secured Parties have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply the proceeds of DIP Collateral in accordance with the Interim Order, this Final Order and the Budget.

---

[4]    The Budget is attached hereto as **Schedule 1**.

     (vii) *Roll-up of Prepetition ABL Obligations into DIP ABL Obligations.*
Upon (a) entry of the Interim Order and the occurrence of the Effective Date (as defined in the
DIP ABL Agreement), (1) all Banking Services Obligations (as defined in the Prepetition ABL
Agreement), Swap Agreement Obligations (as defined in the Prepetition ABL Agreement) and
letters of credit issued for the account of the Debtors under the Prepetition ABL Agreement
continued in place and all obligations under or in connection with such Banking Services
Obligations, Swap Agreement Obligations and letters of credit were, and shall continue to be,
deemed issued under and subject to the DIP ABL Agreement and constitute DIP ABL
Obligations, and (2) all collections received by the Debtors including all proceeds of DIP ABL
Priority Collateral, and all net proceeds of DIP Term Loans have been, and shall continue to be,
applied to reduce, on a dollar-for-dollar basis, the Prepetition ABL Obligations, and (b) entry of
this Final Order, all outstanding Prepetition ABL Obligations shall be converted into DIP ABL
Obligations (subsections (a) and (b), collectively, the "DIP Roll-Up Obligations").  The
conversion (or "roll-up") shall be authorized as compensation for, in consideration for, and
solely on account of, the agreement of the Prepetition ABL Lenders to fund amounts, and
provide other consideration to the Debtors under the DIP ABL Facility and not as payments
under, adequate protection for, or otherwise on account of, any Prepetition ABL Obligations.
Notwithstanding any other provision of the Interim Order, this Final Order or the DIP
Agreements, all rights of the Prepetition ABL Secured Parties shall be fully preserved.  The
Prepetition ABL Secured Parties would not otherwise consent to the use of their Cash Collateral
or the subordination of their liens to the DIP Liens, and the DIP Agents and the DIP Lenders
would not be willing to provide the DIP Facilities or extend credit to the Debtors thereunder
without the inclusion of the DIP Roll-Up Obligations in the DIP ABL Obligations.  Moreover,

the reduction of the Prepetition ABL Obligations upon entry of the Interim Order and, upon entry of this Final Order, the roll-up of all outstanding Prepetition ABL Obligations into DIP ABL Obligations will enable the Debtors to obtain urgently needed financing to administer these Cases and fund their operations. Because the DIP Roll-Up Obligations are subject to the reservation of rights in paragraph 42 below, they will not prejudice the right of any other party in interest. Moreover, the conversion and "roll-up" of all outstanding Prepetition ABL Obligations into DIP ABL Obligations will create availability under the DIP ABL Facility and will result in interest savings to the Debtors and their estates.

(viii) *Certain Conditions to DIP Facilities.* The DIP Lenders' willingness to make the DIP Loans is conditioned upon, among other things: (a) the Debtors obtaining Court approval to enter into the DIP Documents and to incur all of the respective obligations thereunder, and to confer upon the DIP Agents and the DIP Lenders all applicable rights, powers, and remedies thereunder in each case as modified by this Final Order; (b) the provision of adequate protection of the Prepetition ABL Secured Parties' interests in the Prepetition Collateral pursuant to sections 361, 363, and 364 of the Bankruptcy Code; (c) the granting of continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in the DIP Collateral (as defined below) to the DIP ABL Agent, for the benefit of itself and the DIP ABL Lenders, and the DIP Term Agent, for the benefit of itself and the DIP Term Lenders, as security for the prompt payment of the DIP Facilities and all other obligations of the Debtors under the DIP Documents.

K. **Adequate Protection**. Until the Prepetition ABL Obligations are Paid in

Full,[5] the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Secured

Parties, is entitled to receive adequate protection to the extent of any Diminution in Value of its

interests in the Prepetition Collateral as set forth in this Final Order.

L.    **Sections 506(c) and 552(b).**    In light of: (i) the DIP Agents' and DIP

Lenders' agreement that their liens and superpriority claims shall be subject to the Carve Out,

and (ii) the Prepetition ABL Secured Parties' agreement that their liens shall be subject to the

Carve Out and subordinate to the DIP ABL Liens and, in the case of the DIP Term Priority

Collateral, subordinate to the DIP Term Loan Liens, (a) the Prepetition ABL Secured Parties are

each entitled to a waiver of any "equities of the case" exception under section 552(b) of the

Bankruptcy Code, and (b) the DIP Agents, the DIP Lenders, and the Prepetition ABL Secured

Parties are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

M.    **Good Faith of the DIP Agents and the DIP Lenders**.

(i)    *Willingness to Provide Financing.*    The DIP Lenders have

indicated a willingness to provide financing to the Debtors subject to: (a) entry of the Interim

Order and this Final Order; (b) approval of the terms and conditions of the DIP Facilities and the

DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and

---

[5]    "Paid in Full" means the indefeasible repayment in full in cash of all obligations (including principal, interest, fees, expenses, indemnities, other than contingent indemnification obligations for which no claim has been asserted) under the applicable credit facility, the cash collateralization of all treasury and cash management obligations, hedging obligations, and bank product obligations, and the cancelation, replacement, backing, or cash collateralization of letters of credit, in each case, in accordance with the terms of the applicable credit facility.  No facility shall be deemed to have been Paid in Full until such time as, with respect to the applicable facility, (a) the commitments to lend thereunder have been terminated, (b) with respect to the Prepetition ABL Obligations and DIP Roll-Up Obligations (i) the Challenge Deadline (as defined in paragraph 42 of this Final Order) shall have occurred without the timely and proper commencement of a Challenge or (ii) if a Challenge is timely and properly asserted prior to the Challenge Deadline, upon the final, non-appealable disposition of such Challenge; and (c) the applicable Prepetition ABL Agent or DIP Agent has received (i) a countersigned payoff letter in form and substance satisfactory to such Agent and (ii) releases from the Debtors (including any party acting on behalf of any of the Debtors or their Estates, if applicable) in form and substance satisfactory to such Agent, each in its sole discretion.

(d) findings by this Court that the DIP Facilities are essential to the Debtors' estates, that the DIP Agents and DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Agents' and the DIP Lenders' claims, superpriority claims, security interests and liens and other protections granted pursuant to the Interim Order, this Final Order and the DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms and conditions of the DIP Facilities and the DIP Documents, and the interest and fees paid and to be paid thereunder and hereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the DIP Facilities and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Agents, the DIP Lenders, and the Prepetition ABL Secured Parties, with the assistance and counsel of their respective advisors. Use of Cash Collateral and credit to be extended under the DIP Facilities shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Agents, the DIP Lenders, and the Prepetition ABL Secured Parties within the meaning of section 364(e) of the Bankruptcy Code.

N.    **Final Hearing**. Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee; (ii) those entities or individuals included on the Debtors' list of 50 largest unsecured creditors on a

consolidated basis; (iii) counsel to the Prepetition ABL Agent; and (iv) all other parties entitled to notice under the Local Rules. The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and no other notice is required for the relief to be granted in this Final Order.

Based upon the foregoing findings and conclusions, the DIP Motion, the DIP Declarations, the First Day Declaration and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.      <u>Final Financing Approved</u>. The DIP Motion is granted as set forth herein. The Final Financing (as defined herein) is authorized and approved, and the use of Cash Collateral is authorized, in each case on a final basis and subject to the terms and conditions set forth in the DIP Documents, the Budget, and this Final Order. All objections to this Final Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled.

### DIP Facilities Authorization

2.      <u>Authorization of the DIP Facilities</u>. The DIP Facilities, including, subject to the terms hereof, the DIP Roll-Up Obligations, are hereby approved on a final basis. All terms, conditions, releases (including, without limitation, section 9.03 of the DIP ABL Agreement and section 9.03 of the DIP Term Loan Agreement) and covenants set forth in the DIP Documents (including, without limitation, each of the DIP Agreements) are approved on a final basis; *provided, however*, that the DIP ABL Credit Agreement shall be deemed modified to require as a condition thereof, and the Debtors shall covenant and agree that, the outstanding Loans (as defined in the DIP ABL Credit Agreement) shall be $0.00 from the period between December 31, 2019 until delivery of the December Borrowing Base Certificate (as defined in the

DIP ABL Credit Agreement) (it being understood that the failure of the Debtors to comply with the foregoing shall constitute an Event of Default under the DIP ABL Credit Agreement). All such terms, conditions, and covenants shall be sufficient and conclusive evidence of (i) the borrowing arrangements by and among the Debtors, the DIP Agents, and the DIP Lenders, and (ii) each Debtor's assumption and adoption of, and agreement to comply with, all the terms, conditions, and covenants of each DIP Agreement and the other DIP Documents for all purposes, including, without limitation, to the extent applicable, the payment of all DIP Obligations arising thereunder, including, without limitation, all principal, interest, fees, and other expenses, including, without limitation, all of each DIP Agent's and DIP Lender's closing, arranger, and administrative fees, consultant fees, professional fees, attorney's fees and legal expenses, as more fully set forth in the DIP Documents; *provided, however,* that the DIP Agents shall provide the U.S. Trustee and the Committee with invoices reflecting such professional fees and expenses and the U.S. Trustee's and Committee's rights to object to the amounts contemplated therein shall be in accordance with the procedures in paragraph 35 herein.  Upon effectiveness thereof, the DIP Documents shall evidence the DIP Obligations, which DIP Documents and DIP Obligations shall be valid, binding, and enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee appointed in any of these Cases or any of the Successor Cases (as defined herein), and their creditors and other parties-in-interest, in each case, in accordance with the terms of this Final Order and the DIP Documents.  The Debtors are expressly and immediately authorized and empowered  on a final basis to execute and deliver the DIP Documents, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of the Interim Order, this Final Order and the DIP Documents, and to deliver all instruments, certificates, agreements, and documents which may be required or

necessary for the performance by the Debtors under the DIP Facilities and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by the Interim Order, this Final Order and the DIP Documents, including, without limitation, the Guarantor providing its guarantee of all of the DIP Obligations. The Debtors are hereby authorized and directed on a final basis to pay, in accordance with the Interim Order and this Final Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP Documents as such amounts become earned, due and payable and without need to obtain further Court approval, including, without limitation, closing fees, arrangement fees, letter of credit fees (including issuance, fronting, and other related charges), unused facility fees, continuing commitment fees, backstop fees, servicing fees, audit fees, appraisal fees, liquidator fees, structuring fees, administrative agent's fees and collateral agent's fees, and, subject to paragraph 35 herein, the reasonable fees and disbursements of the DIP Agents' attorneys, advisors, accountants, and other consultants, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in the Interim Order, this Final Order or the DIP Documents. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be deposited and applied as required by the Interim Order, this Final Order and the DIP Documents. Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

3.    <u>Authorization to Borrow</u>.  From the entry of this Final Order through and including the Termination Declaration (as defined herein), and subject to the terms, conditions,

limitations on availability and reserves (as applicable) set forth in the DIP Documents and this Final Order, the Debtors are hereby authorized, on a final basis, to continue requesting extensions of credit (in the form of loans and letters of credit) up to an aggregate outstanding principal amount of not greater than $275,000,000 at any one time outstanding under the DIP ABL Facility, and $75,000,000 under the DIP Term Loan Facility (together, the "Final Financing").

