# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FOREVER 21, INC., et al.,[1]<br><br>          Debtors. | Chapter 11<br><br>Case No. 19-12122 (KG)<br><br>(Jointly Administered) |
| ALLIED DEVELOPMENT OF ALABAMA, LLC,<br><br>          Plaintiff,<br><br>          v.<br><br>FOREVER 21, INC., et al., and JATIN MALHOTRA,<br><br>          Defendants. | Adv. Pro. No. ___ - _____ |

## ADVERSARY COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND RELATED RELIEF

Plaintiff Allied Development of Alabama, LLC ("Plaintiff" or "Allied"), by and through the undersigned counsel, hereby files this *Adversary Complaint for Damages, Declaratory Relief, and Related Relief* (the "Complaint") against Defendants Forever 21, Inc. and its affiliated debtors (the "Debtors") and Jatin Malhotra ("Mr. Malhotra," and together with the Debtors, the "Defendants"). In support hereof, Plaintiff states as follows

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Forever 21, Inc. (4795); Alameda Holdings, LLC (2379); Forever 21 International Holdings, Inc. (4904); Forever 21 Logistics, LLC (1956); Forever 21 Real Estate Holdings, LLC (4224); Forever 21 Retail, Inc. (7150); Innovative Brand Partners, LLC (7248); and Riley Rose, LLC (6928). The location of the Debtors' service address is: 3880 N. Mission Road, Los Angeles, California 90031.

**PARTIES**

1. Plaintiff is an Alabama limited liability company with offices in Commack, New York and a registered agent located at 2724 10th Avenue SW, Huntsville, AL 35805.

2. Defendant Forever 21, Inc., a Delaware corporation, and its above-listed affiliates are the Debtors in the above-captioned chapter 11 bankruptcy cases. The Debtors maintain a principal place of business at 3880 N. Mission Road, Los Angeles, CA 90031. Forever 21, Inc.'s registered agent in the State of Delaware is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

3. Defendant Jatin Malhotra is an individual with an address of 11150 W. Olympic Blvd., Suite 750, Los Angeles, CA 90064. Mr. Malhotra is also (i) the Debtors' former Vice President of Real Estate, and (ii) the current Chief Executive Officer of Zenith Global Advisors, Inc., a Delaware corporation.

**JURISDICTION AND VENUE**

4. The Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334(b).

5. Venue is proper in this district under 28 U.S.C. § 1409(a).

6. Plaintiff's claims are both core and non-core in nature. At this time, Plaintiff does not consent to the entry of final orders and judgments by this Court with respect to non-core claims. Plaintiff reserves the right to provide consent at a later date. Plaintiff also demands and explicitly reserves its right to jury trial with respect to all claims so triable.

**FACTUAL ALLEGATIONS**

**I.     Negotiations with the Debtors Regarding the Lease Agreement.**

7.     Allied owns a retail center (the "Eastern Shore Center") located at 30500 State Highway 181, Spanish Fort, AL 36527.

8.     Throughout the summer and fall of 2017, Allied began marketing retail space at the Eastern Shore Center to prospective tenants with the goal of increasing occupancy and revitalizing the space.

9.     To that end, Allied's manager, David Mott, emailed Paige Velzeboer on October 17, 2017 to market space at the Eastern Shore Center to the Debtors.

10.    The following week, the Debtors' then-Vice President of Real Estate, Jatin Malhotra,[2] contacted Mr. Mott directly via email at 11:54 p.m. on October 23, 2017 to request information relating to Eastern Shore Center.  More specifically, Mr. Malhotra asked Mr. Mott to send him the lease plans and a commercial proposal.  Negotiations took off from that point.

11.    After exchanging at least twelve emails between October 23, 2017 and December 7, 2017 in which Mr. Malhotra and Mr. Mott ironed-out the details of a potential lease arrangement, Mr. Mott and Mr. Malhotra spoke via telephone during the late afternoon and early evening of December 7, 2017.[3]

12.    One of Allied's primary objectives during lease negotiations was to obtain sales projections for the Debtors' potential retail store at Eastern Shore Center (hereafter, the "Eastern Shore Store").  This detail was critical to Allied's determination of whether to enter into a lease

---

[2] At all times pertinent to this Complaint, Mr. Malhotra was acting in his capacity as the Debtors' Vice President of Real Estate.  According to their public filings, the Debtors maintain and have maintained, at all times relevant to this Complaint, multiple director and officer liability insurance policies.

[3] Mr. Mott participated in the telephone call from Allied's Commack, New York office, and the call lasted thirty-five to forty-five minutes.

agreement with the Debtors in light of the many concessions that the Debtors asked Allied to provide, such as over $2 million in construction and improvement costs.

