**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| FOREVER 21, INC., *et al.*,[1] | Case No. 19-12122 (KG) |
| Debtors. | (Jointly Administered) |
|  | **Re: Docket No. 802** |
|  | **Objection Deadline: February 11, 2020 at 9:00 a.m. ET**<br>**Hearing Date: February 11, 2020 at 10:00 a.m. ET** |

**LIMITED OBJECTION OF HINES GLOBAL REIT INC., JONES LANG LASALLE
AMERICAS, INC., QIC PROPERTIES US, INC., REGENCY CENTERS, L.P.,
SHOPCORE PROPERTIES, L.P., SITE CENTERS CORP., AND TURNBERRY
ASSOCIATES TO DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING
THE SALE OF THE DEBTORS' ASSETS AND GRANTING RELATED RELIEF**

Hines Global REIT Inc., Jones Lang LaSalle Americas, Inc., QIC Properties US,

Inc., Regency Centers, L.P., ShopCore Properties, L.P., SITE Centers Corp., and Turnberry

Associates (collectively, the "Landlords"), by and through their undersigned counsel, Kelley

Drye & Warren LLP, submit this limited objection (the "Objection") to the *Debtors' Motion for*

*Entry of an Order (A) Approving Bidding Procedures and Bid Protections in Connection with*

*the Sale of Substantially All of the Debtors' Assets, (B) Approving the Form and Manner of*

*Notice Thereof, (C) Scheduling an Auction and Sale Hearing, (D) Approving Procedures for the*

*Assumption and Assignment of Contracts, (E) Approving the Sale of the Debtors' Assets, and*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, include:  Forever 21, Inc. (4795); Alameda Holdings, LLC (2379); Forever 21
International Holdings, Inc. (4904); Forever 21 Logistics, LLC (1956); Forever 21 Real Estate Holdings,
LLC (4224); Forever 21 Retail, Inc. (7150); Innovative Brand Partners, LLC (7248); and Riley Rose, LLC
(6928).  The location of the Debtors' service address is: 3880 N. Mission Road, Los Angeles, California
90031.

*(F) Granting Related Relief* (the "Motion")[2] filed by the above-captioned debtors (the "Debtors").  In support of this Objection, the Landlords respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Landlords do not object to the Debtors' attempt to sell substantially all of their assets, including their interests in numerous unexpired nonresidential leases of real property.  Any such sale, however, to the extent it involves the assumption and assignment of leases, must not be used to strip the Landlords of their statutory protections.  The Debtors must provide the Landlords with sufficient information to assess the financial condition of any proposed assignee of the Debtors' leases, and the Debtors must do so well in advance of any objection deadline so the Landlords have sufficient time to analyze that information and prepare an objection, if necessary.

2.      The Court entered the Bidding Procedures Order[3] on February 4, 2020, which provides that the Debtors will not be seeking authority to assume or assume and assign any leases at the Sale Hearing absent an agreement between the Stalking Horse Bidder or the Successful Bidder and the lease counterparty.  However, out of an abundance of caution, because the situation is fluid and moving at a rapid pace, the Landlords file this Objection to protect their interests in the event that the Debtors seek to assume and assign any of the Leases at the Sale Hearing.

3.      The Landlords are currently in negotiations with the Debtors to address the concerns highlighted herein.  The Landlords are hopeful that the parties will reach a

---

[2]      Docket No. 802.  Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Motion.

[3]      Docket No. 854.

consensual resolution of the issues, but reserve their rights to raise these concerns, to the extent that they are not resolved, at the Sale Hearing.

## **BACKGROUND**

4.      The Landlords are the owners or managing agents for the owners of numerous shopping centers located throughout the United States.  The Debtors lease retail space from the Landlords pursuant to written leases (each a "Lease" and, collectively, the "Leases") for the stores at the locations listed on the attached Exhibit A (collectively, the "Leased Premises"). The Leased Premises are located in shopping centers as that term is used in section 365(b)(3) of the Bankruptcy Code.  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

