**Exhibit 1**

Store Closing Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FOREVER 21, INC., *et al.*,[1] | ) | Case No. 19-12122 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 81** |

### ORDER (I) AUTHORIZING THE DEBTORS TO ENTER INTO
### THE CONSULTING AGREEMENT, (II) APPROVING PROCEDURES
### FOR STORE CLOSING SALES, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order")  (a) authorizing the Debtors to enter into the Consulting Agreement, attached hereto as **Annex 1**, (b) authorizing and approving the Store Closing Procedures, attached hereto as **Annex 3**, with such sales to be free and clear of all liens, claims and encumbrances, (c) authorizing the Debtors to conduct the Store Closings, and (d) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration and the Store Closing Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter an Order consistent with Article III of the United States Constitution; and this Court

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Forever 21, Inc. (4795); Alameda Holdings, LLC (2379); Forever 21 International Holdings, Inc. (4904); Forever 21 Logistics, LLC (1956); Forever 21 Real Estate Holdings, LLC (4224); Forever 21 Retail, Inc. (7150); Innovative Brand Partners, LLC (7248); and Riley Rose, LLC (6928).  The location of the Debtors' service address is: 3880 N. Mission Road, Los Angeles, California 90031.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided, as set forth herein; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[3]

1.      The Debtors have advanced sound business reasons for seeking to enter into the Consulting Agreement and adopt the Store Closing Procedures as set forth in the Motion and at the Hearing and entering into the Consulting Agreement is a reasonable exercise of the Debtors' business judgment and in the best interests of the Debtors and their estates.

2.      The conduct of the Sales in accordance with the Store Closing Procedures will provide an efficient means for the Debtors to dispose of the Store Closure Assets.

3.      The Consulting Agreement was negotiated, proposed, and entered into by the Consultant and the Debtors without collusion, in good faith, and from arm's-length bargaining positions.

4.      Entry into the Consulting Agreement is a sound exercise of the Debtors' business judgment.

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P. 7052.

5.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

6.      The Store Closings and Sales are in the best interest of the Debtors' estates.

7.      The Debtors have represented that they are neither selling nor leasing personally identifiable information pursuant to the Motion, although the Consultant will be authorized to distribute emails and promotional materials to the Debtors' customers consistent with the Debtors' existing policies on the use of consumer information.

8.      The Consultant submitted a declaration identifying the Consultant's connections to certain creditors and parties in interest in these cases [Docket Nos. 264, 265].

9.      The entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore IT IS HEREBY ORDERED THAT:

10.      The Motion is granted on a final basis as provided herein.

11.      The Debtors are authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Order.

12.      To the extent of any conflict between this Order, the Store Closing Procedures, and the Consulting Agreement, the terms of this Order shall control over all other documents and the Store Closing Procedures shall control over the Consulting Agreement.

13.      Notwithstanding Bankruptcy Rule 6004(h), this Order shall take effect immediately upon its entry.

**I.      Authority to Enter into the Consulting Agreement.**

14.      Entry into the Consulting Agreement by the Debtors pursuant to section 363(b)(1) of the Bankruptcy Code is approved on a final basis.  The Debtors are authorized to act and perform

in accordance with the terms of the Consulting Agreement, including making payments required by the Consulting Agreement to the Consultant, without the need for any application of the Consultant or a further order of the Court; *provided* that payment of any enhancement to the Base Consulting Fee shall only be made with the consent of the Creditors' Committee and the DIP Agents or further order of this Court. All parties' rights with respect to any motion seeking enhancement of the Base Consulting Fee are reserved.

15.    With respect to reasonable and documented costs and expenses incurred by the Consultant pursuant to the Consulting Agreement and fees due to the Consultant on account of services provided from the Petition Date through the date of entry of this Order, the Consultant shall be entitled to and shall receive reimbursement of such reasonable and documented costs and expenses incurred and fees earned pursuant to the Consulting Agreement without the need for any further application to or approval of the Court and/or compliance with any fee guidelines established by the Office of the United States Trustee. All such payments of fees and reimbursement of expenses shall be free and clear of any and all encumbrances.

16.    Notwithstanding anything to the contrary in the Consulting Agreement, the Debtors and their estates shall not indemnify the Consultant except as may be provided in the Consulting Agreement.

**II.    Authority to Engage in Sales and Conduct Store Closings.**

17.    The Debtors are authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, but not directed, to immediately conduct Sales at the Closing Stores in accordance with this Order, the Store Closing Procedures, and the Consulting Agreement, as may be modified by a Side Letter (as defined below) between the Debtors and/or the Consultant and the landlords at the closing locations.

18.    The Store Closing Procedures are approved in their entirety.

4

19.    The Debtors are authorized, but not directed, to discontinue operations at the Closing Stores in accordance with this Order and the Store Closing Procedures.

20.    All entities that are presently in possession of some or all of the Merchandise or FF&E (as defined in the Consulting Agreement) in which the Debtors hold an ownership interest that are or may be subject to the Consulting Agreement or this Order hereby are directed to surrender possession of such Merchandise or FF&E to the Debtors or the Consultant.

21.    Neither the Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including, without limitation, any Governmental Unit (as defined in Bankruptcy Code section 101(27)) or landlord, to conduct the Sales and to take the related actions authorized herein.

**III.    Conduct of the Sales.**

22.    All newspapers and other advertising media in which the Sales may be advertised and all landlords are directed to accept this Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Sales and the sale of Merchandise, FF&E, and Additional Consultant Goods pursuant to the Consulting Agreement, including, without limitation, to conduct and advertise the sale of the Merchandise, FF&E, and Additional Consultant Goods in the manner contemplated by and in accordance with this Order, the Store Closing Procedures, the Consulting Agreement, and Side Letters (as defined below).

23.    Subject to the Dispute Resolution Procedures set forth in paragraph 42 below, the Debtors and Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreement and to conduct the Store Closings without necessity of further order of this Court as provided in this Order, the Consulting Agreement, or the Store Closing Procedures, including, but not limited to, advertising the sale as a "store closing sale," "sale on everything," "everything must go," or similar-themed sales through the posting of

signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of signwalkers and street signage; *provided*, however, that only Debtor-approved terminology will be used at each Closing Store in connection with the Sales.

24.     Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Merchandise, FF&E, and Additional Consultant Goods, to the extent that disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, banners or other advertising and the Debtors and the Consultant are unable to resolve the matter consensually, any party may request an immediate telephonic hearing with this Court pursuant to these provisions.  Such hearing will, to the extent practicable, be scheduled initially within two (2) business days of such request.  This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

25.     In accordance with section 8.3 of the Consulting Agreement, and subject to the Debtors' prior consent, the Consultant is authorized to supplement the Merchandise in the Closing Stores (including any Supplemental Closing Store(s)) with Additional Consultant Goods; *provided* that any such Additional Consultant Goods must be of like kind and no lesser quality than the Merchandise in the Sale; *provided, further* that the Debtors shall consult with the Creditors' Committee with respect to the inclusion of any Additional Consultant Goods.

26.     All transactions relating to the Additional Consultant Goods are, shall be construed as, and are acknowledged by the Debtors to be a true consignment from Consultant to the Debtors under Article 9 of the Uniform Commercial Code in effect in the State of Delaware (the "UCC"),

and not a consignment for security purposes. At all times and for all purposes, the Additional

Consultant Goods and their proceeds shall be the exclusive property of the Consultant, and no

other person or entity (including, without limitation, the Debtors, or any third party claiming a

security interest in the Debtors' property, including any of the Debtors' secured lenders) shall have

any claim against any of the Additional Consultant Goods or the proceeds thereof, subject to the

Consulting Agreement (which, for the avoidance of doubt, provides the Debtors shall receive

five (5) percent of the gross proceeds (excluding sales taxes) from the sale of the Additional

Consultant Goods). The Additional Consultant Goods shall at all times remain subject to exclusive

control of the Consultant. The Debtors shall, at Consultant's sole cost and expense, insure

Additional Consultant Goods and, if required, promptly file any proofs of loss with regard thereto.

Consultant is hereby granted a first priority security interest in (i) the Additional Consultant Goods

and (ii) the Additional Consultant Goods proceeds, which security interest shall be deemed

perfected on an final basis pursuant to this Order without the requirement of filing UCC financing

statements or providing notifications to any prior secured parties (provided that Consultant is

hereby authorized to deliver any notices and file any financing statements and amendments thereof

under the applicable UCC identifying Consultant's interest in the Additional Consultant Goods

(and any proceeds from the sale thereof) as consigned goods thereunder and the Debtors as the

consignee therefor, and Consultant's security interest in such Additional Consultant Goods and

Additional Consultant Goods proceeds). As part of each weekly reconciliation, the Debtors shall

turnover all proceeds from the sale of Additional Consultant Goods to the Consultant, net of any

fee payable to the Debtors pursuant to the Consulting Agreement.

27.      Except as expressly provided in the Consulting Agreement, the sale of the

Merchandise, FF&E, and Additional Consultant Goods shall be conducted by the Debtors and the

Consultant notwithstanding any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closings or the Sales (including the sale of the Merchandise, FF&E, and Additional Consultant Goods) and the rejection of leases, abandonment of assets, or "going dark" provisions, and such provisions shall not be enforceable in conjunction with the Sales or the Store Closings. Breach of any such provisions in these chapter 11 cases in conjunction with the Store Closings or the Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided that* the Store Closings and Sales are conducted in accordance with the terms of this Order and the Store Closing Procedures. The Consultant and landlords of the Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Store Closing Procedures and, for the avoidance of doubt, the terms of the applicable Sales, without further order of the Court, and such Side Letters shall be binding as among the Consultant and any such landlords; *provided* that nothing in such Side Letters affects the provisions in paragraphs 36 or 42 of this Order. In the event of any conflict between the Store Closing Procedures, this Order, and any Side Letter, the terms of such Side Letter shall control.

28.    Notwithstanding anything to the contrary in this Order or the Consulting Agreement, the Debtors shall not sell or abandon FF&E that the Debtors know is not owned by the Debtors; *provided* that the Debtors will either (a) provide for the return of such FF&E to the Debtors' headquarters or (b) return such FF&E to the applicable lessor.

29.    Except as expressly provided for herein or in the Store Closing Procedures, and except with respect to any Governmental Unit (as to which paragraphs 42 and 43 shall apply), no person or entity, including, but not limited to, any landlord, licensor, service provider, utility, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder

8

consummation of the Sales or the sale of Merchandise, FF&E, and Additional Consultant Goods, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such Sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service provider, utility, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Sales and/or the Store Closings, and/or (b) instituting any action or proceeding in any court (other than this Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords at the Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sales or other liquidation sales at the Closing Stores and/seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

30.     In accordance with and subject to the terms and conditions of the Consulting Agreement, the Consultant shall have the right to use the Stores and all related Store services, furniture, fixtures, equipment, and other assets of the Debtors for the purpose of conducting the Sales, free of any interference from any entity or person, subject to compliance with the Store Closing Procedures and this Order.

31.     During the Sale Term, the Debtors shall be authorized to accept the Debtors' validly-issued gift certificates and gift cards that were issued by the Debtors prior to the Sale Commencement Date (as defined in the Consulting Agreement), in accordance with the Debtors' gift certificate and gift card policies and procedures as they existed on the Petition Date, and accept returns of Merchandise sold by the Debtors prior to the Sale Commencement Date; *provided* that such return is otherwise in compliance with the Debtors' return policies in effect as of the date

such item was purchased and the customer is not repurchasing the same item so as to take advantage of the sale price being offered by the Debtors in the Sales.

32.     All sales of Store Closure Assets shall be "as is" and final.  Returns related to the purchase of Store Closure Assets shall not be accepted at stores that are not participating in the Sales.  However, as to the Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

33.     The Consultant shall not be liable for sales taxes except as expressly provided in the Consulting Agreement and the payment of any and all sales taxes is the responsibility of the Debtors.  The Debtors are directed to remit all taxes arising from the Sales to the applicable Governmental Units as and when due, *provided* that in the case of a *bona fide* dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  The Consultant shall collect, remit to the Debtors, and account for sales taxes as and to the extent provided in the Consulting Agreement.  This Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

34.     Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell Store Closure Assets free and clear of any and all liens, claims, encumbrances, and other interests as provided for herein because in each case, one or more of the standards set forth in section 363(f)(1)–(5) has been satisfied; *provided*, *however*, that any such

liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Store Closure Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Store Closure Assets, subject to any claims and defenses that the Debtors may possess with respect thereto and the Consultant's fees and expenses (as provided in the Consulting Agreement).

35.     To the extent that the Debtors propose to sell or abandon FF&E or any other property that may contain "personally identifiable information," as that term is defined in section 101(41A) of the Bankruptcy Code, or other personal and/or confidential information about the Debtors' employees and/or customers, or any other individual (the "Confidential Information"), the Debtors shall remove the Confidential Information from such items of FF&E or other property before such sale or abandonment.

36.     The Debtors are authorized and empowered to transfer Merchandise, FF&E, and Additional Consultant Goods among, and into, the Closing Stores. The Debtors are further authorized to sell the FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreement and this Order, including, but not limited to, Closing Store signage; *provided* that the Debtors are not authorized to abandon, and are directed to remove, any hazardous materials defined under applicable law from any leased premises as and to the extent they are required to do so by applicable law; *provided*, *further* that the Debtors shall not abandon FF&E they know a third party has asserted a lien against without providing notice to such party.

37.     Notwithstanding this or any other provision of this Order, nothing shall prevent or be construed to prevent the Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates from providing additional services to and/or bidding on the Debtors' assets not subject to the Consulting Agreement or otherwise ("Additional Assets"). The Consultant

11

(individually, as part of a joint venture, or otherwise) or any of its affiliates are hereby authorized to bid on, guarantee, or otherwise acquire such Additional Assets, or offer to provide additional services, notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, *provided* that such services guarantee, transaction, or acquisition is approved by separate order of this Court.

38.    The Debtors are only authorized, in accordance with the terms and conditions of this Order and the Store Closing Procedures, to sell Merchandise and FF&E, through the Sales at their Stores and neither the Debtors nor the Consultant shall be authorized to sell or otherwise dispose of any unsold Merchandise or FF&E remaining at the conclusion of the Sales, and any such sale or other disposition (other than abandonment) shall be subject to consultation with the Creditors' Committee and DIP Agents or further order of this Court.

IV.    **Procedures Relating to Supplemental Closing Stores.**

39.    To the extent that the Debtors seek to conduct the Sales at any Supplemental Closing Store, the Store Closing Procedures and this Order shall apply to the Supplemental Closing Stores, as set forth more fully herein.

40.    At least ten days prior to commencing the Sales at any Supplemental Closing Store, the Debtors will consult with the DIP ABL Agent, the DIP Term Loan Agent, and the Creditors' Committee and file a list of such Supplemental Closing Stores with this Court (each, a "Supplemental Closing Store List") and serve a notice of their intent to conduct, and the estimated date of completion of, the Sales at the Supplemental Closing Stores on the applicable landlords (the "Supplemental Closing Store Landlords") and interested parties, including (a) the U.S. Trustee for the District of Delaware; (b) proposed counsel to the Creditors' Committee; (c) counsel to the DIP ABL Agent and the Prepetition ABL Agent; (d) counsel to the DIP Term Loan Agent; (e) co-counsel to the Consultant; (f) the United States Attorney's Office for the District of

Delaware; (g) the Internal Revenue Service; (h) the state attorneys general for all states in which

the Debtors conduct business; (i) counsel to certain majority equity holders for Debtor Forever 21,

Inc.; (j) the Dispute Notice Parties; and (k) any party that requests service pursuant to Bankruptcy

Rule 2002, by email (to the extent available to the Debtors) or overnight mail.  With respect to

Supplemental Closing Store Landlords, the Debtors will serve such notice by overnight mail to the

notice address set forth in the lease for such Supplemental Closing Store (or, if none, at the last

known address available to the Debtors) and to counsel thereto, if known.

