**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FOREVER 21, INC., *et al.*,[1] | Case No. 19-12122 (KG) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF G&I VII RENO OPERATING, L.L.C. TO (A) MOTION OF F21 OPCO, LLC FOR ENTRY OF AN ORDER MODIFYING THE SALE ORDER AND GRANTING CERTAIN OTHER RELIEF RELATING TO GOING OUT OF BUSINESS SALES AND STORE CLOSINGS, AND (B) NINTH NOTICE OF REJECTION OF UNEXPIRED NON-RESIDENTIAL REAL PROPERTY LEASES**

G&I VII Reno Operating, L.L.C. ("G&I" or "Landlord") submits this objection (this "Objection") to (a) the *Motion of F21 OpCo, LLC for Entry of an Order Modifying the Sale Order and Granting Certain Other Relief Relating to Going Out of Business Sales and Store Closings* (the "Motion to Amend") [Docket No. 1115], filed by F21 OpCo, LLC (the "Buyer"), and (b) the *Ninth Notice of Rejection of Unexpired Non-Residential Real Property Leases* (the "Rejection Notice") [Docket No. 1110]. In support of this Objection, the Landlord specifically joins in any objections filed in opposition to the Motion to Amend and the Rejection Notice to the extent such objections are not inconsistent with the position set forth herein, and states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Forever 21, Inc. (4795); Alameda Holdings, LLC (2379); Forever 21 International Holdings, Inc. (4904); Forever 21 Logistics, LLC (1956); Forever 21 Real Estate Holdings, LLC (4224); Forever 21 Retail, Inc. (7150); Innovative Brand Partners, LLC (7248); and Riley Rose, LLC (6928). The location of the Debtors' service address is: 3880 N. Mission Road, Los Angeles, California 90031.

## BACKGROUND FACTS

1.      On or about September 29, 2019 (the "Petition Date"), the Debtors filed for bankruptcy protection under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "Bankruptcy Code").   The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

2.      Prior to the Petition Date, on October 29, 2018, the Landlord and Debtor Forever 21 Retail, Inc. entered into a certain nonresidential real property lease agreement (as amended, the "Lease") for those certain premises (the "Premises") identified as Space No. 626-628 in the shopping center known as The Summit Sierra, in Reno, Nevada.

### The Sale Order

3.      On February 13, 2020, the Court entered the *Order (I) Authorizing (A) Entry into and Performance Under the Asset Purchase Agreement, (B) the Sale of the Debtors' Assets to the Buyer, and (C) the Buyer to Conduct Store Closings and Going Out of Business Sales, and (II) Granting Related Relief* (the "Sale Order") [Docket No. 927].  The sale to the Buyer (the "Sale") subsequently closed.

4.      The Sale Order did not approve the assumption or assignment of the Lease. Rather, the Lease was a "Designated Lease" subject to the "Designation Rights Period" during which the Buyer could direct the Debtors to assume and assign or reject the Lease.  The Buyer is obligated for the payment of rent under the Lease during the Designation Rights Period.  See Asset Purchase Agreement (D.I. 922) at § 2.7(e) ("Buyer shall be responsible for any all payments of Buyer, Sellers or any of their respective Affiliates (i) under any . . . Designated Leases and/or (ii) as a result of, arising out of or in connection with the operation of any Store . . . governed by any such . . . Designated Leases, in each case that are incurred and come due and payable during the period from and after Closing through the effective date of such . . .

Designated Lease's assumption and assignment to Buyer or rejection . . ."); see also Sale Order at ¶ 5 ("Notwithstanding anything to the contrary herein or in the Asset Purchase Agreement, all amounts Buyer is responsible for paying pursuant to the Asset Purchase Agreement to the extent payable to any Designation Counterparty shall be paid by Buyer directly to such Designation Counterparty.").

5.      The Sale Order further provided that the "Rejection Effective Date" of any lease shall be the *later of* the date that the keys are turned over or the premises are unequivocally surrendered.  See Sale Order at ¶ 10.  ("Rejection Effective Date" is "the later of (a) the date on which the debtors file the rejection notice with the court (unless the applicable designation counterparty timely files and serves an objection…) and (b) the date the debtors deliver possession of the premises subject to the lease to the applicable landlord by delivering keys, key codes, and/or security codes . . .  or . . .  Providing notice to the landlord that other landlord may re-let the premises").

### Buyer's Proposed GOB Sale

6.      On March 13, 2020, the Debtors filed a notice indicating that the Buyer and its agent intend to conduct a store closing sale at the Premises.  See *Notice of Going Out of Business Sales List Related to the Order (I) Authorizing (A) Entry into and Performance Under the Asset Purchase Agreement, (B) the Sale of the Debtors' Assets to the Buyer, and (C) the Buyer to Conduct Store Closings and Going Out of Business Sales, and (II) Granting Related Relief* [Docket No. 1058].  The Debtors filed a subsequent "Omnibus Notice" [Docket No. 1133] confirming this intention.

