## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FOREVER 21, INC., *et al.*,[1] | ) Case No. 19-12122 (MFW) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## SECOND AMENDED JOINT CHAPTER 11 PLAN OF FOREVER 21, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

- and -

Anup Sathy, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Timothy P. Cairns (DE Bar No. 4228)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400

*Counsel to the Debtors and Debtors in Possession*

Dated:  April 19, 2021

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, include:  Forever 21, Inc. (4795); Alameda Holdings, LLC (2379); Forever 21 International Holdings, Inc. (4904); Forever 21 Logistics, LLC (1956); Forever 21 Real Estate Holdings, LLC (4224); Forever 21 Retail, Inc. (7150); Innovative Brand Partners, LLC (7248); and Riley Rose, LLC (6928). The location of the Debtors' service address is:  3880 N. Mission Road, Los Angeles, California 90031.

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINED TERMS AND RULES OF INTERPRETATION ...................................................... 1
    A.    Defined Terms ................................................................................................................ 1
    B.    Rules of Interpretation ................................................................................................... 8
    C.    Computation of Time ..................................................................................................... 9
    D.    Reference to Monetary Figures ..................................................................................... 9
    E.    Reference to the Debtors or the Wind-Down Debtors ................................................... 9

ARTICLE II. ADMINISTRATIVE CLAIMS AND UNITED STATES TRUSTEE STATUTORY FEES ............... 9
    A.    Administrative Claims .................................................................................................... 9
    B.    United States Trustee Statutory Fees ........................................................................... 10

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................................ 11
    A.    Classification of Claims ................................................................................................ 11
    B.    Treatment of Claims and Interests ............................................................................... 11
    C.    Special Provision Governing Unimpaired Claims ....................................................... 14
    D.    Nonconsensual Confirmation ....................................................................................... 14
    E.    Subordinated Claims .................................................................................................... 14
    F.    Elimination of Vacant Classes .................................................................................... 14

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ......................................................... 14
    A.    Sources of Consideration for Plan Distributions ......................................................... 14
    B.    General Settlement of Claims ...................................................................................... 14
    C.    Restructuring Transactions .......................................................................................... 15
    D.    Wind-Down Debtors .................................................................................................... 15
    E.    Plan Administrator ....................................................................................................... 15
    F.    Wind-Down ................................................................................................................. 16
    G.    Tax Returns ................................................................................................................. 16
    H.    Corporate Existence ..................................................................................................... 17
    I.    Dissolution of the Wind-Down Debtors ...................................................................... 17
    J.    Vesting of Assets in the Wind-Down Debtors ............................................................. 17
    K.    Cancellation of Agreements and Equity Interests ....................................................... 17
    L.    Sources for Plan Distributions and Transfers of Funds Among Debtors ..................... 17
    M.    Organizational Documents ........................................................................................... 18
    N.    Exemption from Certain Transfer Taxes and Recording Fees ..................................... 18
    O.    Preservation of Rights of Action .................................................................................. 18
    P.    Corporate Action ......................................................................................................... 18
    Q.    Effectuating Documents; Further Transactions ........................................................... 19

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................... 19
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ................... 19

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ............................................................. 19
    A.    Distribution on Account of Claims and Interests Allowed as of the Effective Date ..... 19
    B.    Distributions on Account of Claims and Interests Allowed After the Effective Date .... 19
    C.    Timing and Calculation of Amounts to Be Distributed ............................................... 20
    D.    Delivery of Distributions ............................................................................................. 20
    E.    Compliance with Tax Requirements/Allocations ........................................................ 21
    F.    Surrender of Cancelled Instruments or Securities ....................................................... 21
    G.    Claims Paid or Payable by Third Parties ..................................................................... 22

ARTICLE VII. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND
    UNLIQUIDATED CLAIMS OR EQUITY INTERESTS ........................................................22
    A.    Allowance of Claims and Interests ........................................................22
    B.    Prosecution of Objections to Claims ........................................................22
    C.    Estimation of Claims and Interests ........................................................22
    D.    Adjustment to Claims and Interests Without Objection ........................................................23
    E.    Time to File Objections to Claims ........................................................23
    F.    Disallowance of Certain Claims ........................................................23
    G.    Amendments to Proofs of Claim ........................................................23
    H.    Offer of Judgment ........................................................23

ARTICLE VIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ........................................................23
    A.    Conditions Precedent to the Effective Date ........................................................23
    B.    Waiver of Conditions ........................................................24
    C.    Effect of Non-Occurrence of Conditions to the Effective Date ........................................................24
    D.    Substantial Consummation ........................................................24

ARTICLE IX. RELEASE, INJUNCTION, AND RELATED PROVISIONS ........................................................24
    A.    Discharge of Claims and Termination of Equity Interests; Compromise and Settlement of
        Claims, Equity Interests, and Controversies. ........................................................24
    **B.**    **Releases by the Debtors** ........................................................25
    **C.**    **Releases by Holders of Claims and Equity Interests** ........................................................26
    **D.**    **Exculpation** ........................................................27
    **E.**    **Injunction** ........................................................27
    F.    Substantive Consolidation ........................................................28
    G.    Setoffs and Recoupment ........................................................28
    H.    Release of Liens ........................................................29

ARTICLE X. RETENTION OF JURISDICTION ........................................................29

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN ........................................................31
    A.    Modification of Plan ........................................................31
    B.    Effect of Confirmation on Modifications ........................................................31
    C.    Revocation of Plan ........................................................31

ARTICLE XII. MISCELLANEOUS PROVISIONS ........................................................31
    A.    Immediate Binding Effect ........................................................31
    B.    Additional Documents ........................................................31
    C.    Payment of Statutory Fees ........................................................32
    D.    Reservation of Rights ........................................................32
    E.    Successors and Assigns ........................................................32
    F.    Service of Documents ........................................................32
    G.    Term of Injunctions or Stays ........................................................33
    H.    Entire Agreement ........................................................33
    I.    Governing Law ........................................................33
    J.    Exhibits ........................................................34
    K.    Nonseverability of Plan Provisions upon Confirmation ........................................................34
    L.    Closing of Chapter 11 Cases ........................................................34
    M.    Conflicts ........................................................34
    N.    Dissolution of the Committee ........................................................34
    O.    Section 1125(e) Good Faith Compliance ........................................................34
    P.    Further Assurances ........................................................34

**SECOND AMENDED JOINT CHAPTER 11 PLAN OF FOREVER 21 INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Forever 21, Inc., Alameda Holdings, LLC, Forever 21 International Holdings, Inc., Forever 21 Logistics, LLC, Forever 21 Real Estate Holdings, LLC, Forever 21 Retail, Inc., Innovative Brand Partners, LLC, and Riley Rose, LLC (each a "Debtor" and, collectively, the "Debtors") propose this joint chapter 11 plan (the "Plan") for the resolution of the outstanding Claims against, and Equity Interests in, the Debtors.  Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I.A of this Plan.

Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code.  The Debtors seek to consummate the Restructuring Transactions on the Effective Date of the Plan.  Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.  The classifications of Claims and Interests set forth in Article III of this Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable.

Reference is made to the Disclosure Statement, filed contemporaneously herewith, for a discussion of the Debtors' history, business, results of operations, historical financial information, projections and future operations, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under this Plan.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.

## DEFINED TERMS AND RULES OF INTERPRETATION

A.    *Defined Terms*

The following terms shall have the following meanings when used in capitalized form herein:

1.    "*Administrative/Priority Claim Consent Form*" means those consent forms attached to the Disclosure Statement Order as Exhibit 10.

2.    "*Administrative and Priority Tax Claims Recovery*" means the lesser of (a) any Distributable Cash in excess of amounts necessary to satisfy all Allowed Secured Claims as set forth in Article III, and (b) Cash in an amount equal to the Allowed Administrative Claims and Allowed Priority Tax Claims; *provided* that Administrative Settlement Claimants shall receive such recovery as provided pursuant to the Settlement.

3.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estates under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors; (b) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.  For the avoidance of doubt, Claims related to amounts required to cure any monetary defaults under any executory contract or unexpired lease that is to be assumed by the Debtors and assigned to Buyer pursuant to sections 365 or 1123 of the Bankruptcy Code are not Administrative Claims and will be satisfied pursuant to the provisions of the Asset Purchase Agreement and Sale Order.

4.    "*Administrative Claims Bar Date*" means June 1, 2020, at 4:00 p.m., prevailing Eastern Time, as established pursuant to the Bar Date Order.

5.    "*Administrative Settlement Claimants*" means those Holders of Administrative Claims that execute the Opt-In Form (as defined in the Settlement Order).

