# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | )  | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FOREVER 21, INC., *et al.*,[1] | ) | Case No. 19-12122 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Objection Deadline: September 23, 2021 at 4:00 p.m. (ET)** |
| | ) | **Hearing Date: October 4, 2021 at 10:30 a.m. (ET)** |

## DEBTORS' MOTION SEEKING ENTRY OF AN ORDER (I) APPROVING PROCEDURES FOR (A) THE DISMISSAL OF THE DEBTORS' CHAPTER 11 CASES, (B) THE RECONCILIATION, RESOLUTION, AND ALLOWANCE OR DISALLOWANCE OF CERTAIN CLAIMS AGAINST THE DEBTORS, (C) THE ABANDONMENT OF CERTAIN PROPERTY, AND (D) THE DISSOLUTION OF THE DEBTOR ENTITIES IN ACCORDANCE WITH APPLICABLE STATE LAW AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] respectfully state as follows in support of this motion (this "Motion"):

### Preliminary Statement

1. After considering all potential alternatives to bring these chapter 11 cases to a value maximizing conclusion, the Debtors have determined that a dismissal of these chapter 11 cases is

---

1  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Forever 21, Inc. (4795); Alameda Holdings, LLC (2379); Forever 21 International Holdings, Inc. (4904); Forever 21 Logistics, LLC (1956); Forever 21 Real Estate Holdings, LLC (4224); Forever 21 Retail, Inc. (7150); Innovative Brand Partners, LLC (7248); and Riley Rose, LLC (6928). The location of the Debtors' service address is: 3880 N. Mission Road, Los Angeles, California 90031.

2  A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Jonathan Goulding, Chief Restructuring Officer of Forever 21, Inc., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 23] (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on September 29, 2019 (the "Petition Date"). Capitalized terms used but not otherwise defined in this Motion shall have the meanings given to them in the First Day Declaration or later in this Motion.

the most expeditious and cost-effective mechanism to wind down the Debtors' affairs and maximize recoveries for holders of allowed Administrative Claims and Secured Claims.[3] In accordance with the Supreme Court's decision in *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017), all distributions will strictly comply with the priority scheme established by the Bankruptcy Code, including the absolute priority rule and sections 507 and 726 of the Bankruptcy Code.

2. A dismissal will result in greater recoveries for holders of Administrative Claims and Secured Claims and ensure a faster and less costly completion of these chapter 11 cases as compared to a conversion to chapter 7. The fees and commissions incurred by a chapter 7 trustee and its professionals alone justify dismissal of these cases. The Debtors estimate that the proceeds available for distribution through the structured dismissal contemplated by the Order could amount to approximately $34.5 to $35.3 million. In the event these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, the Debtors estimate that the distributable proceeds could be equal to approximately $25.2 to $26.9 million after taking into account additional chapter 7 expenses. Conversion to chapter 7 would also likely further delay distributions to holders of

---

[3] "Secured Claim" means, when referring to a Claim, a Claim: (a) secured by a lien on property in which the Debtors' estate has an interest, which lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) otherwise allowed pursuant to an order of the Court as a secured Claim.

"Administrative Claim" means a Claim for costs and expenses of administration of the Debtors' estates under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Debtors' estates and operating the businesses of the Debtors; (b) all fees and charges assessed against the Debtors' estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930. For the avoidance of doubt, Claims related to amounts required to cure any monetary defaults under any executory contract or unexpired lease that is to be assumed by the Debtors and assigned to the Buyer pursuant to sections 365 or 1123 of the Bankruptcy Code are not Administrative Claims and will be satisfied pursuant to the provisions of the *Order (I) Authorizing (A) Entry Into and Performance Under the Asset Purchase Agreement, (B) the Sale of the Debtors' Assets to the Buyer, and (C) the Buyer to Conduct Store Closings and Going Out of Business Sales, and (II) Granting Related Relief* [Docket No. 927] (the "Sale Order") and the Asset Purchase Agreement (as defined in the Sale Order).

allowed Administrative Claims and Secured Claims, as a chapter 7 trustee would need to spend time familiarizing itself with these cases through the engagement of new professionals.

3. Because the Debtors' cases have been fully administered, conversion to chapter 7 and a corresponding liquidation is unnecessary and unlikely to generate additional value. The few corporate actions that remain outstanding—filing final tax returns and dissolving the Debtors' corporate existence (or analogous limited liability company actions)—do not require a chapter 7 trustee's oversight. Therefore, conversion to chapter 7 cases will merely add another layer of unnecessary additional administrative expenses, which would need to be paid in full before any holders of Administrative Claims and Secured Claims could receive any recovery on account of their claims.

