**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:

FOREVER 21, INC.,

           Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

: Chapter 11
:
: Case No. 19-12122 (MFW)
:
: **Hearing Date: 1/11/23 at 10:30 a.m. (ET)**
: **Obj. Deadline: 1/3/23 at 4:00 p.m. (ET)**
:
: **Re: D.I. 2343**

**MOTION OF TRC MASTER FUND LLC TO
RECONSIDER, IN LIMITED PART, THE FEBRUARY 7, 2022
ORDER APPROVING DISTRIBUTIONS ON ACCOUNT
OF ALLOWED ADMINISTRATIVE CLAIMS AND SECURED CLAIMS**

TRC Master Fund LLC ("TRC"), by and through its undersigned counsel, hereby files this motion (the "Motion") to reconsider, in limited part, the *Order (I) Approving Distributions on Account of Allowed Administrative Claims and Secured Claims and (II) Granting Related Relief* (the "Distribution Order") [D.I. 2343] and modify that portion of the Distribution Order that requires the above-captioned debtor (the "Debtor") to donate to charity all cash held by the Debtor on account of Undeliverable Distributions (as defined below) that revert to the Debtor pursuant to the Distribution Order. In support of the Motion, TRC respectfully represents as follows:

**PRELIMINARY STATEMENT**[1]

1.    TRC, the holder of allowed administrative claims in this case, is not seeking to unwind the Distribution Order. This Motion addresses a very narrow issue that appears to have been merely an afterthought at the time the order was entered. New information that was not available at the time the order was entered shows that the amount of cash from Undeliverable Distributions is a substantial sum. Based on this new information, it appears that, unless the

---

[1] Capitalized terms not defined in the Preliminary Statement have the meaning ascribed to them hereafter.

{00034277. }

Distribution Order is modified, millions of dollars will be distributed to non-creditors rather than to holders of allowed administrative claims, who are already only receiving a partial distribution (29%) on their allowed claims. TRC seeks only to modify the portion of the Distribution Order that requires the Debtor to donate to charity all the cash that reverts to the Debtor following an initial distribution to all holders of allowed administrative claims and the check-reissuance process.

2. Under these circumstances, limited modification of the Distribution Order is warranted under FRCP 60.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, and the express terms of the Distribution Order.

4. This Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Pursuant to Local Rule 9013-1(f), TRC consents to entry of a final order with respect to the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The bases for the relief sought in the Motion are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 60 of the Federal Rules of Civil Procedure (the "FRCP"), made applicable herein by Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7. No prior request for the relief sought in this Motion has been made to this or any other Court.

**BACKGROUND**

8.  On September 29, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

9.  On February 13, 2020, the Court entered the *Order (I) Authoring (A) Entry Into and Performance Under the Asset Purchase Agreement, (B) the Sale of the Debtors' Assets to the Buyer, and (C) the Buyer to Conduct Store Closings and Going Out of Business Sales, and (II) Granting Related Relief* (the "Sale Order") [D.I. 927], which approved the sale of substantially all of the assets of the Debtor and its affiliated debtors whose cases have since been dismissed (the "Sale"). The Sale closed on February 19, 2020.

10. On September 9, 2021, the Debtor filed the *Debtors' Motion Seeking Entry of an Order (I) Approving Procedures for (A) the Dismissal of the Debtors' Chapter 11 Cases, (B) the Reconciliation, Resolution, and Allowance or Disallowance of Certain Claims Against the Debtors, (C) the Abandonment of Certain Property, and (D) the Dissolution of the Debtor Entities in Accordance with Applicable State Law and (II) Granting Related Relief* (the "Structured Dismissal Motion") [D.I. 2082].

11. On October 4, 2021, the Court entered the order (the "Structured Dismissal Order") [D.I. 2118] approving the Structured Dismissal Motion on the terms set forth therein. Among other things, the Structured Dismissal Order provided that (i) the Debtor must file a proposed schedule of allowed administrative and secured claims (the "Proposed Claims Schedule"), (ii) all professional fee claims must be filed within 45 days of the entry of the order, and (iii) as soon as practicable following the Court's determination of the allowed amount of professional fee claims and approval of the Proposed Claims Schedule (as approved, the "Claims Schedule"), the Debtor must file a certification requesting entry of an order authorizing the Debtor to distribute all "Distributable Cash" (as that term is defined in the Structured Dismissal Motion) in excess of

amounts necessary to satisfy allowed secured claims to holders of allowed administrative claims on a *pro rata* basis based on the allowed amount of such claims set forth on the Claims Schedule.