      4.     DIP Obligations.    The DIP Documents and this Final Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee appointed in the Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding any of the foregoing (collectively, the "Successor Cases"). The DIP Obligations include all loans, letter of credit reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agents or any of the DIP Lenders, in each case, under, or secured by, the DIP Documents, the Interim Order, or this Final Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owing under the DIP Documents, and all cash management and bank product exposure and hedging exposure and obligations to the extent provided under the DIP Documents. All Banking Services Obligations, Swap Agreement Obligations and letters of credit issued for the account of the Debtors under the Prepetition ABL Credit Agreement shall continue in place and all obligations under or in connection with such Banking Services Obligations, Swap Agreement Obligations and letters of credit are deemed to have been issued under and subject to the DIP ABL Agreement and constitute DIP ABL Obligations. The Debtors

shall be jointly and severally liable for the DIP Obligations.  The DIP Obligations shall be due and payable, without notice or demand, on the DIP Termination Date and the use of Cash Collateral shall automatically cease, except as provided in paragraph 33 herein during the Remedies Notice Period (as defined herein).  No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP Liens (as defined below), and including, subject to paragraph 42 herein, in connection with any adequate protection provided to the Prepetition ABL Secured Parties hereunder) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

    5.  <u>DIP Liens</u>.  Subject and subordinated to the Carve Out as set forth in this Final Order, in order to secure the DIP Obligations, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP ABL Agent, for the benefit of itself and the DIP ABL Lenders, and the DIP Term Agent, for the benefit of itself and the DIP Term Lenders, were granted upon entry of the Interim Order and are hereby granted on a final basis, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "<u>DIP Liens</u>") all real and personal property, whether now existing or hereafter arising and wherever located, tangible and

intangible, of each of the Debtors (the "DIP Collateral"), including without limitation: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including, without limitation, all of the issued and outstanding capital stock or equivalents of each of its subsidiaries), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, fee interests in real property owned by the Debtors, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) all proceeds of leased real property; (c) all proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents (including actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral); (d) the Debtors' rights under section 506(c) (solely to the extent such rights result from the use of the DIP Facilities or the DIP Collateral, and are, therefore, enforceable against parties other than the DIP Agents, DIP Lenders, or the Prepetition ABL Secured Parties) and section 550 of the Bankruptcy Code; and (e) all other DIP Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date. Subject to the DIP Documents, (i) Term Loan Priority Collateral (as defined in the Intercreditor Agreement), including, without limitation, Intellectual Property (as defined in the

Intercreditor Agreement) and all owned real property, shall, in each case, constitute "DIP Term Priority Collateral," and (ii) ABL Priority Collateral (as defined in the Intercreditor Agreement), shall constitute "DIP ABL Priority Collateral." For the avoidance of doubt, DIP Collateral does not include the Debtors' real property leases, but only the proceeds, products, and offspring of such real property leases. Notwithstanding the foregoing, DIP Collateral shall not include (a) avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents, or (b) the Debtors' rights under sections 506(c) or 550 of the Bankruptcy Code; *provided*, *however*, that DIP Collateral shall include proceeds of all of the foregoing.

6.    DIP Lien Priority.  The DIP Liens securing the DIP ABL Obligations (the "DIP ABL Liens") are valid, automatically perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the DIP ABL Liens shall be subject to the Carve Out as set forth in this Final Order and shall otherwise be junior only to: (i) as to the DIP ABL Priority Collateral, the Permitted Prior Liens; and (ii) as to the DIP Term Priority Collateral, (A) the Permitted Prior Liens; and (B) the DIP Term Loan Liens (as defined herein).  The DIP Liens securing the DIP Term Loan Obligations (the "DIP Term Loan Liens") are valid, automatically perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the DIP Term Loan Liens shall be subject to the Carve Out and shall otherwise be junior only to: (i) as to the DIP Term Priority Collateral, Permitted Prior Liens; and (ii) as to the DIP ABL Priority Collateral, (A) the Permitted Prior Liens; (B) the DIP ABL Liens; (C) the Prepetition ABL Liens; and (D) the Adequate Protection Liens (as defined herein).  Other than as set forth herein or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the

Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases. The DIP Liens shall not be subject to section 510, 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

7.    DIP Superpriority Claims. Subject and subordinate to the Carve Out as set forth in the Interim Order, (i) the DIP ABL Agent, on behalf of itself and the DIP ABL Lenders, and (ii) the DIP Term Agent, on behalf of itself and the DIP Term Lenders, were each granted pursuant to the Interim Order, and are hereby granted on a final basis, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (collectively, the "DIP Superpriority Claims") for all DIP Obligations. The DIP Superpriority Claim granted to the DIP ABL Agent shall be *pari passu* with the DIP Superpriority Claim granted to the DIP Term Agent. Except as set forth herein, the DIP Superpriority Claims shall have priority over any and all other obligations, liabilities and indebtedness of each Debtor (other than the Carve Out) of the kind specified in section 503(b) and 507(b) of the Bankruptcy Code, including, to the extent allowed under the Bankruptcy Code, any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 328, 330, 331, 364, 503(a), 503(b), 507(a) (other than 507(a)(1)), 507(b)), 546(c), 726 (to the extent permitted by law), 1113

and 1114, and any other provision of the Bankruptcy Code, to the extent provided under section 364(c)(1) of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Superpriority Claims.

8.      No Obligation to Extend Credit. Except as may be required to fund the Carve Out Reserves (as defined below) as set forth in this Final Order, the DIP Agents and the DIP Lenders shall have no obligation to make any loan or advance, or to issue, amend, renew or extend any letters of credit or bankers' acceptance under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit or the issuance, amendment, renewal or extension of such letter of credit or bankers' acceptance be deemed issued under and subject to the DIP Documents and this Final Order have been satisfied in full or waived by the DIP ABL Agent or the DIP Term Agent, as applicable, each in its sole discretion, and in accordance with the terms of the applicable DIP Documents.

9.      Use of Proceeds of DIP Facilities. From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facilities, in accordance with the Budget (subject to such variances as permitted in the DIP Documents), only for the purposes specifically set forth in this Final Order, the DIP Documents, and the Budget, and in compliance with the terms and conditions in this Final Order and the DIP Documents.

10.     DIP Roll-Up Obligations. Upon (a) entry of the Interim Order and the occurrence of the Effective Date (as defined in the DIP ABL Agreement) (i) all Banking Services Obligations, Swap Agreement Obligations and letters of credit issued for the account of the Debtors under the Prepetition ABL Agreement continued in place and all obligations under or in connection with such Banking Services Obligations, Swap Agreement Obligations and

letters of credit were deemed issued under and subject to the DIP ABL Agreement and constituted DIP ABL Obligations, and (ii) all collections received by the Debtors including all proceeds of DIP ABL Priority Collateral, and all net proceeds of DIP Term Loans, were applied to reduce, on a dollar-for-dollar basis, the Prepetition ABL Obligations, and (b) upon entry of this Final Order, all outstanding Prepetition ABL Obligations shall be converted into DIP ABL Obligations.  The authorization of the DIP Roll-Up Obligations shall be subject to the reservation of rights set forth in paragraph 42 of this Final Order.

### Authorization to Use Cash Collateral

11.     <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Final Order, the DIP Facilities and the DIP Documents and in accordance with the Budget (subject to such variances as permitted in the DIP Documents), the Debtors are authorized to continue using Cash Collateral until the DIP Termination Date (as defined herein); <u>provided</u>, <u>however</u>, that, upon the Termination Declaration Date, the Carve-Out shall be funded and available to satisfy then-due Allowed Professional Fees (as defined in paragraph 39 of this Final Order); <u>provided</u>, <u>further</u>, <u>that</u> during the Remedies Notice Period (as defined herein) the Debtors may use Cash Collateral to meet payroll obligations (other than severance), sales taxes and other expenses that the DIP Agents approve (each in their sole discretion) as critical to keeping the Debtors' business operating subject to the Budget, and pay all Statutory Fees (as defined in paragraph 39 of this Final Order).  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order (including the Carve Out), the DIP Facilities, the DIP Documents, and in accordance with the Budget (subject to such variances as permitted in the DIP Documents).

12.     <u>Adequate Protection Liens</u>.  Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Secured Parties in the Prepetition Collateral against any Diminution in Value, the Debtors granted pursuant to the Interim Order and hereby grant, on a final basis, to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Secured Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on all DIP Collateral (the "<u>Adequate Protection Liens</u>").

13.     <u>Priority of Adequate Protection Liens</u>.

(a)     The Adequate Protection Liens shall be subject to the Carve Out as set forth in this Final Order and shall otherwise be junior (in order of priority) only to: (i) with respect to the DIP ABL Priority Collateral, (1) the Permitted Prior Liens; (2) the DIP ABL Liens; and (3) the Prepetition ABL Liens; and (ii) with respect to the DIP Term Priority Collateral, (1) the Permitted Prior Liens; (2) the DIP Term Loan Liens; (3) the DIP ABL Liens; and (4) the Prepetition ABL Liens.  The Adequate Protection Liens shall otherwise be senior to all other security interests in or liens on any of the Debtors' assets.

(b)     Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases.  The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition ABL Liens or the Adequate Protection Liens.

14.    <u>Adequate Protection Superpriority Claim</u>.  Subject and subordinate to the Carve Out as set forth in this Final Order, as further adequate protection of the interests of the Prepetition ABL Secured Parties, in the Prepetition Collateral against any Diminution in Value, the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Secured Parties, was granted pursuant to the Interim Order and is hereby granted on a final basis as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "<u>Adequate Protection Superpriority Claim</u>").