13. The phone call on December 7, 2017 provided insight to Allied regarding sales projections. During that phone call, Mr. Malhotra represented to Mr. Mott that the Debtors projected generating at least $6 million in annual sales at the Eastern Shore Store. Mr. Malhotra also represented that the Debtors based those sales projections on recently-generated sales figures at a nearby Forever 21 store located in Mobile, Alabama (the "Mobile Store").[4]

14. According to Mr. Malhotra, the Mobile Store generated $6 million in gross annual sales during 2017. Mr. Malhotra represented that the Eastern Shore Store would generate at least that much in gross annual revenue in light of Eastern Shore Center's size, location, other tenants, and related factors. Mr. Malhotra repeated these representations several times both during the December 7, 2017 phone call and during other conversations with Mr. Mott.

15. Relying on Mr. Malhotra's representations regarding sales figures at the Mobile Store and sales projections for the Eastern Shore Store, Allied decided to move forward with leasing a retail space at Eastern Shore Center to the Debtors.

16. Importantly, Allied had a tentative agreement with another prospective tenant (the "Initial Tenant") in place, but ultimately decided to abandon that arrangement in favor of leasing the Eastern Shore Store to the Debtors after receiving Mr. Malhotra's representations during the December 7, 2017 phone call.

---

[4] At the time, the Mobile Store was located at the Bel Air Mall in Mobile, Alabama.

## II.   Relevant Provisions of the Lease Agreement.

17.   Allied entered into a lease agreement with Forever 21, Inc. (the "Lease Agreement," attached hereto as <u>Exhibit A</u>) in March 2018.[5]

18.   Further relying on Mr. Malhotra's representations regarding sales figures at the Mobile Store and sales projections at the Eastern Shore Store, Allied agreed to a rent structure under which the Debtors' rent payments were wholly dependent on the Debtors' gross sales at the Eastern Shore Store.  More specifically, the Debtors' minimum rent constitutes five percent of its Monthly Gross Sales.[6]  (Lease Agreement § 1(f)).

19.   Forever 21, Inc. also agreed to pay one percent of yearly Gross Sales in excess of $7 million as additional "bonus" rent throughout the Lease Term if the Eastern Shore Store performed better than the sales projections that Mr. Malhotra provided (i.e., $6 million in annual gross revenue).[7]  (Id. § 1(g)).  Regardless, Allied's monthly rental payments were completely contingent and dependent on the Debtors' gross sales at the Eastern Shore Store.

20.   In addition to accepting a percentage of the Debtors' gross sales at the Eastern Shore Store as rent under the Lease Agreement, Allied went above and beyond to ensure that its retail space at Eastern Shore Center would be acceptable to the Debtors.

21.   Indeed, under the rider to the Lease Agreement, Allied agreed to reimburse (and did reimburse) the Debtors for space alteration and improvement costs in the amount of $2,136,600.00 (the "Improvement Costs").  (Lease Agreement Rider § 1).[8]

---

[5] As of the date of this Complaint, the Debtors have neither rejected nor assumed the Lease Agreement.  The Debtors continue to occupy the Eastern Store Shore.

[6] Capitalized terms not defined herein shall have the meanings ascribed to them in the Lease Agreement.

[7] The rent described in Sections 1(f) - 1(g) of the Lease Agreement shall hereafter be referred to as the "Rent Structure."

[8] Allied also agreed to pay for approximately $200,000.00 in demolition costs in addition to the Improvement Costs.

5

22. Overall, Allied shelled out over two million dollars to the Debtors by the time the Eastern Shore Store opened for business to the public[9] – all in complete reliance on Mr. Malhotra's representations regarding sales figures at the Mobile Store and sales projections for the Eastern Shore Store. Allied then came to learn that the Debtors would perform only a fraction of the sales projections that Allied received when determining whether to enter into the Lease Agreement.

23. Even after the parties entered into the Lease Agreement, Mr. Malhotra continued to perpetuate his lie by affirming via text message to David Mott on March 14, 2018 that the Eastern Shore Store would generate ***$7 million*** in annual sales – an even larger figure than previously represented.

### III. Allied Learns That It Received False Sales Figures and Sales Projections.

24. After entering into the Lease Agreement, Allied was dismayed to learn that the sales figures for the Mobile Store and the sales projections for the Eastern Shore Store were false.

25. Indeed, after discussions with a tenant at the Eastern Shore Store who also maintained a store at the Bel Air Mall – the location of the Mobile Store – Allied discovered that the Mobile Store had generated only a fraction of the $6 million sales figure that Mr. Malhotra provided for annual revenue generated during 2017.