5.      On September 29, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code with this Court.

6.      The Debtors remain in possession of their properties and continue to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7.      On January 30, 2020, the Debtors filed the Motion, which sought, among other things, entry of an order (i) establishing bidding procedures (the "Bidding Procedures") for the sale of the Debtors' assets, including the Leases; (ii) establishing procedures for the assumption and assignment (the "Assignment Procedures") of the Leases to the stalking horse bidder (the "Stalking Horse Bidder") or, if multiple bids are received, the party with the highest and best bid at an auction (the "Proposed Assignee"); (iii) establishing procedures for the cure of defaults under the Leases (the "Cure Procedures"); (iv) establishing a timeline for the bidding

and sale process (the "Sale Timeline"), and (v) approving the sale of the Debtors' assets (the "Proposed Bidding Procedures Order").[4]

8.    On February 4, 2020, the Debtors filed a revised Proposed Bidding Procedures Order[5] containing the Bidding Procedures and the Sale Timeline, but removing the Assignment Procedures and Cure Procedures that were included in the initial Proposed Bidding Procedures Order.  On February 4, 2020, the Court entered the Debtors' revised form of order (the "Bidding Procedures Order").[6]

## ARGUMENT

## I.    POTENTIAL ASSUMPTION AND ASSIGNMENT OF LEASES

### (A)    The Landlords Must Have Sufficient Time To Analyze And Object To The Adequate Assurance Of Future Performance Information Of The Proposed Assignee

9.    To the extent that the Debtors seek to assume and assign any of the Leases at the Sale Hearing, the Landlords must be given sufficient time to analyze and object to the adequate assurance of future performance information of the Proposed Assignee.  This includes: (i) assessing any Proposed Assignee(s) and related adequate assurance of future performance information; (ii) determining whether the Proposed Assignee(s)' use of the Leased Premises will violate any radius, use, location, or exclusivity provisions in the Leases; (iii) conducting discovery; (iv) drafting an objection; and (v) preparing for a contested hearing.

10.    To the extent that the Debtors seek to assume and assign a Lease at the Sale Hearing and the respective Landlord seeks to contest that assignment, the Sale Hearing should proceed only as a status conference with respect to such contested lease assumption and

---

[4]        Docket No. 802, Exhibit A.

[5]        Docket No. 853, Exhibit A.

[6]        Docket No. 854.

assignment issues, if those issues can even be determined at that time, and an evidentiary hearing, if necessary, should be scheduled to occur no sooner than twenty-one (21) calendar days after the Sale Hearing, subject to the Court's availability.

11.    Bankruptcy Rules 7026 and 7028 through 7037, made applicable to contested matters by Bankruptcy Rule 9014, will apply if the Landlords object to the Proposed Assignee and timely notify the Debtors.  Therefore, at a minimum, the Landlords should receive an expedited discovery period of fourteen (14) days or, in the alternative, a status conference at the Sale Hearing to determine an expedited discovery schedule.  After the close of the discovery period, the Landlords should have an additional four (4) days within which they may file a supplemental objection to the proposed assignment.

12.    In the event of a contested assignment, the Landlords request that the Debtors be required to immediately provide a list of any known witnesses that would testify and a list of any known exhibits that would be put into evidence by the Debtors and/or the Proposed Assignee.

**(B)    Adequate Assurance Of Future Performance For Shopping Center Leases**

13.    In connection with the assumption and assignment of leases, shopping center landlords are afforded special statutory protections under the Bankruptcy Code in the form of adequate assurance of future performance.  *In re Joshua Slocum*, 922 F.2d 1086; *In re Trak Auto Corp.*, 277 B.R. 655 (Bankr. E.D. Va. 2002).  Section 365(f)(2) provides:

> The trustee may assign an executory contract or unexpired lease of the debtor only if–
>
> (A)    the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B)    adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default under such contract or lease.