41.     The Supplemental Closing Store Landlords and any interested parties shall have ten

days after service of the applicable Supplemental Closing Store List to object to the application of

this Order.  If no timely objections are filed with respect to the application of this Order to a

Supplemental Closing Store, the Debtors are authorized, pursuant to sections 105(a), and 363(b)

and (f) of the Bankruptcy Code, to proceed with conducting the Sales at the Supplemental Closing

Store in accordance with this Order, the Store Closing Procedures, and the Consulting Agreement.

If any objections are filed with respect to the application of this Order to a Supplemental Closing

Store and such objections are not resolved, the objections and the application of this Order to the

Supplemental Closing Store will be considered by the Court at the next regularly scheduled

omnibus hearing, subject to the rights of any party to seek relief on an emergency basis on

shortened notice, to the extent necessary.

**V.      Dispute Resolution Procedures with Governmental Units.**

42.     Nothing in this Order, the Consulting Agreement, or the Store Closing Procedures,

releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under

environmental laws or regulations (or any associated liabilities for penalties, damages, cost

recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or

operator of the property after the date of entry of this Order.  Nothing contained in this Order, the

Consulting    Agreement,    or    the    Store    Closing    Procedures    shall    in    any    way
(a) diminish the obligation of any entity to comply with environmental laws or (b) diminish the
obligations of the Debtors to comply with environmental laws consistent with its rights and
obligations as debtor in possession under the Bankruptcy Code. The Store Closings and the Sales
shall not be exempt from laws of general applicability, including, without limitation, public health
and safety, criminal, tax, labor, employment (including applicable WARN Act obligations),
environmental, antitrust, fair competition, traffic, and consumer protection laws, including
consumer laws regulating deceptive practices and false advertising (collectively, "General Laws").
Nothing in this Order, the Consulting Agreement, or the Store Closing Procedures, shall alter or
affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in
this Order shall be deemed to bar any Governmental Unit (as such term is defined in section
101(47) of the Bankruptcy Code) from enforcing General Laws, subject to the Debtors' rights to
assert in that forum or before this Court that any such laws are not in fact General Laws or that
such enforcement is impermissible under the Bankruptcy Code or this Order.  Notwithstanding
any other provision in this Order, no party waives any rights to argue any position with respect to
whether the conduct was in compliance with this Order and/or any applicable law, or that
enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Order
shall be deemed to have made any rulings on any such issues.

  43. To the extent that the sale of Merchandise, FF&E, or Additional Consultant Goods
is subject to any Liquidation Sale Laws, including any federal, state or local statute, ordinance, or
rule, or licensing requirement directed at regulating "going out of business," "store closing,"
similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and non-
deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-

14

walkers solely in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits, or bulk sale restrictions that would otherwise apply solely to the sale of the Merchandise, FF&E, or Additional Consultant Goods, the Dispute Resolution Procedures in this section shall apply:

a.  Provided that the Sales are conducted in accordance with the terms of this Order and the Store Closing Procedures, and in light of the provisions in the laws of many Governmental Units (as defined in the Bankruptcy Code) that exempt court-ordered sales from their provisions, the Debtors and the Consultant will be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Sales in accordance with the terms of this Order and the Store Closing Procedures without the necessity of further showing compliance with any such Liquidation Sale Laws.

b.  Within three (3) business days after entry of this Order, the Debtors shall have served by email, facsimile, or first-class mail, copies of this Order, the Consulting Agreement, and the Store Closing Procedures on the following: (i) the landlords for the Closing Stores; (ii) the Attorney General's office for each state in which the Sales are being held; (iii) the county consumer protection agency or similar agency for each county in which the Sales are being held; (iv) the division of consumer protection for each state in which the Sales are being held; and (v) the chief legal counsel for each local jurisdiction in which the Closing Stores are located (collectively, the "Dispute Notice Parties").

c.  With respect to any Supplemental Stores, within three (3) business days after filing any Supplemental Closing Store List with the Court, the Debtors will serve by email, facsimile, or first-class mail, copies of this Order, the Consulting Agreement, the Store Closing Procedures, and the Supplemental Closing Store List on the Dispute Notice Parties.

d.  To the extent that there is a dispute arising from or relating to the Sales, this Order, the Consulting Agreement, or the Store Closing Procedures, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten days following entry or service of any Supplemental Closing Store List, as applicable, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "Dispute Notice") explaining the nature of the dispute to: (i) the Debtors, 3880 N. Mission Road, Los Angeles, California 90031, Attn: Scott Hampton (scott.hampton@Forever21.com); (ii) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. (jsussberg@kirkland.com) and Aparna Yenamandra (aparna.yenamandra@kirkland.com) and Kirkland &

15

Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Anup Sathy, P.C. (asathy@kirkland.com); (iii) proposed co-counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier 19801), Attn: Laura Davis Jones (ljones@pszjlaw.com), James E. O'Neill (jo'neill@pszjlaw.com), and Timothy P. Cairns (tcairns@pszjlaw.com); (iv) proposed special counsel to the Debtors, Montgomery McCracken Walker & Rhoads, 437 Madison Avenue, New York, NY 10022, Attn: Maura I. Russell; (v) co-counsel to the Consultant, Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, New York 10036, Attn: Steven E. Fox (sfox@riemerlaw.com); (vi) co-counsel to the Consultant, Pepper Hamilton, LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, Delaware 19899-1709, Attn: Douglas Herrmann (herrmand@pepperlaw.com); (vii) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Juliet M. Sarkessian (Juliet.M.Sarkessian@usdoj.gov); (viii) proposed counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 6th Avenue, New York, New York 1036, Attn: Adam C. Rogoff and Nathaniel Allard; (iv) counsel to the administrative agent under the Debtors' prepetition revolving credit facility and the Debtors' proposed debtor in possession ABL financing facility, Morgan, Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts 02110, Attn: Julia Frost-Davies (Julia.frost-davies@morganlewis.com) and Christopher L. Carter (christopher.carter@morganlewis.com) and Richards, Layton & Finger, PA, One Rodney Square, 920 North King St., Wilmington, Delaware 19801, Attn: Mark D. Collins (collins@rlf.com); and (x) counsel to the administrative agent under the Debtors' proposed debtor in possession term loan facility, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Adam C. Harris (adam.harris@srz.com), Frederic L. Ragucci (frederic.ragucci@srz.com), and Marc B. Friess (marc.friess@srz.com). If the Debtors, the Consultant, and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

e.   In the event that a Dispute Resolution Motion is filed, nothing in this Order shall preclude the Debtors, a landlord, or any other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (ii) that neither the terms of this Order nor the conduct of the Debtors pursuant to this Order violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to continue to conduct the Sales pursuant to this Order, absent further order of the Court. Upon the entry of this Order, the Court grants authority for the Debtors and the

16

Consultant to conduct the Sales pursuant to the terms of this Order, the Consulting Agreement, and/or the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in this Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

    f.     If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraph (d) above by serving a notice to the other party and proceeding thereunder in accordance with that paragraph. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

44.    Subject to paragraphs 42 and 43 above, each and every federal, state, or local agency, departmental unit, or Governmental Unit with regulatory authority over the Sales, and all newspapers and other advertising media in which the Sales are advertised shall consider this Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors or the Consultant be required to post any bond to conduct the Sales. Nothing in this Order is intended to affect any rights of any Applicable Government Unit to enforce any law affecting the Debtors' conduct of any store closing sale that occurred prior to the Petition Date.

**VI.    Other Provisions.**

45.    The Consultant shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Consultant, in each case, other than as expressly provided for in the Consulting Agreement.

46.    The Debtors shall not be required to comply with any state or local law requiring that the Debtors pay an employee substantially contemporaneously with his or her termination;

*provided* that the Debtors shall pay any accrued wages to each terminated employee as expeditiously as possible and in no event later than the later of (a) such employee's next regularly scheduled payday or (b) 5 business days following the termination date for such employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

47.     Within thirty (30) days of the conclusion of the Store Closing Sales process, the Debtors shall file a summary report of such process that will include (i) the stores closed, (ii) gross revenue from Store Closure Assets sold, and (iii) gross revenue from FF&E sold.

48.     On a confidential basis and for professionals' "eyes only" and upon the written (including email) request of the U.S. Trustee, the DIP ABL Agent, the DIP Term Loan Agent, or the Creditors' Committee (the individual members of the Creditors' Committee may also make such requests), the Debtors shall provide such requesting party, if any, with copies of periodic reports and detailed information regarding the calculation of fees paid to the Consultant and expenses reimbursed to the Consultant concerning the Sales that are prepared by the Debtors, their professionals, or the Consultant.

49.     The Debtors are authorized, but not required, to continue selling goods through their website consistent with their ordinary course of business sales prior to the commencement of the Sales; *provided* that neither the Debtors nor the Consultant may conduct any going-out-of-business, liquidation, or similarly-themed sales from the Debtors' or any other website, including, without limitation, selling merchandise at discounted prices consistent with the Sales, and the Consultant shall not be entitled to the proceeds of such Sales absent the consent of the Creditors' Committee and the DIP Agents or further order of this Court.

50.     Notwithstanding anything to the contrary in this Order, to the extent that any computers, servers, laptops, point-of-sale equipment or any other IT related equipment are being abandoned pursuant to this Order, then prior to the abandonment, such equipment will be scrubbed of any software licensed from Oracle America, Inc. ("Oracle") by the Debtors and the Debtors shall provide certification of such scrubbing, if requested by Oracle.

51.     Notwithstanding anything to the contrary in this Order or the Consulting Agreement, (a) Comenity Capital Bank's ("Comenity") rights, claims, remedies, powers, and defenses under the Program Agreement (as defined in Comenity's limited objection to this Order [Docket No. 253], applicable law, and any orders of this Court, including, without limitation, to seek relief from the automatic stay, adequate protection, payment of administrative expense claims, or to compel the Debtors to assume or reject the Program Agreement, are not affected, primed, subordinated, prejudiced or otherwise impaired by this Order and are reserved and preserved; (b) any FF&E sold or abandoned by the Debtors (i) shall not include any FF&E owned by Comenity (*e.g.*, computer tablets/iPads used for credit card applications) and (ii) shall not include information arising under or related to the Program Agreement, and such information shall be removed from any non-Comenity owned FF&E prior to any sale or abandonment; and (c) in the event that the Consultant or any of its agents receives any information arising under or related to the Program Agreement, the Consultant and its agents shall keep the Program Agreement and any related information strictly confidential.

52.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any particular claim on any grounds; (c) a promise or requirement

to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party in interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Order are valid and the Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens. Any payment made pursuant to this Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

53.    Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to the orders approving entry into debtor in possession financing and authorizing use of cash collateral; *provided*, *however*, that, without limiting the terms of such debtor in possession financing, use of cash collateral, or related orders, all amounts due to the Consultant under the Consulting Agreement shall not be reduced or capped by the terms or conditions of any pre or postpetition financing facilities, restrictions on the use of cash collateral, or orders related thereto. Additionally, in furtherance of Section 10.8 of the Consulting Agreement, not later than two (2) business days after entry of this Order the Debtors shall deliver to the Consultant a cash deposit in the amount of $1,200,000 as security for payment of Consultant's fees and expenses earned and incurred hereunder (the "Consultant's Deposit"); *provided* that Consultant shall apply an amount up to $300,000 of Consultant's Deposit to the payment of in-store signage invoices per the Budget (as defined in the Consulting Agreement),

with the remaining balance of Consultant's Deposit being held by Consultant pending completion of a final reconciliation of the Sale result by Debtors and Consultant.

54.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

55.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

56.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

57.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order or the Consulting Agreement, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords and/or the Consultant for protection from interference with the Store Closings or Sales, (c) any other disputes related to the Store Closings or Sales, and (d) protect the Debtors and/or the Consultant against any assertions of any liens, claims, encumbrances, and other interests.  No such parties or person shall take any

action against the Debtors, the Consultant, the landlords, the Store Closings, or the Sales until this

Court has resolved such dispute.  This Court shall hear the request of such parties or persons with

respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

Dated: October 28th, 2019
Wilmington, Delaware

KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

## Annex 1

**Consulting Agreement**

## CONSULTING AGREEMENT

This Consulting Agreement, dated as of September 30, 2019 (this "Agreement") is made by and between FOREVER 21, INC. and certain of its U.S. affiliates identified on Exhibit " A" annexed hereto (collectively, the "Company") and a contractual joint venture comprised of GORDON BROTHERS RETAIL PARTNERS, LLC and HILCO MERCHANT RESOURCES, LLC, each a limited liability company organized under the laws of the state of Delaware, with a principal place of business located at 800 Boylston Street, 27th Floor, Boston, MA 02199 and 5 Revere Drive, Suite 206, Northbrook, IL 60062, respectively (together, the "Consultant").

## R E C I T A L S:

WHEREAS, the Company desires to retain Consultant to provide consulting services to Company with respect to the disposition of the Merchandise and FF&E (each as defined below) and related products and services, in the context of a "Store Closing Sale", "Total Inventory Blowout'", "Everything Must Go", "Everything On Sale" and similar themed sale (the "Sale") (but not as "going out of business" sales, or where prohibited by the Underlying Store Lease or applicable state or local law until such time as the Approval Order (as defined below) is entered, as "Store Closing" sales) at (i) some or all of the Company's retail store locations identified on Exhibit A attached hereto (each individually, a "Store", and collectively, the "Stores"; and (ii) certain other Company's retail store locations of the Company (collectively, the "Additional Stores") only to the extent designated by the Company as an Additional Designated Closing Location, following designation thereof in accordance with Section 6.1 hereof (each such Additional Designated Closing Locations, once designated, together with the Stores, a "Closing Location" and collectively, the "Closing Locations").

WHEREAS, the Company commenced a Chapter 11 Proceeding in the United States Bankruptcy Court in the District of Delaware (the "Bankruptcy Court") on September 29, 2019;

WHEREAS, Consultant is willing to serve as the Company's consultant for the purpose of providing such consulting services, upon the terms and conditions and in the manner set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.  **Definitions**

For the purposes of this Agreement, the terms listed below shall have the respective meanings indicated:

"Central Services" shall mean those central administrative services provided by Company that are necessary or appropriate for the conduct and support of the Sale, including, but not limited to, use and/or access to Company's: (i) inventory control system, (ii) payroll system, (iii) accounting system, (iv) office facilities (including use of reasonably sized offices located at Company's central office facility to effect the Sale), (v) central administrative services and personnel to process and perform sales audit, banking, accounting, sale and expense

reconciliation, and other normal course administrative services customarily provided to or for the benefit of operating the Closing Locations, (vi) no less than twice weekly email messages targeted to the customers of the Closing Locations, which email messages will be designed by Consultant (and approved by Company) and sent by Company or Company's existing service provider and (vii) such other central office services reasonably necessary or appropriate for the Sale.

"Consultant Incurred Expenses" shall mean the aggregate amount of (i) Supervisor Costs; (ii) advertising expenses (including direct media costs, agency fees and production costs) (collectively, "Advertising Costs"), and interior and exterior signage and sign walkers ("Signage Costs") used in connection with the Sale; (iii) reasonable and documented travel expenses for members of Consultant's team (excluding Supervisors) in an aggregate amount not to exceed $10,000; (iv) Consultant's reasonable and documented general legal fees incurred in connection with the negotiation of this Agreement in an aggregate amount not to exceed $25,000; provided, however, in addition to, and not as part of, such capped amount, Company shall also reimburse Consultant for its reasonable and documented legal fees and expenses incurred in connection with negotiating any "side letters" with landlords of the Stores; and (v) certain miscellaneous expenses, in each case in accordance with the budget of Consultant Incurred Expenses attached hereto as Exhibit B (the "Budget").

"Gross Sales" shall mean the sum of all proceeds derived from the sale of Merchandise during the Sale Term (excluding amounts paid for sales, excise, or gross receipts taxes); plus (i) all proceeds of fire, flood or other insurance covering the Merchandise, and (ii) the amount of any gift cards or merchandise credits redeemed at the Closing Locations during the Sale Term; provided, however, that it is expressly understood and agreed, that Gross Sales shall not include sales (i) made by or on behalf of Company prior to the Sale Commencement Date or after the Sale Termination Date, regardless of when the applicable Merchandise is delivered to or picked up by the customer(s); and (ii) at Additional Stores until such time as they become Additional Designated Closing Locations, and the Sale commences at such location, pursuant to Section 6.1 hereof.