**The Buyer's Motion to Amend and Rejection Notice**

7.       On March 31, 2020, the Debtors filed the Rejection Notice, which includes the Lease and provides that the effective date of the rejection is March 31, 2020.  See Docket No. 1110.  The Premises have not been surrendered to the Landlord.

8.       The next day, on April 1, 2020, the Buyer filed the Motion to Amend.   The Motion seeks to amend the Sale Order to permit the leases subject to the Rejection Notice, including the Lease, to be rejected effective March 31, 2020, notwithstanding the Buyer's continuing use of the various leased premises to store inventory and other personal property and to conduct going-out-of-business sales at a date in the future.

9.       While the Buyer submits that it intends to pay rent for the pro-rated period in which the going-out-of-business sale occurs, the Buyer requests that the Court alleviate it of its obligation to pay rent prior to the commencement of the going-out-of-business sales despite its continuing use of the leased premises.

**OBJECTION**

10.      Landlord objects to the Motion to Amend and the Rejection Notice on the grounds that: a) they seek to retroactively reject the Lease to March 31, 2020 in contravention of applicable law and the terms of the Sale Order (and avoid payment rent), despite the fact that the Premises have not been surrendered to Landlord and are being used to store and protect Buyer's property so that it can be liquidated for Buyer's benefit during a future store closing sale; and b) they unfairly seek to alter material terms of the previously-approved sale in order to shift risk to landlords and allow the Buyer to benefit from continued possession and use of the Premises without compensation to the Landlord.

11.      The Landlord recognizes that all parties in this case are impacted by the COVID-19 pandemic.   However, the Buyer's Motion to Amend inappropriately seeks to unravel the

economics of the sale transaction previously approved by this Court and shift the economic burden of the pandemic to other parties, namely the landlords. While Buyer may not have closed the Sale had it known that a public health crisis would result in government closures of retail businesses, hindsight is 20/20 in every deal and unforeseen circumstances are a risk of doing business. The Buyer should not be permitted to force the landlords to give the Buyer indefinite use of the leased premises to store and protect its property without being compensated. This is especially the case here, where the Debtors' estates have been administratively insolvent for several months, and are unable to satisfy their obligations to landlords under Section 365(d)(3) of the Bankruptcy Code.

12.     In requesting that this Court rewrite the terms of the Sale, the Buyer has also asked this Court to ignore well-established law regarding rejection of leases embedded in the provisions of the Sale Order. See Sale Order, ¶ 10 (providing (i) that rejection is effective as of the later of a) the date on which the Debtors file the rejection notice, and b) the date on which the Debtors deliver possession of the premises to the landlord; and (ii) any personal property left in the leased premises as of the effective rejection date is deemed abandoned and may be disposed by the landlord.

13.     The Rejection Notice seeks to retroactively reject the lease as of March 31, 2020. However, the Debtors have not delivered possession of the Premises to the Landlord, and therefore the Lease is not deemed rejected pursuant to the Sale Order. *See In re Fleming Cos., Inc.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (recognizing that generally the effective date of rejection is the date the order granting rejection is entered, and that *nunc pro tunc* rejection is allowed only in certain circumstances to the date the rejection motion is filed or the premises are

surrendered).    Accordingly, the Lease cannot be deemed rejected until the Debtors deliver possession of the Premises to the Landlord.

14.    Further, regardless of whether the Lease is rejected effective as of March 31, 2020, the Landlord is entitled to the rental amounts owed under the Lease until possession of the Premises is delivered to the Landlord, which amounts must be paid by the Buyer pursuant to paragraph 5 of the Sale Order and/or are an administrative expense claim against the Debtors pursuant to 11 U.S.C. § 365(d)(3).

15.    As this Court has recognized, even where a lease is rejected without objection landlords are entitled to a post-rejection date administrative expense claim for the fair market rental value of the premises where the debtor has continued to use a leased premises after the effective date of rejection of the lease.  See In re DVI, Inc., 308 B.R. 703, 708 (Bankr. D. Del. 2004).

## CONCLUSION

For all of the foregoing reasons, the Landlord requests that this Court enter an order sustaining this Objection and granting such other, further, and different relief as this Court deems just and proper.

Dated:  April 14, 2020

BURR & FORMAN LLP

/s/ J. Cory Falgowski
J. Cory Falgowski (No. 4546)
1201 N. Market Street, Suite 1407
Wilmington, DE  19801
Telephone:  (302) 830-2312
Facsimile:  (302) 397-2566
Email:  jfalgowski@burr.com

*Counsel for G&I VII Reno Operating LLC*