6.     "*Administrative Settlement Claims*" means any General Administrative Claim held by the Administrative Settlement Claims and as defined in the Settlement Order.

7.     "*Affiliate*" means an affiliate as defined in section 101(2) of the Bankruptcy Code; *provided* that no Holder of an Existing Equity Interest in Forever 21 shall be considered an Affiliate.

8.     "*Allowed*" means, with respect to any Claim or Interest, except as otherwise provided herein, a Claim or Interest allowed under the Plan, under the Bankruptcy Code, as applicable, or by a Final Order.

9.     "*Asset Purchase Agreement*" means, together with all schedules and exhibits attached thereto and related agreements, that certain asset purchase agreement by and among Forever 21, the others sellers party thereto, and F21 Opco, LLC dated February 11, 2020, for the sale of substantially all of the Debtors' assets, attached as Exhibit A to the *Notice of Filing Final Asset Purchase Agreement* [Docket No. 922].

10.    "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that any of the Debtors, the Estates, or other appropriate parties in interest have asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

11.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

12.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Court.

13.    "*Bar Date Order*" means the *Order (I) Setting Bar Dates For Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Setting a Bar Date for the Filing of Proofs of Claim by Governmental Entities, (III) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (IV) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, (V) Approving Notice of Bar Dates, and (VI) Granting Related Relief* [Docket No. 396], entered by the Court on November 5, 2019 or the *Amended Order (I) Setting a Bar Date for Filing Proofs of Administrative Claims, (II) Establishing Administrative Claims Procedures, (III) Approving the Form and Manner of Filing of Administrative Claims, (IV) Approving Notice of the Administrative Claim Bar Date, and (V) Granting Related Relief* [Docket No. 1094], entered by the Court on March 26, 2020, as applicable.

14.    "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

15.    "*Buyer*" means F21 OpCo, LLC, together with its designees, if any.

16.    "*CARES Act Refund*" means any tax refunds received by the Debtors pursuant to the Coronavirus Aid, Relief, and Economic Security Act.

17.    "*Carve-Out Account*" shall have the meaning ascribed to such term in the Sale Order.

18.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

19.    "*Cause of Action*" or "*Causes of Action*" means any claims, interests, damages, liabilities, judgments, remedies, causes of action, controversies, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, interests, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, choate or inchoate, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, or equity, or otherwise.  Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

20.     "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the chapter 11 case filed for that Debtor under chapter 11 of the Bankruptcy Code in the Court and (b) when used with reference to all Debtors, the jointly administered chapter 11 cases for all of the Debtors.

21.     "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

22.     "*Claims Bar Date*" means the dates established by the Court pursuant to the Bar Date Order by which Proofs of Claim must be Filed, as applicable, including the Administrative Claims Bar Date, the bar date for Governmental Units, the general bar date, and the contract rejection damages bar date.

23.     "*Claims Objection Deadline*" means the deadline for objecting to a Claim asserted against a Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, in consultation with the Official Committee or by an order of the Court for objecting to such Claims.

24.     "*Claims Register*" means the official register of Claims and Interests maintained by the Notice and Claims Agent.

25.     "*Class*" means a category of Claims or Equity Interests as set forth in Article III of this Plan pursuant to section 1122(a) of the Bankruptcy Code.

26.     "*Confirmation*" means the entry of the Confirmation Order by the Court on the docket of the Chapter 11 Cases.

27.     "*Confirmation Date*" means the date upon which the Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

28.     "*Confirmation Hearing*" means the hearing conducted by the Court pursuant to section 1128(a) of the Bankruptcy Code to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

29.     "*Confirmation Order*" means the order of the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

30.     "*Court*" means the United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases.

31.     "*Crossover Unsecured Claim*" means any General Unsecured Claim that is held by an Administrative Settlement Claimant.

32.     "*D&O Liability Insurance Policies*" means all insurance policies of any of the Debtors for directors', managers', and officers' liability existing as of the Petition Date.

33.     "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto, as amended, supplemented, or modified from time to time, that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

34.     "*Disclosure Statement Order*" means the order of the Court approving the Disclosure Statement.

35.     "*Disputed*" means, with respect to any Claim or Interest, except as otherwise provided herein, a Claim or Interest that is not yet Allowed and as to which the Claim Objection Deadline has not passed.

36.     "*Distributable Cash*" means Cash received pursuant to the Tax Refunds, *plus* the Wind-Down Amount, *plus* any excess Cash from the Carve-Out Account remaining after satisfaction of all Allowed Professional Fee Claims, *less* the Plan Administrator Amount; *provided* that, if any of the Plan Administrator Amount is not used

by the Plan Administrator on or before completion of the Wind-Down, any such remaining portion of the Plan Administrator Amount shall be deemed Distributable Cash.

37. "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions under the Plan, which date shall be the Administrative Claims Bar Date.

38. "*Effective Date*" means the Business Day selected by the Debtors, on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article VIII.A of this Plan have been (i) satisfied or (ii) waived pursuant to Article VIII.A of this Plan.

39. "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

40. "*Equity Interest*" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, together with any warrants, equity-based awards, or contractual rights to purchase or acquire such equity interests at any time and all rights arising with respect thereto that existed immediately before the Effective Date; *provided* that such Equity Interest does not include any Intercompany Interest.

41. "*Estate*" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code.

42. "*Exculpated Fiduciaries*" means, collectively, each of the following solely in their respective capacities as such: (a) the Debtors; (b) the Wind-Down Debtors; (c) the Official Committee and each of its members; and (d) with respect to each of (a), (b), and (c) to the extent they were employed in such capacity on or after the Petition Date, such Entity's directors, officers, partners, managers, trustees, assigns, employees, agents, advisory board members, predecessors, successors, heirs, executors and assignees, attorneys, financial advisors, investment bankers, accountants, consultants and other professionals or representatives.

43. "*Exculpated Parties*" means, collectively, (a) the Exculpated Fiduciaries and (b) the Section 1125(e) Parties.

44. "*Existing Equity Interests*" means any common stock, preferred stock, warrants, or other ownership interest of or in Forever 21 that are issued and outstanding as of the Petition Date.

45. "*Final DIP Order*" means the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the ABL Secured Parties, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 397], entered by the Court on November 5, 2019.

46. "*Final Order*" means an order or judgment of the Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

47.     "*Forever 21*" means Forever 21, Inc., a Delaware corporation and the ultimate parent of the Debtors.

48.     "*General Administrative Claim*" means any Administrative Claim, other than a Professional Fee Claim.  For the avoidance of doubt, Priority Tax Claims are General Administrative Claims.

49.     "*General Unsecured Claim*" means any unsecured Claim, other than an Administrative Claim, a Priority Tax Claim, an Intercompany Claim, or a Section 510(b) Claim, against one or more of the Debtors.

50.     "*General Unsecured Claims Recovery*" means any Distributable Cash in excess of amounts necessary to satisfy all Allowed Other Priority Claims, if any, and after giving effect to the Administrative and Priority Tax Claims Recovery and Other Priority Claims Recovery.

51.     "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

52.     "*Holder*" means an Entity holding a Claim or Interest.

53.     "*Impaired*" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

54.     "*Impaired Class*" means a Class that is Impaired.

55.     "*Insider*" means an insider as defined in section 101(31) of the Bankruptcy Code.

56.     "*Intercompany Claims*" means, collectively, any Claim held by a Debtor against another Debtor or an Affiliate of a Debtor or any Claim held by an Affiliate of a Debtor against a Debtor.

57.     "*Intercompany Interest*" means an equity interest in a Debtor held by another Debtor.

58.     "*Interests*" means, collectively, Equity Interests and Intercompany Interests.

59.     "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [Docket No. 339], entered by the Court on October 28, 2019.

60.     "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

61.     "*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

62.     "*Notice and Claims Agent*" means Prime Clerk LLC, in its capacity as noticing, claims, and solicitation agent for the Debtors, pursuant to the *Order Authorizing Retention and Appointment of Prime Clerk LLC as Claims and Noticing Agent* [Docket No. 101], entered by the Court on October 1, 2019, and the *Order Authorizing the Employment and Retention of Prime Clerk LLC as Administrative Advisor* Nunc Pro Tunc *to the Petition Date* [Docket No. 486], entered by the Court on November 22, 2019.

63.     "*Official Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code [Docket No. 197].

64.     "*Other Priority Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

65.     "*Other Priority Claims Recovery*" means the lesser of (a) any Distributable Cash in excess of amounts necessary to satisfy all Allowed Administrative Claims and Priority Tax Claims and (b) Cash in an amount equal to all Allowed Other Priority Claims.