4. The Order sets forth the process for dismissing the Debtors' chapter 11 cases through a structured, Court-supervised process that balances the interests of holders of Administrative Claims in receiving prompt distributions, with the Court's interest in ensuring the Debtors' limited assets are distributed in a fair manner that comports with the requirements of the Bankruptcy Code. A central component of the Order is an expedited claims resolution process for determining the allowed amount of Administrative Claims and Secured Claims. This process provides parties in interest with notice and an opportunity to object to their proposed treatment and is structured in a manner substantially similar to this Court's order in *In re SJC, Inc*.[4]

5. Upon completion of the claims resolution process and satisfaction of the other conditions set forth in the Order, the Debtors shall file a certification of counsel requesting the entry of an order (the "<u>Distribution Order</u>"), the form of which is attached as <u>Exhibit 2</u> to

---

[4] No. 14-11763 (MFW) (Bankr. D. Del. Aug. 12, 2015).

**Exhibit A** hereto, which shall authorize the Debtors to distribute all Distributable Cash[5] in excess of amounts necessary to satisfy all allowed Secured Claims, if any, *pro rata* to holders of allowed Administrative Claims. Once such distributions have been made and the other requirements of the Distribution Order have been satisfied, the Debtors shall request, through a certification of counsel filed with the Court, entry of an order (the "Dismissal Order") dismissing the chapter 11 cases, the form of which is attached as Exhibit 3 to **Exhibit A** hereto.

6. For the reasons set forth below, dismissal is practical, represents the most economical path forward given the circumstances, and is warranted under the Bankruptcy Code.

**Relief Requested**

7. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order") (a) approving procedures for (i) the dismissal of the Debtors' chapter 11 cases, (ii) the reconciliation, resolution, and allowance or disallowance of certain claims (as defined in section 101(5) of the Bankruptcy Code, the "Claims") against the Debtors,

---

[5] "Distributable Cash" means cash, in each case in an amount held as of the date of the entry of the Distribution Order, (a) received pursuant to any tax refunds; (b) on account of excess cash from the sale of real property approved by the *Order (I) Authorizing the Sale of Certain of the Debtors' Real Property Free and Clear of Liens, Claims, and Encumbrances, (II) Authorizing the Retention and Employment of the Quantum Associates* Nunc Pro Tunc *to November 18, 2019, (III) Approving the Terms of the Purchase Agreements, and (IV) Granting Related Relief* [Docket No. 956] (such sale, the "Warehouse Sale"); (c) on account of the proceeds received by the Debtors pursuant to the intercompany settlement approved by the *Order Approving Foreign Claim Settlement with Forever 21 Korea Retail, LLC and Granting Related Relief* [Docket No. 1723]; (d) on account of certain commercial property insurance proceeds; (e) on account of certain interest payments on deposited funds; (f) on account of certain professional fee retainer refunds; (g) on account of rent received on account of that certain real property subject to the Warehouse Sale prior to such Warehouse Sale; and (h) on account of any excess cash remaining in the Wind Down Amount (as defined in the Sale Order) on account of fees and expenses incurred prior to the entry of the *Order Granting in Part and Denying in Part Motion of Interested Parties Key Vendor Administrative Claimants WeiHai ShangShan Imp. & Exp. Co., Ltd.; Only Star (Ningbo) Co., Ltd.; Regentex Apparel Limited; V & E Accessories Inc.; Hongkong Olive Fashion Co., Limited; LIFU Enterprises Corp.; RGB Imp. & Exp. Trading (Ningbo) Co., Ltd.; Chantex International Limited; Hotkey Inco Limited; & Ebeauty Fashion Co., Limited For Allowance and Immediate Payment of Administrative Claims Pursuant to 11 U.S.C. § 503(b); an Injunction Against the Payment of All Professional Fees Pending Payment; and Related Relief* [Docket No. 1444].

(iii) the abandonment of certain property, and (iv) the dissolution of the Debtor entities in accordance with applicable state law; and (b) granting related relief.

**Jurisdiction and Venue**

8. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The statutory bases for the relief requested herein are sections 105(a), 305, 349, 554(a), and 1112(b) of the Bankruptcy Code, Bankruptcy Rule 6007, and Local Rule 1017-2.