12. On February 7, 2022, the Court entered the Distribution Order, which annexes the Claims Schedule. TRC is the holder of a number of allowed administrative claims listed on the Claims Schedule.

13. This Motion pertains to the following provisions contained in the Distribution Order governing undeliverable distributions:

- Within 60 days after the initial distribution is made to holders of allowed claims, the Debtor must file a list of the holders of any un-negotiated checks and undeliverable distributions (collectively, the "<u>Undeliverable Distributions</u>"). The date that the list is filed is the "<u>Undeliverable Distribution Date</u>."

- Holders of allowed claims must request reissuance of a distribution within 30 days after the Undeliverable Distribution Date. The Debtor must reissue a check as soon as practicable after receipt of a reissuance request and, in any event, no later than 60 days after the Undeliverable Distribution Date.

- If no timely reissuance request on account of an Undeliverable Distribution is made within the 30 days after the Undeliverable Distribution Date, such claim on account of an Undeliverable Distribution is forever barred from being asserted against the Debtor or its property.

- On the date that is 120 days after the Undeliverable Distribution Date, all Undeliverable Distributions revert to the Debtor for final disposition by the Debtor. The Debtor "shall" donate to charity any cash returned to the Debtor pursuant to the foregoing.

Distribution Order ¶ 11.

14. In accordance with the provisions of the Distribution Order, on September 16, 2022, the Debtor filed the list of holders of Undeliverable Distributions. Thus, the Undeliverable Distribution Date is September 16, 2022. Accordingly, pursuant to the Distribution Order, the Debtor was required reissue checks for any reissuance requests within 60 days of the Undeliverable Distribution Date, or November 15, 2022. Moreover, Undeliverable Distributions that are not

successfully reissued revert to the Debtor 120 days after the Undeliverable Distribution Date, or January 14, 2023. The Debtor is thereafter required donate the cash on account of the Undeliverable Distributions that revert to the Debtor.

15. Based on the list of Undeliverable Distributions that was filed by the Debtor, TRC has determined that the total amount of cash on account of Undeliverable Distributions disclosed by the Debtor on September 16, 2022, is approximately $7.3 million. Following the filing of the list of Undeliverable Distributions, TRC contacted the Debtor to inquire about whether the Debtor would agree to seek a modification of the Distribution Order to provide for further *pro rata* distributions to holders of allowed administrative claims other than claims on account of Undeliverable Distributions, unless the amount of the remaining funds to be donated to charity does not exceed a minimum threshold.

16. On September 23, 2022, the Debtor advised TRC that it would reissue checks in accordance with the Distribution Order and thus did not support a motion to modify the Distribution Order at that time. Thereafter, TRC followed up with the Debtor on multiple occasions (and as recently as December 12, 2022) to ascertain the amount of Undeliverable Distributions following the Debtor's reissuance process, but to date the Debtor has not provided any information to TRC regarding the amount of any reissued checks that have been negotiated.

17. January 14, 2023—the date on which the cash from Undeliverable Distributions reverts to the Debtor and must be donated to charity—is fast approaching. TRC is compelled to file this Motion so that *all* holders of allowed administrative claims that have complied with the Debtor's requirements for receiving distributions are not faced with the injustice of seeing funds that could and should be distributed to them on account of their allowed administrative claims (for

which they are receiving only a partial 29% distribution) paid instead to parties that are not creditors of the Debtor.

18.     To the best of TRC's knowledge, after due inquiry, it appears that the amount of Undeliverable Distributions that may be distributed to non-creditors instead of holders of allowed administrative claims is substantial, and could be as much as $7.3 million, unless the Court modifies the Distribution Order.  The possibility that such a significant amount of unclaimed cash (all of which is *required* to be donated to charity) would remain after distributions to allowed holders of administrative claims was not discussed in the Structured Dismissal Motion.  The fact that approximately $7.3 million (or a smaller but still significant amount of cash) could be donated to charity also was not likely anticipated by the Debtor or its creditors, and certainly was not a fact that could have been known by the Court at the time it entered the Structured Dismissal Order and the Distributions Order.