15.    <u>Priority of the Adequate Protection Superpriority Claim</u>.  Except as set forth herein, the Adequate Protection Superpriority Claim shall have priority, to the extent provided by section 507(b) of the Bankruptcy Code, over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 328, 330, 331, 503(a), 503(b), 507(a) (other than 507(a)(1)), 506(c), 507(b), 546(c), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code; *provided, however*, that the Adequate Protection Superpriority Claim shall be subject to the Carve Out as set forth in this Final Order and junior to the DIP Superpriority Claim, and subject the lien priorities set forth herein.

16.    <u>Adequate Protection Payments and Protections for Prepetition ABL Secured Parties</u>.  As further adequate protection, the Debtors are authorized and directed on a final basis to provide adequate protection to the Prepetition ABL Secured Parties in the form of payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of (i) until such time as the Prepetition ABL Obligations are rolled into the DIP

ABL Obligations, interest (at the non-default rate) and principal due under the Prepetition ABL Documents, subject to the rights preserved in paragraph 42 below, (ii) to the extent not paid upon entry of the Interim Order and the occurrence of the Effective Date (as defined in the DIP ABL Agreement), payment of the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition ABL Agent arising prior to the Petition Date, including reasonable and documented fees and expenses of (1) Morgan, Lewis & Bockius LLP, and (2) Richards, Layton & Finger, PA (collectively, the "ABL Advisors"), *provided, however,* that the DIP Agents shall provide the U.S. Trustee and the Committee with invoices reflecting such professional fees and expenses and the U.S. Trustee's rights and the Committee's rights to object to the amounts contemplated therein in accordance with the procedures in paragraph 35 hereof, and (iii) in accordance with the procedures set forth in paragraph 35 hereof, the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition ABL Agent and arising subsequent to the Petition Date, including reasonable and documented fees and expenses of the ABL Advisors.  Upon the earliest to occur of (a) entry of this Final Order, (b) the DIP Termination Date or (c) delivery of the Carve Out Trigger Notice, the Debtors shall pay to the Prepetition ABL Administrative Agent, for the benefit of the Prepetition ABL Secured Parties, $250,000 into a non-interest bearing account maintained at JPMorgan (the "Prepetition ABL Indemnity Reserve") to secure the contingent indemnification, reimbursement or similar continuing obligations arising under or related to the Prepetition ABL Documents (the

"Prepetition ABL Indemnity Obligations"); *provided* that the Debtors shall not be required to fund the Prepetition ABL Indemnity Reserve if, at the time of the earliest to occur of the Termination Date, the delivery of the Carve Out Trigger Notice, or the entry of this Final Order, the Prepetition ABL Obligations have been (or are contemporaneously therewith) Paid in Full. The Prepetition ABL Indemnity Reserve shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) owed to or incurred by the Prepetition ABL Agent and the Prepetition ABL Lenders, related to the Prepetition ABL Documents, the Prepetition ABL Obligations, or the Prepetition ABL Liens granted to the Prepetition ABL Agent, as applicable, whether in these Cases or independently in another forum, court or venue. The Prepetition ABL Indemnity Obligations shall be secured, and not subject to the Carve Out, by a first lien on the Prepetition ABL Indemnity Reserve and the funds therein and by a lien on the Prepetition Collateral and DIP Collateral.   Subject to paragraph 35 of this Final Order, payment of costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred in connection with the Prepetition ABL Indemnification Obligations shall be made as and when they arise (and may be paid with the proceeds of the DIP Facilities and/or from the proceeds of DIP Collateral), without further order of this Court; *provided*, that (i) any such indemnification claims shall be subject to the terms of the Prepetition ABL Documents (including with respect to application of proceeds), (ii) the rights of parties in interest with Requisite Standing[6] to object to any such indemnification claim(s) are hereby reserved in accordance with paragraph 42 hereof, and (iii) the Court shall reserve jurisdiction to hear and determine any such disputed indemnification claim(s).   The Prepetition ABL Agent (for itself

---

[6]    As used in this Final Order, a party in interest with "Requisite Standing" shall mean a party in interest (including the Committee) that has obtained an order of the Court granting such party derivative standing.

and on behalf of the Prepetition ABL Secured Parties) shall retain and maintain the Prepetition ABL Liens and the Adequate Protection Liens granted to the Prepetition ABL Agent as security for the amount of any Prepetition ABL Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition ABL Indemnity Reserve.  The Prepetition ABL Indemnity Reserve (but not the Prepetition ABL Indemnification Obligations) shall be released and the funds applied in accordance with paragraph 23 of this Final Order at such time as the Prepetition ABL Obligations are Paid in Full.

17.     Adequate Protection Reservation.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder to the Prepetition ABL Agent, for itself and for the benefit of the Prepetition ABL Secured Parties, is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral.  The receipt by the Prepetition ABL Agent, for itself and for the benefit of the Prepetition ABL Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition ABL Secured Parties are adequately protected.  Further, neither the Interim Order nor this Final Order shall prejudice or limit the rights of the Prepetition ABL Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection in a manner consistent with the Prepetition ABL Documents, and all parties-in-interests' rights are reserved with respect thereto.

### Provisions Common to DIP Financing and Use of Cash Collateral

18.     Amendment of the DIP Documents.  The DIP Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if the amendment, modification, or supplement is (a) immaterial or non-adverse to the

Debtors and their estates and (b) in accordance with the DIP Documents. In the case of a material amendment, modification, or supplement to the DIP Documents that is adverse to the Debtors or their estates, the Debtors shall file a motion with notice to counsel to the Committee, the U.S. Trustee and the DIP Agent not party to such amendment, modification, or supplement, and all other parties entitled to notice under Local Rule 2002-1. As to any amendments, modifications, or supplements which the Debtors believe are not material and/or are not adverse to the Debtors or their estates, the Debtors shall provide copies of such amendments, modifications, or supplements to the U.S. Trustee and the Committee, both of whom shall have the right to object on the grounds that the proposed amendments, modifications, or supplements are material and adverse to the Debtors or their estates and therefore should be subject to the approval of the Court on notice to parties in interest. All material amendments, modifications, or supplements to the DIP Documents shall be filed with the Court regardless of whether they are adverse to the Debtors or their estate.

19.    <u>Budget Maintenance</u>. The use of borrowings and letters of credit under the DIP Facilities and the use of Cash Collateral shall be in accordance with the Budget, as described in paragraph 20 below, depicting on a weekly basis, cash revenues, receipts, expenses and disbursements, net cash flows, inventory receipts and other items set forth therein, for the first thirteen (13) week period following the Effective Date (as defined in the DIP Documents) which shall be in form and substance satisfactory to, and approved by each of the DIP Agents in their sole discretion prior to the Effective Date. The Budget shall be updated by the Debtors (with the consent and/or at the reasonable request of the DIP Agents) from time to time in accordance with the DIP Documents. No such updated, modified or supplemented budget shall be effective until so approved and once approved shall thereafter be deemed the "Budget";

*provided, however* that in the event that the DIP Agents and the Debtors cannot agree as to an updated, modified or supplemented budget, the prior approved Budget shall continue in effect for these Cases, and such disagreement shall give rise to an Event of Default under the DIP Agreements and this Final Order once the period covered by the prior approved Budget has terminated. A copy of any Budget (including any updated Budget or proposed Budget) shall be delivered to counsel for the Committee and the U.S. Trustee substantially contemporaneously with the delivery of such Budget to the DIP Agents and the Debtors shall file such updated Budget with the Court if there are any material modifications.

20. <u>Budget Compliance</u>. The Debtors shall at all times comply with the Budget, subject to the variances set forth in the DIP Agreements, and such reports and other information shall also be substantially contemporaneously provided to the professionals representing the Committee. The Debtors shall provide all reports and other information as required in the DIP Agreements, and all such reports and other information so provided shall also be substantially contemporaneously provided by the Debtors to the professionals representing the Committee. The Debtors' failure to comply with the Budget (including the variances set forth in the DIP Agreements) or to provide the reports and other information required in the DIP Agreements shall constitute an Event of Default (as defined herein), following the expiration of any applicable cure period set forth in the DIP Agreements.

21. <u>Modification of Automatic Stay</u>. The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtors to grant on a final basis the DIP Liens, Adequate Protection Liens, DIP Superpriority Claim, and Adequate Protection Superpriority Claim; (b) permit the Debtors to perform such acts as the DIP

ABL Agent, the DIP Term Agent and the Prepetition ABL Agent each may reasonably request to assure the perfection and priority of the liens granted under the Interim Order and this Final Order; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agents, the DIP Lenders, and the Prepetition ABL Secured Parties under the DIP Documents, the DIP Facilities, and the Interim Order and this Final Order, as applicable; and (d) authorize the Debtors to pay, and the DIP Agents, the DIP Lenders, and the Prepetition ABL Secured Parties to retain and apply, payments made in accordance with the terms of the Interim Order, this Final Order and the DIP Documents.

22.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>.    The Interim Order and this Final Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted therein and confirmed herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or mortgage) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to evidence or entitle the DIP Agents, the DIP Lenders, and the Prepetition ABL Secured Parties to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Agents and the Prepetition ABL Agent are authorized to file, in the applicable registries of deeds and other appropriate public records, as it in its sole discretion deems necessary or advisable, (i) notice of this Final Order, and (ii) such financing statements, security agreements, mortgages, leasehold mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the

Adequate Protection Liens, and all such financing statements, mortgages, leasehold mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens.   The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agents and the Prepetition ABL Agent all such financing statements, deposit account control agreements, mortgages, leasehold mortgages, notices, and other documents and/or applicable amendments as the DIP Agents or the Prepetition ABL Agent may reasonably request.   Each of the DIP Agents and the Prepetition ABL Agent, in its discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument. To the extent that the Prepetition ABL Agent is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other collateral documents or relevant Prepetition ABL Documents then automatically and without further action, (i) the DIP Agents shall be deemed to be secured parties under such documents, (ii) the DIP Facilities, together with any refinancings or replacements thereof, shall be deemed to be secured obligations under such documents, and (iii) the applicable provisions of such documents shall apply to the DIP Facilities; all as fully and completely as if the DIP Agents were original secured parties in such documents and the DIP Facilities were original secured obligations in such documents.   To the extent the Prepetition ABL Agent is listed as loss payee, lender loss payee, mortgagee or additional insured under any of the Debtors' insurance policies, the DIP ABL Agent and the DIP Term Agent shall also each be deemed to be the secured party

under such documents or to be the loss payee, lender loss payee, mortgagee or additional insured, as applicable. The Prepetition ABL Agent shall serve as agent for the DIP Agents for purposes of perfecting the DIP Agents' liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Final Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

23. <u>Application of Proceeds of Collateral</u>. As a condition to the continued extension of credit under the DIP Facilities and the continued authorization to use Cash Collateral, the Debtors have agreed that as of and commencing on the date of the Interim Hearing, all net proceeds of DIP Collateral, including whether sold in the ordinary course, liquidated pursuant to the Store Closing Procedures (as defined in the *Debtors' Motion Seeking Entry of Interim and Final Order (I) Authorizing the Debtors to Assume the Agency Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* [Docket No. 81]), or otherwise, shall be applied as follows: (a) with respect to DIP ABL Priority Collateral, (i) *first*, as provided in the DIP ABL Agreement; and (ii) *second*, after the Prepetition ABL Obligations and the DIP ABL Obligations have been Paid in Full and the DIP ABL Facility has been terminated, as provided in the DIP Term Loan Agreement; and (b) with respect to DIP Term Priority Collateral, (i) *first*, as provided in the DIP Term Loan Agreement; and (ii) *second*, after the DIP Term Loan Obligations have been Paid in Full, and the DIP Term Loan Facility has been terminated, as provided in the DIP ABL Agreement.