26. More specifically, contrary to Mr. Malhotra's representations, the Mobile Store had generated only $2 million in gross sales during 2017. Thus, Mr. Malhotra flagrantly inflated the sales figures for the Mobile Store, and consequently, the sales projections for the Eastern Shore Store, for the purpose of inducing Allied to enter into the Lease Agreement with the Debtors under

---

[9] Due to the length of time needed to reconstruct the space to the Debtors' specifications, the Debtors did not start paying rent to Allied until the Eastern Shore Store opened in October 2018.

terms to which Allied never would have agreed if it had received correct sales figures and projections.

27. Allied reasonably relied on Mr. Malhotra's misrepresentations when deciding to enter into the Lease Agreement – to its ultimate detriment.

28. Allied has received only a fraction of the monthly rent that it reasonably expected to receive from the Debtors since entering into the Lease Agreement – all due to Mr. Malhotra's falsely inflated sales figures and sales projections.

29. More specifically, the Eastern Shore Store generated only $119,341.75 in gross sales during October 2018 and only $179,744.00 in gross sales during November 2018 – its first full month in business at Eastern Shore Center.[10]

30. Overall, from the time that it opened for business in October 2018 through September 30, 2019, the Eastern Shore Store generated only $1,626,039.85 in gross sales, which constitutes 27.1% of the $6 million in projected gross sales that Allied received from Mr. Malhotra.

### IV. The Debtors Seek Bankruptcy Protection and Stop Paying Rent.

31. Eighteen months after entering into the Lease Agreement, the Debtors commenced the above-captioned bankruptcy proceedings on September 29, 2019 and informed Allied that they intend to (i) close the Eastern Shore Store, and (ii) either sell or reject the Lease Agreement because the Eastern Shore Store is a "low volume store" that generates less than $1.7 million in annual revenue.[11]

---

[10] The Debtors did not begin paying rent to Allied until October 2018 because the Debtors' mandated demolition and improvement of the space took several months to complete. They paid rent sporadically thereafter.

[11] Upon information and belief, the Debtors did not engage in significant marketing efforts to alert customers to the existence of the Eastern Shore Store, thereby dooming it to become a low volume store.

32. In addition to reimbursing the Debtors for the Improvement Costs and suffering as a "low volume store" despite Mr. Malhotra's representations that it would generate over $6 million in annual revenue, Allied has had difficulty keeping and signing new tenants at Eastern Shore Center ever since the Debtors filed for bankruptcy – all while the Debtors enjoy free rent at the Eastern Shore Store.[12] The Debtors' actions do not comport with the purpose and spirit of the bankruptcy code, and their actions should be admonished.

## COUNT I
### (Fraud in the Inducement against Jatin Malhotra and the Debtors)

33. Allied repeats and realleges all preceding paragraphs of this Complaint as if fully set forth herein.

34. While acting in his capacity as the Debtors' Vice President of Real Estate, Jatin Malhotra made false statements of material fact to Allied manager David Mott regarding the Debtors' sales figures at the Mobile Store and the Debtors' projected sales for the Eastern Shore Store.

35. At the time that Mr. Malhotra willfully made the representations, he knew that they were false.

36. Mr. Malhotra intended for the representations to induce Allied to act in reliance upon them.

37. Allied acted in reasonable reliance on Mr. Malhotra's representations by entering into the Lease Agreement and advancing millions of dollars in Improvement Costs to the Debtors.

38. As a direct and proximate result of Mr. Malhotra's fraud and willful misconduct, Allied has incurred damages in the amount of at least $2,136,600.00, plus incidental and

---

[12] The Debtors have not paid rent to Allied since commencing their bankruptcy proceedings. As of the date of this Complaint, rent remains unpaid for August 2019, September 2019, and October 2019.

consequential damages, pre-judgment interest, post-judgment interest, and attorneys' fees and litigation costs.

39. Defendants also should be ordered to pay punitive damages to the fullest extent permitted by law, but of at least $6,000,000.00.

## COUNT II
### (Negligent Misrepresentation against Jatin Malhotra and the Debtors)

40. Allied repeats and realleges paragraphs one through thirty-two of this Complaint as if fully set forth herein.

41. While acting in his capacity as the Debtors' Vice President of Real Estate, Jatin Malhotra made false statements of material fact to Allied manager David Mott regarding the Debtors' sales figures at the Mobile Store and the Debtors' projected sales for the Eastern Shore Store.

42. At the time that Mr. Malhotra willfully made the representations, he either knew or should have known that they were false or acted with reckless disregard for their falsity.

43. Mr. Malhotra intended for the representations to induce Allied to act in reliance upon them.

44. Allied acted in reasonable reliance on Mr. Malhotra's representations by entering into the Lease Agreement and advancing millions of dollars in Improvement Costs to the Debtors.