11 U.S.C. § 365(f)(2).

14.    Section 365(b)(1) of the Bankruptcy Code further provides:

If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee–

(A)    cures, or provides adequate assurance that the trustee will promptly cure, such default…;

(B)    compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease for any actual pecuniary loss to such party resulting from such default; and

(C)    provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

15.    In connection with a shopping center lease, adequate assurance of future performance includes adequate assurance:

(A)    of the source of rent… due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee… shall be similar to the financial condition and operating performance of the debtor…;

(B)    that any percentage rent due under such lease will not decline substantially;

(C)    that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use, or exclusivity, … and

(D)    that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

16.     The Debtors bear the burden of proving adequate assurance of future performance in connection with the potential assumption and assignment of the Leases. *In re F.W. Restaurant Assoc.,* Inc., 190 B.R. 143 (Bankr. D. Conn. 1995); *In re Rachels Indus. Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

17.     To determine whether the requirements of adequate assurance of future performance will be satisfied, at a minimum, the Landlords and their attorneys must receive the following information from the exact proposed assignee of the Lease, the successful bidder, and any backup bidder:

(i)     The exact name of the entity which is going to be designated as the proposed assignee;

(ii)    The proposed assignee's and any guarantor's tax returns and audited financial statements (or un-audited, if audited financials are not available) and any supplemental schedules for the calendar or fiscal years ending 2017, 2018, and 2019;

(iii)   The number of stores the proposed assignee operates and all trade names that the proposed assignee uses;

(iv)    A statement setting forth the proposed assignee's intended use of the premises;

(v)     The proposed assignee's experience operating retail apparel or other stores in shopping centers;

(vi)    The proposed assignee's 2020 and 2021 business plans, including sales and cash flow projections; and

(vii)   Any financial projections, calculations, and/or financial *pro-formas* prepared in contemplation of purchasing the Lease.

18.    Unless and until the Landlords receive all of this information, the Debtors have not satisfied their burden pursuant to 11 U.S.C. § 365(b)(3).

**(C)    The Leases Must Be Assumed And Assigned *Cum Onere***

19.    Section 365(b)(3)(C) of the Bankruptcy Code provides that the assumption or assumption and assignment of a shopping center lease "is subject to all the provisions thereof…". 11 U.S.C. § 365(b)(3)(C).  Bankruptcy courts have described the assumption of an unexpired lease (a prerequisite to assignment under § 365(f)(2)(A)) as "an all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected." *See, e.g.*, *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003).

20.    As the court noted in *In re Washington Capital Aviation & Leasing*, 156 B.R. at 167, 175 n. 3 (Bankr. E.D. Va. 1993):

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the ... estate from any liability for any breach of such ... lease occurring after such assignment."  A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty.  *See* Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed. 1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ("delegation of performance ... does not discharge any duty or liability of the delegating obligor")).  While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise.   Section 365(k) changes this common law rule and relieves the estate from all liability under the lease following assignment.

*See also In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) (Adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach.").  The Debtors are not entitled to the benefits and protections of section 365(k) if they

do not assume and assign a lease *cum onere* – with all benefits and burdens. *See, e.g., American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999).

21.     The Debtors or any potential assignee must be required to comply with all contractual obligations to indemnify and hold the Landlords harmless with regard to events which occurred before assumption and assignment, but which were not known to the Landlords as of the date of the assumption and assignment.  This includes, but is not limited to, (i) claims for personal injury that occurred at the Leased Premises, (ii) damage and destruction to the Leased Premises or property by the Debtors or their agents, and (iii) environmental damage or clean-up.  To cure possible pre-assignment, non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Leases, either (a) the Debtors or the potential assignee must be required to satisfy any and all such claims, notwithstanding anything to the contrary contained in a plan or any court order, or (b) the Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences that occurred prior to the effective date of an assignment.  Such claims for indemnity could include claims for personal injury occurring at the Leased Premises where a Landlord is joined as a party to a lawsuit or for damage and destruction of property by the Debtors or their agents or employees.

22.     Finally, the Landlords requests that, if the Debtors seek to assume and assign the Leases, any potential assignee be required to execute short-form assumption and assignment agreements with the respective Landlord in connection with the proposed assignment of a Lease so that the Landlord will be in privity with its new tenant.

**(D)**     **Demand For Security**

23.     Section 365(l) of the Bankruptcy provides, in the pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

24.     In the ordinary course of its business, the Landlords require security deposits, letters of credit, or guaranties when leasing (or assessing an assignment of a lease) to certain companies based on their financial information and history.  In connection with the proposed assumption and assignment of the Leases, the Landlords hereby demand such security in one of those forms as required by section 365(l) of the Bankruptcy Code.  Until the exact financials of the potential assignee (including any successful bidder and backup bidder) are known to the Landlords, the Landlords reserve the right to specify the exact form and amount of such security; however, the Landlords would typically require a parent or personal guaranty in connection with leasing to a new tenant.