"Lender Agent" shall mean JP Morgan Chase Bank, N.A., as administrative agent and collateral agent for itself and the other Lenders.

"Lenders" means those lenders under that certain Credit Agreement, dated as of March 7, 2017 (as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof), by and among, among others, the Company, such lenders and the Lender Agent.

"Merchandise" shall mean all inventory that is owned by Company and actually sold in the Closing Locations during the Sale Term, the aggregate amount of which shall be determined using the gross rings inventory taking method, which may include inventory that (i) is located at, or in transit to the Closing Location as of the applicable Sale Commencement Date with respect to each such Closing Location; and/or (ii) is located at the Company's distribution centers and is earmarked for sale in the Closing Locations by the Company prior to the Sale Commencement Date as mutually agreed with Consultant; provided, however, the Company and the Consultant

agree that "Merchandise" shall expressly exclude: (1) goods which belong to sublessees, licensees or concessionaires of Company; (2) goods held by the Company on memo or consignment, unless otherwise agreed to by Company (in consultation with Lender Agent) and Consultant; (3) FF&E; (4) Additional Consultant Goods; and (5) goods sold in the Additional Stores until such time as they become Additional Designated Closing Locations, and the Sale commences at such location, pursuant to Section 6.1 hereof.

"Sale Commencement Date" shall mean the first day following entry of the Approval Order of the Bankruptcy Court approving this Agreement, but in no event later than October 31, 2019, except with respect an Additional Designated Closing Location, in which case the Sale Commencement Date shall be the first day following the Company's designation of such Additional Store as an Additional Designated Closing Location and expiration of the notice period, if any, associated with such Additional Store Supplement, as provided in Section 6.1 below, unless otherwise mutually agreed between Company and Consultant.

"Sale Expenses" shall mean all expenses incurred in connection with and attributable to the Sale and the operation of the Stores during the Sale Term (including without limitation all Consultant Incurred Expenses and all other store-level and corporate expenses associated with the Sale such as payroll and occupancy).

"Sale Guidelines" shall mean the Sale Guidelines mutually agreed by Company and Consultant and annexed to the Store Closing Motion which shall serve as the guidelines under which the Sale shall be conducted.

"Sale Term" shall mean with respect to each Closing Location, the period of time beginning with the Sale Commencement Date and ending on the Sale Termination Date.

"Sale Termination Date" shall mean a date no later than December 31, 2019 (unless extended upon mutual agreement of Company and Consultant; or such earlier termination date(s) as determined by the Company and the Consultant; except with respect to an Additional Designated Closing Location, in which case, the Sale Termination Date shall be a date mutually agreed between Company and Consultant, which in any event shall be no later than the last date fixed by the Bankruptcy Court for the Company to assume or reject the lease for such Additional Designated Closing Location.

"Services" shall mean the services to be performed by Consultant pursuant to Section 2.2 of this Agreement.

"Store Employees" shall mean those employees of the Company retained by Company to conduct the Sale following consultation with Consultant; provided however that Company shall exercise commercially reasonable best efforts to ensure that there are sufficient Store Employees to reasonably conduct the Sale (as to number, and sales and management quality, with reference to Company's historic practices and periods); provided, further that in the event Company nevertheless is unable to ensure that there are sufficient Store Employees to reasonably conduct the Sale (as to number, and sales and management quality, with reference to Company's historic practices and periods), Company shall not be deemed in breach of this Agreement and Consultant shall reasonably and equitably increase the Budget (with the consent of Lender

Agent) to reflect the Consultant's need to obtain qualified temporary employees and/or additional supervisors to adequately staff the Closing Locations.

"Supervisor(s)" shall mean the individual(s) whom Consultant shall engage to provide Services in the Closing Locations to Company in connection with the Sale in accordance with Section 2.3 below.

"Supervisor Costs" shall mean the following customary costs and expenses incurred by Consultant with respect to Supervisors in accordance with the Budget,: (i) the weekly compensation paid during the Sale Term per Supervisor (which in each case represents Consultant's actual costs); (ii) reasonable and documented travel expenses of the Supervisors between Closing Locations during the Sale Term, and to and from the Closing Locations at the commencement and conclusion of the Sale (and reasonable travel to and from the Supervisors' homes during the Sale Term as is typical and customary in the liquidation industry); and (iii) Supervisor deferred compensation.

"Underlying Store Leases" shall mean all leases, occupancy agreements, reciprocal easement, license, or similar agreements pursuant to which Company has the right to occupy or utilize the Closing Locations.

## 2.    Consulting Services

2.1    Company hereby retains Consultant and Consultant hereby agrees to serve as the exclusive independent consultant to the Company in connection with the conduct of the Sale as set forth herein. With respect to the Sale, Consultant shall serve as the sole and exclusive consultant to the Company relative to the conduct of the Sale at the Closing Locations throughout the Sale Term.

2.2    On the terms and conditions set forth herein, commencing as of the Sale Commencement Date, the Consultant shall provide the Company with the following Services with respect to the conduct of the Sale:

(i)    provision of approximately [__] qualified Supervisors to supervise and assist Company in its conduct of the Sale as further described in Section 2.3 below, including such lead, regional, financial, and field Supervisors as needed and agreed pursuant to the following sentence to assist Company in conducting the Sale and oversee the Sale process. All Supervisors shall have industry-specific experience conducting "Store Closing", "Total Inventory Blowout", "Everything on Sale", or similarly themed sales and shall act in a professional manner; provided that the determination of the number of Supervisors supplied for the Sale shall be determined jointly by the Company and the Consultant;

(ii)    provide the Company with such oversight, supervision and guidance with respect to the conduct of the Sale and the liquidation and disposal of the Merchandise and FF&E from the Closing Locations as may be required to maximize Gross Sales;

(iv)    recommend and implement appropriate point of purchase, point of sale and external advertising to effectively sell the Merchandise during the Sale Term, consistent with the theme of the Sale and the Sale Guidelines, it being understood that the Sale will be advertised

as a "Total Inventory Blowout", "Store Closing", "Everything Must Go," "Everything on Sale" or similar handles throughout the term of the Sale;

(v)    advise the Company as to appropriate discounting of Merchandise, appropriate staffing levels for the Closing Locations, and appropriate deferred compensation and incentive programs for Store Employees;

(vi)    oversee the display of Merchandise in the Closing Locations;

(vii)    assist Company in the formulation and implementation of a loss prevention security program designed to protect the Merchandise from theft or other shortages;

(viii)    assist Company with accounting functions for the Closing Locations, including evaluation of sales of Merchandise by category, sales reporting and monitoring of expenses, in each case using Company's infrastructure;

(ix)    recommend and implement the transfer and balancing of Merchandise between and among the Closing Locations to maximize results during the Sale;

(x)    participate in weekly calls with representatives of the Company and Lender Agent;

(xi)    provide such other related services deemed necessary or prudent by the Company (in consultation with Lender Agent) and as mutually agreed by the Consultant under the circumstances giving rise to the Sale; and

(xii)    At Company's election, from and after execution of this Agreement until the Sale Commencement Date, consult with Company with respect to the merchandising of the Closing Locations and other matters in preparation for the Sale (the "Pre-Sale Services"), including providing merchandising to maximize gross margin and minimize sales deterioration.

2.3    (a)    In connection with the Sale, Consultant shall directly or indirectly retain and engage the Supervisors. The Supervisors are engaged by Consultant as independent contractors and are not and shall not be deemed to be employees or agents of Company in any manner whatsoever; nor do the Supervisors have any relationship with Company by virtue of this Agreement or otherwise which creates any liability or responsibility on behalf of Company for the Supervisors, except with respect to indemnification pursuant to Section 10.7 hereof. During the Sale Term, the Supervisors shall perform Services during normal Closing Location operating hours and for the period of time prior to the Closing Locations' opening and subsequent to the Closing Locations' closing, as required in connection with the Sale, in Consultant's discretion.

(b)    In consideration of Consultant's engagement of the Supervisors, Company agrees to reimburse Consultant, as a Sale Expense, for the actual Supervisor Costs paid by Consultant for services rendered by the Supervisors during the Sale Term. Company shall reimburse Consultant for all Supervisor Costs weekly, based upon invoices or other documentation reasonably satisfactory to Company (in consultation with the Lender Agent). Company shall not be obligated to pay Supervisor Costs and/or Supervisor deferred compensation that have not been included in, or provided for, in the Budget.

2.4    Title to all Merchandise shall remain with Company at all times during the Sale Term until such Merchandise is sold. Although Consultant shall undertake its obligations under this Agreement in a manner designed to achieve the desired results of the Sale and to maximize the benefits to Company, Company expressly acknowledges that Consultant is not guaranteeing the results of the Sale or insuring the Merchandise. All sales of Merchandise in the Closing Locations shall be made on behalf of Company. Company further agrees that responsibility for the handling of any goods, inventory or other merchandise held by Company and located in the Closing Locations under any consignment, sale or return, or other similar agreement shall lie exclusively with Company, and Consultant shall have no responsibility with respect thereto.

3.    **Expenses; Consultant's Fees**

3.1    Sale Expenses. The Company shall be responsible for all Sale Expenses (including without limitation, all Consultant Incurred Expenses) except solely for any specifically enumerated Consultant Incurred Expenses that exceed the aggregate budgeted amount for such Consultant Incurred Expenses set forth on the budget (the "Budget") annexed hereto and made a part hereof as Exhibit B (which Budget shall only be modified by mutual agreement of the Company, the Consultant and the Lender Agent); provided, that it being understood as between Consultant and the Company that the Budget has been prepared with the understanding that the Company shall be responsible to either advance to Consultant, or pay directly to the relevant vendor, all amounts incurred in respect to Sale-related signage expenses. In connection with the Sale and subject to the limitations set forth in the Budget as to Consultant Incurred Expenses, the Company shall be responsible for the payment of all expenses incurred in connection with the Sale, including without limitation all Sale Expenses (and Consultant shall not be responsible for any such expenses except as expressly provided for in Section 10.1 below). Consultant Incurred Expenses shall not exceed the aggregate amount of Consultant Incurred Expenses set forth on the Budget without the prior written consent of the Company and Lender Agent. The Company shall reimburse Consultant for any reasonable and documented Consultant Incurred Expense on a weekly basis in connection with the weekly Sale reconciliation provided for in Section 4.1 hereof upon presentation of invoices and statements for such expenses, which reimbursement or payment shall be in addition to any Base Consulting Fee, any Pre-Sale Fee or associated expenses, and/or FF&E Fee or FF&E Expenses (each as defined below) earned and payable hereunder.

3.2    Consultant's Compensation.

(a)    Base Consulting Fee. In consideration of Consultant's provision of the Services provided for hereunder, Company shall pay to Consultant, from Gross Sales, a consulting fee in an amount equal to one and one-half percent (1.50%) of the Gross Sales at all of the Closing Locations (including any Additional Designated Closing Location(s) following exercise of the Additional Store Election (each as defined below))(the "Base Consulting Fee").

(b)    Discretionary Fee Enhancement. In consideration of Consultant achieving results that are satisfactory to the Company, Consultant may, at its option, request that the Company approve an enhancement of the Base Consulting Fee in an amount up to one-half percent (0.50%) of the Gross Sales at all of the Closing Locations based on overall performance and performance in transitioning customers to Company's ongoing stores and on-line platform,

which enhancement shall be subject to the exclusive discretion of the Company, following consultation with the Lender Agent.

(c)    Pre-Sale Services:  In the event Company elects to receive Pre-Sale Services, Company shall pay Consultant a fee equal to $20,000 per week ("Pre-Sale Fee") from execution of this Agreement through the Sale Commencement Date, which fee shall be due and payable on Wednesday for the week prior.  In addition to the Pre-Sale Fee, the Company shall reimburse Consultant for any expenses to be incurred in connection with the Pre-Sale Services in accordance with a budget to be mutually agreed upon by the Company and the Consultant (the "Pre-Sale Budget") up to the aggregate amount set forth therein, which expenses shall be reimbursed to Consultant in addition to any Consultant Incurred Expenses and the Budget. Promptly following the execution of the Agreement, the Company shall obtain Bankruptcy Court approval to fund, and shall thereafter promptly fund, to Consultant $75,000 (the "Special Purpose Payment") which shall be held by Consultant until the Final Settlement (defined below). The Company shall not be entitled to apply the Special Purpose Payment to, or otherwise offset any portion of the Special Purpose Payment against, any weekly reimbursement, payment of fees, or other amount owing to Consultant under this Agreement prior to the Final Settlement. Without limiting any of Consultant's other rights, Consultant may apply the Special Purpose Payment to any unpaid obligation owing by Company to Consultant under this Agreement.  Any portion of the Special Purpose Payment not used to pay amounts contemplated by this Agreement shall be returned to Company within three days following the Final Settlement.

(c)    For purposes of calculating Gross Sales, the Company shall keep (i) a strict count of gross register receipts less applicable sales taxes, and (ii) cash reports of sales within each Closing Location.  Register receipts shall show for each item sold the retail price (as reflected on Company's books and records) for such item, and the markdown or other discount granted by Consultant in connection with such sale.  The Company shall make all such records and reports available to Consultant and the Lender Agent during regular business hours upon reasonable notice.

3.3    Fixtures Disposition.  (a)  In addition to the consulting Services provided for herein with respect to the sale of Merchandise, with respect to furniture, fixtures and equipment owned by Company and located at the Closing Locations (collectively, the "FF&E"), Consultant shall sell the FF&E in the Closing Locations for Company's benefit. Consultant shall advertise in the context of advertising for the Sale that items of FF&E at Closing Locations are available for sale, and shall contact and solicit known purchasers and dealers of furniture and trade fixtures. In consideration of providing such services, Consultant shall retain 15.0% of the gross receipts (net only of applicable sales taxes) from all sales or other dispositions of FF&E (the "FF&E Fee").  In addition, Company shall reimburse Consultant for Consultant's reasonable and documented out-of-pocket expenses incurred in connection with the sale or other disposition of the FF&E pursuant to a budget established by mutual agreement of the Company, the Consultant and the Lender Agent (the "FF&E Budget").

(b)    Consultant shall have no liability to Company or any third party for its failure to sell any or all of the FF&E, and shall have the right to abandon such unsold FF&E at the Closing Locations on the applicable Sale Termination Date, provided that such abandonment shall be done in a neat and orderly fashion.

4.    **Sale Proceeds; Weekly Settlement**

4.1    The Company shall collect all proceeds of from the sale of Merchandise and FF&E (including all Gross Sales) and deposit the same in deposit accounts established by Company for the deposit thereof consistent with Company's existing cash management system (which may be Company's existing Store-level deposit accounts) (the "Sale Accounts"). The Company shall, upon request, deliver to Consultant and Lender Agent account statements and such other information relating sale of Merchandise and FF&E (including the Gross Sales and the Sale Accounts) reasonably requested by Consultant or Lender Agent. On Wednesday of each week, commencing on the first Wednesday following the Sale Commencement Date, the Company (in consultation with the Lender Agent) and the Consultant shall reconcile the results of the Sale for the prior week, including, without limitation, Gross Sales, sales of FF&E, Consultant Incurred Expenses, FF&E sale-related expenses, and all fees payable hereunder, including the Base Consulting Fee, the Pre-Sale Fee, if any, and the FF&E Fee, if any. The Company shall promptly pay all amounts due to Consultant for the previous week (subject to the limitations set forth in the Budget, the Pre-Sale Budget, and the FF&E Budget, as applicable).

4.2    No later than fourteen (14) business days following the end of the Sale Term, the Company (in consultation with the Lender Agent) and the Consultant shall complete a Final Settlement and settlement of all amounts contemplated by this Agreement ("Final Settlement"), including, without limitation, the determination and payment of any further fees due Consultant and all reimbursements and payments contemplated hereby (subject to the limitations set forth in the Budget, the Pre-Sale Budget, and the FF&E Budget).