66.     "*Other Secured Claim*" means any Secured Claim against the Debtors, including any secured tax Claim or any Claim arising under, derived from, or based upon any letter of credit issued in favor of one or more

Debtors, the reimbursement obligation for which is either secured by a Lien on collateral or is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

67.     "*Other Unsecured Claims*" means any General Unsecured Claim other than a Crossover Unsecured Claim.

68.     "*Petition Date*" means September 29, 2019.

69.     "*Plan*" means this joint plan under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

70.     "*Plan Administrator*" means Richard S. Lauter of Lewis Brisbois Bisgaard & Smith LLP, in his capacity as plan administrator for the Debtors or Wind-Down Debtors, as applicable, or any successor thereto appointed by the Debtors or Wind-Down Debtors, as applicable, who shall have all powers and authorities set forth in Article IV.E of this Plan.

71.     "*Plan Administrator Amount*" means an amount of Cash, in an amount set forth in the Plan Supplement, to be used to pay the reasonable and documented fees and expenses of the Plan Administrator and its professionals in the manner set forth in Article IV.E of the Plan.

72.     "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to be filed initially on the Plan Supplement Filing Date, and as may be further amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code, and the Bankruptcy Rules, including the Plan Administrator Amount, and any and all documentation necessary to effectuate the Restructuring Transactions or that is contemplated by the Plan.

73.     "*Plan Supplement Filing Date*" means the date that is at least [five] days prior to the date on which objections to Confirmation are due pursuant to the Disclosure Statement Order.

74.     "*Praxton Note*" means that certain loan agreement, dated as of October 9, 2015, by and among Forever 21 and Praxton Commercial Corp.

75.     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

76.     "*Pro Rata*" means (a) with respect to any distribution on account of an Allowed Claim, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class and (b) with respect to any distribution on account of an Allowed Crossover Unsecured Claim or an Allowed Other Unsecured Claim, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed General Unsecured Claims.

77.     "*Professional Fee Claim*" means a Claim by a Retained Professional seeking an award by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

78.     "*Proof of Claim*" means a proof of Claim filed against any Debtor in the Chapter 11 Cases.

79.     "*Reinstatement*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

80.     "*Related Party Loans*" mean those certain loan agreements dated January 21, 2015, by and among Forever 21 and Do Won Chang, the Linda Inhee Chang 2012 Trust, and the Esther Duk-Hee Chang 2012 Trust, respectively.

81. "*Released Parties*" means each of and in each case solely in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtors; (c) all Holders of Interests; (d) the Official Committee and each of its members; (e) each current and former affiliate of each Entity in clause (a) through (d); and (f) with respect to each of the foregoing parties in clauses (a) through (e), each of such party's current and former directors, officers, members, employees, partners, managers, general partners, limited partners, managing members, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors or sub-advisors, and other professionals; *provided* that, if any Holder of a Claim or Interest that would otherwise be a Released Party (x) validly opts out of the releases contained in the Plan, (y) files an objection to the releases contained in the Plan, or (z) votes to reject the Plan, such Holder of a Claim or Interest shall not be a Released Party.

82. "*Releasing Parties*" means, each of, and in each case solely in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtors; (c) all Holders of Claims; (d) all Holders of Interests; (e) each current and former affiliate of each Entity in clause (a) through (d); and (e) with respect to each of the foregoing parties in clauses (a) through (g), each of such party's current and former directors, officers, members, employees, partners, managers, general partners, limited partners, managing members, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors or sub-advisors, and other professionals; *provided* that any Holder of a Claim or Interest that would otherwise be a Releasing Party (x) validly opts out of the releases contained in the Plan, (y) files an objection to the releases contained in the Plan, or (z) votes to reject the Plan shall not be a Releasing Party.

83. "*Representatives*" means, with regard to an Entity, current and former officers, directors, members (including *ex officio* members), managers, employees, partners, advisors, attorneys, professionals, accountants, investment bankers, investment advisors, actuaries, Affiliates, financial advisors, consultants, agents, and other representatives of each of the foregoing Entities (whether current or former, in each case in his, her or its capacity as such).

84. "*Restructuring Transactions*" means the transactions described in Article IV.C of this Plan.

85. "*Retained Claims or Causes of Action*" means any Claim or Cause of Action that the Debtors or their Estates may hold as of the Effective Date; *provided,* that, for the avoidance of doubt, the Retained Claims or Causes of Action shall not include (a) any Claim or Cause of Action released by the Debtors or transferred to the Buyer pursuant to the Asset Purchase Agreement or Sale Order or (b) any Avoidance Actions held by the Debtors or the Wind-Down Debtors against Holders of Crossover Claims, which shall be waived, released, and discharged on the Effective Date in accordance with the terms hereof.

86. "*Retained Professional*" means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Court pursuant to section 503(b)(4) of the Bankruptcy Code.

87. "*Sale Order*" means the *Order (I) Authorizing (A) Entry Into and Performance Under the Asset Purchase Agreement, (B) the Sale of the Debtors' Assets to the Buyer, and (C) the Buyer to Conduct Store Closings and Going Out of Business Sales, and (II) Granting Related Relief* [Docket No. 927], entered on February 13, 2020.

88. "*Sale Transaction*" means, collectively, the transactions contemplated in and pursuant to the Asset Purchase Agreement.

89. "*Section 510(b) Claims*" means any Claim against a Debtor arising from rescission of a purchase or sale of an equity security of the Debtors or an Affiliate of the Debtors for damages arising from the purchase or sale of such an equity security or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

90. "*Section 1125(e) Parties*" means, collectively, each of the following solely in their respective capacities as such (a) Holders of the Existing Equity Interests, (b) the Debtors' principals, members, Affiliates, parents, and subsidiaries, (c) the Official Committee, and (d) with respect to each of the Entities named in (a)

through (c) above, such Entity's directors, officers, current and former shareholders (regardless of whether such interests are held directly or indirectly), partners, managers, trustees, assigns, principals, members, employees, agents, affiliates, advisory board members, parents, subsidiaries, predecessors, successors, heirs, executors and assignees, attorneys, financial advisors, investment bankers, accountants, consultants and other professionals or representatives.

91. "*Secured Claim*" means, when referring to a Claim, a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) otherwise Allowed pursuant to the Plan or order of the Court as a secured Claim.

92. "*Securities*" means any instruments that qualify under section 2(a)(1) of the Securities Act.

93. "*Securities Act*" means the Securities Act of 1933, as now in effect or hereafter amended, or any regulations promulgated thereunder.

94. "*Settlement*" means that certain Administrative Claims Settlement, as defined and incorporated in the Settlement Order.

95. "*Settlement Order*" means the *Order (I) Approving the Administrative Claims Settlement Procedures and (II) Granting Related Relief* [Docket No. 1724].

96. "*Tax Refunds*" means the proceeds of the CARES Act Refund and any other tax refunds received by the Debtors or the Wind-Down Debtors, including refunds on account of state income tax prepayments.

97. "*Unimpaired*" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

98. "*United States Trustee*" means the United States Trustee for the District of Delaware.

99. "*Wind-Down*" means the wind-down and dissolution of the Debtors' Estates as set forth in the Plan.

100. "*Wind-Down Amount*" means an amount of Cash required to Wind-Down the Debtors' Estates and conclude the Chapter 11 Cases, as defined in the Sale Order.

101. "*Wind-Down Debtors*" means the Debtors, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

## B. Rules of Interpretation

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles of this Plan; (e) the words ''herein,'' "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (g) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (h) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (i) captions and headings to Articles are inserted for convenience of

reference only and are not intended to be a part of or to affect the interpretation hereof; (j) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (k) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (l) any effectuating provisions may be interpreted by the Wind-Down Debtors or the Plan Administrator in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Court or any other Entity, and such interpretation shall control; and (m) references to docket numbers are references to the docket numbers of documents filed in the Chapter 11 Cases under the Court's CM/ECF system.

C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Unless otherwise specified herein, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

D.    *Reference to Monetary Figures*

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

E.    *Reference to the Debtors or the Wind-Down Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Wind-Down Debtors mean the Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

## ARTICLE II.

## ADMINISTRATIVE CLAIMS AND UNITED STATES TRUSTEE STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III of this Plan.