**Background**

11. On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 99]. No party has requested the appointment of a trustee or examiner in these chapter 11 cases. On October 11, 2019, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official

5

committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee") [Docket No. 197].

12. On February 13, 2020, the Court entered the Sale Order, approving the sale of substantially all of the Debtors' assets on a going-concern basis (the "Sale"). The Sale closed on February 19, 2020 [Docket No. 960].

**Basis for Relief**

**I. "Cause" Exists Under Section 1112(b) of the Bankruptcy Code to Dismiss These Cases.**

13. Section 1112(b)(1) of the Bankruptcy Code provides that, upon the request of a party in interest, absent the court identifying unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, a court "shall" dismiss a chapter 11 bankruptcy case (or convert such case to a case under chapter 7) "for cause."[6] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") changed the statutory language with respect to conversion or dismissal from permissive to mandatory.[7]

14. The amendments to section 1112 thus limit the Court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause.[8] For the reasons set forth below, the

---

[6] *See* 11 U.S.C. § 1112(b)(1).

[7] *See* H.R. Rep. No. 109-31(I), at 442, *as reprinted in* 2005 U.S.C.C.A.N. 88, 94 (stating that the Act "mandate[s] that the court convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause, absent unusual circumstances"); *see also In re Gateway Access Sols., Inc.*, 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007) (stating that the amendments to section 1112 limit the court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause); *accord In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal, such that this Court has no choice, and no discretion, in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4)."). Prior to the enactment of the BAPCPA, a bankruptcy court had the discretion, pursuant to its broad equitable powers, to dispose of a debtor's case, including by means of dismissal. However, a court was not mandated, as is the case now, to dismiss a case upon the showing of cause. *See* H.R. Rep. No. 95-595, at 405 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963; S. Rep. No. 95-989, at 117 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787.

[8] *In re 3 Ram, Inc.*, 343 B.R. 113, 119 (Bankr. E.D. Pa. 2006) ("Under new § 1112 when cause is found, the court

6

Debtors submit that the Court should dismiss these chapter 11 cases because "cause" exists to do so under section 1112(b)(1) of the Bankruptcy Code. Further, dismissal—not conversion to cases under chapter 7—is in the best interests of the Debtors, their creditors, and their estates.

> **II. Cause Exists to Dismiss these Chapter 11 Cases Because the Debtors Have Ceased Business Operations and the Court Found that the Debtors Are Unable to Confirm a Chapter 11 Plan.**

15. In addition to the non-exhaustive list of grounds for dismissal outlined by section 1112(b)(4) of the Bankruptcy Code, courts may consider the "totality of the circumstances" in determining whether sufficient cause exists.[9]

16. Courts may find cause exists if a debtor is unable to "effectuate a plan" or where there is not a "reasonable possibility of a successful reorganization within a reasonable period of time."[10] Inability to effectuate a plan arises when a debtor lacks the capacity to "formulate a plan or carry one out" or where the core for a workable plan of reorganization does not exist.[11]

---

shall dismiss or convert unless special circumstances exist that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate.").

[9] *See In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d Cir. 1999) (finding that the factors enumerated in section 1112(b)(4) are "not exhaustive and . . . a court may consider whether other facts and circumstances qualify as 'cause'"); *In re Gateway Access Sols.*, 374 B.R. at 561 ("Generally, such lists are viewed as illustrative rather than exhaustive, and the Court should 'consider other factors as they arise.'") (quoting *In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991)); *In re 3 Ram, Inc.*, 343 B.R. at 117 ("While the enumerated examples of 'cause' to convert or dismiss a chapter 11 case now listed in § 1112(b)(4) have changed under BAPCPA, the fact that they are illustrative, [and] not exhaustive has not.") (citation omitted); *accord In re Frieouf*, 938 F.2d 1099, 1102 (10th Cir. 1991) (stating that section 1112(b)'s list is non-exhaustive).

[10] *In re Am. Capital Equip., LLC*, 688 F.3d 145, 162 n.10 (3d Cir. 2012) ("[T]he 'inability to effectuate a plan' remains a viable basis for dismissal[.]"); *see also In re Bronson*, Nos. AZ-12-1320-MkDJu, 08-00777, 2013 WL 2350791, at *8 (B.A.P. 9th Cir. May 29, 2013) ("[W]hen it becomes apparent to the court that the debtor will not be able to confirm and effectuate a plan within the foreseeable future, the bankruptcy court should . . . dismiss or convert.").