## RELIEF REQUESTED

19.     By this Motion, TRC seeks a limited modification of the Distribution Order, solely to provide that the Debtor shall make further distributions to holders of allowed administrative claims other than claims on account of Undeliverable Distributions, and thereafter donate to charity all cash (if any) on account of Undeliverable Distributions that revert to the Debtor following the proposed additional distribution.

## BASIS FOR RELIEF REQUESTED

20.     Bankruptcy courts have the power, under both FRCP 60(b) and section 105(a) of the Bankruptcy Code, to reconsider, modify or vacate their own orders when the interest of justice requires.  *See, e.g., Elliott v. Four Seasons Props. (In re Frontier Props., Inc.)*, 979 F.2d 1358, 1363 (9th Cir. 1992), *In re G-I Holdings, Inc.*, 472 B.R. 263, 279-80 (Bankr. D.N.J. 2012) ("At

the outset, the Court acknowledges it has independent, discretionary authority to review, amend, correct, or clarify its own Opinion and other orders under its inherent equitable power.").

21. A motion for reconsideration pursuant to Bankruptcy Rule 9024 (incorporating FRCP 60) may be granted on the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion …; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *In re W.R. Grace & Co.*, 398 B.R. 368, 372 (D. Del. 2008) (citing *Max's Seafood Café by Lou Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). "The Court should reconsider a prior decision where it appears it has overlooked or misapprehended some factual matter that might reasonably have altered the result reached by the Court. While … a motion for reconsideration should not be used to reargue the facts or applicable law, it is appropriate when the facts were presented but overlooked by the Court." *Off. Comm. of Unsec. Creditors v. Catholic Diocese of Wilmington, Inc.* (*In re Catholic Diocese of Wilmington, Inc.*), 437 B.R. 488, 490 (Bankr. D. Del. 2010) (internal citations omitted).

22. In this case, the Court should modify, in limited part, the Distribution Order (i) because evidence of a substantial sum of cash on account of Undeliverable Distributions that must be donated to charity was not available when the Court entered the Distribution Order, and (ii) to prevent manifest injustice. Presumably, when the Court was asked to enter the Distribution Order, it was assumed that the aggregate amount of Undeliverable Distributions remaining at this time, after check reissuance, would be relatively *de minimis*. It stands to reason that the default rule in the Distribution Order of donating Undeliverable Distributions to charity would be preferable to needlessly incurring excessive administrative costs in order to make only meager distributions to holders of allowed administrative claims. The Debtor could not have anticipated

that such a large sum would result from Undeliverable Distributions at the time it made the Structured Dismissal Motion and thereafter when the Debtor sought the entry of the Distribution Order. The holders of allowed administrative claims against the Debtor will not be receiving full payment of their allowed claims in these cases under any circumstances.

23. To add insult to injury, if the Distribution Order is not modified, the holders of allowed administrative claims will be receiving an even lower *pro rata* distribution despite the fact that there are actually available a substantial amount of funds that could be distributed to them. This outcome could not have been the desire of the Debtor when it sought entry of the Distribution Order or the intent of Court when it entered the order. With this evidence now available to the Court, and in order to prevent a manifest injustice to all allowed holders of administrative claims (other than claims on account of Undeliverable Distributions), the Court should modify the Distribution Order to require the Debtor to make an additional *pro rata* distribution before any funds from Undeliverable Distributions are donated to charity.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, TRC respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, modifying in limited part the Distribution Order, and granting it such other and further relief as the Court deems just and proper.

Dated:  December 19, 2022
        Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

/s/ *Scott J. Leonhardt*
Scott J. Leonhardt (No. 4885)
The Rosner Law Group LLC
824 N. Market St., Suite 810
Wilmington, Delaware 19801
Telephone:  (302) 777-1111
leonhardt@teamrosner.com

--and--

**RUBIN LLC**
Paul A. Rubin, Esq.
345 Seventh Avenue, 21st Floor
New York, NY 10001
Telephone:  (212) 390-8054
Facsimile:  (212) 390-8064
prubin@rubinlawllc.com

*Counsel for TRC Master Fund LLC*