24. <u>Protections of Rights of DIP Agents, DIP Lenders, and Prepetition ABL Secured Parties</u>.

(a)     Unless the DIP Agents and the Prepetition ABL Agent, as applicable, shall have provided their prior written consent, or all DIP Obligations and all

Prepetition ABL Obligations (excluding contingent indemnification obligations for which no claim has been asserted) have been, or contemporaneously will be, Paid in Full and the lending commitments under the DIP Facilities have terminated, in any of these Cases or any Successor Cases, the Debtors shall neither seek entry of, nor support any motion or application seeking entry of, and otherwise shall object to any motion or application seeking entry of, any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Prepetition ABL Liens, the Adequate Protection Liens, and/or the Adequate Protection Superpriority Claim except as expressly set forth in this Final Order or the DIP Documents; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Final Order; (iii) except as set forth in the DIP Documents, the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff or recoupment against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code or otherwise; or (iv) any modification of any of the DIP Agents', the DIP Lenders', or the Prepetition ABL Secured Parties' rights under the Interim Order, this Final Order, the DIP Documents or the Prepetition ABL Documents, as applicable, with respect to any DIP Obligations or Prepetition ABL Obligations.  It shall be an Event of Default under the DIP Documents and this Final Order if, in any of these Cases or any Successor Cases, the Debtors take or fail to take any of the actions contemplated with respect to provisions (i) through (iv) of

the previous sentence or if any order is entered granting any of the relief enumerated in provisions (i) through (iv) of the previous sentence.

(b)     No Debtor shall object to the DIP Agents, any DIP Lenders or any Prepetition ABL Secured Parties credit bidding up to the full amount of the applicable outstanding DIP Obligations and Prepetition ABL Obligations (as applicable), in each case including any accrued interest and expenses, in any sale of any DIP Collateral or Prepetition Collateral, as applicable, whether such sale is effectuated through section 363 or section 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

25.    <u>Credit Bidding</u>.  In connection with any sale process authorized by the Court, (i) the DIP Agents and the DIP Lenders and (ii) subject to the rights preserved in paragraph 42, the Prepetition ABL Agent and Prepetition ABL Secured Parties, or any assignee or designee of any of the foregoing, shall be authorized to credit bid, consistent with the applicable DIP Documents and/or Prepetition ABL Documents, some or all of their claims (each a "<u>Credit Bid</u>") to the extent permitted by section 363(k) of the Bankruptcy Code, subject in each case to the rights and duties of the parties under the Intercreditor Agreement and to the provision of consideration sufficient to indefeasibly pay in full in cash any senior liens on the collateral that is subject to the Credit Bid except to the extent otherwise agreed by the holder of such senior lien in their sole and absolute discretion.  The Prepetition ABL Agent, the Prepetition ABL Secured Parties and the DIP Agents shall each be considered a "Qualified Bidder" with respect to their rights to acquire all or any of the assets by Credit Bid.

26.    <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these

Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) in violation of the DIP Documents or this Final Order at any time prior to the DIP Obligations and the Prepetition ABL Obligations being Paid in Full, and the termination of the DIP Agents' and the DIP Lenders' obligation to extend credit under the DIP Facilities, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP ABL Agent or the DIP Term Agent, as applicable, to be applied in accordance with this Final Order and the DIP Documents.

27.    <u>Cash Collection</u>.    From and after the date of the entry of the Interim Order, all collections and proceeds of any DIP ABL Priority Collateral, and any net proceeds of DIP Term Loans, or services provided by any Debtor and all Cash Collateral that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same lock-box and/or deposit accounts into which the collections and proceeds of the Prepetition ABL Priority Collateral were deposited under the Prepetition ABL Documents (or in such other accounts as are designated by the DIP ABL Agent from time to time) (collectively, the "<u>Cash Collection Accounts</u>"), which accounts (except as otherwise set forth in the DIP ABL Agreement) shall be subject to the sole dominion and control of the DIP ABL Agent for the benefit of itself, the DIP ABL Lenders, the Prepetition ABL Agent, the Prepetition ABL Lenders, the DIP Term Agent, and the DIP Term Lenders.  All proceeds and other amounts in the Cash Collection Accounts shall be remitted to the DIP ABL Agent for application in accordance with the DIP ABL Documents and this Final Order.  Unless otherwise agreed to in

writing by the DIP Agents and the Prepetition ABL Agent, or otherwise provided for herein, or otherwise ordered by the Court, the Debtors shall maintain no accounts except those identified in any cash management order entered by the Court (a "Cash Management Order"). The Debtors and the financial institutions where the Debtors' Cash Collection Accounts are maintained (including those accounts identified in any Cash Management Order), are authorized and directed to remit, without offset or deduction, funds in such Cash Collection Accounts upon receipt of any direction to that effect from the DIP ABL Agent. Upon the sale of DIP Term Priority Collateral, the Debtors shall establish and maintain a segregated account into which the proceeds of DIP Term Priority Collateral, and no other amounts, shall be deposited.

28.    Maintenance of DIP Collateral.    Until all DIP Obligations and all Prepetition ABL Obligations have been Paid in Full, and the DIP Agents' and the DIP Lenders' obligation to extend credit under the DIP Facilities has terminated, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Facilities or the Prepetition ABL Documents, as applicable; and (b) maintain the cash management system which has been agreed to by the DIP Agent and approved by any Cash Management Order that has been entered, or as otherwise required by this Final Order, the DIP Documents and the Prepetition ABL Documents.

29.    Disposition of DIP Collateral.

(a)    Until such time as the DIP ABL Obligations are Paid in Full, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP ABL Priority Collateral or Prepetition ABL Priority Collateral other than in the ordinary course of business without the prior written consent of the DIP ABL Agent and the Prepetition ABL Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by

the DIP ABL Agent, the DIP ABL Lenders, the Prepetition ABL Agent, or the Prepetition ABL

Secured Parties, or from any order of this Court), except as otherwise provided for in the DIP

ABL Documents or otherwise ordered by the Court, and subject to the Intercreditor Agreement.

(b)    Until such time as the DIP Term Loan Obligations are Paid in

Full, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of

the DIP Term Priority Collateral other than in the ordinary course of business without the prior

written consent of the DIP Term Agent (and no such consent shall be implied, from any other

action, inaction, or acquiescence by the DIP Term Agent or the DIP Term Lenders, or from any

order of this Court), except as otherwise provided for in the DIP Term Loan Documents or

otherwise ordered by the Court, and subject to the Intercreditor Agreement.

30.    <u>DIP Termination Date</u>.  On the applicable DIP Termination Date: (a) all

DIP Obligations shall be immediately due and payable, all commitments to extend credit under

the applicable DIP Facility will terminate, other than as may be required in paragraph 39 with

respect to the Carve Out, all treasury and cash management, hedging obligations and bank

product obligations constituting Obligations (as defined in the DIP Agreements) shall be cash

collateralized, and all letters of credit and bankers' acceptances outstanding shall be cash

collateralized in an amount equal to 105% of the face amount thereof, and such cash collateral

shall not be subject to or subordinate to the Carve Out; (b) all authority to use Cash Collateral

shall cease subject to further order of the Court, *provided, however*, that (i) upon the Termination

Declaration Date, the Carve-Out shall be funded and available to satisfy then-due Allowed

Professional Fees (as defined in paragraph 39 of this Final Order) and (ii) during the Remedies

Notice Period (as defined herein), the Debtors may use Cash Collateral to pay payroll obligations

(other than severance), sales taxes and other expenses that the DIP Agents (each in their sole

discretion) approve as critical to keeping the Debtors' business operating subject to the Budget, and pay all Statutory Fees, as defined in paragraph 40 of this Final Order; and (c) upon the expiration of the Remedies Notice Period, the DIP Agents shall be entitled to exercise rights and remedies under the DIP Documents in accordance with this Final Order (including paragraph 33).  For the purposes of this Final Order, "DIP Termination Date" shall mean the "Maturity Date" as defined in the DIP Agreements.

31.     Events of Default.  The occurrence of any of the following events, unless waived by the DIP ABL Agent and the DIP Term Agent in writing and in accordance with the terms of the DIP Agreements, shall constitute an event of default (collectively, the "Events of Default"): (a) any "Event of Default" identified in this Final Order; (b) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Final Order; or (c) the occurrence of an "Event of Default" under either of the DIP Agreements.

32.     Milestones.  As a condition to the DIP ABL Facility and the use of Cash Collateral, the Debtors shall comply with the Required Milestones (attached hereto as **Schedule 5**) (as may be amended from time to time in accordance with the DIP ABL Documents and this Final Order, the "DIP ABL Case Milestones").  As a condition to the DIP Term Loan Facility, the Debtors shall comply with the Milestones (attached hereto as **Schedule 6**) (as may be amended from time to time in accordance with the DIP Term Loan Documents and this Final Order, the "DIP Term Loan Milestones" and together with the DIP ABL Case Milestones, the "Case Milestones").  For the avoidance of doubt, the failure of the Debtors to comply with any of the Case Milestones on the terms set forth on **Schedule 5** and **Schedule 6**, respectively, shall (a) constitute an Event of Default under the DIP Agreements and this Final Order; (b) subject to the

expiration of the Remedies Notice Period (as defined below), result in the automatic termination of the Debtors' authority to use Cash Collateral under this Final Order; and (c) permit the DIP Agents, subject to paragraph 33, to exercise the rights and remedies provided for in this Final Order and the DIP Documents.