45. As a direct and proximate result of Mr. Malhotra's negligent misrepresentations, Allied has incurred damages in the amount of at least $2,136,600.00, plus incidental and consequential damages, pre-judgment interest, post-judgment interest, and attorneys' fees and litigation costs.

46. Defendants also should be ordered to pay punitive damages to the fullest extent permitted by law, but of at least $6,000,000.00.

## COUNT III
**(Rescission of the Lease Agreement)**

47. Allied repeats and realleges paragraphs one through thirty-two of this Complaint as if fully set forth herein.

48. While acting in his capacity as the Debtors' Vice President of Real Estate, Jatin Malhotra made false statements of material fact to Allied manager David Mott regarding the Debtors' sales figures at the Mobile Store and the Debtors' projected sales for the Eastern Shore Store.

49. At the time that Mr. Malhotra willfully made the representations, he knew that they were false.

50. Mr. Malhotra intended for the representations to induce Allied to act in reliance upon them.

51. Allied acted in reasonable reliance on Mr. Malhotra's representations by entering into the Lease Agreement and advancing millions of dollars in Improvement Costs to the Debtors.

52. Thus, the Debtors procured the Lease Agreement through fraudulent means.

53. Because the Debtors procured the Lease Agreement through fraudulent means, the Lease Agreement is subject to rescission.

54. Accordingly, Allied requests rescission of the Lease Agreement and return of the Improvement Costs.

## COUNT IV
**(Unjust Enrichment against the Debtors)**

55. Allied repeats and realleges paragraphs one through thirty-two of this Complaint as if fully set forth herein

56. While acting in his capacity as the Debtors' Vice President of Real Estate, Jatin Malhotra made false statements of material fact to Allied manager David Mott regarding the Debtors' sales figures at the Mobile Store and the Debtors' projected sales for the Eastern Shore Store.

57. At the time that Mr. Malhotra willfully made the representations, he either knew or should have known that they were false or acted with reckless disregard for their falsity.

58. Mr. Malhotra intended for the representations to induce Allied to act in reliance upon them.

59. Allied acted in reasonable reliance on Mr. Malhotra's representations by entering into the Lease Agreement.

60. Thus, the Debtors procured the Lease Agreement through fraudulent means.

61. Moreover, Allied conferred a benefit on the Debtors in the form of the Improvement Costs.

62. The Debtors knowingly accepted and retained that benefit.

63. The Debtors intend to close the Eastern Shore Store and either sell or reject the Lease Agreement while continuing to retain the $2,136,600.00 in Improvement Costs that Allied advanced to the Debtors.

64. Allied had a reasonable expectation of full compensation for the Improvement Costs over the lease term.

65. Thus, the Debtors have been unjustly enriched at Allied's expense, and Allied requests return of the Improvement Costs.

## COUNT V
### (Declaratory Relief)

66.  Allied repeats and realleges paragraphs one through thirty-two of this Complaint as if fully set forth herein

67.  Upon information and belief, Mr. Malhotra possesses statutory and contractual rights to indemnification from at least one of the Debtors relating to the claims asserted in this Complaint.

68.  Upon information and belief, the Debtors maintained and continue to maintain insurance policies that cover the claims asserted against Mr. Malhotra in this Complaint.

69.  Plaintiff requests a judicial determination that the proceeds of such insurance policies do not constitute property of the Debtors' estates.

70.  Alternatively, Plaintiff requests equitable allocation of any such insurance proceeds.

## PRAYER FOR RELIEF

Wherefore, Allied respectfully requests judgment against the Defendants as follows:

A.  Damages in an amount to be proven at trial, but of no less than $2,136,600.00;

B.  Consequential and incidental damages in an amount to be proven at trial;

C.  Punitive damages to the fullest extent allowable by law, but of no less than $6,000,000.00;

D.  Rescission of the Lease Agreement;

E.  Reimbursement for the Improvement Costs under the doctrine of unjust enrichment;

F. A declaration that the proceeds of the Debtors' applicable insurance policies do not constitute property of the Debtors' estates, or in the alternative, providing equitable allocation of such policy proceeds;

G. Pre-judgment and post-judgment interest at the maximum rate allowable by law;

H. Reasonable attorneys' fees and costs; and,

I. Such further relief as the Court deems just and proper.

Respectfully submitted,

Dated: November 22, 2019

**KASHISHIAN LAW LLC,**

 */s/ Ann M. Kashishian*
Ann M. Kashishian (DE Bar No. 5622)
501 Silverside Road
Wilmington, DE  19809
T. (484) 302-8417
F. (484) 930-0091
E. amk@kashishianlaw.com

*Counsel to Allied Development of Alabama, LLC*