**(E)**     **The Debtors Must Timely Pay All Post-Petition Rent And Additional Rent Due Under The Leases Until They Are Assumed, Assumed And Assigned, Or Rejected**

25.     Section 365(d)(3) of the Bankruptcy provides, in pertinent part:

> The [debtor] shall timeline perform all of the obligations of the debtor… except those arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of [the Bankruptcy Code].

11 U.S.C. § 365(d)(3).

26.    The Landlords request that any assumption and assignment of the Leases be conditioned upon the Debtors' timely performance of all obligations arising under the Leases before the Leases are assumed, assumed and assigned, or rejected pursuant to section 365(d)(3) of the Bankruptcy Code, including, without limitation, the full payment of rent on the first day of each month.

## II.    PROPOSED ASSET PURCHASE AGREEMENT

### (A)    The Debtors Or Any Proposed Assignee Must Be Responsible For Year-End Adjustments And Reconciliations

27.    To the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue, and/or the Landlords suffer other pecuniary losses with respect to their leases, the Landlords hereby reserve the right to include in their asserted cure amounts year-end adjustments, including, without limitation, adjustments for 2019 and 2020 (the "Adjustment Amounts"), which have not yet been billed or have not yet become due under the terms of the Leases.

28.    The Debtors or the Proposed Assignee must be responsible to satisfy the Adjustment Amounts, if any, when due in accordance with the terms of the Leases, regardless of when such Adjustment Amounts were incurred.

### (B)    Assignment/Rejection Orders Must Be Entered To Ensure That Landlords Have Certainty Regarding The Treatment Of Their Leases

29.    The proposed Asset Purchase Agreement provides that leases will be deemed assigned as of the date listed in an assignment notice unless a party in interest objects. Asset Purchase Agreement at § 2.7(c).  Similar language is provided for lease rejections.  *Id.*

30.    The Landlords need certainty regarding the treatment of their Leases. Whether or not an objection is filed, the Debtors should be required to submit a proposed assignment or rejection order, as applicable, for entry by the Court.  Without assignment or

rejection orders, the Landlords will not have certainty regarding the treatment of the Leases and the bankruptcy estates could be liable for unnecessary post-petition administrative liabilities.

31.    In addition, within one (1) business day of the Closing, the Debtors should be required to file schedules all of leases assumed, assigned, or rejected pursuant to the sale of the Debtors' assets.  Likewise, at the conclusion of the Designation Rights Period, the Debtors should be required to file such schedules again to note the leases that have been assumed, assumed and assigned, or rejected since the Closing.

## JOINDER IN OBJECTIONS OF OTHER LANDLORDS

32.    To the extent not inconsistent with this Objection, the Landlords join in the objections to the Motion asserted by other landlords and contract counterparties.

## RESERVATION OF RIGHTS

33.    The Landlords reserve their rights to amend and/or supplement this Objection and to raise any additional objections to the Motion at the Sale Hearing.

34.    The Landlords also reserve their rights to object to the assumption and assignment of the Leases on any basis, including, without limitation, that the Debtors or Proposed Assignee have failed to provide adequate assurance of future performance.

**WHEREFORE**, the Landlords respectfully request that the Court enter an order (i) denying the Motion unless it is modified as requested herein; and (ii) granting such other and further relief as this Court deems just and proper.

Dated:  February 10, 2020

**LAW OFFICE OF SUSAN E. KAUFMAN, LLC**

By:  */s/ Susan E. Kaufman*
Susan E. Kaufman (DE Bar No. 3381)
919 N. Market Street, Suite 460
Wilmington, DE 19801
Tel: (302) 472-7420
Fax: (302) 792-7420
Email: skaufman@skaufmanlaw.com

-and-

**KELLEY DRYE & WARREN LLP**

Robert L. LeHane, Esq.
Jennifer D. Raviele, Esq.
Michael W. Reining, Esq.
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897

*Counsel to Hines Global REIT Inc., Jones Lang LaSalle Americas, Inc., QIC Properties US, Inc., Regency Centers, L.P., ShopCore Properties, L.P., SITE Centers Corp., and Turnberry Associates.*