5.    **Closing Location Employees**

5.1    The Company and the Consultant shall cooperate to retain the employees of the Company (including Store Employees), as designated by Consultant from time-to-time, to be utilized to conduct the Sale at the Closing Locations during the Sale Term. Such employees shall remain employees of the Company, and Consultant shall have no liability to such employees (including, without limitation, all the Store Employees and any of Company's other current or former employees) of any kind or nature whatsoever, including, without limitation, with respect to severance pay, termination pay, vacation pay, pay in lieu of reasonable notice of termination, WARN Act payments, or any other costs, expenses, obligations, or liabilities arising from Company's or Company's employment or termination of such employees prior to, during, and subsequent to the Sale Term. Other than advising Company that Consultant no longer desires to utilize the services of any employee in connection with the Sale, Consultant shall not have the right to change the terms of employment of any employees.

6.    **Designation of Closing Locations.**

6.1    At any time prior to the Sale Termination Date, or thereafter with the mutual consent of the Consultant, the Company shall have the right to designate one or more Additional Stores as a Closing Location for inclusion in the Sale (hereinafter, the "Additional Store Election"; and upon exercise of the Additional Store Election in the manner provided herein, each such Additional Store a "Additional Designated Closing Location", and collectively the "Additional Designated Closing Locations"); provided however, the aggregate number of

Closing Locations, including any Additional Designated Closing Locations, shall not exceed 276 unless the Consultant consents. The exercise by the Company of the Additional Store Election as to any Additional Designated Closing Location(s) shall be made by the Company, in its discretion (following consultation with the Lender Agent), by the filing of a written supplement with the Bankruptcy Court (any such supplement, a "Additional Store Supplement") and contemporaneous delivery of same to Consultant and service upon any affected lessor of an Additional Designated Closing Location(s). Each Additional Store Supplement shall identify the affected Additional Designated Closing Location(s) and provide notice of any applicable objection deadline with regard to the conduct of the Sale at such Additional Designated Closing Location(s). Any such Additional Designated Closing Locations included in the Sale shall be deemed to be Closing Locations hereunder, effective upon expiration of the notice period set forth in such Additional Store Supplement and occurrence of the Sale Commencement Date at such Additional Designated Closing Location(s). Upon the Company's exercise of the Additional Store Election with respect to an Additional Designated Closing Location(s): (i) the Company and the Consultant shall mutually agree upon the appropriate adjustments to the Budget and the FF&E Budget to account for the inclusion of the Additional Designated Closing Locations in the Sale.

6.2     The Company shall have the right to remove any Stores from Exhibit A (the "Store Removal Election"), which election shall be exercised no later than October 25, 2019, unless otherwise agreed between the Company and the Consultant, by providing written notice to the Consultant of its election to excluded certain of the Stores from the Sale (each a "Removed Store" and collectively, the "Removed Stores"). Once a Store is designated as a Removed Stores, it shall be excluded from the Sale, and the Company and the Consultant shall mutually agree upon the appropriate adjustments to the Budget and the FF&E Budget to account for the exclusion of such Removed Store(s) from the Sale; provided however, notwithstanding the designation of a location as a Removed Store, the Company reserves the right to, at a later date, designate such location as an Additional Designated Closing Locations, subject to the limitations set forth in Section 6.1 above.

7.     **Representations And Warranties**

7.1     Representations And Warranties Of Consultant:     Each party comprising the Consultant hereby represents, warrants and covenants in favor of Company as follows:

(a)     Consultant has taken all necessary action required to authorize the execution, performance and delivery of this agreement, and to consummate the transactions contemplated hereby.

(b)     Upon execution by the parties hereto, this Agreement is a valid and binding obligation of Consultant enforceable in accordance with its terms.

(c)     No action or proceeding has been instituted or, to Consultant's knowledge, threatened, affecting the consummation of this Agreement or the transactions contemplated herein.

(d)     Consultant will comply with and act in accordance with any and all applicable state and local laws, rules and regulations and other legal obligations of all governmental authorities and the terms/restrictions of the Underlying Store Leases, except as otherwise provided in the Approval Order or in any other order of the Bankruptcy Court.

7.2     <u>Representations And Warranties Of Company</u>: The Company hereby represents, warrants and covenants in favor of Consultant as follows:

(a)     Company has taken all necessary action required to authorize its execution, performance and delivery of this Agreement, and to consummate the transactions contemplated hereby.

(b)     Upon execution by the parties hereto, this Agreement is a valid and binding obligation of the Company enforceable in accordance with its terms, subject only to any applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally and the availability of equitable remedies.

(c)     No action or proceeding has been instituted or, to Company's knowledge, threatened, affecting the consummation of this Agreement or the transactions contemplated herein.

(d)     Company has maintained its pricing files in the ordinary course of business, and prices charged to the public for goods are the same in all material respects as set forth in such pricing files for the periods indicated therein, and all pricing files, records, and information received by Consultant are true and accurate in all material respects.

## 8.     **Affirmative Duties Of Consultant**

8.1     To the extent necessary, and except as provided in the Approval Order, Consultant shall assist Company in obtaining all required permits and governmental consents required in order to conduct the Sale, and shall ensure that the Sale is conducted in accordance with all applicable laws, regulations and ordinances.

8.2     The Consultant shall indemnify and hold Company and its affiliates, and their respective officers, directors, employees, agents, lenders and independent contractors (collectively, "<u>Company Indemnified Parties</u>"), harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from, or related to:

(i)     Consultant's material breach or material failure of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;

(ii)     any harassment or any other unlawful, tortious or otherwise actionable treatment of any employees or agents of Company (including, without limitation, any Store Employees) by Consultant or any of Consultant's representatives (including, without limitation, any Supervisor);

10

(iii)    any claims by any party engaged by Consultant as an employee or independent contractor (including, without limitation, any Supervisor) arising out of such employment or engagement; except where due to the negligence or willful misconduct of Company or Company Indemnified Parties or from a breach of the terms hereof by Company; and

(iv)    the negligence or willful misconduct of Consultant or any of its officers, directors, employees, agents or representatives, or any Supervisor.

8.3    In connection with the Sale, and subject to compliance with applicable law (or if and when applicable, the Approval Order) and consent of the Company, Consultant shall have the right, at Consultant's sole cost and expense, to supplement the Merchandise in the Sale with additional goods procured by Consultant which are of like kind, and no lesser quality to the Merchandise in the Sale ("Additional Consultant Goods"). The Additional Consultant Goods shall be purchased by Consultant as part of the Sale, and delivered to the Closing Locations at Consultant's sole expense (including labor, freight and insurance relative to shipping such Additional Consultant Goods to the Closing Locations). Sales of Additional Consultant Goods shall be run through Company's cash register systems; provided, however, that Consultant shall mark the Additional Consultant Goods using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Consultant Goods from the sale of Merchandise. Consultant and Company shall also cooperate so as to ensure that the Additional Consultant Goods are marked in such a way that a reasonable consumer could identify the Additional Consultant Goods as non-Company goods. Additionally, Consultant shall provide signage in the Closing Locations notifying customers that the Additional Consultant Goods have been included in the Sale. Absent Company's written consent, and Consultant's agreement to reimburse Company for any associated expenses, Consultant shall not use Company's distribution centers for any Additional Consultant Goods.

(B)    Consultant shall pay to Company an amount equal to five percent (5.0%) of the gross proceeds (excluding sales taxes) from the sale of the Additional Consultant Goods (the "Additional Consultant Goods Fee"), and Consultant shall retain all remaining amounts from the sale of the Additional Consultant Goods. Consultant shall pay Company its Additional Consultant Goods Fee in connection with the Final Settlement with respect to sales of Additional Consultant Goods sold by Consultant during the Sale Term (or at such other mutually agreed upon time).

(C)    Consultant and Company intend that the transactions relating to the Additional Consultant Goods are, and shall be construed as, a true consignment from Consultant to Company in all respects and not a consignment for security purposes. Subject solely to Consultant's obligations to pay to Company the Additional Consultant Goods Fee, at all times and for all purposes the Additional Consultant Goods and their proceeds shall be the exclusive property of Consultant, and no other person or entity shall have any claim against any of the Additional Consultant Goods or their proceeds. The Additional Consultant Goods shall at all times remain subject to the exclusive control of Consultant.

(D)    Company shall, at Consultant's sole cost and expense, insure the Additional Consultant Goods and, if required, promptly file any proofs of loss with regard to same with

11

Company's insurers. Consultant shall be responsible for payment of any deductible (but only in relation to the Additional Consultant Goods) under any such insurance in the event of any casualty affecting the Additional Consultant Goods.

(E)     Company acknowledges that the Additional Consultant Goods shall be consigned to Company as a true consignment under Article 9 of the Uniform Commercial Code (the "UCC"). Consultant is hereby granted a first priority security interest in and lien upon (i) the Additional Consultant Goods and (ii) the Additional Consultant Goods proceeds less the Additional Consultant Goods Fee, and Consultant is hereby authorized to file UCC financing statements and provide notifications to any prior secured parties.

## 9.     **Bankruptcy Matters**

This Agreement shall be subject to the Company obtaining the Approval Order of the Bankruptcy Court having jurisdiction over the Company's bankruptcy proceedings, in form and substance reasonably satisfactory to Consultant, granting the relief requested in the Store Closing Motion, as further provided in Section 10.8 hereof.

## 10.     **Affirmative Duties Of Company**

10.1     Company shall be solely liable for, and shall pay when due (except as provided in this section 10.10.1) the following:  (i) all Store-level operating expenses, Central Service expenses, and related expenses (including, without limitation, Sale Expenses and FF&E sale-related expenses, but excluding (x) Consultant Incurred Expenses in excess of the amounts set forth in the Budget (unless otherwise agreed to by Company and Lender Agent in writing) and (y) FF&E expenses in excess of the amounts set forth on the FF&E Budget (unless otherwise agreed to by Company and Lender Agent in writing), which are necessary to conduct, or incurred in the conduct of, the Sale or Company's businesses, including, without limitation, all taxes, costs, expenses, accounts payable and other liabilities relating to the Sale, the Closing Locations, Store Employees, any other agents and representatives of Company, and/or Company's businesses; and (ii) Consultant's fees payable hereunder, including the Base Consulting Fee, Pre-Sale Fee, if any, and the FF&E Fee; *provided*; *however*, that, Consultant shall be solely responsible to fund any Consultant Incurred Expenses in excess of the aggregate amount of such costs as reflected on the Budget, and any FF&E expenses in excess of the aggregate amount set forth on the FF&E Budget; provided, further, that Consultant shall be solely responsible for all Supervisor Costs (subject to reimbursement by the Company in accordance with Section 2.3 as Consultant Incurred Expenses).

10.2     Company shall prepare and process all reporting forms, certificates, reports and other documentation required in connection with the payment of all applicable taxes to the appropriate taxing authorities; and Company shall pay the same when due. Consultant shall provide all assistance reasonably required or requested by Company in connection with the preparation and processing of any such reporting forms, certificates, reports and other documentation required in connection with the payment of all applicable taxes to the appropriate taxing authorities.

10.3    Without limiting any other term or provision of this Agreement, during the Sale Term, Company shall provide Consultant, with (i) Central Services; (ii) employees at the Closing Locations necessary or appropriate to implement and conduct the Sale, and (iii) peaceful use and occupancy of, and reasonable access (including reasonable before and after hours access and normal utilities/phone service) to, the Closing Locations and Company's corporate offices for the purpose of preparing for, conducting, and completing the Sale as contemplated hereby.

10.4    The Company and the Consultant shall honor gift cards and merchandise credits at the Closing Locations in accordance with store-level operation procedures to be mutually agreed upon between Company, the Lender Agent, and the Consultant. No gift cards shall be sold from the Closing Locations during the Sale Term.

10.5    Company shall collect all sales, excise, or gross receipts taxes and shall be solely responsible for reporting and paying the same to the appropriate taxing authorities in accordance with applicable law; provided that Consultant shall provide all assistance reasonably required or requested by Company in connection with the preparation and processing of any such reports, forms, certificates, and other documentation required in connection with the payment of all applicable taxes to the appropriate taxing authorities.

10.6    During the first thirty (30) days after entry of the Approval Order, and subject to the entry thereof, the Company and the Consultant shall accept returns of inventory ("Returned Merchandise") sold and delivered to customers prior to the Sale Commencement Date in a manner consistent with Company's customary practices and policies in effect on the Sale Commencement Date. All customer requests for cash refunds or merchandise credits with regard to sales completed prior to the Sale Commencement Date shall be processed exclusively through Company's point of sale system. All Returned Merchandise, to the extent it is not defective, shall be included as Merchandise. No returns shall be accepted or allowed following the thirtieth (30th) day of the Sale Term.

10.7    Company shall indemnify and hold the Consultant and its affiliates, and their respective officers, directors, employees, agents and independent contractors (collectively, "Consultant Indemnified Parties"), harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from, or related to:

(i)    Company's material breach or material failure of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;

(ii)    any failure of Company to pay to its employees any wages, salaries or benefits due to such employees during the Sale Term;

(iii)    any consumer warranty or products liability claims relating to any Merchandise;

(iv)    any liability or other claims asserted by customers, any of Company's employees, or any other person against any Consultant Indemnified Party (including, without

limitation, claims by employees arising under collective bargaining agreements, worker's compensation or under the WARN Act); except where due to the negligence or willful misconduct of Consultant or from a breach of the terms hereof by Consultant;

(v)    any harassment or any other unlawful, tortious or otherwise actionable treatment of any employees, agents, or representatives of Consultant (including, without limitation, any Supervisors) by Company or any of Company's employees, agents, or representatives (including, without limitation, any Company employees); and

(vi)    the negligence or willful misconduct of Company or any of its officers, directors, employees, agents or representatives.

10.8    No later than two days after the later of (i) execution of this Agreement and (ii) the filing of the Bankruptcy Case, the Company shall file a motion (the "Store Closing Motion") seeking entry of an order of the Bankruptcy Court pursuant to sections 363(b) and 365 of the United States Bankruptcy Code (and not pursuant to sections 327, 328, 330, or 331 thereof) with terms acceptable to both Company and Consultant, among other things: (a) approving this Agreement, (b) approving the Company's retention and employment of Consultant to perform the services contemplated by this Agreement, (c) authorizing Company's conduct of the Sale, without necessity to comply with state and local laws, rules and regulations, including, but not limited to, licensing requirements, purporting to restrict the conduct of the Sale (but subject to conduct of the Sale in accordance with the Sale Guidelines), (d) approving the Sale Guidelines, (e) authorizing Company's conduct of the Sale notwithstanding any restrictive provisions in any Underlying Store Leases or occupancy agreement that purport to preclude or restrict the conduct of the Sale at the Closing Locations or the necessity of obtaining any third party consents, (f) authorizing Company's payment of any earned Base Consulting Fee, Pre-Sale Fee, if any, and/or FF&E Fee, if any, to Consultant, and further authorizing Company's reimbursement to Consultant of any Consultant Incurred Expenses or other amounts that may be advanced by Consultant on Company's behalf, (g) providing that the payment of all fees and reimbursement of expenses hereunder to Consultant is approved without further order of the court and shall be free and clear of all liens, claims and encumbrances, (h) all such payments of fees and reimbursement of expenses shall be made on a weekly basis without further order of the Bankruptcy Court and otherwise in accordance with this Agreement, (i) providing for the protection of the Consultant's Fees and Expenses on terms and conditions reasonably acceptable to each of the Consultant, the agent under the Debtors' proposed debtor in possession ABL financing facility, and the agent under the Debtors' proposed debtor in possession term loan facility, and (j) such other terms and provisions as may be necessary or appropriate to facilitate the conduct of the Sale (the "Approval Order"). The Company shall exercise reasonable best efforts to have the Approval Order entered on or prior to October 30, 2019. In the event the Approval Order is not entered by the Bankruptcy Court or does not include the terms and conditions contained herein, (1) Company shall reimburse Consultant for any Consultant Incurred Expenses incurred in connection with the Sale through and including the day immediately after denial of such motion by the Bankruptcy Court; and (2) Consultant may, in its sole discretion, elect to terminate this Agreement. From and after entry of the Approval Order, Consultant shall conduct the Sale in accordance with the terms of the Approval Order in all material respects. Further, subject to prior consent of the Company, Consultant shall have the right to syndicate and partner with additional entities to serve as "Consultant" hereunder as to

this Agreement and as to any similar agreements, including with respect to Company's Canadian affiliate. The Bankruptcy Court shall have exclusive jurisdiction to resolve any issues arising under this Agreement. In such event, any legal action, suit or proceeding arising in connection with this Agreement shall be submitted to the exclusive jurisdiction of the Bankruptcy Court having jurisdiction over Company, and each Party hereby waives any defenses or objections based on lack of jurisdiction, improper venue, and/or *forum non conveniens*.