A.    *Administrative Claims*

1.    General Administrative Claims

Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code, except to the extent that a Holder of an Allowed General Administrative Claim and the applicable Debtor(s) agree to less favorable treatment with respect to such Allowed General Administrative Claim, each Holder of an Allowed General Administrative Claim shall receive, in full and final satisfaction, compromise, settlement, and release of an in exchange for its Claim, its Pro Rata share of the Administrative and Priority Tax Claims Recovery. All known Holders of General Administrative Claims, other than Administrative Settlement Claimants, have been sent an Administrative/Priority Claim Consent Form pursuant to which the Debtors are seeking the agreement of such Holder to the treatment afforded to such Holder hereunder. The failure to return the Administrative/Priority Claim Consent Form or to object to Confirmation by a Holder of an Allowed General Administrative Claim shall be deemed to be such Holder's consent to receive treatment for such Claim that is different from that set forth in section 1129(a)(9) of the Bankruptcy Code. Administrative Settlement Claims against the Debtors shall be Allowed and paid solely in accordance with the terms of the Settlement, which is incorporated herein by reference as if fully set forth herein.

2. Professional Fee Claims

a. Final Fee Applications

All final requests for payment of Professional Fee Claims shall be filed no later than the first Business Day that is 45 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Court. For the avoidance of doubt and notwithstanding prior Court orders prohibiting payments of Professional Fee Claims, upon Allowance of the Professional Fee Claims, the Debtors or Wind-Down Debtors, as applicable, shall be entitled to distribute the funds in the Carve-Out Account on account of such Allowed Professional Fee Claims in a manner consistent with and contemplated by the Sale Order.

b. Carve-Out Account

The Carve-Out Account shall be maintained in trust in the manner set forth in the Sale Order. Such funds shall not be considered property of the Estates of the Debtors or the Wind-Down Debtors. No Liens, Claims, or Interests shall encumber the Carve-Out Account in any way. When all such Allowed amounts owing to Retained Professionals have been paid in full, any remaining amount in the Carve-Out Account shall be deemed to constitute Distributable Cash without any further action or order of the Court.

3. Administrative Claims Bar Date

All requests for payment of an Administrative Claim (other than Professional Fee Claims) that accrued on or before the Effective Date that were not otherwise accrued in the ordinary course of business must be filed with the Court and served on the Debtors no later than the Administrative Claims Bar Date. If a Holder of an Administrative Claim (other than Professional Fee Claims) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Claims Bar Date, such Holder shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, or the Wind-Down Debtors, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.

The Wind-Down Debtors, or the Plan Administrator, as applicable, in their sole and absolute discretion, may settle Administrative Claims in the ordinary course of business without further Court approval. The Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, may also choose to object to any Administrative Claim no later than the Claims Objection Deadline, subject to extensions by the Court, agreement in writing of the parties, or on motion of a party in interest approved by the Court. Unless the Debtors, the Wind-Down Debtors, or the Plan Administrator (or other party with standing) objects to a timely-filed and properly served Administrative Claim, such Administrative Claim will be deemed Allowed in the amount requested. In the event that the Debtors, the Wind-Down Debtors, or the Plan Administrator objects to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Court will determine whether such Administrative Claim should be Allowed and, if so, in what amount.

B. United States Trustee Statutory Fees

The Debtors and the Wind-Down Debtors, as applicable, shall pay all United States Trustee quarterly fees under 28 U.S.C § 1930(a)(6), plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtors' or Wind-Down Debtors' business (or such amount agreed to with the United States Trustee or ordered by the Court), for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

**ARTICLE III.**

**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

A.      *Classification of Claims*

Except for the Claims addressed in Article II above (or as otherwise set forth herein), all Claims and Interests are placed in Classes for each of the Debtors.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, as described in Article II of this Plan.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation, and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  In connection with Confirmation of the Plan, the Debtors reserve the right to assert that the Plan substantively consolidates the Estates.  The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or an Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been disallowed, paid, or otherwise settled prior to the Effective Date.

**Summary of Classification and Treatment of Claims and Interests**

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 2 | Other Priority Claims | Unimpaired / Impaired | Deemed to Accept / Deemed to Reject |
| 3A | Crossover Unsecured Claims | Impaired | Entitled to Vote |
| 3B | Other Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Intercompany Claims | Impaired | Deemed to Reject |
| 5 | Intercompany Interests | Impaired | Deemed to Reject |
| 6 | Existing Equity Interests | Impaired | Deemed to Reject |
| 7 | Section 510(b) Claims | Impaired | Deemed to Reject |

B.      *Treatment of Claims and Interests* [2]

    1.      <u>*Class 1 — Other Secured Claims*</u>

        a.      *Classification*:  Class 1 consists of all Other Secured Claims.

        b.      *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, to the extent such Claim has not already been paid in full during the Chapter 11 Cases, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Other Secured Claim, each Holder thereof shall receive, at the option of the Plan Administrator: (i) payment in full in Cash of the due and unpaid portion of its Other Secured Claim on the later of (x) the Effective Date (or as soon thereafter as reasonably practicable) or (y) as soon as practicable after the date such Claim becomes due and payable; (ii) the collateral securing its Allowed Other Secured Claim; (iii) Reinstatement of its Allowed Other Secured Claim; or

---

[2]      Allowed Claim amounts referenced in this section are subject to adjustment to reflect any changes to the outstanding principal amounts prior to the Effective Date.

(iv) such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

    c.    *Voting*:  Class 1 is Unimpaired and Holders of Class 1 Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Other Secured Claims are not entitled to vote to accept or reject the Plan.

2.    <u>Class 2 — Other Priority Claims</u>

    a.    *Classification*:  Class 2 consists of all Other Priority Claims.

    b.    *Treatment*:  All known Holders of Other Priority Claims have been sent an Administrative/Priority Claim Consent Form pursuant to which the Debtors are seeking the agreement of such party to the treatment afforded to such Holder hereunder.  The treatment afforded to Holders of Other Priority Claims hereunder is only available if each such Holder agrees to such treatment.  The failure to return the Administrative/Priority Claim Consent Form or to object to the Plan shall be deemed to be such Holder's consent to accept less than full payment of its Claim as required by section 1129(a)(9) and as contemplated under sections 1124 and 1123(a)(4) of the Bankruptcy Code, and in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive its Pro Rata share of the Other Priority Claims Recovery on the Effective Date, or as soon as reasonably practicable thereafter.

    c.    *Voting*:  Class 2 is either Unimpaired or Impaired under the Plan.  Holders of Class 2 Other Priority Claims are conclusively presumed to have either accepted or rejected the Plan pursuant to section 1126(f) or (g) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.    <u>Class 3A — Crossover Unsecured Claims</u>

    a.    *Classification*:  Class 3A consists of all Crossover Unsecured Claims.

    b.    *Treatment*:  Except to the extent that a Holder of an Allowed Class 3A Claim agrees to less favorable treatment of its Allowed Class 3A Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Class 3A Claim: (i) on the Effective Date, or as soon as reasonably practicable thereafter, each Holder thereof shall receive its Pro Rata share of the General Unsecured Claims Recovery; and (ii) on the Effective Date any Avoidance Actions held by the Debtors or the Wind-Down Debtors against such Holder will be fully waived, released, and discharged, and Avoidance Actions held by the Debtors or the Wind-Down Debtors against Holders of Crossover Unsecured Claims shall not be Retained Claims or Causes of Action.

    c.    *Voting*:  Class 3A is Impaired, and Holders of Class 3A Crossover Unsecured Claims are entitled to vote to accept or reject the Plan.

4.    <u>Class 3B — Other Unsecured Claims</u>

    a.    *Classification*:  Class 3B consists of all Other Unsecured Claims.

    b.    *Treatment*:  Except to the extent that a Holder of an Allowed Class 3B Claim agrees to less favorable treatment of its Allowed Class 3B Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Class 3B Claim, on the Effective Date, or as soon as reasonably practicable thereafter, each Holder thereof shall receive its Pro Rata share of the General Unsecured Claims Recovery.

      c.       *Voting*:  Class 3B is Impaired, and Holders of Class 3B Other Unsecured Claims are entitled to vote to accept or reject the Plan.

5.      <u>*Class 4 — Intercompany Claims*</u>

      a.       *Classification*:  Class 4 consists of all Intercompany Claims.

      b.       *Treatment*:  On the Effective Date, subject to the Restructuring Transactions, each Intercompany Claim shall be, at the option of the Plan Administrator, either compromised, settled, distributed and/or contributed among entities, modified, or canceled and released without any distribution.

      c.       *Voting*:  Holders of Claims in Class 4 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 4 Intercompany Claims are not entitled to vote to accept or reject the Plan.