[11] *In re Preferred Door Co.*, 990 F.2d 547, 549 (10th Cir. 1993) (citing *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989)).

17. Here, the Debtors do not have the core for a workable chapter 11 plan in light of the Court's ruling at the hearing on approval of the Disclosure Statement[12] on July 22, 2021 (the "Hearing"). At the Hearing, the Court denied the Debtors' motion for approval of the Disclosure Statement, expressing its concerns that the Debtors may never be able to confirm a chapter 11 plan under the circumstances of these cases.[13] Consistent with such ruling, the Court thereafter entered the Disclosure Statement Denial Order,[14] denying approval of the Disclosure Statement and finding that the Debtors' chapter 11 plan as written was patently unconfirmable.[15] Thus, it is unlikely that the Debtors would be able to formulate a chapter 11 plan that would be confirmed by this Court. Therefore, cause exists for dismissal of these chapter 11 cases.

### III. Dismissal is in the Best Interests of Creditors and the Debtors' Estates.

18. Section 1112(b) of the Bankruptcy Code mandates that once a court determines that cause exists to dismiss a debtor's chapter 11 case, the court must evaluate whether dismissal or conversion is in the best interests of the debtor's creditors and the estate.[16] Here, a variety of factors

---

[12] "Disclosure Statement" means the *Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Forever 21, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2009].

[13] *See In re Forever 21, Inc.*, No. 19-12122 (MFW) (Bankr. D. Del. July 22, 2021) Hr'g Tr. 66:20–67:7 ("So I don't think that the plan and I think the debtors' statements and filings make it clear that, if even one administrative claimant does not opt in, that the plan cannot be confirmed. So I think that we ought to just stop this process at this time . . . I think we should, as I say, stem the tide of losses and just [] I don't know if the U.S. Trustee's motion to dismiss is still pending [] excuse me [] motion to convert is still pending, or whether the debtor wants to make the decision as to what to do.").

[14] "Disclosure Statement Denial Order" means the *Order Denying Debtors' Motion for Entry of an Order (A) Approving the Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* [Docket No. 2048].

[15] *See* Disclosure Statement Denial Order ¶ 1.

[16] 11 U.S.C. § 1112(b); *see, e.g.*, *In re Superior Siding & Window,* 14 F.3d 240, 242 (4th Cir. 1994) ("Once 'cause' is established, a court is required to consider this second question of whether to dismiss or convert."); *In re Mazzocone*, 183 B.R. 402, 411 (Bankr. E.D. Pa. 1995) ("There is no dispute by any party regarding the presence of sufficient 'cause' to dismiss or convert this case from a Chapter 11 case. . . . Therefore, the only issue before us is determining whether conversion or dismissal best satisfies the [best interests of the creditors test].").

demonstrate that dismissal of these chapter 11 cases is in the best interest of the Debtors' estates and their creditors.

19. ***First***, courts have found that dismissal of a chapter 11 case is in the best interests of creditors where a debtor has nothing to reorganize and the debtor's assets are fixed and liquidated.[17] Here, the Debtors have no business left to reorganize because they have sold substantially all of their assets pursuant to the Sale. Additionally, substantially all of the Debtors' remaining assets have been liquidated. The Debtors are not aware of any other material unliquidated assets.

20. ***Second***, dismissal is appropriate because the alternative—conversion to a chapter 7 case and appointment of a chapter 7 trustee—is (a) unnecessary and would provide no benefit to creditors, (b) would likely impose significant additional administrative costs upon the Debtors' estates, and (c) would further delay distributions to holders of allowed Administrative Claims and allowed Secured Claims. Specifically, the Debtors are not aware of any remaining assets with material value that are left to be liquidated and that warrant the appointment of a chapter 7 trustee. As a result, creditors would not receive greater recoveries in a chapter 7 liquidation, and in fact, the costs of a chapter 7 liquidation likely would only result in further administrative expenses, thereby further reducing recoveries. Conversion to chapter 7 would also further delay distributions to holders of Administrative Claims and Secured Claims as a chapter 7 trustee would need to spend time familiarizing itself with the Debtors' estates and these cases and may decide to commence a traditional investigation to do so.

---

[17] *See In re Brogdon Inv. Co.*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing chapter 11 proceeding based, in part, on the fact that there was "simply nothing to reorganize" and no reason to continue the reorganization).