33.    <u>Rights and Remedies Upon Event of Default</u>.    Immediately upon the occurrence and during the continuation of an Event of Default under any of the DIP Documents or this Final Order, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order (and the Remedies Notice Period) (a) each of the DIP ABL Agent and the DIP Term Agent may declare (any such declaration shall be referred to herein as a "<u>Termination Declaration</u>") (i) all DIP Obligations owing under the applicable DIP Documents to be immediately due and payable (including the cash collateralization of all outstanding letters of credit in accordance with the DIP Documents), (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the respective DIP Facilities, (iii) termination of the respective DIP Facility and the respective DIP Documents as to any future liability or obligation of the applicable DIP Agent and DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, (iv) the delivery of the Carve Out Trigger Notice (as defined herein) to the Debtors (as applicable) has occurred; and (v) that all DIP Obligations shall accrue interest at the default rate as set forth in the DIP Agreements effective as of the date of the occurrence of the Event of Default; and (b) either the DIP ABL Agent or the DIP Term Agent may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (the date which is the earliest to occur of any such date a Termination Declaration is delivered and the DIP Termination Date

shall be referred to herein as the "Termination Date").  The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the DIP ABL Agent (if delivered by the DIP Term Agent), counsel to the DIP Term Agent (if delivered by the DIP ABL Agent), counsel to the Committee, and the U.S. Trustee.  The automatic stay in the Cases otherwise applicable to the DIP ABL Agent, the DIP Term Agent, the DIP Lenders, and the Prepetition ABL Secured Parties is hereby modified so that five (5) business days after the date a Termination Declaration is delivered (the "Remedies Notice Period"): (a) the DIP ABL Agent or the DIP Term Agent (as applicable) and the applicable DIP Lenders shall be entitled to exercise their rights and remedies in accordance with the DIP Documents and this Final Order to satisfy the DIP Obligations, DIP Superpriority Claim and DIP Liens, subject to the Carve Out; (b) the applicable Prepetition ABL Secured Parties shall be entitled to exercise their rights and remedies in accordance with the applicable Prepetition ABL Documents and this Final Order to satisfy the relevant Prepetition ABL Obligations, Adequate Prepetition Superpriority Claims and Prepetition Adequate Protection Liens, subject to the Carve Out (to the extent applicable).  During the Remedies Notice Period, the Debtors, the Committee and/or any party in interest shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court.  Unless the Court orders otherwise, the automatic stay, as to all of the DIP ABL Agent, the DIP Term Agent, DIP Lenders, and Prepetition ABL Secured Parties, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order.  Upon expiration of the Remedies Notice Period, (x) the DIP Agents, DIP Lenders, and the Prepetition ABL Secured Parties shall be permitted to exercise all remedies set forth herein, in the DIP Documents, the Prepetition ABL Documents, and as otherwise available at law without further order of or application or motion to the Court consistent with the Intercreditor Agreement

and paragraph 29 of this Final Order and (y) if the Event of Default giving rise to the Termination Declaration is the Debtors' failure to meet a Required Milestone on the terms set forth in **Schedule 5** and **Schedule 6**, as applicable, the DIP ABL Agent may direct the Debtors to commence a process for a full-chain liquidation (the "Agreed Full-Chain Sale Process"), at which time the Debtors must (1) following the filing of a motion on an expedited basis, and subject to the availability of the Court, obtain, within three business days after the Remedies Notice Period, entry of an order from the Court, in form and substance approved by the DIP ABL Agent, approving sales procedures with respect to a full-chain liquidation (which, at the Debtors' option, may include designation of a stalking horse bid, subject to approval of the Court), (2) within seven business days after the Remedies Notice Period, complete an auction for the full-chain liquidation and declare a "successful bidder" for the liquidation on terms and conditions consented to by the DIP ABL Agent, and (3) following the filing of a motion on an expedited basis, and subject to the availability of the Court, obtain, within nine business days after the Remedies Notice Period, entry of an order from the Court, in form and substance approved by the DIP ABL Agent, approving the store liquidation and commence a full-chain liquidation pursuant to the approved liquidation agreement, the applicable Court sale orders, and a wind-down budget approved by the Court, reflecting those costs and expenses necessary to consummate Agreed Full-Chain Sale Process in accordance with applicable law. Until such time as the Agreed Full-Chain Sale Process is complete and the proceeds (solely to the extent constituting DIP ABL Primary Collateral) have been remitted to the DIP ABL Agent for the benefit of the DIP ABL Lenders and the Prepetition ABL Agent for the benefit of the Prepetition ABL Lenders, any exercise of remedies by the DIP Agents and the DIP Lenders shall be in accordance with the Intercreditor Agreement.

34.    Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order. The DIP Agents, the DIP Lenders, and the Prepetition ABL Secured Parties have acted at arms' length in good faith in connection with this Final Order and are entitled to, and may rely upon, the protections granted herein and by section 364(e) of the Bankruptcy Code.

35.    DIP and Other Expenses; Procedures for Payment of DIP Agents' and Prepetition ABL Secured Parties' Professional Fees and Expenses. The Debtors are authorized and directed to pay all reasonable and documented prepetition and postpetition fees and out of pocket expenses of the DIP Agents in connection with the DIP Facilities, as provided in the DIP Documents, whether or not the transactions contemplated hereby are consummated, including reasonable and documented attorneys' fees, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of reasonable and documented fees and expenses, including the fees and expenses of the ABL Advisors. Payment of all professional fees and expenses of the DIP Agents and the Prepetition ABL Secured Parties addressed in this Final Order (including the ABL Advisors) shall not be subject to allowance by the Court. Any time that professionals for the DIP Agents and the Prepetition ABL Secured Parties (including the ABL Advisors) seek payment of fees and expenses from the Debtors, each professional shall provide copies of its invoices to the U.S. Trustee and counsel for the Committee contemporaneously with the delivery of such fee and expense statements to the Debtors. Such invoices shall not be required to contain time entries, but shall include a general description of the nature of the matters for which services were performed, a list of professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed and, with

respect to the invoices of law firms, the year of law school graduation for each attorney; *provided, however*, that the U.S. Trustee reserves the right to seek copies of invoices containing the detailed time entries of any professional.   Such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine), provided that the U.S. Trustee reserves his right to seek unredacted copies of such invoices.   Any objections raised by the Debtors, the U.S. Trustee or the Committee with respect to the Debtors' payment of the amounts in such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) days of receipt of such invoice; if after ten (10) days such objection remains unresolved, it will be subject to resolution by the Court.   Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors.   Notwithstanding the foregoing, the Debtors are authorized and directed to pay (or authorize the reimbursement from any prepetition retainers) on the Effective Date (as defined in the DIP Documents) all reasonable, undisputed and documented fees, costs and expenses, including fees and expenses of counsel, of the DIP Agents and the Prepetition ABL Secured Parties incurred on or prior to such date without the need for any professional engaged by the DIP Agents or the Prepetition ABL Secured Parties to first deliver a copy of its invoice as provided for herein; *provided, however,* that the DIP Agents shall provide the U.S. Trustee and counsel to the Committee with invoices reflecting such professional fees and expenses, and the U.S. Trustee and counsel to the Committee shall have the right to object to the amounts set forth therein according to this paragraph.   No attorney or advisor to the DIP Agents or the Prepetition ABL Secured Parties

shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. Any and all fees and expenses payable pursuant to the DIP Documents shall not be subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

36.     Indemnification.  The Debtors shall indemnify and hold harmless the DIP Agents and the DIP Lenders in accordance with the terms and conditions of the DIP Agreements. Upon the earlier of (a) the DIP ABL Obligations being paid in cash in full or (b) conclusion of the Remedies Notice Period, the Debtors shall pay $500,000 from proceeds of the DIP Collateral into an indemnity account (the "DIP ABL Indemnity Account") subject to first priority liens of the DIP ABL Agent (and not subject to the Carve Out), for the benefit of the DIP ABL Lenders. The DIP ABL Indemnity Account shall be released and the funds applied in accordance with paragraph 23 of this Final Order upon the DIP ABL Obligations being Paid in Full. Upon the earlier of (a) the DIP Term Loan Obligations being paid in cash in full or (b) conclusion of the Remedies Notice Period, the Debtors shall pay $500,000 from proceeds of the DIP Collateral into an indemnity account (the "DIP Term Loan Indemnity Account") subject to first priority liens of the DIP Term Agent (and not subject to the Carve Out), for the benefit of the DIP Term Lenders. The DIP Term Loan Indemnity Account shall be released and the funds applied in accordance with paragraph 23 of this Final Order upon DIP Term Loan Obligations being Paid in Full.

37.     Proofs of Claim.  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Cases or any Successor Cases to the contrary, the DIP Agents, the DIP Lenders, and the Prepetition ABL Secured Parties will not be required to file proofs of claim in any of the Cases or Successor Cases for any claims arising

under the DIP Documents or the Prepetition ABL Documents. The Debtors' stipulations, admissions, and acknowledgments and the provisions of this Final Order shall be deemed to constitute a timely filed proof of claim for the DIP Agents, the DIP Lenders and the Prepetition ABL Secured Parties with regard to all claims arising under the DIP Documents or the Prepetition ABL Documents. Notwithstanding the foregoing, the Prepetition ABL Agent on behalf of itself and the Prepetition ABL Secured Parties is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate or master proofs of claim in each of the Cases or Successor Cases for any claim described herein (with any such aggregate or master proof of claim filed in the Cases deemed to be filed in all Cases of the Debtors and asserted against all of the Debtors). Any proof of claim filed by the Prepetition ABL Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition ABL Secured Parties. Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to any claim of the DIP Agents, the DIP Lenders, and the Prepetition ABL Secured Parties. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

38.    Rights of Access and Information. Without limiting the rights of access and information afforded the DIP Agents and DIP Lenders under the DIP Documents, the Debtors and their agents and advisors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agents, DIP Lenders, and the Prepetition ABL Secured Parties and their respective advisors reasonable access to the Debtors' premises and their books and records in accordance with the DIP Documents and Prepetition ABL Documents, as

applicable, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.    In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Agents, the Prepetition ABL Agent, and their respective advisors all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Debtors.    All written information provided by the Debtors, pursuant to this paragraph 38, to the representatives, agents and/or employees of the DIP Agents, DIP Lenders, and the Prepetition ABL Secured Parties and their respective advisors shall also substantially contemporaneously be provided by the Debtors to the professionals representing the Committee.