**10.** **Insurance; Risk of Loss**

10.1    Company shall maintain throughout the Sale Term, (i) insurance with respect to the Merchandise at the Closing Locations and any storage facility in amounts and on such terms and conditions as are consistent with Company's ordinary course operations and (ii) casualty and liability insurance policies (including, but not limited to, product liability, comprehensive public liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with the operation of the Closing Locations, and shall cause Consultant to be listed as an additional insured with respect to all such policies, and as loss payee for the property insurance. Company shall be responsible for the payment of all deductibles, self-insurance and other amounts payable in connection with any claim asserted under such policies, except for any claims arising directly from the negligence or willful misconduct of Consultant, or its employees, representatives, agents or Supervisors.

10.2    Consultant shall maintain, throughout the Sale Term, liability insurance policies (including, but not limited to, comprehensive general liability and auto liability insurance) covering injuries to persons and property in or in connection with Consultant's provision of Services at the Closing Locations, and shall cause Company to be named an additional insured with respect to such policies.

10.3    Notwithstanding any other provision of this Agreement, the Company and the Consultant agree that Company shall bear all responsibility for liability claims (product liability and otherwise) of customers, employees and other persons arising from events occurring at the Closing Locations before, during and after the Sale Term, except to the extent any such claim arises from the negligence, willful misconduct, or unlawful acts of the Consultant or any Supervisor engaged by Consultant under the terms of this Agreement.

**11.** **Miscellaneous**

11.1    Any notice or other communication under this Agreement shall be in writing and may be delivered personally or sent by facsimile or by prepaid registered or certified mail, addressed as follows:

(i)    In the case of Consultant:

15

GORDON BROTHERS RETAIL PARTNERS, LLC
Prudential Tower
800 Boylston Street
Boston, MA 02119
Attn:   Mackenzie Shea
Tel:      617.422.6519
Email: mshea@gordonbrothers.com

HILCO MERCHANT RESOURCES, LLC
5 Revere Drive, Suite 206
Northbrook, IL 60062
Attention: Ian S. Fredericks
Tel: (847) 418-2075
Fax: (847) 897-0859
Email: ifredericks@hilcoglobal.com

(ii)      In the case of Company:

Forever 21, Inc.
3880 N. Mission Road
Los Angeles, CA  90031
Attn:   Brad Sell
Email: brad.s@forever21.com

With copies to:

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
Attn:   Aparna Yenamandra
           Ciara Foster
Email: aparna.yenamendra@kirkland.com
           Ciara.foster@kirkland.com

MONTGOMERY MCCRACKEN WALKER & RHOADS, LLP
437 Madison Avenue – 24th Floor
New York, NY 10022
Attn:   Maura I. Russell
Email: mrussell@mmwr.com

11.2   <u>Governing Law</u>.   This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of Delaware, without reference to any conflict of laws provisions.

11.3   <u>Severability</u>.   In the event any term or provision contained within this Agreement shall be deemed illegal or unenforceable, then such offending term or provision shall be considered deleted from this Agreement and the remaining terms shall continue to be in full force and effect.

11.4   <u>Entire Agreement</u>.   This Agreement constitutes the entire agreement between the parties with respect of the subject matter hereof and supersedes all prior negotiations and understandings, and can only be modified by a writing signed by the Company (with the consent of the Lender Agent) and the Consultant.

11.5   <u>Assignment</u>.   Neither Company nor Consultant shall assign this Agreement without the express written consent of the other.   This Agreement shall inure to the benefit of, and be binding upon, the parties and their respective successors and permitted assigns.   The Lender Agent and the Lenders shall be third party beneficiaries of this Agreement.

11.6   <u>Counterparts</u>.   This Agreement may be executed in several counterparts, each of which when so executed shall be deemed to be an original and such counterparts, together, shall constitute one and the same instrument.   Delivery by facsimile of this Agreement or an executed counterpart hereof shall be deemed a good and valid execution and delivery hereof or thereof.

11.7   <u>Independent Contractor</u>.   Nothing contained herein shall be deemed to create any relationship between the Company and the Consultant other than that of an independent contractor.   It is stipulated that the parties are not partners or joint venturers.

11.8   <u>Termination</u>.   This Agreement shall terminate upon the completion and approval of the Final Settlement (as provided in Section 4.2 above); <u>provided</u>, <u>however</u>, that either party may terminate this Agreement in the event that the other commits a material breach or material failure of its obligations hereunder.   If either party seeks to terminate this Agreement by reason of a claim of a material breach or material failure, such party shall provide the other party with not less than five (5) days' prior written notice stating with specificity the nature of the claimed material breach or material failure, and the party receiving such notice shall have five (5) business days in which to cure such material breach or material failure, failing which this Agreement shall be deemed terminated.   In the event this Agreement is terminated by Consultant on account of a material breach or material failure by Company, Consultant shall be entitled to be paid any Base Consulting Fee, any Pre-Sale Fee, if any, and the FF&E Fee earned and accrued through the date of termination, together with reimbursement of any Consultant Incurred Expenses or FF&E sale-related expenses incurred in conformity with the Budget and FF&E Budget, respectively, through the date of such termination.

11.9   <u>Confidentiality</u>.   All information of a business nature relating to the pricing, sales, promotions, marketing, assets, liabilities or other business affairs of Company, its customers, parent, subsidiary or other affiliated entities in relation to the Sale shall be subject to the existing confidentiality agreement between the Company and Consultant.

17

11.10  <u>Force Majeure</u>. If any casualty or act of God, war, or terrorism prevents or substantially inhibits the conduct of business in the ordinary course at any Closing Location(s), then the subject location(s) and the remaining Merchandise located thereat shall be eliminated from the Sale and considered to be deleted from this Agreement as of the date of such event, and Consultant and shall have no further rights or obligations hereunder with respect thereto; <u>provided</u>, <u>however</u>, that the proceeds of any insurance attributable to Merchandise or proceeds from business interruption insurance shall constitute proceeds of the Sale hereunder for purposes of calculating Gross Sales and the Base Consulting Fee.

[SIGNATURES APPEAR ON NEXT PAGE]

IN WITNESS WHEREOF, the Company and the Consultant have executed this Agreement or caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first written above.

> **FOREVER 21, INC.**
> **On Behalf Of Itself and Its**
> **Affiliates Identified On Exhibit "A"**
>
> By: _Brad Sell_
> Name: BRAD SELL
> Its: CFO
>
>
> **GORDON BROTHERS RETAIL PARTNERS, LLC**
>
>
> By:_____
> Name:
> Its:
>
> -and-
>
> **HILCO MERCHANT RESOURCES, LLC**
>
>
> By:_____
> Name:
> Its:

**Exhibits**
Exhibit A-Company affiliates
Exhibit 1A-Stores
Exhibit B-Budget of Consultant Incurred Expenses

19

IN WITNESS WHEREOF, the Company and the Consultant have executed this Agreement or caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first written above.

FOREVER 21, INC.
On Behalf Of Itself and Its
Affiliates Identified On Exhibit "A"

By:_____
Name:
Its:

GORDON BROTHERS RETAIL PARTNERS, LLC

By: _____
Name: _Richard Edwards_
Its: _Co-President Retail_

-and-

HILCO MERCHANT RESOURCES, LLC

By:_____
Name:
Its:

**Exhibits**
Exhibit A-Stores
Exhibit B-Budget of Consultant Incurred Expenses
2546076.1

19

IN WITNESS WHEREOF, the Company and the Consultant have executed this Agreement or caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first written above.

FOREVER 21, INC.
On Behalf Of Itself and Its
Affiliates Identified On Exhibit "A"

By:_____
Name:
Its:

GORDON BROTHERS RETAIL PARTNERS, LLC

By:_____
Name:
Its:

-and-

HILCO MERCHANT RESOURCES, LLC

By:_____
Name:  Sarah Baker
Its:      VP & AGC, Managing Member

**Exhibits**
Exhibit A-Stores
Exhibit B-Budget of Consultant Incurred Expenses
2546076.1

19

# <u>EXHIBIT A</u>

**Exhibit A**
**List of Company Affiliates**

Forever 21, Inc.
Alameda Holdings, LLC
Forever 21 International Holdings, Inc.
Forever 21 Logistics, LLC
Forever 21 Real Estate Holdings, LLC
Forever 21 Retail, Inc.
Innovative Brand Partners, LLC
Riley Rose, LLC

# EXHIBIT 1A

CONSULTING AGREEMENT
EXHIBIT 1A

Forever 21
Store Closing List

| Store # | Store Name | Counterparty Name | Counterparty Address | Debtor Counterparty | Contract Description | Store Address |
|---|---|---|---|---|---|---|
| 3533 | Del Monte Shopping Ctr | American Assets Trust | 1500 Del Monte Center, Monterey, CA 93940 | Forever 21 Retail, Inc. | Store Lease | 1500 Del Monte, Monterey, CA 93940 |
| 356 | Lincoln Park | Arcadia Realty for 865 West North Avenue LLC | 865 West North Avenue LLC, White Plains, NY 10605 | Forever 21 Retail, Inc. | Store Lease | 865 W. North Ave, Chicago, IL 60642 |
| 677 | Kildeer Village Square (F21 RED) | Bond Companies | One Bowerman Drive, Beaverton, OR 97005-6453 | Forever 21 Retail, Inc. | Store Lease | 20393 N. Rand Road, Ste 126, Kildeer, IL 60074 |
| 5102 | Towson Town Center (Riley Rose) | Brookfield Retail | 350 N Orleans St., Suite 300, Chicago, IL 60654 | Forever 21 Retail, Inc. | Store Lease | 825 Dulaney Valley rd., Space #3025, Towson, MD 21204 |
| 5104 | Mayfair Mall (Riley Rose) | Brookfield Retail | 350 N Orleans St., Suite 300, Chicago, IL 60654 | Forever 21 Retail, Inc. | Store Lease | 2500 Mayfair Road #0208, Wauwatosa, WI 53226 |
| 5106 | Stonebriar Centre (Riley Rose) | Brookfield Retail | 350 N Orleans St., Suite 300, Chicago, IL 60654 | Forever 21 Retail, Inc. | Store Lease | 2601 Preston Road, Space #2148, Frisco, TX 75034 |
| 5110 | Kenwood Center (Riley Rose) | Brookfield Retail | 350 N Orleans St., Suite 300, Chicago, IL 60654 | Forever 21 Retail, Inc. | Store Lease | 7875 Montgomery Rd, #2435, Cincinnati, OH 45236 |
| 651 | Huntington Mall (F21 RED) | Cafaro Company | 2445 Belmont Avenue, Youngstown, OH 44504 | Forever 21 Retail, Inc. | Store Lease | 500 Mall Rd. Suite 603, Barboursville, WV 25504 |
| 155 | Eastwood Mall | Cafaro Company | 2445 Belmont Avenue, Youngstown, OH 44504 | Forever 21 Retail, Inc. | Store Lease | 5555 Youngstown Warren Road, Suite #412, Niles, OH 44446 |
| 633 | Juban Crossing (F21 RED) | CBL | 2030 Hamilton Place Blvd., Suite 500, Chattanooga, TN 37421 | Forever 21 Retail, Inc. | Store Lease | 27853 Juban Rd., Denham Springs, LA 70726 |
| 365 | Mall of Acadiana | CBL | 2030 Hamilton Place Blvd., Suite 500, Chattanooga, TN 37421 | Forever 21 Retail, Inc. | Store Lease | 5725 Johnston St, Space #D-164, Lafayette, LA 70503 |
| 434 | The River at Rancho Mirage | CBRE | 2601 Main Street, Irvine, CA 92614 | Forever 21 Retail, Inc. | Store Lease | 71800 Highway 111 Suite #819, Rancho Mirage, CA 92270 |
| 3520 | Chico Mall | Centenial | 900 Michigan Avenue, Chicago, IL 60611 | Forever 21 Retail, Inc. | Store Lease | 1960 East 20th St., Chico, CA 95928 |
| 640 | Trails At Silverdale (F21 RED) | Center Cal | 1600 East Franklin Avenue, El Segundo, CA 90245 | Forever 21 Retail, Inc. | Store Lease | 11467 Pacific Crest Place NW, Suite C100, Silverdale, WA 98383 |
| 620 | 490 FULTON STREET (F21 RED) | Crown | 60 East 42'd Street, New York, NY 10017 | Forever 21 Retail, Inc. | Store Lease | 490 Fulton Street, Brooklyn, NY 11201 |
| 798 | Regency Square | Cushman and Wakefield | 200 East Long Lake Road, Bloomfield Hills, MI 48303-0200 | Forever 21 Retail, Inc. | Store Lease | 1404 N. Parham Rd. #1124A, Richmond, VA 23229 |
| 629 | Crossroads Center (F21 RED) | DDR | 3300 Enterprise Parkway, Beachwood, OH 44122 | Forever 21 Retail, Inc. | Store Lease | 15140 Crossroads Parkway, Gulfport, MS 39503 |