6.      <u>*Class 5 — Intercompany Interests*</u>

      a.       *Classification*:  Class 5 consists of all Intercompany Interests.

      b.       *Treatment*:  Intercompany Interests shall be canceled, released, and extinguished as of the Effective Date and will be of no further force or effect, and Holders of Intercompany Interests will not receive any distribution on account of such Intercompany Interests.

      c.       *Voting*:  Holders of Claims in Class 5 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 5 Intercompany Interests are not entitled to vote to accept or reject the Plan.

7.      <u>*Class 6 — Existing Equity Interests*</u>

      a.       *Classification*:  Class 6 consists of all Existing Equity Interests in the Debtors.

      b.       *Treatment*:  On the Effective Date, Existing Equity Interests shall be canceled, released, and extinguished, and will be of no further force or effect and no Holder of Existing Equity Interests shall be entitled to any recovery or distribution under the Plan on account of such Interests.

      c.       *Voting*:  Class 6 is Impaired, and Holders of Class 6 Existing Equity Interests in the Debtors are not entitled to vote to accept or reject the Plan.

8.      <u>*Class 7 — Section 510(b) Claims*</u>

      a.       *Classification*:  Class 7 consists of any Section 510(b) Claims.

      b.       *Allowance*:  Notwithstanding anything in the Plan to the contrary, a Class 7 Claim (if existing) may only become Allowed by Final Order of the Court.  The Debtors are not aware of any asserted Class 7 Claim and believe no Class 7 Claim exists.

      c.       *Treatment*:  On the Effective Date, Section 510(b) Claims shall be discharged, cancelled, released, and extinguished without any distribution to Holders of such Claims.

      d.       *Voting*:  Class 7 is Impaired and Holders (if any) of Allowed Class 7 Section 510(b) Claims are conclusively presumed to have rejected the Plan.  Therefore, Holders (if any) of Class 7 Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

C.      *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Wind-Down Debtors' rights in respect of any Unimpaired Claim, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D.      *Nonconsensual Confirmation*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtors shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article XI of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

E.      *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective distributions and treatments under the Plan, shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Wind-Down Debtors and the Plan Administrator, as applicable, reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

F.      *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (*i.e.*, no ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

# ARTICLE IV.

# MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Sources of Consideration for Plan Distributions*

The Plan Administrator will fund distributions under the Plan with Cash on hand on the Effective Date, the Wind-Down Amount, and the Tax Refunds.

B.      *General Settlement of Claims*

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of Claims and Equity Interests and controversies resolved pursuant to the Plan.  Distributions made to Holders of Allowed Claims in any Class are intended to be final.

C. *Restructuring Transactions*

1. <u>Settlement</u>

The Settlement Order shall remain in full force and effect and the Debtor shall continue to fulfill their obligations thereunder.  The Settlement shall be incorporated as if fully set forth herein.

2. <u>Restructuring Transactions</u>

On the Effective Date or as soon as reasonably practicable thereafter, the Wind-Down Debtors or the Plan Administrator, as applicable, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan and the transactions described herein, including, without limitation:  (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution with the appropriate governmental authorities pursuant to applicable law; and (d) all other actions that the Wind-Down Debtors or the Plan Administrator, as applicable, determine are necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

D. *Wind-Down Debtors*

Each Debtor shall continue in existence after the Effective Date as the Wind-Down Debtors solely for the purposes of (1) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Wind-Down Debtors, if any, (2) resolving any Disputed Claims, (3) paying Allowed Claims, (4) enforcing and prosecuting claims, interests, rights, and privileges under any Retained Claim or Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (5) filing appropriate tax returns, and (6) administering the Plan in an efficacious manner.  The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Court, in each case without the need or requirement for the Wind-Down Debtors or Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

E. *Plan Administrator*

The Plan Administrator shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of directors or managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).  On the Effective Date, the persons acting as directors, managers, and officers of the Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole director or manager and the sole officer of the Wind-Down Debtors and shall succeed to the powers of the Debtors' managers and officers.  From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind-Down Debtors.  For the avoidance of doubt, the foregoing shall not limit the authority of the Wind-Down Debtors or the Plan Administrator, as applicable, to continue the employment of any former director, manager, or officer.

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to make distributions thereunder and Wind-Down the Estates of the Debtors and the Wind-Down Debtors, as applicable, including:  (1) liquidating, receiving, holding, investing, supervising, and protecting the assets of the

Wind-Down Debtors; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan; (3) making distributions as contemplated under the Plan; (4) establishing and maintaining bank accounts in the name of the Wind-Down Debtors; (5) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (6) paying all reasonable fees, expenses, debts, charges, and liabilities of the Wind-Down Debtors, as set forth in the Plan Supplement and subject to any limits set forth therein; (7) administering and paying taxes of the Wind-Down Debtors, including filing tax returns; (8) representing the interests of the Wind-Down Debtors before any taxing authority in all matters, including any action, suit, proceeding, or audit; and (9) exercising such other powers as may be vested in it pursuant to an order of the Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon 30 days' written notice delivered to the Court; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator. Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Wind-Down Debtors shall be terminated. In the event that the Plan Administrator dies or is otherwise incapacitated such that he is no longer able to carry out his duties as described herein, the Debtors shall, by exercising their reasonable business judgment, appoint a successor to the Plan Administrator.

1.      Retention of Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Plan Administrator upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business from the Plan Administrator Amount and shall not be subject to the approval of the Court.

2.      Compensation of the Plan Administrator

The Plan Administrator's compensation, on a post-Effective Date basis, shall be paid solely from the Plan Administrator Amount as described in the Plan Supplement and subject to any limits set forth therein.

F.      Wind-Down

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Court, and the Plan Administrator shall have the power and authority to take any action necessary to Wind-Down and dissolve the Debtors' Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall take any and all actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan. From and after the Effective Date the Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have cancelled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

G.      Tax Returns

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and Wind-Down Debtors, as applicable, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such

Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

### H. Corporate Existence

Except as otherwise provided in the Plan, each Debtor shall continue to exist as of the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be pursuant to the Plan and require no further action or approval.

### I. Dissolution of the Wind-Down Debtors

Upon a certification to be filed with the Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Wind-Down Debtors shall be deemed to be dissolved without any further action by the Wind-Down Debtors, including the filing of any documents with the secretary of state for the state in which the Wind-Down Debtors are formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable states.

### J. Vesting of Assets in the Wind-Down Debtors

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in each Estate, all Retained Claims or Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Wind-Down Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, Asset Purchase Agreement, and Sale Order, each Wind-Down Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Retained Claims or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### K. Cancellation of Agreements and Equity Interests

On the later of the Effective Date and the date on which distributions are made pursuant to the Plan (if not made on the Effective Date), except as otherwise specifically provided for in the Plan: (a) the obligations of the Debtors under the Praxton Note, the Related Party Loans, and any other certificate, equity security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors and their Affiliates, and the Wind-Down Debtors, the parties to the Praxton Note, and the parties to the Related Party Loans shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors and their Affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically reinstated or entered into pursuant to the Plan) shall be released and discharged.

### L. Sources for Plan Distributions and Transfers of Funds Among Debtors

The Debtors shall fund distributions under the Plan, with Cash on hand on the Effective Date. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and

settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

## M. Organizational Documents

Subject to Article IV.L of this Plan, the Wind-Down Debtors shall enter into such agreements and amend their corporate governance documents to the extent necessary to implement the terms and provisions of the Plan.

## N. Exemption from Certain Transfer Taxes and Recording Fees

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Wind-Down Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, Securities, or other interest in the Debtors or the Wind-Down Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## O. Preservation of Rights of Action

In accordance with section 1123(b) of the Bankruptcy Code, but subject to the releases set forth in Article IX below and except as otherwise set forth in the Asset Purchase Agreement, Sale Order, and herein, all Retained Claims or Causes of Action that a Debtor may hold against any Entity shall vest in the applicable Wind-Down Debtor on the Effective Date. Thereafter, the Wind-Down Debtors, through the Plan Administrator, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Claim or Cause of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any specific Retained Claim or Cause of Action as any indication that the Debtors, Wind-Down Debtors, or Plan Administrator, as applicable, will not pursue any and all available Retained Claims or Causes of Action. The Debtors, Wind-Down Debtors, and the Plan Administrator, as applicable, expressly reserve all rights to prosecute any and all Retained Claims or Causes of Action against any Entity, except as otherwise expressly provided in the Plan,** and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to any Retained Claim or Cause of Action upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date.

## P. Corporate Action

Upon the Effective Date, all actions contemplated by the Plan and the Restructuring Transactions shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtors, the Wind-Down Debtors, or any other Entity, including the selection of the Plan Administrator and all acts or actions contemplated, or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the company structure of the Debtors, and any company action required by the Debtors in connection therewith, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtors.