21. For these reasons, the Debtors submit that a dismissal pursuant to section 1112 of the Bankruptcy Code is in the best interest of the Debtors' creditors and their estates.[18]

### IV. The Court Should Grant the Related Relief.

#### A. *The Court Should Approve the Proposed Claims Resolution Process.*

22. The proposed Order contains certain procedures to resolve proofs of claim filed in these chapter 11 cases. Such procedures balance the interests of holders of Administrative Claims and Secured Claims in receiving timely distributions with the need to ensure that the Debtors' remaining assets are preserved for distribution. Because the Debtors do not have sufficient cash proceeds to make distributions to holders of general unsecured claims or priority claims under section 507 of the Bankruptcy Code, other than Administrative Claims (each such claim, a "<u>Priority Claim</u>"), such procedures exclusively contemplate the resolution of Administrative Claims and Secured Claims. In short, the proposed Order contemplates that the Debtors will file a schedule that sets forth the proposed allowed amount of each Administrative Claim and Secured Claim and serve it on holders of known Claims listed therein. Parties in interest will then be required to object within 30 days to the proposed allowed amount of their respective Claims to the extent they disagree with the amount or priority set forth therein. This process will enable the Debtors to quickly and efficiently allow outstanding Administrative Claims and Secured Claims

---

[18] Based on the foregoing, cause also exists to dismiss the chapter 11 cases pursuant to section 305(a) of the Bankruptcy Code, which provides that the "court, after notice and a hearing, may dismiss a case under this title . . . at any time if—(1) the interests of creditors and the debtor would be better served by such dismissal or suspension . . ." Whether dismissal is appropriate under this provision is determined on a case-by-case basis and rests in the sound discretion of the Court. *See In re Sky Grp. Int'l, Inc.*, 108 B.R. 86, 91 (Bankr. W.D. Pa. 1989). Many factors are considered in this inquiry, including: (a) the economy and efficiency of administration, (b) whether federal proceedings are necessary to reach a just and equitable solution, (c) whether there is an alternative means of achieving an equitable distribution of assets, and (d) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case. *In re AMC Investors, LLC*, 406 B.R. 478, 488 (Bankr. D. Del. 2009).

while also giving claimants appropriate notice and an opportunity to object to the proposed treatment of their Claims.

23. Importantly, the Debtors have already successfully objected to 680 Claims, in an aggregate asserted amount of approximately $11.5 billion[19] and eliminated another 83 Claims from the claims register, in an aggregate asserted amount of approximately $3 million, through a notice of satisfaction.[20] These objections have focused on Administrative Claims, Priority Claims, and Secured Claims with asserted amounts or priorities that significantly differed from the Debtors' books and records or were objectionable for other reasons.

24. The Debtors submit that such procedures are fair, appropriate, and warranted under the circumstances of these chapter 11 cases and therefore should be approved. Moreover, substantially similar procedures in connection with the dismissal of chapter 11 cases have been approved by courts in this district.[21]

> B. *The Court Should Authorize the Debtors to Abandon Any Remaining Assets that Are Not Distributed to Holders of Allowed Claims.*

25. Pursuant to section 554(a) of the Bankruptcy Code, a debtor in possession may be authorized, upon notice and a hearing, to abandon estate property that is of little value to the estate

---

[19] *See* Docket Nos. 1895, 1896, 1897, 1898, 1953, 1954, 1955, 2021.

[20] *See* Docket No. 1952.

[21] *See, e.g.*, *Parallel Energy LP*, No. 15-12263 (KG) (Bankr. D. Del. Mar. 18, 2016) [Docket No. 241] (approving a claims resolution process substantially similar to that set forth herein); *SJC, Inc.*, No. 14-11763 (MFW) (Bankr. D. Del. Aug. 12, 2015) [Docket No. 321] (same); *In re G.I. Joe's Holding Corp*, No. 09-10713 (KG) (Bankr. D. Del. Mar. 10, 2011) [Docket No. 321] (granting relief from Local Rule 3007 to the extent inconsistent with the claims resolution process); *In re Mervyn's Holdings, LLC*, No. 08-11586 (KG) (Bankr. D. Del. July 14, 2010) [Docket No. 5114] (granting debtors relief from Local Rule 3007-1 with respect to omnibus objections to claims on substantive grounds); *In re KB Toys, Inc.*, No. 08-13269 (KJC) (Bankr. D. Del. Dec. 1, 2009) [Docket No. 914] (granting relief from Local Rule 3007 to the extent inconsistent with the debtors' claims resolution process).