      39.   <u>Carve Out</u>.

      (a)    As used in this Final Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below) (collectively, the "<u>Statutory Fees</u>"), which Statutory Fees shall not be subject to any budget; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses, other than any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors of the Debtors or the Committee[7] (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained by the

---

[7] Any such fees due and payable upon consummation of a transaction shall be payable solely from the proceeds received by the Debtors resulting from such transaction and, provided that the terms and amount of any such fees shall have been disclosed to the DIP Agents in writing reasonably promptly after the

Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the DIP ABL Agent or DIP Term Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1,000,000.00 incurred after the first business day following delivery by the DIP ABL Agent or the DIP Term Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").[8] For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP ABL Agent or DIP Term Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the Secured Obligations under the DIP ABL Agreement or the DIP Term Loan Agreement, respectively, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    Fee Estimates.    Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith

---

same are agreed to by the Debtors, such fees shall be paid free and clear of the liens of the DIP Agents and the DIP Lenders.

[8] Notwithstanding the foregoing, up to $500,000 of the Post-Carve Out Trigger Notice Cap may be used to pay Allowed Professional Fees of Professional Persons incurred prior to the delivery of a Carve Out Trigger Notice to the extent such Allowed Professional Fees exceed the ABL Professional Fee Carve Out Cap (as defined below).

estimate of the amount of fees and expenses (collectively, "Estimated Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); *provided, that* within one business day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date (and the Debtors shall cause such Weekly Statement and Final Statement to be delivered on the same day received to the DIP ABL Agent and DIP Term Agent).  If any Professional Person fails to deliver a Weekly Statement within three calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Carve Out Reserves (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Budget (as defined in the DIP Documents, the "Budget") for such period for such Professional Person; *provided, that* such Professional Person shall be entitled to be paid any unpaid amount of Allowed Professional Fees in excess of Allowed Professional Fees included in the Budget for such period for such Professional Person from a reserve to be funded by the Debtors from all cash on hand as of such date and any available cash thereafter held by any Debtor pursuant to paragraph 39(c) below

(*i.e.,* the Pre-Carve Out Trigger Notice Reserve).  Solely as it relates to the DIP ABL Agent and DIP ABL Lenders, any deemed draw and borrowing pursuant to paragraph 39(c)(i)(x) for amounts under paragraph 39(a)(iii) above shall be limited to the greater of (x) the sum of (I) the aggregate unpaid amount of Estimated Fees and Expenses included in such Weekly Statements timely received by the Debtors prior to the Termination Declaration Date *plus*, without duplication, (II) the lesser of (1) the aggregate unpaid amount of Estimated Fees and Expenses included in the Final Statements timely received by the Debtors pertaining to the period through and including the Termination Declaration Date and (2) the Budgeted Cushion Amount (as defined below), and (y) the aggregate unpaid amount of Allowed Professional Fees included in the Budget for the period prior to the Termination Declaration Date (such amount, the "ABL Professional Fee Carve Out Cap").  For the avoidance of doubt, the DIP ABL Agent and DIP ABL Lenders shall be entitled to maintain at all times a reserve (the "Carve-Out Reserve") in an amount (the "Carve-Out Reserve Amount") equal to the sum of (i) the greater of (x) the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors, and (y) the aggregate amount of Allowed Professional Fees contemplated to be unpaid in the Budget at the applicable time, *plus* (ii) the Post-Carve Out Trigger Notice Cap, *plus* (iii) the amounts contemplated under paragraph 39(a)(i) and 39(a)(ii) above, *plus* (iv) an amount equal to the amount of Allowed Professional Fees set forth in the Budget for the then current week occurring after the most recent Calculation Date and the two weeks succeeding such current week (such amount set forth in (iv), regardless of whether such reserve is maintained, the "Budgeted Cushion Amount").  In addition, the DIP ABL Agent and the DIP Term Agent shall be entitled to maintain a reserve in the amount of a reasonable estimate of other amounts that may be included in the Carve Out or that are or may be payable

from any proceeds of a transaction (as described in footnote 7 above), including amounts which are or may become payable to any investment bankers or financial advisors of the Debtors or the Committee.  Not later than 7:00 p.m. New York time on the fourth business day of each week starting with the first full calendar week following the Effective Date, the Debtors shall deliver to the DIP ABL Agent, the DIP ABL Lenders, the DIP Term Agent, and the DIP Term Lenders a report setting forth the Carve-Out Reserve Amount as of such time, and, in setting the Carve-Out Reserve, the DIP ABL Agent and DIP ABL Lenders shall be entitled to rely upon such reports in accordance with the DIP ABL Agreement.  Prior to the delivery of the first report setting forth the Carve-Out Reserve Amount, the DIP ABL Agent and DIP ABL Lenders shall calculate the Carve-Out Reserve Amount by reference to the Budget for subsection (i) of the Carve-Out Reserve Amount.

      (c)    <u>Carve Out Reserves</u>.  On the day on which a Carve Out Trigger Notice is given by either the DIP ABL Agent or the DIP Term Agent to the Debtors, with a copy to their lead restructuring counsel, the U.S. Trustee, and counsel to the Committee (the "<u>Termination Declaration Date</u>"), the Carve Out Trigger Notice shall be deemed (i) a draw request and notice of borrowing by the Debtors for DIP ABL Loans under the DIP ABL Agreement in an amount equal to the sum of (x) the amounts set forth in paragraphs 39(a)(i) and 39(a)(ii) above, and (y) the then unpaid amounts of the Allowed Professional Fees up to the ABL Professional Fee Carve Out Cap (any such amounts actually advanced shall constitute DIP ABL Loans) and (ii) a draw request and notice of borrowing by the Debtors for DIP Term Loans under the DIP Term Loan Agreement in an amount equal to the unpaid amounts of the Allowed Professional Fees in excess of the ABL Professional Fee Carve Out Cap (any such amounts actually advanced shall constitute DIP Term Loans), and any Statutory Fees then due and owing, shall also constitute a

demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the sum of the amounts set forth in paragraphs 39(a)(i), 39(a)(ii), and then unpaid amounts of the Allowed Professional Fees (which cash amounts shall reduce, on a dollar for dollar basis, the draw requests and applicable DIP ABL Loans and DIP Term Loans pursuant to the foregoing clauses (i) and (ii) of this sentence of this paragraph (c)).  The Debtors shall deposit and hold such amounts in a segregated account at the DIP ABL Agent in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also be deemed a request by the Debtors for (x) DIP ABL Loans under the DIP ABL Agreement in an amount equal to the Post Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP ABL Loans) and, (y) to the extent not funded by the DIP ABL Lenders, for DIP Term Loans under the DIP Term Loan Agreement in an amount equal to any unfunded portion of the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Term Loans), and shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (which cash amounts shall reduce, on a dollar for dollar basis, the draw requests and applicable DIP ABL Loans and DIP Term Loans pursuant to the foregoing clauses (x) and (y) of this sentence of this paragraph (c)).  The Debtors shall deposit and hold such amounts in a segregated account at the DIP ABL Agent in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap, and any Statutory Fees then due and owing (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the

"Carve Out Reserves") prior to any and all other claims.  On the first business day following the Termination Declaration Date and the deemed requests for the making of DIP ABL Loans and DIP Term Loans as provided in this paragraph (c), notwithstanding anything in the DIP ABL Agreement or the DIP Term Loan Agreement to the contrary, including with respect to (1) the existence of a Default (as defined in the DIP ABL Agreement or the DIP Term Loan Agreement) or Event of Default (as defined in the DIP ABL Agreement or the DIP Term Loan Agreement, (2) the failure of the Debtors to satisfy any or all of the conditions precedent for the making of any DIP ABL Loan under the DIP ABL Agreement or DIP Term Loans under the DIP Term Loan Agreement, respectively, (3) any termination of the Commitments, as defined in each of the DIP ABL Agreement or DIP Term Loan Agreement following an Event of Default, or (4) the occurrence of the Maturity Date, each DIP ABL Lender and DIP Term Lender with an outstanding Commitment shall make available to the DIP ABL Agent or DIP Term Agent, as applicable, such DIP ABL Lender's or such DIP Term Lender's pro rata share of such DIP ABL Loans or DIP Term Loans, as applicable.

(d)     Application of Carve Out Reserves.

(i)     All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (a)(i) through (a)(iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full.  If after payment in full of the Pre-Carve Out Amounts, the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii), below, all remaining funds shall be distributed ratably (based on the proportion of the Pre-Carve Out Trigger Notice Reserve funded by or from the DIP ABL Priority Collateral or the DIP Term Loan Priority Collateral, respectively) to: (a)  the DIP ABL Agent on

behalf of the DIP ABL Lenders, and (b) the DIP Term Agent on behalf of the DIP Term Lenders, each in accordance with their rights and priorities under this Final Order.

(i)       All funds in the Post-Carve Out Trigger Notice Reserve (other than up to $500,000, which may be used to pay Pre-Carve Out Amounts to the extent they exceed the ABL Professional Fee Carve Out Cap) shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts").  If after payment in full of the Post-Carve Out Amounts, the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii), below, all remaining funds shall be distributed ratably (based on the proportion of the Post-Carve Our Trigger Notice Reserve funded by or from the DIP ABL Priority Collateral or the DIP Term Loan Priority Collateral, respectively) to: (a) the DIP ABL Agent on behalf of the DIP ABL Lenders, and (b) to the DIP Term Agent on behalf of the DIP Term Lenders, each in accordance with their rights and priorities under this Final Order.

(ii)      Notwithstanding anything to the contrary in the DIP Documents or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 39, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve to the extent of any shortfall in funding prior to making any payments to the DIP ABL Agent or the DIP Term Agent, as applicable.

(iii)     Notwithstanding anything to the contrary in the DIP Documents or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP ABL Agent, the Prepetition ABL Agent, and the DIP Term Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the

Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid as provided in paragraphs (i), (ii), and (iii) above.

(iv)    Notwithstanding anything to the contrary in this Final Order, (A) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out with respect to any shortfall (as described below), and (B) subject to the limitations with respect to the DIP ABL Agent, DIP ABL Lenders, Prepetition ABL Agent and Prepetition ABL Lenders set forth in paragraph (b) with respect to the ABL Professional Fee Carve Out Cap, above, in no way shall any Budget, Carve Out, Post-Carve Out Trigger Notice Cap or Carve Out Reserves be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors (which includes, for the avoidance of doubt, the Allowed Professional Fees of the Committee's advisors).  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order, the DIP ABL Agreement, or the DIP Term Loan Agreement, the Carve Out shall be senior to all liens and claims securing the DIP ABL Agreement or the DIP Term Loan Agreement, the Adequate Protection Liens, and the Adequate Protection Superpriority Claim, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition ABL Obligations.