CONSULTING AGREEMENT
EXHIBIT 1A

Forever 21
Store Closing List

| Store # | Store Name | Counterparty Name | Counterparty Address | Debtor Counterparty | Contract Description | Store Address |
|---|---|---|---|---|---|---|
| 663 | The Plant (F21 RED) | Decron Properties | 6222 Wilshire Boulevard , Los Angeles, CA 90048 | Forever 21 Retail, Inc. | Store Lease | 7888-2 Van Nuys Blvd., Van Nuys, CA 91402 |
| 199 | The Shops @ Tanforan (Exp-Full Remodel) | Forest City | 3600 Birch Street, Newport Beach, CA 92660 | Forever 21 Retail, Inc. | Store Lease | 1150 El Camino Real Ste 348, San Bruno, CA 94066 |
| 103 | Denver Pavillions | Gart Properties | 299 Milwaukee Street, Denver, CO 80206 | Forever 21 Retail, Inc. | Store Lease | 500 16th St Ste 178, Denver, CO 80202 |
| 655 | Ellsworth Place (F21 RED) | GBT | 9010 Overlook Boulevard, Brentwood, TN 37027 | Forever 21 Retail, Inc. | Store Lease | 8661 Colesville Rd., Silver Spring, MD 20910 |
| 688 | Glade Parks (F21 RED) | Glade Lifestyle, LLC | 6723 Weaver Road, Rockford, IL 61114 | Forever 21 Retail, Inc. | Store Lease | 1210 Chisholm Trail, Ste. 100, Euless, TX 76039 |
| 6010 | 2 Stockton Street (SF, CA) | Invesco | 909 Montgomery Street, Suite 200, San Francisco, CA 94133 | Forever 21 Retail, Inc. | Store Lease | 2 Stockton Street, San Francisco, CA 94102 |
| 625 | LIBERTY CENTER | JLL | 7100 Foundry Row, Suite 204, Liberty Township, OH , OH 45069 | Forever 21 Retail, Inc. | Store Lease | 7530 Bales St. Space A-130, Liberty Township, OH 45069 |
| 51 | Kaahumanu Center | JLL | 4401 W. Kennedy Blvd, 3rd Floor, Tampa, FL 33609 | Forever 21 Retail, Inc. | Store Lease | 275 W. Kaahumanu Ave., #1034, Kahului, HI 96732 |
| 659 | Mall De Las Aguilas (F21 RED) | JLL | 3344 Peachtree Road, Suite 1200, Atlanta, GA 30326 | Forever 21 Retail, Inc. | Store Lease | 455 Farm-to-Market Rd. 375, Eagle Pass, TX 78852 |
| 647 | Woodbury Centre (F21 RED) | Kimco Realty | 132 Begin, Tel Aviv Jaffa, 0 67011 | Forever 21 Retail, Inc. | Store Lease | 37 Centre Drive, Unit 010, Central Valley, NY 10917 |
| 3512 | Anaheim Plaza | Kimco Realty | 75 Southgate Avenue, Daly City, CA 94015 | Forever 21 Retail, Inc. | Store Lease | 500 N. Euclid Street, Anaheim, CA 92801 |
| 3530 | Danbury Fair Mall | Macerich | 1162 Pittsford-Victor Road, Suite 100, Pittsford, NY 14534 | Forever 21 Retail, Inc. | Store Lease | 7 Backus Ave. #M100, Danbury, CT 06810 |
| 3513 | Arrowhead Towne Center | Macerich | 1162 Pittsford-Victor Road, Suite 100, Pittsford, NY 14534 | Forever 21 Retail, Inc. | Store Lease | 7650 West Arrowhead Towne Center, Glendale, AZ 85308 |
| 3518 | Vintage Faire | Macerich | 1162 Pittsford-Victor Road, Suite 100, Pittsford, NY 14534 | Forever 21 Retail, Inc. | Store Lease | 3401 Dale Rd., #200, Modesto, CA 95356 |
| 266 | Pacific View Ventura Mall | Macerich | 1162 Pittsford-Victor Road, Suite 100, Pittsford, NY 14534 | Forever 21 Retail, Inc. | Store Lease | 3301 - 1 E Main St. #1260, Ventura, CA 93003 |
| 348 | Northgate Mall | MerlioneGeier Partners | 5800 Northgate Drive, San Rafael, CA 94903 | Forever 21 Retail, Inc. | Store Lease | 5800 Northgate Mall #043, San Rafael, CA 94903 |
| 632 | 449 Washington Street | Mosbacher Properties | 18 E 48th Street, 19th Floor, New York, NY 10017 | Forever 21 Retail, Inc. | Store Lease | 459 Washington Street, Boston, MA 02108 |

CONSULTING AGREEMENT
EXHIBIT 1A

Forever 21
Store Closing List

| Store # | Store Name | Counterparty Name | Counterparty Address | Debtor Counterparty | Contract Description | Store Address |
|---|---|---|---|---|---|---|
| 2147 | OUTLETS OF DES MOINES | NED ALTOONA LLC | 75 Park Plaza, Boston, MA 02116 | Forever 21 Retail, Inc. | Store Lease | 801 Bass Pro Drive NW, Space #120, Altoona, IA 50009 |
| 601 | Asheville Outlets | New England Development | PO Box 603145, Charlotte, NC 28260-3145 | Forever 21 Retail, Inc. | Store Lease | 800 Brevard Road, Ste. 824, Asheville, NC 28806 |
| 2101 | South Bay Center (F21 RED) | Other | 21 Custom House Street, Boston, MA 02110 | Forever 21 Retail, Inc. | Store Lease | 21-39 District Avenue # 39, Boston, MA 02125 |
| 376 | 601 Pine Street | Other - Colliers International | 5910 North Central Expressway, Dallas, TX 75206 | Forever 21 Retail, Inc. | Store Lease | 601 Pine St., Seattle, WA 98101 |
| 488 | Shops at Georgetown Park | Other - JT Premier Georgetown Park Corp | 888 Seventh Avenue, 44th Floor, New York, NY 10019 | Forever 21 Retail, Inc. | Store Lease | 3222 M Street, NW, Washington DC, DC 20007 |
| 474 | 10 South State Street | Other - Madison Capital/ASB Capital Mgmt | 225 W. Wacker, Chicago, IL 60606 | Forever 21 Retail, Inc. | Store Lease | 10 South State Street, Chicago, IL 60603 |
| 678 | Shops At Perry Crossing (F21 RED) | Other - Metropolis Lifestyle Center, LLC | 2650 Thousand Oaks Blvd., Memphis, TN 38118 | Forever 21 Retail, Inc. | Store Lease | 2539 Perry Crossing Way, Ste. 100, Plainfield, IN 46168 |
| 673 | Hanover Commons (F21 RED) | Other - Urban Edge Properties | 120 Route 4 East, Paramus, NJ 07652 | Forever 21 Retail, Inc. | Store Lease | 200-240 Route 10 West Space 6-9, East Hanover, NJ 07936 |
| 389 | Bellevue Square | Other - Kemper Development | 575 Bellevue Square, Bellevue, WA 98009 | Forever 21, Inc. | Store Lease | 248 Bellevue Square, Bellevue, WA 98004 |
| 349 | 343 Newbury Street | Other-343 Management, LLC | 316 Newbury Street, No. 22, Boston, MA 02115 | Forever 21 Retail, Inc. | Store Lease | 343 Newbury St., Boston, MA 02115 |
| 3536 | Hamilton Place | Other-BELK | 280 I West Tyvola Road, Charlotte, NC 28217-4500 | Forever 21 Retail, Inc. | Store Lease | 2100 Hamilton Place Blvd., Chattanooga, TN 37421 |
| 3009 | Woodies Building | Other-Douglas Development | 3250 Van Ness Avenue, San Francisco, CA 94109 | Forever 21 Retail, Inc. | Store Lease | 1025 F Street NW, Suite #200, Washington, DC 20004 |
| 359 | Royal Hawaiian | Other-Festival Co's | 567 South King Street, Honolulu, HI 96813 | Forever 21 Retail, Inc. | Store Lease | 2301 Kalakaua Ave., Ste #209, Honolulu, HI 96815 |
| 3001 | Pasadena | Other-St. John Land Company | 136 El Camino Drive, Beverly Hills, CA 90212 | Forever 21 Retail, Inc. | Store Lease | 35 N. De Lacey Ave., Pasadena, CA 91103 |
| 3508 | South Towne Center | Pacific Retail Capital | 2029 Century Park East, Suite 800, Los Angeles, CA 90067-2909 | Forever 21 Retail, Inc. | Store Lease | 10450 South State St., Suite #2300, Sandy, UT 84070 |
| 71 | White Plains Galleria | Pacific Retail Capital | 2029 Century Park East, Suite 800, Los Angeles, CA 90067-2909 | Forever 21 Retail, Inc. | Store Lease | 100 Main St., Ste 221, White Plains, NY 10601 |
| 2125 | MAGNOLIA | PREIT | 200 S. Broad Street, 3rd Floor, Philadelphia, PA 19102 | Forever 21 Retail, Inc. | Store Lease | 2701 David H. McLeod Blvd., Space #1316, Florence, SC 29501 |

CONSULTING AGREEMENT
EXHIBIT 1A

Forever 21
Store Closing List

| Store # | Store Name | Counterparty Name | Counterparty Address | Debtor Counterparty | Contract Description | Store Address |
|---|---|---|---|---|---|---|
| 2126 | PLYMOUTH MEETING | PREIT | 225 West Washington Street, Indianapolis, IN 46204-3438 | Forever 21 Retail, Inc. | Store Lease | 500 W. Germantown Pike, Space 1355, Plymouth Meeting, PA 19462 |
| 482 | 1708 Chestnut Street | PREIT | 200 S. Broad Street, 3rd Floor, Philadelphia, PA 19102 | Forever 21 Retail, Inc. | Store Lease | 1708 Chestnut Street, Philadelphia, PA 19103 |
| 2114 | Sangertown Square | Pyramid | 4 Clinton Square, Syracuse, NY 13202 | Forever 21 Retail, Inc. | Store Lease | 8555 Seneca Turnpike, Space # D06, New Hartford, NY 13413 |
| 2117 | Manassas | Pyramid | 4 Clinton Square, Syracuse, NY 13202 | Forever 21 Retail, Inc. | Store Lease | 8300 Suoleu Road Space #031, Manassa, VA 20109 |
| 754 | The Shops @ Wiregrass | QIC | 600 Superior Avenue, Suite 1500, Cleveland, OH 44114 | Forever 21 Retail, Inc. | Store Lease | 28210 Paseo Drive, Unit #190, Building No. Two, Wesley Chapel, FL 33544 |
| 19 | The Galleria @ South Bay | QIC | 600 Superior Avenue, Suite 1500, Cleveland, OH 44114 | Forever 21 Retail, Inc. | Store Lease | 1815 Hawthorne Blvd, Ste 188, Redondo Beach, CA 90278 |
| 157 | Hillsdale Shopping Center | Related Companies | 60 31st Avenue, San Mateo, CA 94403-3497 | Forever 21, Inc. | Store Lease | 396 Hillsdale Shopping Center, San Mateo, CA 94403 |
| 608 | Village at Cumberland Park (F21 RED) | Retail Connection | 2525 McKinnon Street, Dallas, TX 75201 | Forever 21 Retail, Inc. | Store Lease | 8934 S. Broadway Ave. Ste. 448, Tyler, TX 75703 |
| 664 | Central Texas Marketplace (F21 RED) | RPAI | 15105 Collection Drive, Chicago, IL 60693 | Forever 21 Retail, Inc. | Store Lease | 2408 W Loop 340, Waco, TX 76711 |
| 423 | Willow Bend | Starwood Retail Partners | 1 East Wacker Drive, Chicago, IL 60601 | Forever 21 Retail, Inc. | Store Lease | 6121 W. Park Blvd, Ste B121 & B214, Plano, TX 75093 |
| 125 | Macarthur | Starwood Retail Partners | 1 East Wacker Drive, Chicago, IL 60601 | Forever 21 Retail, Inc. | Store Lease | 300 Monticello Ave., Suite #255, Norfolk, VA 23510 |
| 3010 | Solano | Starwood Retail Partners | 1 East Wacker Drive, Chicago, IL 60601 | Forever 21 Retail, Inc. | Store Lease | 1451 Gateway Blvd, Fairfield, CA 94533 |
| 670 | Lake Charles (F21 RED) | Stirling Properties | 10606 Coursey Boulevard, Baton Rouge, LA 70816 | Forever 21 Retail, Inc. | Store Lease | 3401 Derek Dr., Lake Charles, LA 70607 |
| 2131 | TANGER PARK CITY | Tanger | 3200 Northline Ave, Suite 360, Greensboro, NC 27408 | Forever 21 Retail, Inc. | Store Lease | 6699 N. Landmark Dr. Space #L150, Park City, UT 84098 |
| 2129 | TANGER JEFFERSONVILLE | Tanger | 3200 Northline Ave, Suite 360, Greensboro, NC 27408 | Forever 21 Retail, Inc. | Store Lease | 8000 Factory Shops Blvd. #845, Jeffersonville, OH 43128 |
| 2128 | TANGER GRAND RAPIDS | Tanger | 3200 Northline Ave, Suite 360, Greensboro, NC 27408 | Forever 21 Retail, Inc. | Store Lease | 350 84th St SW, #480, Byron Center, MI 49315 |
| 744 | Fair Oaks | Taubman | 200 East Long Lake Road, Suite 300, Bloomfield Hills, MI 48304-2324 | Forever 21 Retail, Inc. | Store Lease | 11750 Fair Oaks #H227, Fairfax, VA 22033 |

Forever 21
Store Closing List

CONSULTING AGREEMENT
EXHIBIT 1A

| Store # | Store Name | Counterparty Name | Counterparty Address | Debtor Counterparty | Contract Description | Store Address |
|---|---|---|---|---|---|---|
| 6013 | Short Hills | Taubman | 200 East Long Lake Road, Suite 300, Bloomfield Hills, MI 48304-2324 | Forever 21 Retail, Inc. | Store Lease | 1200 Morris Turnpike, Space D123, Short Hills, NJ 07078 |
| 17 | Fashion Island | The Irvine Company | 401 Newport Center Drive, Newport Beach, CA 92660 | Forever 21 Retail, Inc. | Store Lease | 1101 Newport Center Drive, Newport Beach, CA 92660 |
| 692 | Tustin Marketplace (F21 RED) | The Irvine Company | The Market Place (S20578), Los Angeles, CA 90084-2567 | Forever 21 Retail, Inc. | Store Lease | 2856 El Camino Real, Tustin, CA 92782 |
| 624 | Outlet Shops Of Grand River | TORG | 6200 Grand River Blvd. East, Suite 446, Leeds, AL 35094 | Forever 21 Retail, Inc. | Store Lease | 6200 Grand River Blvd., Suite 646, Leeds, AL 35094 |
| 492 | Oakdale Mall (F21 RED) | Urban Edge | 210 Route 4 East, Paramus, NJ 07652 | Forever 21 Retail, Inc. | Store Lease | 601-635 Harry L Drive Ste. 41, Johnson City, NY 13790 |
| 307 | Orchard Town Center | Vestar | Terminal Tower, 50 Public Square, Cleveland, OH 44113 | Forever 21 Retail, Inc. | Store Lease | 14694 Orchard Pkwy, #300, Westminster, CO 80023 |
| 2106 | Clay Terrace (F21 RED) | Washington Prime Group | 111 Monument Circle, Indianapolis, IN 46204 | Forever 21 Retail, Inc. | Store Lease | 14550 Clay Terrace Blvd., Carmel, IN 46032 |
| 2107 | OUTLET COLLECTION OF SEATTLE | Washington Prime Group | 111 Monument Circle, Indianapolis, IN 46204 | Forever 21 Retail, Inc. | Store Lease | 1101 Outlet Collection Way, Space 319, Auburn, WA 98001 |
| 293 | Morgantown Mall | Washington Prime Group | 111 Monument Circle, Indianapolis, IN 46204 | Forever 21 Retail, Inc. | Store Lease | 9311 Mall Rd, Morgantown, WV 26505 |
| 5133 | Seventh Ave-Penn Station (Riley Rose) | Vornado Realty Trust | 888 Seventh Avenue, 44th Floor, New York, NY 10019 | Forever 21 Retail, Inc. | Store Lease | 435 7th Avenue, New York, NY 10119 |
| 314 | Valencia Town Center | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 24201 W. Valencia Blvd. #139, Valencia, CA 91355 |
| 3542 | Santa Anita | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 400 South Baldwin Ave, Arcadia, CA 91007 |
| 292 | Sunrise Mall | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 1107 Sunrise Mall, Massapequa, NY 11758 |
| 726 | Old Orchard | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 4999 Old Orchard Center #J6, Skokie, IL 60077 |
| 60 | Meriden Square Mall | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 470 Lewis Avenue, Space 50, Meriden, CT 06450 |
| 792 | Galleria @ Roseville | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 1173 Galleria Blvd., #P107, Roseville, CA 95678 |
| 49 | Oakridge Mall | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 925 Blossom Hill Road, #X-15, San Jose, CA 95123 |

Forever 21
Store Closing List

CONSULTING AGREEMENT
EXHIBIT 1A

| Store # | Store Name | Counterparty Name | Counterparty Address | Debtor Counterparty | Contract Description | Store Address |
|---|---|---|---|---|---|---|
| 695 | Mission Valley | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 1640 Camino Del Rio, San Diego, CA 92108 |
| 61 | Montgomery Mall | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 7101 Democracy Blvd, Space 1252, Bethesda, MD 20817 |
| 238 | Sherman Oaks Fashion Square | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 14006 Riverside Drive, Space #244, Sherman Oaks, CA 91423 |
| 38 | University Town Center | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 4545 La Jolla Village Drive Suite #H10, San Diego, CA 92122 |
| 751 | Southcenter Mall | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 836 Southcenter Mall, Tukwila, WA 98188 |
| 614 | World Trade Center | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 185 Greenwich St., Ste. LL4435, New York, NY 10007 |
| 182 | Wheaton Mall | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 11160 Veirs Mills Road, Silver Spring, MD 20902 |
| 5114 | Southcenter Mall (Riley Rose) | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 467 Southcenter Mall #1545, Tukwila, WA 91811 |
| 5116 | Westfield Topanga Plaza (Riley Rose) | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 6600 Topanga Canyon Blvd, Space #60, Canoga Park, CA 91303 |
| 644 | The Mall At Greece Ridge (F21 RED) | Wilmorite | 1265 Scottsville Road, Rochester, NY 14624 | Forever 21 Retail, Inc. | Store Lease | 208 Greece Ridge Center Drive, Rochester, NY 14626 |
| 748 | Greenstreet | LV A4 Houston Greenstreet L.P. | 1201 Fannin St, Houston, TX 77002 | Forever 21 Retail, Inc. | Store Lease | 1201 Main St., Space #101& 201 of Block 272, Houston, Tx, 77002 |
| 3539 | The Shops at Mission Viejo | Simon Property Group | 225 West Washington Street, Indianapolis, IN 46204 | Forever 21 Retail, Inc. | Store Lease | 555 The Shops at Mission Viejo, Mission Viejo, CA, 92691 |
| 4308 | Chicago Premium Outlets | Simon Property Group | 225 West Washington Street, Indianapolis, IN 46204 | Forever 21 Retail, Inc. | Store Lease | 1650 Premium Outlet Blvd. Spc #1105, Aurora, IL, 60502 |

**EXHIBIT B**

# Forever 21-US Stores
## Expense Budget
### Exhibit B

| | |
|---|---|
| Start Date | 11/1/2019 |
| End Date | 12/29/2019 |
| # of Stores | 109 |

| | $ |
|---|---|

**Consultant Expenses**

| | |
|---|---|
| E-Mail/Social Media | 20,000 |
| Signs | 305,200 |
| Sign walkers | 382,590 |
| **Total Advertising** | **707,790** |
| **Total Supervision** | **1,471,493** |
| **Total Legal/Travel/Insurance** | **95,000** |
| **Total Expenses** | **2,274,283** |

## Notes:

1. This Expense Budget is based on a sale term of 11/1/19-12/29/19. This Budget remains subject to modifications in the event that the term changes, or as otherwise agreed to by both parties.