*Q.*      *Effectuating Documents; Further Transactions*

Prior to, on, and after the Effective Date, the Debtors, Wind-Down Debtors, and the Plan Administrator, as applicable, and the directors, managers, officers, authorized persons, and members of the boards of directors or managers and directors thereof are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan, the Restructuring Transactions, and any Securities issued pursuant to the Plan in the name of and on behalf of the Wind-Down Debtors, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan.

## ARTICLE V.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A.*      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

Assumption and rejection of executory contracts and unexpired leases shall be governed by the terms of the Asset Purchase Agreement and Sale Order, pursuant to which the Debtors transferred rights as to assumption and assignment or rejection decisions to the Buyer.

## ARTICLE VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

*A.*      *Distribution on Account of Claims and Interests Allowed as of the Effective Date*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim or Allowed Interest (as applicable) shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

*B.*      *Distributions on Account of Claims and Interests Allowed After the Effective Date*

     1.      <u>Payments and Distributions on Disputed Claims</u>

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on the date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim; *provided* that Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date shall be treated as Allowed Priority Tax Claims in accordance with Article II.A of this Plan and paid on the date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim.

     2.      <u>Special Rules for Distributions to Holders of Disputed Claims</u>

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order, *provided* that, if

the Debtors, the Wind-Down Debtors, or the Plan Administrator do not dispute a portion of an amount asserted pursuant to an otherwise Disputed Claim, the Holder of such Disputed Claim shall be entitled to a distribution on account of that portion of such Claim, if any, that is not Disputed at the time and in the manner that the Plan Administrator makes distributions to similarly situated Holders of Allowed Claims pursuant to the Plan.

C.      *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided herein, on the Effective Date, each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  If and to the extent that any Disputed Claims exist, distributions on account of such Disputed Claims shall be made pursuant to Article VI.B and Article VII of this Plan.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

D.      *Delivery of Distributions*

1.      Record Date for Distributions

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date.  If a Claim, other than one based on a publicly traded security, is transferred twenty (20) or fewer days before the Distribution Record Date, the Plan Administrator shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.      Delivery of Distributions in General

Except as otherwise provided in the Plan, the Plan Administrator shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated in the Debtors' records as of the date of any such distribution, including the address set forth in any Proof of Claim filed by that Holder; *provided* that the manner of such distributions shall be determined at the discretion of the Wind-Down Debtors or the Plan Administrator, as applicable.

3.      Minimum Distributions

Notwithstanding anything herein to the contrary, the Wind-Down Debtors and the Plan Administrator, as applicable, shall not be required to make distributions or payments of less than $100 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars.

4.      Undeliverable Distributions

a.      Holding of Certain Undeliverable Distributions

If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Wind-Down Debtors or the Plan Administrator as undeliverable, no further distributions shall be made to such Holder subject to the terms of this Article VI.D.4.b.  Undeliverable distributions shall remain in the possession of the Wind-Down Debtors, subject to Article VI.D.4.b of this Plan, until such time as any such distributions become deliverable.  Undeliverable distributions shall not be entitled to any additional interest, dividends, or other accruals of any kind on account of their distribution being undeliverable.

b.      Failure to Claim Undeliverable Distributions

No later than sixty (60) days after an initial distribution has been made to each Class entitled to receive a distribution under the Plan, the Plan Administrator shall file with the Court a list of the Holders of undeliverable distributions.  This list shall be maintained and updated periodically in the reasonable discretion of the Wind-Down

Debtors or the Plan Administrator for as long as the Chapter 11 Cases stay open. Any Holder of an Allowed Claim, irrespective of when a Claim becomes an Allowed Claim, that does not notify the Plan Administrator of such Holder's then current address in accordance herewith within sixty (60) days after the filing of the list of Holders of undeliverable distributions shall have its Claim for such undeliverable distribution discharged and shall be forever barred, estopped, and enjoined from asserting any such Claim against the Wind-Down Debtors or their property.

Subject to the provisions of this Article VI.D.4.b, within one-hundred twenty (120) days after the mailing or other delivery of any such distribution checks, notwithstanding applicable escheatment laws, all such distributions shall revert to the Distributable Cash pool. Nothing contained herein shall require the Wind-Down Debtors or the Plan Administrator to attempt to locate any Holder of an Allowed Claim.

<blockquote>c.   Failure to Present Checks</blockquote>

Checks issued by the Wind-Down Debtors or the Plan Administrator on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the issuance of such check. In an effort to ensure that all Holders of Allowed Claims receive their allocated distributions, the Plan Administrator shall file with the Court a list of the Holders of any un-negotiated checks no later than sixty (60) days after the issuance of such checks. This list shall be maintained and updated periodically in the sole discretion of the Plan Administrator for as long as the Chapter 11 Cases stay open. Requests for reissuance of any check shall be made directly to the Plan Administrator by the Holder of the relevant Allowed Claim with respect to which such check originally was issued.

Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within ninety (90) days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped, and enjoined from asserting any such Claim against the Wind-Down Debtors or their property.

Subject to the provisions of this Article VI.D.4.c, within one-hundred eighty (180) days after the mailing or other delivery of any such distribution checks, notwithstanding applicable escheatment laws, all such distributions shall revert to the Wind-Down Debtors. Nothing contained herein shall require the Wind-Down Debtors or the Plan Administrator to attempt to locate any Holder of an Allowed Claim.

E.   *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Plan Administrator shall comply with all tax withholding and reporting requirements imposed on the Wind-Down Debtors by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Wind-Down Debtors and the Plan Administrator shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Wind-Down Debtors and the Plan Administrator reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances. For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

F.   *Surrender of Cancelled Instruments or Securities*

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or an Equity Interest shall be deemed to have surrendered such certificate or instrument to the Plan Administrator. Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Equity Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under the Plan, charging liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under the Plan.

G.   *Claims Paid or Payable by Third Parties.*

1.   Claims Payable by Insurance

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.

2.   Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Retained Claim or Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS

A.   *Allowance of Claims and Interests*

After the Effective Date, each of the Wind-Down Debtors or the Plan Administrator, as applicable, shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Equity Interest immediately prior to the Effective Date.

Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Cases allowing such Claim.  All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

B.   *Prosecution of Objections to Claims*

Except as otherwise specifically provided in the Plan, the Asset Purchase Agreement, and the Sale Order, on and after the Effective Date, the Wind-Down Debtors and the Plan Administrator shall have the sole authority: (1) to file, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Court.

C.   *Estimation of Claims and Interests*

Before, on, or after the Effective Date, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, may (but are not required to) at any time request that the Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Court has ruled on any such objection; and the Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection; *provided* that, if the Court resolves the Allowed amount of a Claim, the Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, shall not be permitted to seek an estimation of such Claim.  Notwithstanding any provision otherwise in the Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Court.  In the event that the Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes

under the Plan (including for purposes of distributions), and the Plan Administrator or the relevant Wind-Down Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.      *Adjustment to Claims and Interests Without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted on the Claims Register by the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Court.

E.      *Time to File Objections to Claims*

Any objections to Claims shall be filed on or before the Claims Objection Deadline.

F.      *Disallowance of Certain Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, but solely to the extent that any such Retained Claim or Cause of Action is not waived pursuant to Article III.B.3hereof, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims and Interests until such time as such Retained Claim or Cause of Action against that Entity has been settled or an order of the Court with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Wind-Down Debtors.  All Claims that constitute an "Assumed Liability" under the Asset Purchase Agreement shall be deemed satisfied and expunged from the Claims Register as of the Effective Date.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Court, and Holders of such Claims shall not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order.**

G.      *Amendments to Proofs of Claim*

On or after the Effective Date, a Proof of Claim or Interest may not be filed or amended without the prior authorization of the Court, the Wind-Down Debtors, or the Plan Administrator, as applicable, and any such new or amended Proof of Claim or Interest filed shall be deemed disallowed in full and expunged without any further action by the Debtors, Wind-Down Debtors, or Plan Administrator, as applicable, or notice to the Court or any other Entity.

H.      *Offer of Judgment*

The Wind-Down Debtors and the Plan Administrator are authorized to serve upon a Holder of a Claim an offer to allow judgment to be taken on account of such Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment.  To the extent the Holder of a Claim or Interest must pay the costs incurred by the Wind-Down Debtors after the making of such offer, the Wind-Down Debtors are entitled to setoff such amounts against the amount of any distribution to be paid to such Holder in accordance with Article IX.F without any further notice to or action, order, or approval of the Court.