or is otherwise burdensome to maintain.[22] As one bankruptcy court has noted, if a debtor "feels an asset is of inconsequential value and benefit to the estate or that is 'burdensome to the estate,' [the debtor] may abandon it."[23]

26.   Here, the Debtors request that the Court authorize, but not direct, the Debtors to abandon any assets that are not distributed to holders of Claims (if any) pursuant to sections 105(a) and 554 of the Bankruptcy Code.  As previously discussed, the Debtors sold substantially all of their assets as part of the Sale, no longer have an operating business, and are winding down their affairs.  The Debtors believe that substantially all of their assets were transferred as part of the Sale or liquidated into cash thereafter to fund distributions.  To the extent any remaining assets are not liquidated and distributed to holders of Claims, they will be of no value to the Debtors after dismissal of the chapter 11 cases.  For those reasons, the Debtors submit that they should not incur potentially significant costs associated with maintaining and storing such assets, which have no value to their estates, and they therefore should be authorized to abandon any such assets in their discretion.

> C.   *The Court Should Provide for Continued Binding Effect of Prior Stipulations, Settlements, Rulings, Orders, and Judgments.*

27.   Pursuant to section 349 of the Bankruptcy Code, the dismissal of a chapter 11 case ordinarily vacates all orders previously entered by the bankruptcy court and restores all parties to the prepetition status quo.[24]  Section 349 provides, however, that a bankruptcy court may "for

---

[22]   11 U.S.C. § 554(a).

[23]   *In re Reich*, 54 B.R. 995, 1004 (Bankr. E.D. Mich. 1985).

[24]   *See*  11 U.S.C. § 349(b).

cause, order[] otherwise . . . ."[25] Courts in this jurisdiction have regularly allowed orders to be given continued effect after a dismissal, notwithstanding section 349 of the Bankruptcy Code.[26]

28. Given the circumstances of these chapter 11 cases, the Debtors submit that ample cause exists to allow all prior orders, releases, stipulations, settlements, rulings, and judgments entered by the Court during the chapter 11 cases to be given continued effect, notwithstanding the requested dismissal.

**Reservation of Rights**

29. Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Order is intended or shall be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party in interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek

---

[25] *Id.*

[26] *See, e.g., In re RM Wind-Down Holdco LLC*, No. 18-11795 (MFW) (Bankr. D. Del. Feb. 18, 2020) [Docket No. 721] (giving continued effect to orders entered throughout the pendency of the chapter 11 cases); *In re Fuse, LLC*, No. 19-10872 (KG) (Bankr. D. Del. July 19, 2019) [Docket No. 304] (same); *In re The Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del. Mar. 29, 2019) [Docket No. 1488] (same); *In re Sunco Liquidation, Inc.*, No. 17-10561 (KG) (Bankr. D. Del. Nov. 6, 2017) [Docket No. 865] (same); *In re Old Towing Co.*, No. 17-10249 (LSS) (Bankr. D. Del. May 30, 2017) [Docket No. 381] (same).

avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's right to subsequently dispute such claim.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

30. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Notice**

31. The Debtors will provide notice of this Motion to: (a) the U.S. Trustee for the District of Delaware; (b) the United States Attorney's Office for the District of Delaware; (c) the Internal Revenue Service; (d) the state attorneys general for all states in which the Debtors conduct business; (e) counsel to certain majority equity holders for Debtor Forever 21, Inc.; (f) counsel to the Creditors' Committee; (g) any holder of a Claim that (i) is either (x) listed in the Debtors' schedules of assets and liabilities as neither contingent, unliquidated, nor disputed or (y) the subject of a timely filed proof of claim, and (ii) which has not been disallowed by separate order of the Court (including, for the avoidance of doubt, any stipulation or settlement approved by the Court); and (h) any party that requests service pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

32. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Dated: September 9, 2021
Wilmington, Delaware

*/s/ James E. O'Neill*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Timothy P. Cairns (DE Bar No. 4228)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:   (302) 652-4100
Facsimile:    (302) 652-4400
Email:           ljones@pszjlaw.com
                     joneill@pszjlaw.com
                     tcairns@pszjlaw.com

-and-

Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Aparna Yenamandra (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900
Email:           jsussberg@kirkland.com
                     aparna.yenamandra@kirkland.com

-and-

Anup Sathy, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
Email:           asathy@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*