(e)    No Direct Obligation To Pay Allowed Professional Fees.  None of the DIP Agents, DIP Lenders, or the Prepetition ABL Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the

DIP Agents, DIP Lenders, or the Prepetition ABL Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)    Payment of Allowed Professional Fees Prior to the Termination Declaration Date.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(g)    Payment of Carve Out On or After the Termination Declaration Date.  Following the delivery of the Carve Out Trigger Notice, all Allowed Professional Fees shall be paid from the applicable Carve Out Reserve, and no Professional Person shall seek payment of any Allowed Professional Fees from any other source until the applicable Carve Out Reserve has been exhausted.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under the Interim Order, this Final Order, the DIP Documents, the Bankruptcy Code, and applicable law.

40.    Limitations on Use of DIP Proceeds, Cash Collateral, and Carve Out.  The DIP Facilities, the DIP Collateral, the Prepetition Collateral, the Cash Collateral and the Carve Out may not be used in connection with: (a) preventing, hindering, or delaying any of the DIP Agents', the DIP Lenders' or the Prepetition ABL Secured Parties' permitted enforcement or realization upon any of the DIP Collateral or Prepetition Collateral; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral without the consent of the

DIP Agents or as permitted by the DIP Documents; (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agents; (d) incurring Indebtedness (as defined in the DIP Agreements) without the prior consent of the DIP Agents, except to the extent permitted under the DIP Agreement; (e) seeking to amend or modify any of the rights granted to the DIP Agents, the DIP Lenders, or the Prepetition ABL Secured Parties under this Final Order, the DIP Documents, or the Prepetition ABL Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; (f) objecting to or challenging in any way the DIP Liens, DIP Obligations, Prepetition ABL Liens, Prepetition ABL Obligations, DIP Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the DIP Agents, the DIP Lenders, or the Prepetition ABL Secured Parties, respectively; (g) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Agents, the DIP Lenders, the Prepetition ABL Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition ABL Liens, Prepetition ABL Obligations or any other rights or interests of any of the DIP Agents, the DIP Lenders, the Prepetition ABL Secured Parties; or (i) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations, the DIP Liens, the Prepetition ABL Obligations, or the Prepetition ABL Liens; *provided, however*, that the Carve Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to

exceed $200,000 in the aggregate (the "Investigation Budget Amount"), incurred solely by the Committee, in investigating (but not prosecuting or challenging) the Prepetition Lien and Claim Matters (as defined herein).    Any limitations imposed by this paragraph shall not cap or otherwise limit the amount of allowed fees, expenses, and disbursements of the Committee and its advisors in these Chapter 11 Cases or otherwise.

41.    Payment of Compensation.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professional or shall affect the right of the DIP Agents, the DIP Lenders, the Prepetition ABL Secured Parties, the U.S. Trustee, or other parties in interest to object to the allowance and payment of such fees and expenses.  So long as an unwaived Event of Default has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, but solely to the extent the same are paid in accordance with the Budget (subject to variances permitted under the DIP Documents).

42.    Effect of Stipulations on Third Parties.

(a)    *Generally.*  The admissions, stipulations, agreements, releases, and waivers set forth in paragraph F of this Final Order (collectively, the "Prepetition Lien and Claim Matters") are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including, without limitation, the Committee, unless, and solely to the extent that, a party in interest with Requisite Standing (other than the Debtors, as to which any Challenge is irrevocably waived and relinquished) (i) has timely filed the pleadings, and timely commenced the proceeding required under the Bankruptcy

Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 42 of this Final Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or pleading commencing a proceeding or other contested matter, a "Challenge") by no later than (A) the earlier of January 8, 2020 or the hearing date to consider confirmation of a plan of reorganization or a sale of substantially all of the assets of the Debtors, for the Committee or (B) December 16, 2019, for any other party in interest with Requisite Standing (each, as applicable, the "Challenge Deadline"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition ABL Agent (with respect to the Prepetition ABL Documents), or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal. Notwithstanding the foregoing, if a chapter 11 trustee is appointed or the Cases are converted to chapter 7 prior to the expiration of the Challenge Deadline, (1) the chapter 11 trustee or chapter 7 trustee, as applicable, shall have until the later of the Challenge Deadline or the twentieth (20th) day after the appointment of the chapter 11 trustee or the conversion of the Case to chapter 7, as applicable, to commence a Challenge, subject to any further extension by order of the Court for cause, and (2) if the Committee has asserted a Challenge prior to the Challenge Deadline, the chapter 11 trustee or chapter 7 trustee will stand in the shoes of the Committee in such Challenge.

   (b)  *Binding Effect*.  To the extent no Challenge is timely commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-

appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to this Final Order, become binding, conclusive, and final on any person, entity, or party in interest in the Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates.  Notwithstanding anything to the contrary herein, if any such proceeding is timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Matters is expressly the subject of a timely filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (a) above.  To the extent any such Challenge proceeding is timely commenced, the Prepetition ABL Secured Parties shall be entitled, subject to paragraph 35 herein, to payment of the reasonable and documented related costs and expenses, including, but not limited to reasonable and documented attorneys' fees, incurred under the Prepetition ABL Documents in defending themselves in any such proceeding as adequate protection, unless such Challenge is successful.  The filing of a motion seeking standing to file a Challenge before the Challenge Deadline, shall extend the Challenge Deadline with respect to that party until two business days after the Court approved the standing motion, provided that such extension shall not be greater than thirty (30) days after the filing of such motion, or such other time period ordered by the Court.  Upon a successful Challenge brought pursuant to this paragraph 42 and/or in the event that it is determined by the Court that the Prepetition ABL

Agent and/or the Prepetition ABL Parties are not entitled to payments under the Bankruptcy Code as adequate protection for Diminution in Value of their interests in Prepetition Collateral (or that such parties are undersecured), the Court may fashion any appropriate remedy. In accordance with section 5.5 of the Intercreditor Agreement, if, as a result of any successful Challenge, any Prepetition ABL Secured Party is required to disgorge, turn over or otherwise pay to the estate of any Debtor any amount with the effect that the claim of such Prepetition ABL Secured Party is reinstated as a Prepetition ABL Obligation (without a corresponding reduction in the amount of the DIP ABL Obligations), such amount so paid to such Debtor shall be immediately paid to the DIP ABL Agent for application and payment of the DIP ABL Obligations.

43.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

44.     <u>Section 506(c) Claims</u>.  No costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Agents, the DIP Lenders, or the Prepetition ABL Secured Parties, or any of their respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Agents, the DIP Lenders, or the Prepetition ABL Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

45.     <u>No Marshaling/Applications of Proceeds</u>.  The DIP Agents, the DIP Lenders, and the Prepetition ABL Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the

Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Final Order and the DIP Documents notwithstanding any other agreement or provision to the contrary.  Notwithstanding the foregoing, the DIP Agents, DIP Lenders and the Prepetition ABL Secured Parties shall (acting at all times in accordance with the Intercreditor Agreement) first seek recourse to DIP Collateral other than the proceeds of avoidance actions prior to seeking recourse against proceeds of avoidance actions.

46.     <u>Section 552(b)</u>.  The Prepetition ABL Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition ABL Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

47.     <u>Access to DIP Collateral</u>.  Upon expiration of the Remedies Notice Period, the DIP Agents, DIP Lenders and the Prepetition ABL Secured Parties, subject to the Intercreditor Agreement, shall be permitted to (a) access and recover any and all DIP Collateral, and (b) enter onto any leased premises of any Debtor and exercise all of the Debtors' rights and privileges as lessee under such lease in connection with an orderly liquidation of the DIP Collateral, *provided, however*, in the case of clause (b), the DIP Agents, DIP Lenders and/or Prepetition ABL Secured Parties can only enter upon a leased premises after an Event of Default in accordance with (i) a separate written agreement by and between the DIP Agents, DIP Lenders and the Prepetition ABL Secured Parties, as applicable, and any applicable landlord, (ii) pre-existing rights of the DIP Agents, DIP Lenders and the Prepetition ABL Secured Parties, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) entry of an order of this Court obtained by motion of the applicable

DIP Agents, DIP Lender, or Prepetition ABL Secured Party on such notice to the landlord as shall be required by this Court; *provided, however*, solely with respect to rent due to a landlord of any such leased premises, the DIP Agents, DIP Lenders, and/or the Prepetition ABL Secured Parties, as applicable, shall be obligated only to reimburse the Debtors for the payment of rent of the Debtors that first accrues after delivery of the Termination Declaration in accordance with paragraph 33 herein that is payable during the period of such occupancy by the DIP Agents, DIP Lenders, and/or Prepetition ABL Secured Parties, as applicable, calculated on a daily per diem basis; *provided, further*, that nothing herein shall relieve the Debtors of their obligations pursuant to section 365(d)(3) of the Bankruptcy Code for the payment of rent that accrues prior to delivery of the Termination Declaration through and including any assumption and/or rejection of any lease.  Nothing herein shall require the DIP Agents, DIP Lenders or the Prepetition ABL Secured Parties to assume any lease as a condition to the rights afforded in this paragraph.

48.    <u>Limits on Lender Liability</u>.    Nothing in the Interim Order, this Final Order, any of the DIP Documents, the Prepetition ABL Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents, the DIP Lenders or the Prepetition ABL Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Cases.  The DIP Agents, the DIP Lenders and the Prepetition ABL Secured Parties shall not, solely by reason of having made loans under the DIP Facilities or permitting the use of Cash Collateral, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42

U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute). Nothing in the Interim Order, this Final Order or the DIP Documents, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents, the DIP Lenders, or any of the Prepetition ABL Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

49.    <u>Insurance Proceeds and Policies</u>. Upon entry of the Interim Order and to the fullest extent provided by applicable law, the DIP Agents (on behalf of the applicable DIP Lenders) and the Prepetition ABL Agent (on behalf of the Prepetition ABL Secured Parties) were, and shall continue to be, without any further action or notice, named as additional insured, lender loss payee, mortgagee and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral (which shall not include directors and officers policies).

50.    <u>Joint and Several Liability</u>. Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that Debtors shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Facilities and the DIP Documents.