2. Wave 2 Stores are included in this budget and will start as a soft sale from 11/1-11/7.

3. This Expense Budget runs all stores through 12/29/19 based on Delaware Bankruptcy Law. To the extent that we can collapse and close any stores earlier, there could potentially be further savings to the Budget.

4. Supervision is based on 1 Lead Consultant, 2 Regionals, 23 FT and 1 F&A Lead. Also included are 22 PT Consultants for 10 days to help prep the stores along with the 23 FT in for 1 week prior to prep as well.

5. This sale term contemplates additioanl goods from the warehouse being shipped into these locations. To the extent that does not happen and we can decrease the sale term, there will be savings to the budget.

**<u>Annex 2</u>**

**Designated Closing Stores**

Forever 21
Store Closing List

| Store # | Store Name | Counterparty Name | Counterparty Address | Debtor Counterparty | Contract Description | Store Address |
|---|---|---|---|---|---|---|
| 3533 | Del Monte Shopping Ctr | American Assets Trust | 1500 Del Monte Center, Monterey, CA 93940 | Forever 21 Retail, Inc. | Store Lease | 1500 Del Monte, Monterey, CA 93940 |
| 356 | Lincoln Park | Arcadia Realty for 865 West North Avenue LLC | 865 West North Avenue LLC, White Plains, NY 10605 | Forever 21 Retail, Inc. | Store Lease | 865 W. North Ave, Chicago, IL 60642 |
| 677 | Kildeer Village Square (F21 RED) | Bond Companies | One Bowerman Drive, Beaverton, OR 97005-6453 | Forever 21 Retail, Inc. | Store Lease | 20393 N. Rand Road, Ste 126, Kildeer, IL 60074 |
| 5102 | Towson Town Center (Riley Rose) | Brookfield Retail | 350 N Orleans St., Suite 300, Chicago, IL 60654 | Forever 21 Retail, Inc. | Store Lease | 825 Dulaney Valley rd., Space #3025, Towson, MD 21204 |
| 5104 | Mayfair Mall (Riley Rose) | Brookfield Retail | 350 N Orleans St., Suite 300, Chicago, IL 60654 | Forever 21 Retail, Inc. | Store Lease | 2500 Mayfair Road #0208, Wauwatosa, WI 53226 |
| 5106 | Stonebriar Centre (Riley Rose) | Brookfield Retail | 350 N Orleans St., Suite 300, Chicago, IL 60654 | Forever 21 Retail, Inc. | Store Lease | 2601 Preston Road, Space #2148, Frisco, TX 75034 |
| 5110 | Kenwood Center (Riley Rose) | Brookfield Retail | 350 N Orleans St., Suite 300, Chicago, IL 60654 | Forever 21 Retail, Inc. | Store Lease | 7875 Montgomery Rd, #2435, Cincinnati, OH 45236 |
| 651 | Huntington Mall (F21 RED) | Cafaro Company | 2445 Belmont Avenue, Youngstown, OH 44504 | Forever 21 Retail, Inc. | Store Lease | 500 Mall Rd. Suite 603, Barboursville, WV 25504 |
| 155 | Eastwood Mall | Cafaro Company | 2445 Belmont Avenue, Youngstown, OH 44504 | Forever 21 Retail, Inc. | Store Lease | 5555 Youngstown Warren Road, Suite #412, Niles, OH 44446 |
| 633 | Juban Crossing (F21 RED) | CBL | 2030 Hamilton Place Blvd., Suite 500, Chattanooga, TN 37421 | Forever 21 Retail, Inc. | Store Lease | 27853 Juban Rd., Denham Springs, LA 70726 |
| 365 | Mall of Acadiana | CBL | 2030 Hamilton Place Blvd., Suite 500, Chattanooga, TN 37421 | Forever 21 Retail, Inc. | Store Lease | 5725 Johnston St, Space #D-164, Lafayette, LA 70503 |
| 434 | The River at Rancho Mirage | CBRE | 2601 Main Street, Irvine, CA 92614 | Forever 21 Retail, Inc. | Store Lease | 71800 Highway 111 Suite #819, Rancho Mirage, CA 92270 |
| 3520 | Chico Mall | Centennial | 900 Michigan Avenue, Chicago, IL 60611 | Forever 21 Retail, Inc. | Store Lease | 1960 East 20th St., Chico, CA 95928 |
| 640 | Trails At Silverdale (F21 RED) | Center Cal | 1600 East Franklin Avenue, El Segundo, CA 90245 | Forever 21 Retail, Inc. | Store Lease | 11467 Pacific Crest Place NW, Suite C100, Silverdale, WA 98383 |
| 620 | 490 FULTON STREET (F21 RED) | Crown | 60 East 42'd Street, New York, NY 10017 | Forever 21 Retail, Inc. | Store Lease | 490 Fulton Street, Brooklyn, NY 11201 |
| 798 | Regency Square | Cushman and Wakefield | 200 East Long Lake Road, Bloomfield Hills, MI 48303-0200 | Forever 21 Retail, Inc. | Store Lease | 1404 N. Parham Rd. #1124A, Richmond, VA 23229 |
| 629 | Crossroads Center (F21 RED) | DDR | 3300 Enterprise Parkway, Beachwood, OH 44122 | Forever 21 Retail, Inc. | Store Lease | 15140 Crossroads Parkway, Gulfport, MS 39503 |

**Forever 21**
Store Closing List

| Store # | Store Name | Counterparty Name | Counterparty Address | Debtor Counterparty | Contract Description | Store Address |
|---|---|---|---|---|---|---|
| 663 | The Plant (F21 RED) | Decron Properties | 6222 Wilshire Boulevard , Los Angeles, CA 90048 | Forever 21 Retail, Inc. | Store Lease | 7888-2 Van Nuys Blvd., Van Nuys, CA 91402 |
| 199 | The Shops @ Tanforan (Exp-Full Remodel) | Forest City | 3600 Birch Street, Newport Beach, CA 92660 | Forever 21 Retail, Inc. | Store Lease | 1150 El Camino Real Ste 348, San Bruno, CA 94066 |
| 103 | Denver Pavillions | Gart Properties | 299 Milwaukee Street, Denver, CO 80206 | Forever 21 Retail, Inc. | Store Lease | 500 16th St Ste 178, Denver, CO 80202 |
| 655 | Ellsworth Place (F21 RED) | GBT | 9010 Overlook Boulevard, Brentwood, TN 37027 | Forever 21 Retail, Inc. | Store Lease | 8661 Colesville Rd., Silver Spring, MD 20910 |
| 688 | Glade Parks (F21 RED) | Glade Lifestyle, LLC | 6723 Weaver Road, Rockford, IL 61114 | Forever 21 Retail, Inc. | Store Lease | 1210 Chisholm Trail, Ste. 100, Euless, TX 76039 |
| 6010 | 2 Stockton Street (SF, CA) | Invesco | 909 Montgomery Street, Suite 200, San Francisco, CA 94133 | Forever 21 Retail, Inc. | Store Lease | 2 Stockton Street, San Francisco, CA 94102 |
| 625 | LIBERTY CENTER | JLL | 7100 Foundry Row, Suite 204, Liberty Township, OH , OH 45069 | Forever 21 Retail, Inc. | Store Lease | 7530 Bales St. Space A-130, Liberty Township, OH 45069 |
| 51 | Kaahumanu Center | JLL | 4401 W. Kennedy Blvd., 3rd Floor, Tampa, FL 33609 | Forever 21 Retail, Inc. | Store Lease | 275 W. Kaahumanu Ave., #1034, Kahului, HI 96732 |
| 669 | Mall De Las Aguilas (F21 RED) | JLL | 3344 Peachtree Road, Suite 1200, Atlanta, GA 30326 | Forever 21 Retail, Inc. | Store Lease | 455 Farm-to-Market Rd. 375, Eagle Pass, TX 78852 |
| 647 | Woodbury Centre (F21 RED) | Kimco Realty | 132 Begin, Tel Aviv Jaffa, 0 67011 | Forever 21 Retail, Inc. | Store Lease | 37 Centre Drive, Unit 010, Central Valley, NY 10917 |
| 3512 | Anaheim Plaza | Kimco Realty | 75 Southgate Avenue, Daly City, CA 94015 | Forever 21 Retail, Inc. | Store Lease | 500 N. Euclid Street, Anaheim, CA 92801 |
| 3530 | Danbury Fair Mall | Macerich | 1162 Pittsford-Victor Road, Suite 100, Pittsford, NY 14534 | Forever 21 Retail, Inc. | Store Lease | 7 Backus Ave. #M100, Danbury, CT 06810 |
| 3513 | Arrowhead Towne Center | Macerich | 1162 Pittsford-Victor Road, Suite 100, Pittsford, NY 14534 | Forever 21 Retail, Inc. | Store Lease | 7650 West Arrowhead Towne Center, Glendale, AZ 85308 |
| 3518 | Vintage Faire | Macerich | 1162 Pittsford-Victor Road, Suite 100, Pittsford, NY 14534 | Forever 21 Retail, Inc. | Store Lease | 3401 Dale Rd., #200, Modesto, CA 95356 |
| 266 | Pacific View Ventura Mall | Macerich | 1162 Pittsford-Victor Road, Suite 100, Pittsford, NY 14534 | Forever 21 Retail, Inc. | Store Lease | 3301 - 1 E Main St. #1260, Ventura, CA 93003 |
| 348 | Northgate Mall | MerloneGeier Partners | 5800 Northgate Drive, San Rafael , CA 94903 | Forever 21 Retail, Inc. | Store Lease | 5800 Northgate Mall #043, San Rafael, CA 94903 |
| 632 | 449 Washington Street | Mosbacher Properties | 18 E 48th Street, 19th Floor, New York, NY 10017 | Forever 21 Retail, Inc. | Store Lease | 459 Washington Street, Boston, MA 02108 |

Forever 21
Store Closing List

| Store # | Store Name | Counterparty Name | Counterparty Address | Debtor Counterparty | Contract Description | Store Address |
|---|---|---|---|---|---|---|
| 2147 | OUTLETS OF DES MOINES | NED ALTOONA LLC | 75 Park Plaza, Boston, MA 02116 | Forever 21 Retail, Inc. | Store Lease | 801 Bass Pro Drive NW, Space #120, Altoona, IA 50009 |
| 601 | Asheville Outlets | New England Development | PO Box 603145, Charlotte, NC 28260-3145 | Forever 21 Retail, Inc. | Store Lease | 800 Brevard Road, Ste. 824, Asheville, NC 28806 |
| 2101 | South Bay Center (F21 RED) | Other | 21 Custom House Street, Boston, MA 02110 | Forever 21 Retail, Inc. | Store Lease | 21-39 District Avenue # 39, Boston, MA 02125 |
| 376 | 601 Pine Street | Other - Colliers International | 5910 North Central Expressway, Dallas, TX 75206 | Forever 21 Retail, Inc. | Store Lease | 601 Pine St., Seattle, WA 98101 |
| 488 | Shops at Georgetown Park | Other - JT Premier Georgetown Park Corp | 888 Seventh Avenue, 44th Floor, New York, NY 10019 | Forever 21 Retail, Inc. | Store Lease | 3222 M Street, NW, Washington DC, DC 20007 |
| 474 | 10 South State Street | Other - Madison Capital/ASB Capital Mgmt | 225 W. Wacker, Chicago, IL 60606 | Forever 21 Retail, Inc. | Store Lease | 10 South State Street, Chicago, IL 60603 |
| 678 | Shops At Perry Crossing (F21 RED) | Other - Metropolis Lifestyle Center, LLC | 2650 Thousand Oaks Blvd., Memphis, TN 38118 | Forever 21 Retail, Inc. | Store Lease | 2539 Perry Crossing Way, Ste. 100, Plainfield, IN 46168 |
| 673 | Hanover Commons (F21 RED) | Other - Urban Edge Properties | 120 Route 4 East, Paramus, NJ 07652 | Forever 21 Retail, Inc. | Store Lease | 200-240 Route 10 West Space 6-9, East Hanover, NJ 07936 |
| 389 | Bellevue Square | Other - Kemper Development | 575 Bellevue Square, Bellevue, WA 98009 | Forever 21, Inc. | Store Lease | 248 Bellevue Square, Bellevue, WA 98004 |
| 349 | 343 Newbury Street | Other-343 Management, LLC | 316 Newbury Street, No. 22, Boston, MA 02115 | Forever 21 Retail, Inc. | Store Lease | 343 Newbury St., Boston, MA 02115 |
| 3536 | Hamilton Place | Other-BELK | 2801 West Tyvola Road, Charlotte, NC 28217-4500 | Forever 21 Retail, Inc. | Store Lease | 2100 Hamilton Place Blvd., Chattanooga, TN 37421 |
| 3009 | Woodies Building | Other-Douglas Development | 3250 Van Ness Avenue, San Francisco, CA 94109 | Forever 21 Retail, Inc. | Store Lease | 1025 F Street NW, Suite #200, Washington, DC 20004 |
| 359 | Royal Hawaiian | Other-Festival Co's | 567 South King Street, Honolulu, HI 96813 | Forever 21 Retail, Inc. | Store Lease | 2301 Kalakaua Ave., Ste #209, Honolulu, HI 96815 |
| 3001 | Pasadena | Other-St. John Land Company | 136 El Camino Drive, Beverly Hills, CA 90212 | Forever 21 Retail, Inc. | Store Lease | 35 N. De Lacey Ave., Pasadena, CA 91103 |
| 3508 | South Towne Center | Pacific Retail Capital | 2029 Century Park East, Suite 800, Los Angeles, CA 90067-2909 | Forever 21 Retail, Inc. | Store Lease | 10450 South State St., Suite #2300, Sandy, UT 84070 |
| 71 | White Plains Galleria | Pacific Retail Capital | 2029 Century Park East, Suite 800, Los Angeles, CA 90067-2909 | Forever 21 Retail, Inc. | Store Lease | 100 Main St., Ste 221, White Plains, NY 10601 |
| 2125 | MAGNOLIA | PREIT | 200 S. Broad Street, 3rd Floor, Philadelphia, PA 19102 | Forever 21 Retail, Inc. | Store Lease | 2701 David H. McLeod Blvd., Space #1316, Florence, SC 29501 |

Forever 21
Store Closing List

| Store # | Store Name | Counterparty Name | Counterparty Address | Debtor Counterparty | Contract Description | Store Address |
|---|---|---|---|---|---|---|
| 2126 | PLYMOUTH MEETING | PREIT | 225 West Washington Street, Indianapolis, IN 46204-3438 | Forever 21 Retail, Inc. | Store Lease | 500 W. Germantown Pike, Space 1355, Plymouth Meeting, PA 19462 |
| 482 | 1708 Chestnut Street | PREIT | 200 S. Broad Street, 3rd Floor, Philadelphia, PA 19102 | Forever 21 Retail, Inc. | Store Lease | 1708 Chestnut Street, Philadelphia, PA 19103 |
| 2114 | Sangertown Square | Pyramid | 4 Clinton Square, Syracuse, NY 13202 | Forever 21 Retail, Inc. | Store Lease | 8555 Seneca Turnpike, Space # D06, New Hartford, NY 13413 |
| 2117 | Manassas | Pyramid | 4 Clinton Square, Syracuse, NY 13202 | Forever 21 Retail, Inc. | Store Lease | 8300 Suoleu Road Space #031, Manassa, VA 20109 |
| 754 | The Shops @ Wiregrass | QIC | 600 Superior Avenue, Suite 1500, Cleveland, OH 44114 | Forever 21 Retail, Inc. | Store Lease | 28210 Paseo Drive, Unit #190, Building No. Two, Wesley Chapel, FL 33544 |
| 19 | The Galleria @ South Bay | QIC | 600 Superior Avenue, Suite 1500, Cleveland, OH 44114 | Forever 21 Retail, Inc. | Store Lease | 1815 Hawthorne Blvd, Ste 188, Redondo Beach, CA 90278 |
| 157 | Hillsdale Shopping Center | Related Companies | 60 31st Avenue, San Mateo, CA 94403-3497 | Forever 21, Inc. | Store Lease | 396 Hillsdale Shopping Center, San Mateo, CA 94403 |
| 608 | Village at Cumberland Park (F21 RED) | Retail Connection | 2525 McKinnon Street, Dallas, TX 75201 | Forever 21 Retail, Inc. | Store Lease | 8934 S. Broadway Ave. Ste. 448, Tyler, TX 75703 |
| 664 | Central Texas Marketplace (F21 RED) | RPAI | 15105 Collection Drive, Chicago, IL 60693 | Forever 21 Retail, Inc. | Store Lease | 2408 W Loop 340, Waco, TX 76711 |
| 423 | Willow Bend | Starwood Retail Partners | 1 East Wacker Drive, Chicago, IL 60601 | Forever 21 Retail, Inc. | Store Lease | 6121 W. Park Blvd, Ste B121 & B214, Plano, TX 75093 |
| 125 | Macarthur | Starwood Retail Partners | 1 East Wacker Drive, Chicago, IL 60601 | Forever 21 Retail, Inc. | Store Lease | 300 Monticello Ave., Suite #255, Norfolk, VA 23510 |
| 3010 | Solano | Starwood Retail Partners | 1 East Wacker Drive, Chicago, IL 60601 | Forever 21 Retail, Inc. | Store Lease | 1451 Gateway Blvd, Fairfield, CA 94533 |
| 670 | Lake Charles (F21 RED) | Stirling Properties | 10606 Coursey Boulevard, Baton Rouge, LA 70816 | Forever 21 Retail, Inc. | Store Lease | 3401 Derek Dr., Lake Charles, LA 70607 |
| 2131 | TANGER PARK CITY | Tanger | 3200 Northline Ave, Suite 360, Greensboro, NC 27408 | Forever 21 Retail, Inc. | Store Lease | 6699 N. Landmark Dr. Space #L150, Park City, UT 84098 |
| 2129 | TANGER JEFFERSONVILLE | Tanger | 3200 Northline Ave, Suite 360, Greensboro, NC 27408 | Forever 21 Retail, Inc. | Store Lease | 8000 Factory Shops Blvd. #845, Jeffersonville, OH 43128 |
| 2128 | TANGER GRAND RAPIDS | Tanger | 3200 Northline Ave, Suite 360, Greensboro, NC 27408 | Forever 21 Retail, Inc. | Store Lease | 350 84th St SW, #480, Byron Center, MI 49315 |
| 744 | Fair Oaks | Taubman | 200 East Long Lake Road, Suite 300, Bloomfield Hills, MI 48304-2324 | Forever 21 Retail, Inc. | Store Lease | 11750 Fair Oaks #H227, Fairfax, VA 22033 |

Forever 21
Store Closing List

| Store # | Store Name | Counterparty Name | Counterparty Address | Debtor Counterparty | Contract Description | Store Address |
|---|---|---|---|---|---|---|
| 6013 | Short Hills | Taubman | 200 East Long Lake Road, Suite 300, Bloomfield Hills, MI 48304-2324 | Forever 21 Retail, Inc. | Store Lease | 1200 Morris Turnpike, Space D123, Short Hills, NJ 07078 |
| 17 | Fashion Island | The Irvine Company | 401 Newport Center Drive, Newport Beach, CA 92660 | Forever 21 Retail, Inc. | Store Lease | 1101 Newport Center Drive, Newport Beach, CA 92660 |
| 692 | Tustin Marketplace (F21 RED) | The Irvine Company | The Market Place (S20578), Los Angeles, CA 90084-2567 | Forever 21 Retail, Inc. | Store Lease | 2856 El Camino Real, Tustin, CA 92782 |
| 624 | Outlet Shops Of Grand River | TORG | 6200 Grand River Blvd. Easr, Suite 446, Leeds, AL 35094 | Forever 21 Retail, Inc. | Store Lease | 6200 Grand River Blvd., Suite 646, Leeds, AL 35094 |
| 492 | Oakdale Mall (F21 RED) | Urban Edge | 210 Route 4 East, Paramus, NJ 07652 | Forever 21 Retail, Inc. | Store Lease | 601-635 Harry L Drive Ste. 41, Johnson City, NY 13790 |
| 307 | Orchard Town Center | Vestar | Terminal Tower, 50 Public Square, Cleveland, OH 44113 | Forever 21 Retail, Inc. | Store Lease | 14694 Orchard Pkwy, #300, Westminster, CO 80023 |
| 2106 | Clay Terrace (F21 RED) | Washington Prime Group | 111 Monument Circle, Indianapolis, IN 46204 | Forever 21 Retail, Inc. | Store Lease | 14550 Clay Terrace Blvd., Carmel, IN 46032 |
| 2107 | OUTLET COLLECTION OF SEATTLE | Washington Prime Group | 111 Monument Circle, Indianapolis, IN 46204 | Forever 21 Retail, Inc. | Store Lease | 1101 Outlet Collection Way, Space 319, Auburn, WA 98001 |
| 293 | Morgantown Mall | Washington Prime Group | 111 Monument Circle, Indianapolis, IN 46204 | Forever 21 Retail, Inc. | Store Lease | 9311 Mall Rd, Morgantown, WV 26505 |
| 5133 | Seventh Ave-Penn Station (Riley Rose) | Vornado Realty Trust | 888 Seventh Avenue, 44th Floor, New York, NY 10019 | Forever 21 Retail, Inc. | Store Lease | 435 7th Avenue, New York, NY 10119 |
| 314 | Valencia Town Center | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 24201 W. Valencia Blvd. #139, Valencia, CA 91355 |
| 3542 | Santa Anita | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 400 South Baldwin Ave, Arcadia, CA 91007 |
| 292 | Sunrise Mall | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 1107 Sunrise Mall, Massapequa, NY 11758 |
| 726 | Old Orchard | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 4999 Old Orchard Center #I6, Skokie, IL 60077 |
| 60 | Meriden Square Mall | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 470 Lewis Avenue, Space 50, Meriden, CT 06450 |
| 792 | Galleria @ Roseville | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 1173 Galleria Blvd., #P107, Roseville, CA 95678 |
| 49 | Oakridge Mall | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 925 Blossom Hill Road, #X-15, San Jose, CA 95123 |

Forever 21
Store Closing List

| Store # | Store Name | Counterparty Name | Counterparty Address | Debtor Counterparty | Contract Description | Store Address |
|---------|-----------|-------------------|---------------------|---------------------|---------------------|---------------|
| 695 | Mission Valley | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 1640 Camino Del Rio, San Diego, CA 92108 |
| 61 | Montgomery Mall | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 7101 Democracy Blvd, Space 1252, Bethesda, MD 20817 |
| 238 | Sherman Oaks Fashion Square | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 14006 Riverside Drive, Space #244, Sherman Oaks, CA 91423 |
| 38 | University Town Center | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 4545 La Jolla Village Drive Suite #H10, San Diego, CA 92122 |
| 751 | Southcenter Mall | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 835 Southcenter Mall, Tukwila, WA 98188 |
| 614 | World Trade Center | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 185 Greenwich St., Ste. LL4435, New York, NY 10007 |
| 182 | Wheaton Mall | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 11160 Veirs Mills Road, Silver Spring, MD 20902 |
| 5114 | Southcenter Mall (Riley Rose) | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 467 Southcenter Mall #1545, Tukwila, WA 91811 |
| 5116 | Westfield Topanga Plaza (Riley Rose) | Westfield | 545 Long Wharf Drive, New Haven, CT 06511 | Forever 21 Retail, Inc. | Store Lease | 6600 Topanga Canyon Blvd, Space #60, Canoga Park, CA 91303 |
| 644 | The Mall At Greece Ridge (F21 RED) | Wilmorite | 1265 Scottsville Road, Rochester, NY 14624 | Forever 21 Retail, Inc. | Store Lease | 208 Greece Ridge Center Drive, Rochester, NY 14626 |
| 748 | Greenstreet | LV A4 Houston Greenstreet L.P. | 1201 Fannin St, Houston, TX 77002 | Forever 21 Retail, Inc. | Store Lease | 1201 Main St., Space #101& 201 of Block 272, Houston, TX, 77002 |
| 3539 | The Shops at Mission Viejo | Simon Property Group | 225 West Washington Street, Indianapolis, IN 46204 | Forever 21 Retail, Inc. | Store Lease | 555 The Shops at Mission Viejo, Mission Viejo, CA, 92691 |
| 4308 | Chicago Premium Outlets | Simon Property Group | 225 West Washington Street, Indianapolis, IN 46204 | Forever 21 Retail, Inc. | Store Lease | 1650 Premium Outlet Blvd. Spc #1105, Aurora, IL, 60502 |

<u>**Annex 3**</u>

**Store Closing Procedures**

### Store Closing Procedures[1]

1.  The Store Closings will be conducted during normal business hours or such hours as otherwise permitted by the applicable unexpired lease.

2.  The Store Closings will be conducted in accordance with applicable state and local "Blue Laws," and, thus, where such a law is applicable, no Store Closings will be conducted on Sunday unless the Debtors have been operating such stores on Sundays.

3.  On "shopping center" property, neither the Debtors nor the Consultant shall distribute handbills, leaflets, or other written materials to customers outside of any Stores' premises, unless permitted by the applicable lease or if distribution is customary in the "shopping center" in which such Store is located; *provided* that the Debtors and the Consultant may solicit customers in the Stores themselves. On "shopping center" property, neither the Debtors nor the Consultant shall use any flashing lights or amplified sound to advertise the Store Closings or solicit customers, except as permitted under the applicable lease or agreed in writing by the landlord.

4.  The Debtors and the Consultant shall have the right to use and sell the FF&E. The Debtors and the Consultant may advertise the sale of the FF&E in a manner consistent with these Store Closing Procedures. The purchasers of any FF&E sold during the Store Closings shall be permitted to remove the FF&E either through the back or alternative shipping areas at any time, or through other areas after Store business hours; *provided* that the foregoing shall not apply to *de minimis* FF&E sales made whereby the item can be carried out of the Store in a shopping bag.

5.  The Debtors and the Consultant may abandon any FF&E not sold in the Sales at the Closing Stores at the conclusion of the Sales, including, but not limited to, Closing Store signage. Any abandoned FF&E left in a Closing Store after a lease is rejected shall be deemed abandoned to the landlord, with the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Debtors.

6.  The Debtors and the Consultant may, but are not required to, advertise all of the Store Closings as "store closing," "sale on everything," "everything must go," or similarly themed sales. The Debtors and the Consultant may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Store Closing Procedures.

7.  The Debtors and the Consultant shall be permitted to utilize sign walkers, display, hanging signs, and interior banners in connection with the Store Closings; *provided* that such sign walkers, display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. Neither the Debtors nor the Consultant shall use neon or day-glo on its sign walkers, display, hanging signs, or interior banners if

---

[1] Capitalized terms used but not defined in these Store Closing Procedures have the meanings given to them in this Order to which these Store Closing Procedures are attached as **Annex 3** or the Motion to which the is attached as **Exhibit A**, as applicable.

prohibited by the applicable lease or applicable law.  Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Store Closing Procedures.  In addition, the Debtors and the Consultant shall be permitted to utilize exterior banners at (a) non-enclosed mall Stores and (b) enclosed mall Stores to the extent the entrance to the applicable Store does not require entry into the enclosed mall common area; *provided* that such banners shall be located or hung so as to make clear that the Store Closing is being conducted only at the affected Store and shall not be wider than the storefront of the Store. In addition, the Debtors shall be permitted to utilize sign walkers in a safe and professional manner. Nothing contained in these Store Closing Procedures shall be construed to create or impose upon the Debtors or the Consultant any additional restrictions not contained in the applicable lease agreement.

8.  Neither the Debtors nor the Consultant shall make any alterations to the storefront, roof, or exterior walls of any Stores or shopping centers, or to interior or exterior store lighting, except as authorized by the applicable lease.  The hanging of in-Store signage shall not constitute an alteration to a Store.

9.  Affected landlords will have the ability to negotiate with the Debtors or, at the Debtors' direction, the Consultant, any particular modifications to the Store Closing Procedures. The Consultant, at the direction of the Debtors, and the landlord of any Store are authorized to enter into Side Letters without further order of the Court, provided that such agreements do not have a material adverse effect on the Debtors or their estates.

10. Conspicuous signs will be posted in each of the affected stores to the effect that all sales are "final."

11. The Debtors will keep store premises and surrounding areas clear and orderly, consistent with past practices.

12. An unexpired nonresidential real property lease will not be deemed rejected by reason of a Store Closing or the adoption of these Store Closing Procedures.

13. The rights of landlords against the Debtors for any damages to a Store shall be reserved in accordance with the provisions of the applicable lease.

14. If and to the extent that the landlord of any Store contends that the Debtors or the Consultant is in breach of or default under these Store Closing Procedures, such landlord shall provide at least five (5) days' written notice, served by email or overnight delivery, on:

> If to the Debtors:
>
> 3880 N. Mission Road
> Los Angeles, California 90031
> Attention:  Scott Hampton
>
> with copies (which shall not constitute notice) to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attention: Aparna Yenamandra
Email address: aparna.yenamandra@kirkland.com

and

Pachulski Stang Ziehl & Jones LLP,
919 North Market Street, 17th Floor,
P.O. Box 8705,
Wilmington, Delaware 19899-8705 (Courier 19801),
Attention: Laura Davis Jones
Email Address: ljones@pszjlaw.com

and

Montgomery McCracken Walker & Rhoads,
437 Madison Avenue, New York, NY 10022,
Attention: Maura I. Russell
Email Address: mrussell@mmwr.com

If to Consultant:

Riemer & Braunstein LLP,
Times Square Tower, Seven Times Square, Suite 2506, New York, New York
10036,
Attention: Steven E. Fox
Email address: sfox@riemerlaw.com

If the parties are unable to resolve the dispute, either the landlord or the Debtors shall have the right to schedule a hearing before the Court on no less than five (5) days' written notice to the other party, served by email or overnight delivery.