## ARTICLE VIII.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.      *Conditions Precedent to the Effective Date*

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.      The Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.      The Confirmation Order shall have been entered, shall be in full force and effect, and shall be a Final Order.

3.      All documents and agreements necessary to implement the Plan shall have been executed and tendered for delivery.  All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

4.      All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws.

5.      The Carve-Out Account shall have been established and funded, as contemplated by the Sale Order.

6.      All material authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the transactions contemplated herein shall have been obtained.

7.      The Debtors shall have implemented the Restructuring Transactions in a manner consistent in all material respects with the Plan.

*B.*      *Waiver of Conditions*

The Debtors or the Wind-Down Debtors, as applicable, may waive any of the conditions to the Effective Date set forth above at any time, with notice to the Official Committee, but without any further notice to parties in interest and without any further notice to or action, order, or approval of the Court, and without any formal action other than a proceeding to confirm the Plan.  The failure of the Debtors or the Wind-Down Debtors to exercise any of the foregoing rights shall not be deemed a waiver of such rights or any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

*C.*      *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, then:  (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan, the Confirmation Order, or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claims, Interests, or Causes of Action; (ii) prejudice in any manner the rights of the Debtors or any other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

*D.*       *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE IX.

## RELEASE, INJUNCTION, AND RELATED PROVISIONS

*A.*      *Discharge of Claims and Termination of Equity Interests; Compromise and Settlement of Claims, Equity Interests, and Controversies.*

Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Equity Interests, Claims, and

Causes of Action of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors, the Wind-Down Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability to the extent such Claims or Interests relate to services performed by current or former employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Equity Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such Claim or Equity Interest has accepted the Plan. Except as otherwise provided herein, any default or "event of default" by the Debtors or their Affiliates with respect to any Claim or Equity Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan. For the avoidance of doubt, nothing in this Article IX.A shall affect the rights of Holders of Claims and Interests to seek to enforce the Plan, including the distributions to which Holders of Allowed Claims and Interests are entitled under the Plan.

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Court's approval of the compromise or settlement (including as contemplated by the Settlement and including the terms contemplated therein) of all such Claims, Interests, and controversies, as well as a finding by the Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Court, after the Effective Date, the Wind-Down Debtors or the Plan Administrator, as applicable, may compromise and settle Claims against the Debtors and their Estates and Retained Claims or Causes of Action against other Entities.

**B.** **_Releases by the Debtors_**

**PURSUANT TO SECTION 1123(B) AND ANY OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, ON AND AFTER THE EFFECTIVE DATE, EACH RELEASED PARTY AND ITS RESPECTIVE ASSETS AND PROPERTY ARE, AND ARE DEEMED TO BE, HEREBY CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER RELEASED AND DISCHARGED BY THE DEBTORS, THE WIND-DOWN DEBTORS, AND THEIR ESTATES, FROM ANY AND ALL RETAINED CLAIMS OR CAUSES OF ACTION, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE, THAT THE DEBTORS, THE WIND-DOWN DEBTORS, OR THEIR ESTATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' CAPITAL STRUCTURE, THE ASSERTION OR ENFORCEMENT OF RIGHTS AND REMEDIES AGAINST THE DEBTORS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, THE SALE TRANSACTION, INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A COMPANY PARTY AND ANOTHER COMPANY PARTY, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE ASSET PURCHASE AGREEMENT, THE SETTLEMENT, THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT,**

**RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO BEFORE OR DURING THE CHAPTER 11 CASES, ANY PREFERENCE, FRAUDULENT TRANSFER, OR OTHER AVOIDANCE CLAIM ARISING PURSUANT TO CHAPTER 5 OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE RELATED OR RELATING TO ANY OF THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.**

C.      *Releases by Holders of Claims and Equity Interests*

**PURSUANT TO SECTION 1123(B) AND ANY OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY AND ITS RESPECTIVE ASSETS AND PROPERTY ARE, AND ARE DEEMED TO BE, HEREBY CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED BY EACH RELEASING PARTY FROM ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, THE SALE TRANSACTION, INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A COMPANY PARTY AND ANOTHER COMPANY PARTY, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE ASSET PURCHASE AGREEMENT, THE SETTLEMENT, THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT RELATING TO ANY OF THE FOREGOING, CREATED OR ENTERED INTO BEFORE OR DURING THE CHAPTER 11 CASES, ANY PREFERENCE, FRAUDULENT TRANSFER, OR OTHER AVOIDANCE CLAIM ARISING PURSUANT TO CHAPTER 5 OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE RELATED OR RELATING TO ANY OF THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, INCLUDING ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN. FOR THE AVOIDANCE OF DOUBT, NOTHING IN THIS PLAN SHALL BE DEEMED TO BE, OR CONSTRUED AS, A RELEASE, WAIVER, OR DISCHARGE OF ANY OF THE COMPANY INDEMNIFICATION OBLIGATIONS.**

## D.    Exculpation

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS RELEASED AND EXCULPATED FROM ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE CHAPTER 11 CASES, THE SALE TRANSACTION, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OR TERMINATION OF THE ASSET PURCHASE AGREEMENT, THE SETTLEMENT, THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT RELATING TO THE FOREGOING CREATED OR ENTERED INTO BEFORE OR DURING THE CHAPTER 11 CASES, ANY PREFERENCE, FRAUDULENT TRANSFER, OR OTHER AVOIDANCE CLAIM ARISING PURSUANT TO CHAPTER 5 OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, EXCEPT FOR CLAIMS RELATED TO ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER BY A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED BAD FAITH, GROSS NEGLIGENCE, ACTUAL FRAUD, OR WILLFUL MISCONDUCT, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATION SET FORTH ABOVE SHALL NOT OPERATE TO WAIVE OR RELEASE THE RIGHTS OF ANY ENTITY TO ENFORCE THIS PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, INCLUDING ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN.  THE EXCULPATED PARTIES HAVE, AND UPON COMPLETION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.

## E.    Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT:  (A) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (B) HAVE BEEN RELEASED PURSUANT TO ARTICLE IX.B OF THIS PLAN; (C) HAVE BEEN RELEASED PURSUANT TO ARTICLE IX.C OF THIS PLAN, (D) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE IX.D OF THIS PLAN (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN ARTICLE IX.D OF THIS PLAN), OR (E) ARE OTHERWISE DISCHARGED, SATISFIED, STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY ACTION OR OTHER PROCEEDING, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE WIND-DOWN DEBTORS, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED) ON ACCOUNT OF, OR IN CONNECTION WITH OR WITH RESPECT TO, ANY DISCHARGED, RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES.

### F. Substantive Consolidation

1.        In connection with Confirmation of the Plan, the Debtors reserve the right to assert that the Plan substantively consolidates the Estates of all of the Debtors into a single consolidated estate for all purposes associated with Confirmation and consummation of the Plan.

2.        In the event the Debtors assert that the Plan substantively consolidates the Estates, the entry of the Confirmation Order would constitute approval by the Court of the substantive consolidation of the Debtors and their respective Estates for all purposes relating to the Plan, including for purposes of voting, Confirmation, and distributions.    If the Plan substantively consolidates the Estates, then for all purposes associated with the Confirmation and consummation of the Plan, all assets and liabilities of the Debtors would be treated as though they were merged into a single economic unit, and all guarantees by any Debtor of the obligations of any other Debtor, to the extent such exist, would be considered eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, would be treated as one collective obligation of the Debtors.  Moreover, (a) no distribution would be made under the Plan on account of any Intercompany Interest held by any one of the Debtors in any of the other Debtors except to the extent necessary to effect the substantive consolidation provided for herein, (b) all guaranties of any one of the Debtors of the obligations of any of the other Debtors, to the extent such exist, would be eliminated so that any Claim against any one of the Debtors, and any guaranty thereof executed by any of the other Debtors, would be one obligation of the consolidated Debtors' Estates, and (c) every Claim that is timely filed or to be filed in the Chapter 11 Cases of any of the Debtors would be deemed filed against the consolidated Estates and would be one Claim against, and one obligation of, the Estates.

3.        Additionally, any Holder of multiple Allowed Claims against more than one Debtor that arise from the contractual, joint, joint and several, or several liability of such Debtors, the guaranty by one Debtor of another Debtor's obligation or other similar circumstances, would be entitled to one Allowed Claim that, in the aggregate, does not exceed the amount of the underlying Claim giving rise to such multiple Claims.  Claims against more than one of the Debtors arising from the same injury, damage, cause of action, or common facts would be Allowed only once as if such Claim were against a single Debtor.

4.        If the Debtors sought and received approval of substantive consolidation, the Wind-Down Debtors or the Plan Administrator are authorized to submit an order to the Court under certification of counsel that is in form and substance reasonably acceptable to the United States Trustee and the Official Committee that closes each of the Chapter 11 Cases except Forever 21, Inc.'s Chapter 11 Case.  The Debtors' consolidated estate would thereafter be administered through Forever 21, Inc.'s Chapter 11 Case.  Once the Plan has been fully administered, the Wind-Down Debtors or the Plan Administrator would thereafter file a final report and a motion seeking a final decree in accordance with Local Rule 3022-1.

### G. Setoffs and Recoupment

Except as otherwise provided herein, each Wind-Down Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy or non-bankruptcy law, or as may be agreed to by the Holder of an Allowed Claim, may set off or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any Claims, rights, and Retained Claims or Causes of Action of any nature that the applicable Debtor or Wind-Down Debtor may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Retained Claims or Causes of Action have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan, a Final Order or otherwise); *provided* that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Wind-Down Debtor of any such Claims, rights, and Retained Claims or Causes of Action.

In no event shall any Holder of Claims be entitled to set off or recoup any Claim against any Claim, right, or Retained Claim or Cause of Action of a Debtor or a Wind-Down Debtor, as applicable, unless (i) such Holder has timely filed a Proof of Claim with the Court preserving such setoff or recoupment in such Proof of Claim, (ii) such Holder and the Debtors have otherwise agreed, (iii) such Holder is a counterparty to a rejected or unexpired nonresidential real property lease that provides for such setoff or recoupment, or (iv) otherwise provided in this

Plan; *provided* that the foregoing shall not prevent any Holder of a Claim or Interest from asserting setoff or recoupment as an affirmative defense to the extent provided by applicable law.

## H.    *Release of Liens*

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Wind-Down Debtor and its successors and assigns.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Wind-Down Debtors, or the Plan Administrator that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Wind-Down Debtors or the Plan Administrator, as applicable, shall be entitled to make any such filings or recordings on such Holder's behalf.

# ARTICLE X.

# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.    Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.    Resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any cure costs pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any executory contract or unexpired lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.    Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.    Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.    Adjudicate, decide or resolve any and all matters related to Causes of Action;

7.    Adjudicate, decide or resolve any and all matters related to the Settlement;

8.    Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

9.        Resolve any cases, controversies, suits, or disputes that may arise in connection with General Unsecured Claims, including establishment of a bar date, related notice, Claim objections, allowance, disallowance, estimation and distribution;

10.       Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

11.       Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

12.       Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

13.       Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

14.       Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

15.       Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid;

16.       Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

17.       Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

18.       Enter an order or final decree concluding or closing the Chapter 11 Cases;

19.       Adjudicate any and all disputes arising from or relating to distributions under the Plan;

20.       Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

21.       Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

22.       Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, or the Restructuring Transactions, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

23.       Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

24.       Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

25.       Enforce all orders previously entered by the Court; and

26.       Hear any other matter not inconsistent with the Bankruptcy Code.

# ARTICLE XI.

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

A.      *Modification of Plan*

Subject to the limitations contained in the Plan, the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules and upon notice to the Official Committee: (a) to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (b) after the entry of the Confirmation Order, the Debtors or the Wind-Down Debtors, as the case may be, may, upon order of the Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

B.      *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      *Revocation of Plan*

Subject to the conditions to the Effective Date, the Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent plans under chapter 11. If the Debtors revoke or withdraw the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other Entity; (ii) prejudice in any manner the rights of the Debtors or any other Entity; or (iii) constitute an admission of any sort by the Debtors or any other Entity.

# ARTICLE XII.

## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, and any and all Holders of Claims and Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to executory contracts and unexpired leases. The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062.

B.      *Additional Documents*

On or before the Effective Date, the Debtors may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Wind-Down Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

*C.*      *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of Title 28 of the United States Code, as determined by the Court at a hearing pursuant to section 1128 of the Bankruptcy Code or as agreed to by the United States Trustee and the Wind-Down Debtors, shall be paid when due and payable for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first. The Plan Administrator shall file with the Court quarterly reports in a form reasonably acceptable to the United States Trustee until the entry of a final decree pursuant to Bankruptcy Rule 3022 to close the Chapter 11 Case of such Wind-Down Debtor.

*D.*      *Reservation of Rights*

The Plan shall have no force or effect unless and until the Court enters the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

*E.*      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

*F.*      *Service of Documents*

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Wind-Down Debtors shall also be served on:

| Debtors | Counsel to the Debtors |
| --- | --- |
| Forever 21, Inc.<br>3880 N. Mission Road<br>Los Angeles, California 90031<br>Attn.: Jon Goulding | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn.: Joshua A. Sussberg and Aparna Yenamandra<br><br>- and -<br><br>Kirkland & Ellis LLP<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Attn.: Anup Sathy<br><br>- and -<br><br>Pachulski Stang Ziehl & Jones LLP<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19899-8705 (Courier 19801)<br>Attn.: Laura Davis Jones, James E. O' Neill, and Timothy Cairns |

| United States Trustee | Counsel to the Official Committee |
| --- | --- |
| Office of the United States Trustee<br>for the District of Delaware<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801<br>Attn.: Juliet Sarkessian | Kramer Levin Naftalis & Frankel LLP<br>1117 Avenue of the Americas<br>New York, New York 10036<br>Attn.: Adam C. Rogoff, Robert T. Schmidt, and<br>Nathaniel Allard |

After the Effective Date, the Wind-Down Debtors and the Plan Administrator have authority to send a notice to Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Wind-Down Debtors and the Plan Administrator are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

In accordance with Bankruptcy Rules 2002 and 3020(c), within ten (10) Business Days of the date of entry of the Confirmation Order, the Debtors shall serve the notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with the notice of the Confirmation Hearing; *provided* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. To supplement the notice described in the preceding sentence, within twenty days of the date of the Confirmation Order the Debtors shall publish the notice of Confirmation once in *The Financial Times* (international edition), *USA Today* (national edition), and *The Wall Street Journal* (national edition). Mailing and publication of the notice of Confirmation in the time and manner set forth in the this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

G.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.      *Entire Agreement*

On the Effective Date, the Plan, the Plan Supplement, and the Settlement and Settlement Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided* that corporate governance matters relating to Debtors or Wind-Down Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation of the applicable Debtor or Wind-Down Debtor, as applicable.

*J.      Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Except as otherwise provided in the Plan, such exhibits and documents included in the Plan Supplement shall be filed with the Court on or before the Plan Supplement Filing Date.  After the exhibits and documents are filed, copies of such exhibits and documents shall have been available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at http://cases.primeclerk.com/Forever21 or the Court's website at www.deb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Court, the non-exhibit or non-document portion of the Plan shall control.

*K.      Nonseverability of Plan Provisions upon Confirmation*

If, prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid, void, or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (x) valid and enforceable pursuant to its terms; (y) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (z) nonseverable and mutually dependent.

*L.      Closing of Chapter 11 Cases*

The Plan Administrator shall, promptly after the full administration of the Chapter 11 Cases, file with the Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Court to close the Chapter 11 Cases.

*M.      Conflicts*

To the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  To the extent that any provision in the Plan conflicts with or is in any way inconsistent with any provision of the Confirmation Order, the Confirmation Order shall govern and control.

*N.      Dissolution of the Committee*

The Official Committee shall dissolve, and all members, employees, or agents thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases on the Effective Date; *provided* that the Official Committee shall be deemed to remain in existence solely with respect to, and shall not be heard on any issue except, (1) applications filed by the professionals pursuant to sections 330 and 331 of the Bankruptcy Code, (2) any appeals of the Confirmation Order, (3) any appeals to which the Official Committee is a named party, and (4) any adversary proceedings or contested matters as of the Effective Date to which the Official Committee is a party.

*O.      Section 1125(e) Good Faith Compliance*

The Debtors and the Wind-Down Debtors, and each of their respective Representatives, shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

*P.      Further Assurances*

The Debtors, Wind-Down Debtors, all Holders of Claims or Interests receiving distributions pursuant to this Plan, and all other parties-in-interest shall, from time to time, prepare, execute, and deliver any agreements or

documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

*    *    *    *    *

Respectfully submitted, as of the date first set forth above,

**Forever 21, Inc.**
**(on behalf of itself and all other Debtors)**

By:    _/s/ Jonathan Goulding_
Name:    Jonathan Goulding
Title:    Chief Restructuring Officer