51.    <u>No Superior Rights of Reclamation</u>. Based on the findings and rulings herein regarding the integrated nature of the DIP Facilities and the Prepetition ABL Documents, the right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien; rather, any such alleged claims arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Liens as such claim had with the

Prepetition ABL Liens.

52.    <u>Rights Preserved</u>.    Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Agents', DIP Lenders' and Prepetition ABL Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Agents, DIP Lenders and/or the Prepetition ABL Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) subject to the Intercreditor Agreement, any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Agents, DIP Lenders or Prepetition ABL Secured Parties.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', the Committee's, or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Final Order.

53.    <u>No Waiver by Failure to Seek Relief</u>.    The failure of the DIP Agents, DIP Lenders, or Prepetition ABL Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the DIP Documents, the Prepetition ABL Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agents, DIP Lenders, Prepetition ABL Secured Parties, the Committee or any party in interest.

54.    <u>Binding Effect of Final Order</u>.  Immediately upon execution by this Court, the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, DIP Agents, DIP Lenders, Prepetition ABL Secured Parties (subject to paragraph 42), all other creditors of any of the Debtors, the Committee (or any other court appointed committee) appointed in the Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

55.    <u>No Modification of Final Order</u>.  Until and unless the DIP Obligations and the Prepetition ABL Obligations have been Paid in Full and all commitments to extend credit under the DIP Facility have been terminated, the Debtors shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agents or the Prepetition ABL Agent, (i) any modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claim or Adequate Protection Superpriority Claim, other than the Carve Out; (b) without the prior written consent of the DIP Agents or the Prepetition ABL Agent, for any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from DIP Collateral or Prepetition Collateral in a manner inconsistent with the Interim Order or this Final Order, as applicable; (c) without the prior written consent of the DIP Agents, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents; or (d) without the prior written consent of the Prepetition ABL

Agent, any lien on any of the DIP Collateral with priority equal or superior to the Prepetition ABL Liens or Adequate Protection Liens.  The Debtors shall not seek or consent to, directly or indirectly, to any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Agents or the Prepetition ABL Agents, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agents or the Prepetition ABL Agent.  It shall be an Event of Default under the DIP Documents if, in any of these cases or any Successor Cases, the Debtors take or fail to take any of the actions contemplated, or if any order is entered granting any of the relief, in this paragraph 55.

55.  56.    Final Order Controls.  In the event of any inconsistency between the terms and conditions of the DIP Documents, the Interim DIP Order and of this Final Order, the provisions of this Final Order shall govern and control.

57.    Discharge.  The DIP Obligations, and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been Paid in Full, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Agents, DIP Lenders, and the Prepetition ABL Agent, as applicable, has otherwise agreed in writing. None of the Debtors shall propose or support any plan of reorganization, or seek entry of an order confirming a plan of reorganization, that is not conditioned upon the DIP ABL Obligations and DIP Term Loan Obligations being Paid in Full, and the payment of the Debtors' obligations with respect to the adequate protection provided for herein, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization) (a "Prohibited Plan") without the written consent of each of the DIP Agents, DIP

Lenders, and the Prepetition ABL Agent, as applicable. None of the Debtors shall propose or support any sale of all or substantially all of the Debtors' assets, or seek entry of an approving any such sale, that is not conditioned upon the DIP ABL Obligations (in the case of a sale of the DIP ABL Priority Collateral) and DIP Term Loan Obligations (in the case of a sale of the DIP Term Priority Collateral) being Paid in Full, (a "Prohibited Sale") without the written consent of the applicable the DIP Agent and DIP Lenders. For the avoidance of doubt, the Debtors' proposal or support of a Prohibited Plan or Prohibited Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP Documents.

58.    Survival. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases. The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Agents, DIP Lenders and Prepetition ABL Secured Parties granted pursuant to this Final Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until: (i) in respect of the DIP ABL Facility, all the DIP ABL Obligations, pursuant to the DIP ABL Documents and this Final Order, have been Paid in Full (such payment being without prejudice to any terms or provisions contained in the DIP ABL Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP ABL Facility are terminated; (ii) in respect of the Prepetition ABL Facility, all of the Prepetition ABL Obligations pursuant to

the Prepetition ABL Documents and this Final Order, have been Paid in Full; and (iii) in respect

of the DIP Term Loan Agreement, all of the DIP Term Loan Obligations pursuant to the DIP

Term Loan Documents and this Final Order have been Paid in Full.  The terms and provisions

concerning the indemnification of the DIP Agents and DIP Lenders shall continue in the Cases,

in any Successor Cases, following dismissal of the Cases or any Successor Cases, following

termination of the DIP Documents and/or the DIP Obligations being Paid in Full.

59.    No Avoidance.    Subject to paragraph 42 herein, as applicable, no

obligations incurred or payments or other transfers made by or on behalf of the Debtors on

account of the DIP Facilities shall be avoidable or recoverable from the DIP Agents or the DIP

Lenders under any section of the Bankruptcy Code, or any other federal, state, or other

applicable law.

60.    Reliance on Order.    All postpetition advances under the DIP Documents

are made in reliance on this Final Order.

61.    Notwithstanding anything to the contrary in this Final Order, the interests

of the DIP Lenders and the Prepetition Lenders in any adequate assurance deposit ordered by this

Court for the benefit of the Debtors' utilities (a "Utilities Deposit") shall be subordinate to the

interests of the utility providers in such Utilities Deposit until such time as the Utilities Deposit is

returned to the Debtors pursuant to the terms of the order providing for the Utilities Deposit, or

as otherwise ordered by the Court

62.    Treatment of Proceeds from Sale of Certain Assets.    As adequate

protection for the claims of the Texas Taxing Authorities,[9] the Debtors will fund a segregated

---

[9]    The "Texas Taxing Authorities" includes taxing authorities for the Counties of Denton, Hays, Brazos, Williamson, Maverick, Bexar, Dallas, Fort Bend, Harris, Jefferson, McLennan, Montgomery, Smith, Tarrant, Hidalgo, and Nueces, Texas, the cities of Waco, Houston, Katy, Grapevine, Mercedes,

account (the "Texas Tax Account") in an amount not to exceed $558,636.72 from the proceeds of the non-ordinary course sale of any of the Debtors' assets located in the state of Texas that occurs after the Petition Date. The liens asserted by the Texas Taxing Authorities (and all other liens junior to those of the Texas Taxing Authorities) shall attach to the Texas Tax Account to the same extent and with the same priority as the liens the Texas Taxing Authorities assert against such assets of the Debtors. The Texas Tax Account shall be maintained solely for the purpose of providing adequate protection for the Texas Taxing Authorities prior to the distribution of any proceeds to any other creditor and shall constitute neither the allowance of the claims of the Texas Taxing Authorities, nor a floor or cap on the amount the Texas Taxing Authorities may be entitled to receive. All parties' rights to object to the priority, validity, amount and extent of the claims and liens asserted by the Texas Taxing Authorities are fully preserved. Funds in the Texas Tax Account may be distributed upon agreement between the Texas Taxing Authorities and the Debtors, with the consent of the DIP Agents or by subsequent order of the Court, duly noticed to the Texas Taxing Authorities and the DIP Agents. Notwithstanding any other provisions included in the Interim Order or this Final Order, or any agreements approved hereby, any statutory liens (collectively, the "Tax Liens") of the Texas Taxing Authorities and the Maricopa County Treasurer shall not be primed by nor made subordinate to any liens granted to any party hereby to the extent such Tax Liens are valid,

---

Allen, El Paso, Fort Worth, Frisco, and McAllen, Texas, the Lubbock Central Appraisal District, the Potter County Tax Office, the Arlington Independent School District, the Crowley Independent School District, the Grapevine-Colleyville Independent School District, the Brazoria County Tax Office, the Clear Creek Independent School District, the Fort Bend Independent School District, the Fort Bend County Levee Improvement District #2, the Humble Independent School District, the Spring Branch Independent School District, the Allen Independent School District, the Cypress-Fairbanks Independent School District, the Northwest Independent School District, the San Marcos Consolidated Independent School District, the Katy Management District #1, the Harris County Municipal Utilities District #358, the Woodlands Metro Center Municipal Utilities District, the Woodlands Road Utility District #1, and the Harris County Water County Improvement District #155.

senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Texas Taxing Authorities and the Maricopa County Treasurer are fully preserved.

63.   <u>Comenity</u>.  Notwithstanding anything to the contrary in this Final Order, the DIP Facilities or otherwise, (a) Comenity Capital Bank's ("<u>Comenity</u>") rights of setoff and/or recoupment and other defenses with respect to the Co-Brand and Private Label Credit Card Program Agreement between Comenity and Forever 21 Retail, Inc. dated as of December 3, 2015 (the "<u>Program Agreement</u>") (i) shall not be subject to any DIP Liens, Adequate Protection Liens, DIP Superpriority Claims or Adequate Protection Superpriority Claims, (ii) shall not be affected, modified, waived, primed or impaired in any way, and (iii) are expressly preserved and reserved; (b) Comenity's non-exclusive, royalty-free, non-transferable right and license to use the trademarks, service marks, or names owned by or licensed to the Debtors, as provided in the Program Agreement and/or applicable law (i) shall not be subject to any DIP Liens, Adequate Protection Liens, DIP Superpriority Claims, or Adequate Protection Superpriority Claims, (ii) shall not be affected, modified, waived, primed, or impaired in any way, and (iii) are expressly preserved and reserved; and (c) Comenity's rights, remedies, claims and any other relief arising from or related to the Program Agreement are expressly preserved and not modified, waived or impaired in any way by this Final Order. *and reserved*

64.   <u>Chubb</u>.  For the avoidance of doubt, (i) to the extent ACE American Insurance Company and/or any of its affiliates (collectively, and together with each of their successors, "<u>Chubb</u>") held Permitted Prior Liens, such liens and/or security interests shall be senior to any liens and/or security interests granted pursuant to this Final Order, (ii) this Final Order does not grant the Debtors any right to use any property (or the proceeds thereof) held by

Chubb as collateral to secure obligations under insurance policies and related agreements; and (iii) nothing, including the DIP Agreements and/or this Final Order, alters or modifies the terms and conditions of any insurance policies or related agreements issued by Chubb.

65.    *Nunc Pro Tunc* Effect of this Final Order.    This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

66.    General Authorization.    The Debtors, the DIP Agents, and the Prepetition ABL Secured Parties are authorized to take any and all actions necessary to effectuate the relief granted in this Final Order.

67.    Retention of Jurisdiction.    The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facilities, and/or this Final Order.

Dated: November 5, 2019
Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE